CAROLYN HOECKER LUEDTKE (SBN. 207976)
carolyn.luedtke@mto.com
DANE P. SHIKMAN (SBN. 313656)
dane.shikman@mto.com
GABRIEL M. BRONSHTEYN (SBN. 338011)
gabriel.bronshteyn@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-3089
Telephone:    (415) 512-4000
Facsimile:    (415) 512-4077

JONATHAN I. KRAVIS (*pro hac vice* pending)
jonathan.kravis@mto.com
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue, NW, Suite 500E
Washington, D.C. 20001-5369
Telephone:    (202) 220-1100
Facsimile:    (202) 220-2300

Attorneys for Defendants OpenAI, Inc., OpenAI Global, LLC, and OpenAI OpCo, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| X.AI CORP. and X.AI LLC,<br><br>        Plaintiffs,<br><br>    vs.<br><br>OPENAI, INC., OPENAI GLOBAL, LLC, and OPENAI OPCO, LLC,<br><br>        Defendants. | Case No. 3:25-cv-08133-RFL<br><br>**NOTICE OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STRIKE ALLEGATIONS FROM COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:    November 18, 2025<br>Time:   10:00 am<br><br>Judge:  Honorable Rita F. Lin |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on November 18, 2025, at 10:00 a.m., in Courtroom 15 of the above-entitled Court, located on the 18th floor of 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable Rita F. Lin, Defendants ("OpenAI") will and hereby do move to dismiss with prejudice Plaintiffs' Complaint (Dkt. No. 1) in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6), and, in the alternative, move to strike paragraphs 114-115 from the Complaint pursuant to Federal Rule of Civil Procedure 12(f).

DATED: October 2, 2025                    MUNGER, TOLLES & OLSON LLP


                                          By:    *s/ Carolyn Hoecker Luedtke*
                                                 CAROLYN HOECKER LUEDTKE
                                                 JONATHAN I. KRAVIS
                                                 DANE P. SHIKMAN
                                                 GABRIEL M. BRONSHTEYN

                                          Attorneys for Defendants OpenAI, Inc., OpenAI Global, LLC, and OpenAI OpCo, LLC

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL BACKGROUND ......................................................................................... 2

III. ARGUMENT .................................................................................................................. 3

    A. xAI's Trade Secret Misappropriation Claim Fails as a Matter of Law ...................... 4

        1. The Complaint Does Not Allege That OpenAI Itself Acquired, Used, or Even Knew About xAI's Alleged Trade Secrets ........................... 4

            (a) Xuechen Li ................................................................................. 5

            (b) Jimmy Fraiture ........................................................................... 7

            (c) Senior Finance Executive and Other Individuals ....................... 8

        2. xAI's Alternative Misappropriation-by-Inducement Theory Does Not Suffice to State a Claim Against OpenAI ............................................. 9

    B. The Court Should Dismiss xAI's State-Law Claims .................................................. 12

    C. At a Minimum, the Court Should Strike xAI's Allegations Regarding Employees for Whom There Is No Allegation Beyond Joining OpenAI ................ 13

IV. CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Albert's Organics, Inc. v. Holzman*,
  445 F. Supp. 3d 463 (N.D. Cal. 2020) ...................................................................................15

*Alert Enterprise v. Rana*,
  No. 22-cv-06646-JSC, 2023 WL 2541353 (N.D. Cal. Mar. 16, 2023) ..........................9, 13, 14

*Apple Inc. v. Rivos, Inc.*,
  No. 5:22-cv-02637-EJD, 2023 WL 5183034 (N.D. Cal. Aug. 11, 2023) ..............................6, 10

*Arthur J. Gallagher & Co. v. Tarantino*,
  498 F. Supp. 3d 1155 (N.D. Cal. 2020) .............................................................................13, 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..........................................................................................................4, 12, 13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................................. passim

*Carl Zeiss Meditec, Inc. v. Topcon Med. Sys., Inc.*,
  2019 WL 11499334 (N.D. Cal. Nov. 13, 2019) ......................................................................10

*Carr v. AutoNation Inc.*,
  No. 2:17-cv-01539-JAM-AC, 2018 WL 288018 (E.D. Cal. Jan. 4, 2018) ................................7

*CleanFish v. Sims*,
  No. 19-cv-03663-HSG, 2020 WL 1274991 (N.D. Cal. Mar. 17, 2020) ...................................12

*Consumer Sols. REO, LLC v. Hillery*,
  658 F. Supp. 2d 1002 (N.D. Cal. 2009) ...................................................................................17

*Fantasy, Inc. v. Fogerty*,
  984 F.2d 1524 (9th Cir. 1993).................................................................................................16

*Flexport, Inc. v. Freightmate AI, Inc.*,
  No. 25-CV-02500-RFL, 2025 WL 2399666 (N.D. Cal. July 10, 2025) ........................... passim

*Frye v. Martinez Ref. Co. LLC*,
  No. 24-CV-04506-RFL, 2024 WL 5119227 (N.D. Cal. Dec. 16, 2024) ..................................17

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*,
  978 F.3d 653 (9th Cir. 2020).....................................................................................................5

*Menzel v. Scholastic, Inc.*,
  No. 17-CV-05499-EMC, 2018 WL 1400386 (N.D. Cal. Mar. 19, 2018) ...........................12, 13

*Navigation Holdings, LLC v. Molavi*,
  445 F. Supp. 3d 69 (N.D. Cal. 2020) .........................................................................................7

*Roche Molecular Sys., Inc. v. Foresight Diagnostics Inc.*,
  No. 24-cv-03972-EKL, 2025 WL 1959995 (N.D. Cal. July 16, 2025).......................................7

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001)..........................................................................................4

*Tidwell v. Cnty. of Kern*,
   No. 1:16-CV-01697 JLT, 2017 WL 68146 (E.D. Cal. Jan. 5, 2017) .........................17

*Tri Tool, Inc. v. Hales*,
   No. 22-cv-01515-DAD-KJN, 2023 WL 7130610 (E.D. Cal. Oct. 30, 2023) ......14, 15

*UCAR Tech. (USA) Inc. v. Yan Li*,
   No. 5:17-cv-01704-EJD, 2017 WL 6405620 (N.D. Cal. Dec. 15, 2017)..................16

*Valeo v. NVIDIA Corp.*,
   No. 23-cv-05721-NW, 2025 WL 2505115 (N.D. Cal. Aug. 28, 2025) ....................10

*Waymo LLC v. Uber Techs., Inc.*,
   256 F. Supp. 3d 1059 (N.D. Cal. 2017) ..................................................................15

*Whittlestone, Inc. v. Handi-Craft Co.*,
   618 F.3d 970 (9th Cir. 2010)...................................................................................17

**FEDERAL STATUTES**

18 U.S.C. § 1839(5) ............................................................................................................5, 7

18 U.S.C. § 1839(5)(A)-(B) .....................................................................................................5

18 U.S.C. § 1836 *et seq.* ................................................................................................ passim

**STATE STATUTES**

Cal. Civ. Code § 3426.7(b) ....................................................................................................14

Cal. Civ. Code § 3426 *et seq.* ................................................................................... 2, 3, 14, 15

Cal. Bus. & Prof. Code § 17200 *et seq* ............................................................................. 2, 15

**FEDERAL RULES**

Federal Rule of Civil Procedure 12(b)(6) .............................................................................4, 6

Federal Rule of Civil Procedure 12(f).............................................................................. 16, 17

**TREATISES**

5 Wright & Miller, Federal Practice & Procedure § 1382 .....................................................16

## I.  INTRODUCTION

This trade secret case represents yet another front in Elon Musk's campaign to thwart OpenAI from achieving its mission to ensure that artificial general intelligence benefits all of humanity.  Failing to compete with OpenAI and its groundbreaking ChatGPT product in the marketplace, Musk and his company, xAI, have resorted to a string of lawsuits to try and intimidate OpenAI, and slow down or halt its progress.  This is not lost on xAI's employees— under Musk's leadership, talented xAI employees are leaving in droves, and some are coming to OpenAI to help advance OpenAI's mission.  Those employees have every right to go where they choose, and OpenAI has the right to hire them.  To stem the bleeding, Musk and xAI have lobbed baseless claims of trade secret misappropriation to intimidate current and former xAI employees from choosing to work at their place of choice.  These allegations are not only false, but also insufficient to state a claim.  When stripped of its unsupported assertions, insinuations, and a smokescreen of alleged bad acts by others, xAI's Complaint does not (and cannot) allege that OpenAI did anything wrong.  It should be dismissed.

xAI's federal trade secret misappropriation claim fails as a matter of law.  xAI focuses its Complaint on the alleged conduct of two former xAI employees, Xuechen Li and Jimmy Fraiture.  Over and over again, the Complaint alleges conduct by these individuals but always stops short of claiming that OpenAI sought xAI trade secrets through them, that they ever transferred trade secrets to OpenAI, or that they used those secrets at OpenAI.  Just by way of example, the Complaint alleges on information and belief that Li downloaded xAI's source code after OpenAI sent him a link to a "cloud storage location," but then alleges that he uploaded that code *not* to the OpenAI link, but to his own "personal cloud account."  xAI tries to create the impression of a transfer, but does not actually allege that.  And that is not a surprise, because xAI knows that OpenAI's cloud storage link was simply a repository for HR paperwork provided to Li during his recruitment process.  Other examples in the Complaint follow the same pattern— allegations of bad conduct by others, with no actual acquisition or use by OpenAI.

With no defensible claim that OpenAI ever acquired or even indirectly used xAI's confidential information through Li and Fraiture, xAI asserts an alternative theory that OpenAI

1  induced or directed these individuals to take high-value secrets from xAI.  But xAI does nothing
2  more than cite conclusory statements, hidden behind a mountain of "information and belief"
3  caveats.  xAI's allegations about calls with OpenAI's recruiter, and OpenAI's compensation
4  packages offered to Li and Fraiture, do not add any meat to the bone of these threadbare
5  conclusions.  Those allegations about unobjectionable conduct do not plausibly establish that
6  OpenAI induced or directed theft, and therefore fail the *Twombly* plausibility bar.

7  xAI's bald allegations about "other xAI employees"—including a "senior finance
8  executive"—do not salvage the Complaint.  xAI does not plausibly allege that any of these
9  employees took anything from xAI or that they used confidential xAI information at
10 OpenAI.  These allegations do nothing more than attempt to penalize OpenAI for hiring talented,
11 innocent employees who, unsurprisingly, had access to confidential xAI information.  The law is
12 clear:  Mere access is not misuse.  It is well established that an individual's prior access to trade
13 secrets at a former employer is not enough to draw a reasonable inference that those trade secrets
14 were used at a subsequent employer.  These allegations add nothing to xAI's already deficient
15 misappropriation claim.   To the extent the misappropriation claim is not dismissed, the allegations
16 against the five named individuals should be stricken from the Complaint.

17 Finally, xAI's state-law claims for intentional interference and a violation of California's
18 unfair competition statute, fail for the simple reason that the California Uniform Trade Secret Act
19 ("CUTSA") supersedes them.  CUTSA supersedes all claims that depend on and arise out of trade
20 secret misappropriation, even when the plaintiff does not file any CUTSA claim.  xAI's state-law
21 claims are entirely dependent on its trade secret misappropriation claim, and therefore the claims
22 fail as a matter of law.

23 The Court should dismiss all claims.  In the alternative, it should strike certain allegations
24 specified herein relating to employees who are not alleged to done anything except join OpenAI.

25 **II.     FACTUAL BACKGROUND**

26 xAI sought to retain Xuechen Li and Jimmy Fraiture, both accomplished AI engineers, by
27 offering them "millions of dollars" in cash and equity.  Compl. ¶¶ 42, 48, 82, 86.  Notwithstanding
28

that, both Li and Fraiture pursued and received offers to work at OpenAI. *Id.* ¶¶ 60, 91. Fraiture eventually joined OpenAI. *Id.* ¶ 91. Li did not. *Id.* ¶ 76.

xAI claims that Li and Fraiture stole its trade secrets while at xAI, and that OpenAI should be liable for that theft. xAI alleges, on information and belief, that Li received a link to a "cloud storage location" from a recruiter at OpenAI. *Id.* ¶ 54. xAI does not allege (because it cannot) that this link was anything but a cloud-based portal with HR-related paperwork (e.g., benefits and compensation). xAI also does not allege (because it cannot) that the link was configured to allow him to upload anything at all. xAI separately alleges that the next day, Li uploaded xAI's source code to a "personal cloud account," and then onto his personal laptop. *Id.* ¶¶ 55-56, 68. xAI does not (and cannot) allege that Li ever transferred this source code to OpenAI.

xAI also alleges on information and belief that Li gave an interview presentation to OpenAI, allegedly containing confidential information. *Id.* ¶ 51. Discovery will show unequivocally that this presentation did not happen. But even taking this allegation as true, xAI does not allege what trade secrets were contained in the presentation, to whom the presentation was made, or specifically how OpenAI knew or should have known that the presentation contained trade secrets or was disclosed improperly.

xAI alleges that Fraiture also downloaded source code and various other confidential materials while working at xAI. *Id.* ¶¶ 92-96. But xAI does not allege that Fraiture transferred the xAI code to OpenAI. xAI alleges Fraiture deleted the code from his personal device while still at xAI on garden leave. *Id.* ¶¶ 92, 97, 100. Because xAI agrees the trade secrets were deleted before his OpenAI start date, it does not and cannot allege that Fraiture used those secrets at OpenAI.

In addition to these allegations, xAI claims that OpenAI hired other employees who formerly worked at xAi and had access to confidential information. *Id.* ¶¶ 102-115. But xAI does not allege that they disclosed xAI's trade secrets to OpenAI, or used them after starting at OpenAI.

## III.   ARGUMENT

To overcome a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544,

570 (2007)).  It must allege facts that "permit the court to infer more than the mere possibility of misconduct" and push the claims across "the line between possibility and plausibility." *Id.* at 678-79 (quoting *Twombly*, 550 U.S. at 557).  The court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001) (citation omitted).

### A. xAI's Trade Secret Misappropriation Claim Fails as a Matter of Law

xAI's trade secret misappropriation claim fails to allege the requisite non-conclusory facts necessary to survive a motion to dismiss.  To state a claim under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, xAI must allege that it owns a valid trade secret, that it has taken reasonable steps to protect that secret, and that OpenAI misappropriated that trade secret. *See* 18 U.S.C. § 1839(5); *InteliClear, LLC v. ETC Glob. Holdings, Inc*., 978 F.3d 653, 658 (9th Cir. 2020).  To plead misappropriation, xAI must plausibly allege either "(1) acquisition of the secret by improper means, or (2) disclosure or use of the trade secret without consent." *Flexport, Inc. v. Freightmate AI, Inc*., No. 25-CV-02500-RFL, 2025 WL 2399666, at *1 (N.D. Cal. July 10, 2025); *see also* 18 U.S.C. § 1839(5)(A)-(B).  xAI fails to meet this test.

xAI spends the bulk of its Complaint on argumentative insinuations about what certain individuals allegedly did before joining OpenAI, but cannot muster any concrete allegations that *OpenAI* misappropriated *any* xAI trade secret.  xAI attempts to salvage its DTSA claim with conclusory, unsupported allegations, a vicarious liability theory, and an alternative theory of misappropriation-by-inducement.  None of these is sufficient to state a claim against OpenAI.

#### 1. The Complaint Does Not Allege That OpenAI Itself Acquired, Used, or Even Knew About xAI's Alleged Trade Secrets

The Complaint does not plausibly allege that OpenAI itself acquired or used xAI's trade secrets, let alone that OpenAI knew or had reason to know about the alleged taking of the trade secrets.  In a single conclusory sentence, the Complaint alleges on "information and belief" that OpenAI "acquired" the alleged trade secrets "through improper means," including from xAI's former employees. Compl. ¶ 129.  This is a classic formulaic recitation of the "acquisition" element of the DTSA, and is given no independent weight. *See Twombly,* 550 U.S. at 555.  To

support that statement, xAI offers a smokescreen of alleged bad acts by former xAI employees, but none of those factual allegations is sufficient to plausibly allege that any individuals actually transferred xAI trade secrets to OpenAI or that those secrets were used at OpenAI. Because OpenAI never acquired the trade secrets itself, xAI's only path to avoid dismissal is to show that OpenAI is vicariously liable for its employees' use of the trade secrets *after* they started working at OpenAI. *See, e.g.*, *Flexport*, 2025 WL 2399666, at *4. xAI has not even tried to do so.

(a)  Xuechen Li

As an initial matter, xAI does not and cannot establish vicarious liability for Li's alleged actions. Li was never an OpenAI employee, Compl. ¶ 76, so OpenAI is not vicariously liable for any of Li's conduct. *See, e.g.*, *Apple Inc. v. Rivos, Inc.*, No. 5:22-cv-02637-EJD, 2023 WL 5183034, at *8 (N.D. Cal. Aug. 11, 2023).

Nor does xAI allege that OpenAI acquired any alleged trade secrets from Li. xAI alleges that Li downloaded xAI source code after accepting an offer with OpenAI, but stops short of alleging that Li transferred that source code to OpenAI. xAI first claims that an OpenAI recruiter sent Li a Signal message indicating that "a link to, on information and belief, a cloud storage location was sent to [him]." Compl. ¶ 54. xAI alleges nothing to counter the common-sense notion that this would be a standard portal containing recruiting-related documents for Li, such as information on compensation or benefits programs. Then Li allegedly uploaded xAI's source code "to a *personal* cloud account." *Id.* ¶ 55 (emphasis added). But xAI conspicuously avoids alleging that Li uploaded the code to the "cloud storage location" that *OpenAI* sent to him. xAI goes on to allege that Li downloaded that code from his personal cloud account to his own laptop, and had further talks with the OpenAI recruiter, but never claims that Li transferred that code to OpenAI. *Id.* ¶¶ 56-60. xAI's conclusory allegation in a header that "OpenAI Poache[d] Xuechen Li to Access xAI Source Code," *id.* at 10, need not be accepted. *See Sprewell*, 266 F.3d at 988.

xAI's allegation on "information and belief" that "Li actually shared xAI Confidential Information and trade secrets with OpenAI at least during an apparent interview presentation" on July 13 also fails to support a claim. *Id.* ¶ 127. Elsewhere in the Complaint, xAI does not claim that the July 13 presentation contained "trade secrets," as opposed to information that is merely

confidential. *Id.* ¶ 51. In fact, xAI alleges that OpenAI was "unsatisfied" with that July 13 presentation and "strung Li along" for over a week until Li eventually stole xAI's source code, and only then did OpenAI offer him a job. *Id.* ¶¶ 53-60. The Complaint's contradictory allegations fail to allege that OpenAI acquired xAIs' *trade secrets* during that alleged July 13 presentation.

Even if that presentation contained trade secrets, xAI does not allege that OpenAI had the requisite knowledge to trigger liability. Where, as here, a plaintiff accuses a defendant of indirect misappropriation—*i.e.*, where the defendant acquired the alleged trade secrets "indirectly from someone other than plaintiff"—the plaintiff must allege facts showing that the defendant "knew or had reason to know before the use or disclosure that the information was a trade secret and knew or had reason to know that the disclosing party had acquired it through improper means or was breaching a duty of confidentiality by disclosing it." *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 79 (N.D. Cal. 2020) (citation omitted); *see also Flexport,* 2025 WL 2399666, at *1 (similar); 18 U.S.C. § 1839(5).

The Complaint says not a word about OpenAI's actual or constructive knowledge regarding the presentation. It says nothing about the contents of the presentation. And it says nothing about the individual at OpenAI who supposedly received that presentation, and whether they have the technical knowhow or experience to discern whether its contents were confidential. There is no specific fact alleged to justify the inference that OpenAI knew or should have known this presentation contained improperly obtained trade secrets. *See Carr v. AutoNation Inc.*, No. 2:17-cv-01539-JAM-AC, 2018 WL 288018, at *3 (E.D. Cal. Jan. 4, 2018) (dismissing claim for failure to allege "what *specifically* would have caused [defendant] to know or have reason to know that [another company]'s possession of the Business Plan was wrongful" (emphasis added)); *see also Roche Molecular Sys., Inc. v. Foresight Diagnostics Inc.*, No. 24-cv-03972-EKL, 2025 WL 1959995, at *2 (N.D. Cal. July 16, 2025) (allegations of defendant's knowledge were "too conclusory"). In this context, that inference is especially unwarranted because Li allegedly gave the presentation during a *job interview*. Compl. ¶ 51. There is no reason to think that OpenAI would know that a job candidate was disclosing information they were not authorized to disclose.

                    (b)     *Jimmy Fraiture*

xAI also cannot establish vicarious liability for Fraiture's alleged actions. xAI's allegations relating to Fraiture do not raise a plausible inference that he transferred trade secrets to OpenAI at any time, or used them after he joined OpenAI. The Complaint alleges that an OpenAI recruiter set a calendar invite to meet with Fraiture, *id.* ¶ 88, communicated with him by Signal, *id.* ¶ 89, scheduled a visit at OpenAI's offices, *id.* ¶ 90, and offered him a job, *id.* ¶ 91. All of these are permissible activities when hiring an employee. xAI alleges that Fraiture accepted an offer from OpenAI, that he then copied "xAI source code and trade secrets" from his xAI laptop to his personal device by using the AirDrop feature, *id.* ¶ 92, and that he was not forthcoming with xAI about what he downloaded, *id.* ¶ 97. But xAI does not allege that Fraiture transferred the xAI code to OpenAI, let alone accessed or used it, prior to deleting it from his personal device while still working at xAI on garden leave. *Id.* ¶¶ 97, 100.

Although Fraiture did eventually join OpenAI, the Complaint does not allege, even in its usual conclusory fashion, that he has used xAI's trade secrets at OpenAI or will do so in the future. Nor could it: xAI intentionally takes care *not* to allege that Fraiture still possesses any xAI trade secrets, or that he possessed any xAI trade secrets at any time after he started at OpenAI. To the contrary, all xAI says is that, after downloading the code on July 31, Fraiture kept the downloaded source code "for at least a few weeks." *Id.* ¶ 92. xAI alleges on information and belief that he deleted the code while still employed by xAI on garden leave. *Id.* ¶ 100. He did not start at OpenAI until September 2. *Id.* ¶ 91. If he did not possess the source code at the time of his employment with OpenAI, then he could not have "used" it at OpenAI.

In *Alert Enterprise v. Rana*, this Court rejected a trade secret plaintiff's vicarious liability theory because there was no allegation of use by the new employee, despite numerous alleged warning signs. No. 22-cv-06646-JSC, 2023 WL 2541353, at *3 (N.D. Cal. Mar. 16, 2023). There, the plaintiff alleged that its prior employee conspired with its competitor to steal plaintiff's trade secrets, downloaded thousands of files containing those secrets, erased all evidence of the theft, and had not returned any of the files prior to starting work at the competitor. *Id.* at *1. The competitor represented that the plaintiff's files had not been uploaded to its systems, but refused to

1  confirm that the new employee had been screened or investigated. *Id.* The court nevertheless
2  dismissed the case against the competitor, finding that the allegations were insufficient to "support
3  a plausible inference [the employee] took, used, or disclosed [plaintiff]'s trade secrets *after* he
4  became" the competitor's employee. *Id.* at *3. As in *Alert Enterprise*, the allegations here are
5  insufficient to justify an inference that Fraiture used any trade secrets—which xAI does not even
6  allege that he still had—after he started at OpenAI.

7      *Flexport* provides a clear contrast to this case. In *Flexport*, this Court found sufficient
8  allegations of trade secret "use" to support vicarious liability of the competitor, 2025 WL
9  2399666, at *4, but the allegations went further than in this case. There, the plaintiff made
10 concrete allegations demonstrating its former employee's use of the trade secrets after starting at
11 the new employer. The plaintiff alleged that (a) the employee "retained" the trade secrets which
12 "remain in the hands" of the defendants, *id.*, Dkt. No. 1 (Compl.) ¶¶ 53, 60, and (b) the employee
13 and his new employer "used, and continue[s] to use" those trade secrets to launch competing
14 products and build partnerships at an "incredible" speed, *id.* ¶¶ 52, 58. The new employer also
15 launched a "product containing functionality similar to the allegedly stolen source code."
16 *Flexport*, 2025 WL 2399666, at *4. Those key allegations are entirely absent here. xAI does not
17 allege that Fraiture retained the source code while working for OpenAI, or that OpenAI has gained
18 access to it. The allegations relating to Fraiture fail to establish any misappropriation that could be
19 the basis for any claim against OpenAI.

                  *(c)    Senior Finance Executive and Other Individuals*

21     Pivoting from Li and Fraiture, the Complaint alleges that OpenAI targeted other xAI
22 employees, including an unnamed "senior finance executive," based on their access to xAI
23 confidential information, Compl. ¶¶ 102-115, but those claims are also clearly insufficient. xAI
24 does not even allege that those individuals downloaded, disclosed, or used anything from xAI, let
25 alone transferred confidential information to OpenAI. Without any allegation of actual transfer,
26 disclosure, or use by these individuals, the allegations do not support a plausible inference of
27 misappropriation by OpenAI. As courts have emphatically and consistently held in rejecting
28 DTSA claims: merely hiring a competitor's former employees who had access to confidential

information cannot demonstrate misappropriation on its own. *See, e.g.*, *Apple*, 2023 WL 5183034, at *7 ("The fact that [former employee] is in mere possession of [former employer's information] does not support an inference that he has disclosed or used the information . . . in his current . . . role at Rivos."); *Carl Zeiss Meditec, Inc. v. Topcon Med. Sys., Inc.*, 2019 WL 11499334, at *5 (N.D. Cal. Nov. 13, 2019) ("[T]he mere fact that Topcon hired former CZMI employees who allegedly have knowledge of CDMI's trade secrets is insufficient to demonstrate misappropriation."); *Valeo v. NVIDIA Corp.*, No. 23-cv-05721-NW, 2025 WL 2505115, at *7 (N.D. Cal. Aug. 28, 2025) (rejecting inference of "inevitable disclosure" even for employee who took a prior employer's document).

xAI focuses on its former finance executive because of his alleged current role at OpenAI in a "data center-focused position," which xAI claims overlaps with his previous role at xAI. Compl. ¶ 110. The Complaint emphasizes repeatedly that this executive believed xAI's "data center operations are its 'secret sauce.'" *Id.* ¶ 108. But that is not true even on the face of the Complaint, which quotes this individual as referring to xAI's "data center *team*"—i.e., the people—as xAI's "secret sauce," not business plans or deployment strategies or anything else potentially entitled to trade secret protection. *Id.* (emphasis added). Either way, as the cases cited above demonstrate, any alleged access to trade secrets from his time at xAI is not enough to infer that he will use that information at OpenAI. This Court rejects the inevitable disclosure doctrine. The analysis is not changed by xAI's bare allegation that this executive "simply did not care" about protecting xAI's trade secrets—a claim supported only by unfounded allegations that he declined to sign a "termination certificate" and then used profane language. That conclusory assertion, which takes one email out of context, does not give rise to a reasonable inference that he actually took, transferred, or used trade secrets from xAI.

### 2. xAI's Alternative Misappropriation-by-Inducement Theory Does Not Suffice to State a Claim Against OpenAI

Because xAI cannot adequately allege that OpenAI itself "acquired" xAI trade secrets, or that former xAI employees "used" trade secrets at OpenAI, xAI has manufactured an unsupported theory that OpenAI directed or induced xAI employees to steal xAI trade secrets on OpenAI's

behalf. xAI states, on "information and belief," that OpenAI "directed, instructed, financially rewarded, and/or otherwise encouraged" Li, Fraiture, and the finance executive "to steal or otherwise misappropriate xAI's Confidential Information and trade secrets." Compl. ¶ 126; *see also id.* ¶¶ 10, 79, 91, 99, 100, 110, 126, 131. But xAI offers no underpinning factual matter that raise this conclusory inference "above the speculative level." *Twombly*, 550 U.S. at 555.

To create a plausible—not just possible—inference that OpenAI engaged in that conduct, xAI must allege facts that "raise a reasonable expectation that discovery will reveal evidence" that OpenAI did that. *Id.* at 556. It is not enough for xAI to offer facts that are just "consistent with" its inducement theory, particularly in light of alternative legitimate explanations. *Id*. at 554; *see also Iqbal*, 556 U.S. at 681. Nor can xAI hide under its many "information and belief" caveats—which it appears to deploy whenever it is offering unsupported and conclusory allegations about OpenAI's misconduct—as those allegations still must be "based on factual information that makes the inference of culpability plausible." *Menzel v. Scholastic, Inc.*, No. 17-CV-05499-EMC, 2018 WL 1400386, at *2 (N.D. Cal. Mar. 19, 2018) (citation omitted).

xAI does not meet this plausibility test. To be sure, xAI alleges that Li and Fraiture were talking to an OpenAI recruiter around the time of their alleged downloading of xAI trade secrets, Compl. ¶ 129, but that falls far short of the bar. It is the job of a recruiter to talk to potential new hires who may be looking to change roles, and the Complaint does not allege that OpenAI's recruiter did anything more than that. As noted above, xAI's allegations do not raise any suspicions about the "cloud storage location" sent by the recruiter to Li—the Complaint does not allege that OpenAI's storage link was designed for, or even configured to allow Li to upload anything. The Complaint fails to acknowledge the benign explanation that it was just a digital folder of HR/hiring paperwork.

*CleanFish v. Sims* is illustrative and involves more alleged wrongdoing than here, yet the court found plaintiff pleaded insufficient facts to sustain a claim for misappropriation. There, the plaintiff's former employee, Sims, started his own competing business and allegedly collaborated with a supplier to misappropriate plaintiff's trade secrets. No. 19-cv-03663-HSG, 2020 WL 1274991, at *1 (N.D. Cal. Mar. 17, 2020). Plaintiffs alleged that the supplier defendants

1  "contacted and continuously communicated with Sims, while Sims was employed by Plaintiff,"
2  but the court held that such allegations did not show that the supplier defendants knew Sims
3  misappropriated trade secrets; to the contrary, those allegations were consistent with "an innocent
4  explanation" of the supplier defendants' conduct. *Id*. at *10.  As in *CleanFish*, xAI's allegations
5  that OpenAI sent a cloud storage link are consistent with the "innocent explanation" of a recruiter
6  sending ordinary HR-related hiring documents.

7        Compare this case to the facts of *Alert Enterprise*, where this Court rejected a similar
8  agency theory based on trade secret allegations that were also far worse than those alleged here.
9  In *Alert Enterprise*, the plaintiff alleged that the employee "repeatedly met" with the competitor's
10  CEO prior to resigning, during which he "conspired" with the CEO to steal his employer's trade
11  secrets.  2023 WL 2541353, at *1.  The Court nonetheless rejected the plaintiff's "conclusory"
12  claim that the employee was acting as an agent of the competitor, finding the facts did not
13  plausibly warrant such an inference.  *Id.* at *4.

14        xAI also alleges that OpenAI offered to pay Li and Fraiture "substantial compensation,"
15  somehow suggesting this shows wrongful inducement to transfer trade secrets.  Compl. ¶¶ 60, 91,
16  131.  Not so.  But that is also insufficient:  although it may be "consistent with" an explanation of
17  xAI's pay-to-steal theory, it does not "plausibly establish" that inference in light of "more likely
18  explanations."  *Iqbal*, 556 U.S. at 681.  AI researchers command significant compensation in the
19  current market—xAI itself admits that it has spent "immense" sums to "employ top-tier AI
20  researchers," Compl. ¶ 24, including offering millions in cash and equity to Li and Fraiture
21  themselves, *id.* ¶¶ 48, 86.  It is no surprise that OpenAI offered these individuals a competitive
22  amount to recruit them.  And xAI notably does not allege that OpenAI paid Li or Fraiture more
23  than the economic value they would have to OpenAI without stolen trade secrets—an implausible
24  assertion, but one that xAI would need to allege in order to infer that any part of their
25  compensation was for trade secrets.  They have not and cannot do so.

26        This Court considered and rejected arguments like xAI's in *Arthur J. Gallagher & Co. v.*
27  *Tarantino*, 498 F. Supp. 3d 1155, 1173 (N.D. Cal. 2020).  There, the plaintiff claimed that a
28  competitor gave "the directive" to departing employees "to take trade secrets" from plaintiff, but

there were "no specific facts to support [the competitor] giving such a directive." *Id.* at 1173 & n.4. The Court held that the employees "could well have taken the trade secrets" without the competitor knowing about it, "even if [the competitor] ultimately benefitted from their acquisition and use of the trade secrets." *Id.* at 1173. The fact that the competitor gave financial "incentive[s] to take trade secrets" based on "employee compensation" structure did not save the plaintiff's claim from dismissal, particularly because the incentives "appear[ed] facially rational." *Id.* at 1173 n.4. As in *Tarantino*, xAI's conclusory allegation that OpenAI directed/induced these individuals, including with financial compensation, is insufficient to clear the *Twombly* plausibility bar.

xAI's DTSA claim should be dismissed with prejudice.

### B.    The Court Should Dismiss xAI's State-Law Claims

xAI's state-law claims must be dismissed because they are superseded by CUTSA. CUTSA supersedes all causes of action "based on the same nucleus of facts as trade secret misappropriation" where the claim is no longer "viable after removing the trade secret facts." *Alert Enter.*, 2023 WL 2541353, at *6; *see also* Cal. Civ. Code § 3426.7(b). It "provides the exclusive civil remedy for conduct falling within its terms," and displaces other state-law claims, *even when no CUTSA claim is pleaded*. *Alert Enter.*, 2023 WL 2541353, at *6 (dismissing tortious interference claim as preempted by CUTSA); *see Tri Tool, Inc. v. Hales*, No. 22-cv-01515-DAD-KJN, 2023 WL 7130610, at *8 (E.D. Cal. Oct. 30, 2023) (CUTSA supersession even though no CUTSA claim pleaded). CUTSA supersedes both of xAI's state-law claims.

xAI's intentional interference claim alleges that OpenAI "knowingly and intentionally interfered with xAI's prospective economic advantage" through one "wrongful" act: "violating the DTSA" through "targeted poaching of xAI Confidential Information and trade secrets." Compl. ¶ 147. xAI also incorporates all its trade secret allegations by reference into its intentional interference claims. *Id.* ¶ 140. The claim is therefore based solely on allegations of trade secret misappropriation and is superseded. *See, e.g., Albert's Organics, Inc. v. Holzman*, 445 F. Supp. 3d 463, 483 (N.D. Cal. 2020) (intentional interference with prospective economic advantage claim superseded by CUTSA where the only alleged "wrongful act involves misappropriation of trade secrets"); *Tri Tool, Inc.* 2023 WL 7130610, at *8.

xAI's UCL claim asserts a violation of the UCL's "unlawful" prong.  Compl. ¶ 152.  But the only alleged unlawful conduct is that OpenAI "violates the [DTSA] . . . as alleged in the First Cause of Action."  *Id*. ¶ 153.  And again, xAI incorporates all its trade secret allegations by reference into its UCL claim.  *Id*. ¶ 150.  xAI's UCL claim is based "exclusively on misappropriation of trade secrets and confidential information," and therefore "CUTSA supersedes the UCL claim."  *Albert's Organics*, 445 F. Supp. 3d at 482; *see also Waymo LLC v. Uber Techs., Inc.*, 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017).

      C.    **At a Minimum, the Court Should Strike xAI's Allegations Regarding Employees for Whom There Is No Allegation Beyond Joining OpenAI**

If the Court does not dismiss all claims (it should), the Court should alternatively strike the improper allegations relating to "other xAI employees," about whom xAI makes *no* allegation other than they took a job a OpenAI.  *See supra* 8-9; *see e.g.,* Compl. ¶¶ 114-115.  OpenAI does not bring a motion to strike lightly, but it is warranted here.  In a desperate attempt to juice up its deficient complaint, xAI calls out numerous individuals,  by name, as part of a purported "scheme," Compl. ¶¶ 115, without alleging that they took anything from xAI, or that OpenAI encouraged them to steal confidential information.  Although xAI does not say it, the gist of these allegations is that these new OpenAI employees will inevitably disclose or use confidential xAI information just because they had access to it while at xAI.  As cases interpreting the DTSA have consistently held, that is insufficient to support a misappropriation claim.  *See supra* p. 9 (citing cases).  Motions to strike are reserved for precisely situations like this—insufficient, irrelevant, and harmful allegations that are prejudicial and unnecessarily expand the case of a scope.  The Court should strike these allegations here.

First, these allegations do not suffice to state a claim for misappropriation.  xAI does not allege that these "other" individuals took anything from OpenAI, or even that OpenAI did something nefarious to get them to leave xAI.  *See supra* 9.  xAI's allegations boil down to an improper insinuation that these individuals had access to confidential information while at xAI and may inevitably use or disclose that information at OpenAI.  That is not enough to state a claim, and courts have stricken these kinds of "inevitable disclosure" allegations for that reason alone.

1  *See, e.g.*, *UCAR Tech. (USA) Inc. v. Yan Li*, No. 5:17-cv-01704-EJD, 2017 WL 6405620, at *3
2  (N.D. Cal. Dec. 15, 2017).  In *UCAR*, this Court struck "inevitable disclosure" allegations where
3  the plaintiff alleged that its former employees, after starting at the defendant company, could not
4  help but use plaintiff's trade secrets when they "start[ed] a competing company in the exact
5  technology space that they worked in for [plaintiff]."  *Id.*  This Court should follow *UCAR*.

6        Second, these allegations are "immaterial" to the rest of xAI's case.  Fed. R. Civ. P. 12(f)
7  (permitting a motion to strike "immaterial" matter).  An allegation is "immaterial" if it "has no
8  essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy,*
9  *Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) ) (quoting 5 Wright & Miller, Federal
10 Practice & Procedure § 1382), *rev'd on other grounds*, 510 U.S. 517 (1994)).  The allegations
11 pertaining to the five named former xAI employees (listed at Compl. ¶ 114) do not have *any*
12 bearing on the conduct of Li or Fraiture, let alone an "essential or important relationship" to those
13 allegations.  xAI does not allege OpenAI did something nefarious to get them to leave xAI, so it
14 does not even add to xAI's claim of "inducement" with respect to Li or Fraiture.  *See supra* 9-12;
15 *cf. Tidwell v. Cnty. of Kern*, No. 1:16-CV-01697 JLT, 2017 WL 68146, at *3 (E.D. Cal. Jan. 5,
16 2017) (striking allegations that "cannot demonstrate that the defendant acted wrongfully in this
17 instance").

18       Third, these allegations should also be stricken as improperly "scandalous" because they
19 besmirch innocent employees in a highly publicized filing.  *See* Fed. R. Civ. P. 12(f) (motion to
20 strike allowed for "scandalous" matter).  "[S]candalous matters" include "allegations 'that
21 unnecessarily reflect on the moral character of an individual."  *Consumer Sols. REO, LLC v.*
22 *Hillery*, 658 F. Supp. 2d 1002, 1020 (N.D. Cal. 2009) (cleaned up).  The Complaint does not
23 allege that these individuals did anything more than exercise their right under California law to
24 leave xAI and take a job at OpenAI.  Yet the Complaint maligns their "moral character" and their
25 reputation by insinuating, with no supporting facts, that they are part of some master plot by
26 OpenAI to access xAI's trade secrets.

27       Fourth, striking these allegations would narrow the case and avoid undue prejudice on
28 OpenAI.  Courts strike matter from the complaint to "avoid the expenditure of time and money

that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (citation omitted). In evaluating prejudice, courts consider whether "a party may be required to engage in burdensome discovery around frivolous matters." *Frye v. Martinez Ref. Co. LLC*, No. 24-CV-04506-RFL, 2024 WL 5119227, at *3 (N.D. Cal. Dec. 16, 2024) (cleaned up). Striking these allegations would meaningfully narrow the case—including discovery, summary judgment, and (if necessary) trial. Striking the allegations would also avoid OpenAI having to engage in burdensome discovery and (potentially) additional trial preparations relating to them.

## IV.    CONCLUSION

Defendants OpenAI respectfully request that the case be dismissed in its entirety with prejudice. In the alternative, OpenAI requests that paragraphs 114-115 be stricken from the Complaint.

DATED: October 2, 2025                     MUNGER, TOLLES & OLSON LLP

                                           By:    *s/ Carolyn Hoecker Luedtke*
                                                  CAROLYN HOECKER LUEDTKE
                                                  JONATHAN I. KRAVIS
                                                  DANE P. SHIKMAN
                                                  GABRIEL M. BRONSHTEYN

                                           Attorneys for Defendants OpenAI, Inc., OpenAI Global, LLC, and OpenAI OpCo, LLC