# EXHIBIT 2



**EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTION ASSIGNMENT AGREEMENT**

This Agreement is between:

X.AI LONDON LIMITED, 20 Air Street, London, United Kingdom, W1B 5AN (the '**Company**') and Jimmy Fraiture of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ('**you**').

Background

(A) The Company has employed you in accordance with the terms of an Employment Agreement (the "Employment Agreement) dated March 3, 2025.

(B) This Employee Confidential Information and Invention Assignment Agreement (the "**CIIAA**" or "**Agreement**") forms part of the terms and conditions of your employment with the Company and/or any Group Company (as defined in the Employment Agreement). It is a requirement of the Employment Agreement that this CIIAA is signed by you.

(C) Therefore, the parties agree as follows:

## 1. Confidential Information Protections.

1.1. **Recognition of Company's Rights; Nondisclosure**.

    1.1.1. You understand and acknowledge that your employment by the Company creates a relationship of confidence and trust with respect to the Company's and any Group Company's Confidential Information (as defined below) and that the Company and any Group Company has a protectable interest therein.

    1.1.2. At all times during and after your employment, you will hold in confidence and will not disclose, use, or publish any of the Company's or Group Company's Confidential Information, except as such disclosure, use or publication may be required in connection with your work for the Company, or unless:

        1.1.2.1. an officer of the Company or a Group Company expressly authorizes such disclosure;

        1.1.2.2. you are required to do so by law; and/or

        1.1.2.3. you are protected in doing so by a legal right of protected disclosure.

    1.1.3. You will obtain the Company's written approval before publishing or submitting for publication any material (written, oral, or otherwise) that discloses and/or incorporates any Confidential Information.

    1.1.4. You hereby assign to the Company any rights you may have or acquire in such Confidential

3

  Information and recognize that all Confidential Information shall be the sole and exclusive property of the Company and its assigns.

1.1.5. You must:

 1.1.5.1. make sure that all trade secrets and confidential information obtained or otherwise received in connection with your employment are kept securely and are protected effectively against improper disclosure or use; and

 1.1.5.2. use reasonable endeavors to prevent improper disclosure or use of such trade secrets or confidential information by third parties.

1.2. **Confidential Information**.

 1.2.1. The term "**Confidential Information**" shall mean any and all confidential knowledge, data or information of the Company and any Group Company.

 1.2.2. By way of illustration but not limitation, "Confidential Information" includes:

  1.2.2.1. trade secrets, proprietary technology, inventions, mask works, ideas, processes, formulas, software in source or object code, data, programs, other works of authorship, know-how, improvements, discoveries, developments, designs and techniques, and any other work product of any nature and all Works and Inventions (as defined below) including all Intellectual Property Rights in the Works and Inventions;

  1.2.2.2. information regarding research, development, new products, marketing and selling, business plans, budgets and unpublished financial statements, licenses, prices and costs, margins, discounts, credit terms, pricing and billing policies, quoting procedures, methods of obtaining business, forecasts, future plans and potential strategies, financial projections and business strategies, operational plans, financing and capital-raising plans, activities and agreements, internal services and operational manuals, methods of conducting Company business or the business of any Group Company, suppliers and supplier information, and purchasing;

  1.2.2.3. information regarding customers and potential customers of the Company and any Group Company, including customer lists, names, representatives, their needs or desires with respect to the types of products or services offered by the Company or any Group Company, proposals, bids, contracts and their contents and parties, the type and quantity of products and services provided or sought to be provided to customers and potential customers of the Company or any Group Company and other non-public information relating to customers and potential customers;

  1.2.2.4. information regarding any of the Company's or any Group Company's business partners and their services, including names, representatives, proposals, bids, contracts and their contents and parties, the type and quantity of products and services received by the Company or any Group Company, and other non-public information relating to business partners;

  1.2.2.5. non-public information regarding other Company or any Group Company personnel, consultant lists, employee lists, compensation and employee and consultant skills that have not been disclosed by the individuals themselves;

  1.2.2.6. information regarding stockholders, affiliates of stockholders and sponsors of the Company or any Group Company;

      1.2.2.7. any other non-public information that a competitor of Company or any Group Company could use to the Company's competitive disadvantage; and

      1.2.2.8. any information relating to the Company or any Group Company which the Company or Group Company in question reasonably considers to be confidential.

1.3. **Permitted Communications and Activities**. Notwithstanding the foregoing, the Company agrees that you are free to use information that is, at the time of use, generally known in the trade or industry through no breach of this Agreement or act or omission by you.

1.4. **Third Party Information**. You understand, in addition, that the Company has received and, in the future, will receive from third parties their confidential and/or proprietary knowledge, data or information ("**Third Party Information**") subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. During the term of your employment and thereafter, you will hold Third Party Information in confidence and will not disclose to anyone (other than the Company or Group Company personnel who need to know such information in connection with their work for the Company or Group Company) or use Third Party Information, except in connection with your work for the Company, or unless expressly authorized by an officer of the Company or Group Company in writing.

1.5. **Term of Nondisclosure Restrictions**. You understand that Confidential Information and Third Party Information is never to be used or disclosed by you, except as expressly provided in this Section 1, and you agree that the restrictions in Section 1 are intended to continue indefinitely, even after your employment ends.

1.6. **No Improper Use of Information of Prior Employers and Others.** During your employment by Company, you will not improperly use or disclose confidential information or trade secrets, if any, of any former employer or any other person to whom you have an obligation of confidentiality, and you will not bring onto the premises of Company any unpublished documents or any property belonging to any former employer or any other person to whom you have an obligation of confidentiality unless consented to in writing by that former employer or person.

**2.** Intellectual Property and Proprietary Rights

2.1. **Definitions**.

 2.1.1. "**Materials**" means any work or material created, developed, written or prepared by or on your behalf during the course of your employment (whether individually, collectively or jointly with the Company and/or any Group Company and on whatever media) including (without limitation) any documents, reports, studies, data, diagrams, charts, specifications or computer programs and related copies and working papers, whether created, developed, written or prepared before or after the signing of the Agreement.

 2.1.2. "**Intellectual Property Rights**" means:

  2.1.2.1. all patents, petty patents, short term patents, utility models, registered designs, trade or service marks, present and future copyright, performance rights, unregistered design rights, database rights, rights in any software (including rights in any source or object code), rights in firmware or hardware, rights in any compilation of data, rights in any trade, brand or business names, rights in any trading style or get-up, rights in goodwill or any and all other analogous rights subsisting anywhere in the world whether registered or unregistered;

  2.1.2.2. any application for or any right to apply for registration of any such right; and

  2.1.2.3. any revival, extension, renewal or reversion of any such right; and

  2.1.2.4. the benefit (subject to the burden) of any agreement, arrangement or license in connection with any such right.

 2.1.3. "**Invention**" means any invention, improvement, modification, device, concept, process, formula, model or prototype which is created, devised, developed, discovered or worked on by you (whether alone or jointly) during the course of your employment which is:

  2.1.3.1. capable of exploitation by the Company or any Group Company in the normal course of their business; or

  2.1.3.2. so created, devised, developed, discovered or worked on by you during the course of or in connection with your employment.

 2.1.4. "**Works**" means any material, data, document or object (whether in electronic or physical form), idea, information, name, trading style or get up, business method, trade secret, know-how, technique or goodwill which is created, devised, developed, delivered, discovered or worked on by you (whether alone or jointly) during the period of your employment which is:

  2.1.4.1. capable of exploitation by the Company or any Group Company in the normal course of their business; or

  2.1.4.2. so created, devised, developed, discovered, delivered or worked on by you during the course of or in connection with your employment.

2.2. You agree that, because of the nature of your duties and responsibilities, you are under a special obligation to further the Company's and Group Company's interests.

2.3. You:

    2.3.1. agree that all Works and Inventions (including all Intellectual Property Rights in the Works and Inventions) belong to the Company from the date of creation;

    2.3.2. (to the extent that they do not vest automatically) hereby assign to the Company with full title guarantee and free from all encumbrances (and in the case of copyright and design right by way of a present assignment of future copyright or design right as applicable) all Intellectual Property Rights in the Works and Inventions;

    2.3.3. undertake to do anything reasonably required (both during and after the termination of your employment) to ensure that all such Intellectual Property Rights in the Works and Inventions belong to or are assigned to the Company and to assist the Company in obtaining, registering, protecting, maintaining, enforcing or defending them (although the Company will not be obliged to do so);

    2.3.4. will promptly disclose in writing and deliver any Inventions to the Company and will not disclose any Inventions to anyone else without the Company's prior consent;

    2.3.5. (both during and after the termination of your employment) will give any information, explanations or demonstrations reasonably requested of you to enable the Company or any Group Company to make use of any Works or Inventions; and

    2.3.6. will upon request by the Company, and in any event upon the termination of your employment, promptly deliver to the Company all Works and Inventions in your possession or control.

2.4. You will notify the Company of any Intellectual Property Rights owned by a third party which you intend to incorporate in the Works or Inventions, where the relevant third party owner will not grant an assignment to you, the Company or, where relevant, any Group Company. You will obtain the Company's prior written consent before using such Works or Inventions.

2.5. You undertake to do anything reasonably required (both during and after the termination of your employment) to ensure that any domain names registered in your name during the course of or in connection with your employment are assigned to the Company (although the Company will not be obliged to maintain any registrations).

2.6. If any moral right or analogous right arises in respect of any Work or Invention you:

    2.6.1. hereby irrevocably waive and agree not to assert (save as directed by us) such rights; and

    2.6.2. will ensure that all applicable consents have been obtained to entitle us or any Group Company to make the fullest use of the Intellectual Property Rights in the Works and Inventions without restriction or further payment.

2.7. You consent to the Company doing any act, which would, in the absence of such consent, infringe your rights in performance under Part II of the Copyright, Designs and Patents Act 1988 or any similar legislation anywhere in the world (such as recording a presentation or workshop given by you).

    2.8. You irrevocably appoint such director as the Company may nominate to be your attorney and in your name and on your behalf to execute any documents and do any acts necessary to ensure that you comply with your obligations under this clause.

    2.9. **Excluded Inventions**. Attached hereto as **Exhibit A** is a list describing all existing Inventions and Works, if any, that:

        2.9.1. are owned by you or in which you have an interest and were made or acquired by you prior to the date you were first employed by Company or any Group Company, and

        2.9.2. may relate to Company's business or actual or demonstrably anticipated research or development, and

        2.9.3. are not to be assigned to Company ("**Excluded Inventions**").

If no such list is attached, you agree that no Inventions or Works that would be classified as Excluded Inventions exist as of the date of this Agreement. You acknowledge and agree that if you use any Excluded Inventions in the scope of your employment, or if you include any Excluded Inventions in any product or service of Company, or if your rights in any Excluded Inventions may block or interfere with, or may otherwise be required for, the exercise by Company of any rights assigned to Company under this Agreement, (i) you will immediately notify Company in writing and (ii) unless Company and you agree otherwise in writing, you will ensure that all applicable consents have been obtained to entitle the Company to make the fullest use of the Intellectual Property Rights in the Materials and Inventions without restriction or further payment.

    2.10. **Obligation to Keep Company Informed**. During the period of your employment, you agree to promptly and fully disclose to Company in writing all Inventions authored, conceived, or reduced to practice by you, either alone or jointly with others.

    2.11. **Government or Third Party**. You agree that, as directed by Company, you will assign to a third party, including without limitation the government, all your right, title, and interest in and to any particular Company Invention.

3. **Records**. You agree to keep and maintain adequate and current records (in the form of notes, sketches, drawings and in any other form that is required by Company) of all Confidential Information developed by you and all Inventions and/or Works made by you during the period of your employment, which records will be available to and remain the sole property of the Company at all times.

4. **No Conflicting Agreement or Obligation**. You represent that your performance of all the terms of this Agreement and as an employee of Company does not and will not breach any agreement to keep in confidence information acquired by you in confidence or in trust prior to your employment by the Company. You have not entered into, and you agree you will not enter into, any agreement either written or oral in conflict with this Agreement.

5. Legal and Equitable Remedies. You agree that it may be impossible to assess the damages caused by your violation of this Agreement or any of its terms. You agree that any threatened or actual violation of this Agreement or any of its terms will constitute immediate and irreparable injury to the Company, and the Company will have the right to enforce this Agreement and any of its provisions by injunction, specific performance or other equitable relief, without bond and without prejudice to any other rights and remedies that the Company may have for a breach or threatened breach of this Agreement.

**6. Notices**.

6.1. Any notice to be given by you to the Company under this Agreement will be in writing and will be deemed to have been received at the time of submission, if:

6.1.1. in the case of email, at the time of transmission if sent to legal@x.ai;

6.1.2. in the case of pre-paid first class UK post or other next working day delivery service, at 9.00 am on the second business day after posting or at the time recorded by the delivery service at the Company's headquarters location at the time notice is given; or

6.1.3. in the case of delivery by hand, at the time the notice is left at the Company's headquarters location at the time notice is given and labeled "Attention: Legal".

6.2. Any notice to be given by Company to you under this Agreement will be in writing and will be deemed to have been received, if:

6.2.1. in the case of email, at the time of transmission if sent to you to your personal email address last on file with the Company;

6.2.2. in the case of pre-paid first class UK post or other next working day delivery service, at 9.00 am on the second business day after posting or at the time recorded by the delivery service at your last home address on file with the Company; or

6.2.3. in the case of delivery by hand, at the time the notice is left at the address (in your case, at the last home address on file with the Company) or given to the addressee.

**7. General Provisions**.

7.1. **Governing Law**. This Agreement will be governed by the laws of England and Wales and the Courts of England and Wales will have non-exclusive jurisdiction to adjudicate any disputes arising under it.

7.2. **Severability**. In case any one or more of the provisions, subsections, or sentences contained in this Agreement will, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability will not affect the other provisions of this Agreement, and this Agreement will be construed as if such invalid, illegal or unenforceable provision had never been contained in this Agreement. If moreover, any one or more of the provisions contained in this Agreement will for any reason be held to be excessively broad as to duration, geographical scope, activity or subject, it will be construed by limiting and reducing it, so as to be enforceable to the extent compatible with the applicable law as it will then appear.

7.3. **Successors and Assigns**. This Agreement is for your benefit and the benefit of the Company, any Group Company, and their successors, assigns, parent corporations, subsidiaries, affiliates, and purchasers, and will be binding upon your heirs, executors, administrators and other legal representatives.

7.4. **Survival**. This Agreement shall survive the termination of your employment, regardless of the reason, and the assignment of this Agreement by Company to any successor in interest or other assignee.

7.5. **Waiver**. No waiver by Company of any breach of this Agreement will be a waiver of any preceding or succeeding breach. No waiver by Company of any right under this Agreement will be construed as a waiver of any other right. Company will not be required to give notice to enforce strict adherence to all terms of this Agreement.

7.6. **Counterparts**. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

7.7. **Variation**. No modification of or amendment to this Agreement will be effective unless in writing and signed by the party to be charged. Any subsequent change or changes in your duties, salary or compensation will not affect the validity or scope of this Agreement.

SIGNED on behalf of the Company   *Robert Ochoa* (DocuSigned by: 2CC48530FC45423...)

DATED   3/3/2025

I have read, understood, agree and accept the terms and conditions set out in this Agreement:

SIGNED AND DELIVERED AS A DEED
by the Employee   *Jimmy Fraiture* (Signed by: E5964542FA9F45C...)

DATED   3/4/2025

In the presence of:

Witness signature:   *Tobiris Powten* (Signed by: 24DC59BD30094AA...)

Witness name & address:   ██████████

**EXHIBIT A**

**EXCLUDED INVENTIONS**

1.      Excluded Inventions Disclosure. Except as listed in Section 2 below, the following is a complete list of all Excluded Inventions:

2.      Due to a prior confidentiality agreement, I cannot complete the disclosure under Section 1 above with respect to the Excluded Inventions generally listed below, the intellectual property rights and duty of confidentiality with respect to which I owe to the following party(ies):

Excluded Invention:

Party(ies):

Relationship:

11