1  CAROLYN HOECKER LUEDTKE (SBN. 207976)
   carolyn.luedtke@mto.com
2  DANE P. SHIKMAN (SBN. 313656)
   dane.shikman@mto.com
3  GABRIEL M. BRONSHTEYN (SBN. 338011)
   gabriel.bronshteyn@mto.com
4  JOSEPH N. GLYNN (SBN. 337652)
   joseph.glynn@mto.com
5  MUNGER, TOLLES & OLSON LLP
   560 Mission Street, Twenty-Seventh Floor
6  San Francisco, California 94105-3089
   Telephone:    (415) 512-4000
7  Facsimile:    (415) 512-4077

8  JONATHAN I. KRAVIS (admitted *pro hac vice*)
   jonathan.kravis@mto.com
9  MUNGER, TOLLES & OLSON LLP
   601 Massachusetts Avenue, NW, Suite 500E
10 Washington, D.C. 20001-5369
   Telephone:    (202) 220-1100
11 Facsimile:    (202) 220-2300

12
   Attorneys for Defendants OpenAI, Inc., OpenAI
13 Global, LLC, and OpenAI OpCo, LLC

14              UNITED STATES DISTRICT COURT

15    NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

16

17 X.AI CORP. and X.AI LLC,                    Case No. 3:25-cv-08133-RFL

18              Plaintiffs,                    **NOTICE OF MOTION TO DISMISS
                                               FIRST AMENDED COMPLAINT;**
19         vs.                                 **MEMORANDUM OF POINTS AND
                                               AUTHORITIES IN SUPPORT**
20 OPENAI, INC., OPENAI GLOBAL, LLC,
   and OPENAI OPCO, LLC,                       Date:     February 3, 2026
21                                             Time:     10:00 am
                Defendants.
22                                             Judge:    Honorable Rita F. Lin

23

24

25

26

27

28

1    **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2        **PLEASE TAKE NOTICE** that on February 3, 2026, at 10:00 a.m., in Courtroom 15 of

3    the above-entitled Court, located on the 18th floor of 450 Golden Gate Avenue, San Francisco,

4    California 94102, before the Honorable Rita F. Lin, Defendants ("OpenAI") will and hereby do

5    move to dismiss with prejudice Plaintiffs' First Amended Complaint (Dkt. No. 44) in its entirety

6    pursuant to Federal Rule of Civil Procedure 12(b)(6).

7    DATED:  December 30, 2025              MUNGER, TOLLES & OLSON LLP

8

9

10                                        By:    _s/ Carolyn Hoecker Luedtke_

11                                               CAROLYN HOECKER LUEDTKE
                                               JONATHAN I. KRAVIS
                                               DANE P. SHIKMAN
12                                             GABRIEL M. BRONSHTEYN
                                               JOSEPH N. GLYNN
13
                                               Attorneys for Defendants OpenAI, Inc., OpenAI
14                                             Global, LLC, and OpenAI OpCo, LLC

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................. 1

II.   FACTUAL BACKGROUND ................................................................ 2

III.  ARGUMENT ....................................................................................... 4

    A.  xAI's Trade Secret Misappropriation Claim Fails as a Matter of Law ...................................................................................................... 4

        1.  xAI Does Not Allege That OpenAI Itself Acquired, Used, or Even Knew About its Alleged Trade Secrets .......................... 5

            (a)  Xuechen Li ................................................................. 6

            (b)  Jimmy Fraiture .......................................................... 8

            (c)  Hieu Pham and Ethan Knight .................................. 9

            (d)  Uday Ruddarraju ..................................................... 11

            (e)  Senior Finance Executive and Other Individuals ............. 11

        2.  xAI's Inducement Allegations Do Not Support a Claim Against OpenAI ................................................................... 12

    B.  The Court Should Dismiss xAI's Unfair Competition Claim .............. 14

IV.   CONCLUSION .................................................................................. 15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**FEDERAL CASES**

4
*Albert's Organics, Inc. v. Holzman,*
    445 F. Supp. 3d 463 (N.D. Cal. 2020) ................................................................14, 15

5

6
*Alert Enterprise v. Rana,*
    2023 WL 2541353 (N.D. Cal. Mar. 16, 2023) ...................................... *passim*

7
*Apple Inc. v. Rivos, Inc.,*
    2023 WL 5183034 (N.D. Cal. Aug. 11, 2023) .............................................6, 10, 11

8

9
*Arthur J. Gallagher & Co. v. Tarantino,*
    498 F. Supp. 3d 1155 (N.D. Cal. 2020) ..............................................................14

10
*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .............................................................................................4, 13

11

12
*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ....................................................................................4, 5, 13, 14

13
*Carr v. AutoNation Inc.,*
    2018 WL 288018 (E.D. Cal. Jan. 4, 2018) ........................................................8

14

15
*CleanFish v. Sims,*
    2020 WL 1274991 (N.D. Cal. Mar. 17, 2020) ...................................................13

16
*Flexport, Inc. v. Freightmate AI, Inc.,*
    No. 3:25-cv-02500-RFL, 2025 WL 2399666 (N.D. Cal. July 10, 2025) ........................... *passim*

17

18
*InteliClear, LLC v. ETC Glob. Holdings, Inc.,*
    978 F.3d 653 (9th Cir. 2020) .................................................................................4

19
*Navigation Holdings, LLC v. Molavi,*
    445 F. Supp. 3d 69 (N.D. Cal. 2020) ..................................................................7

20

21
*Roche Molecular Sys., Inc. v. Foresight Diagnostics Inc.,*
    2025 WL 1959995 (N.D. Cal. July 16, 2025) ...................................................8

22
*Snapkeys, Ltd. v. Google LLC,*
    442 F. Supp. 3d 1196 (N.D. Cal. 2020) ..............................................................15

23

24
*SOAProjects, Inc. v. SCM Microsystems, Inc.,*
    2010 WL 5069832 (N.D. Cal. Dec. 7, 2010) ...................................................12

25
*Sprewell v. Golden State Warriors,*
    266 F.3d 979 (9th Cir. 2001) .................................................................................4

26

27
*Symphony Risk Sols. Ins. Servs., Inc. v. Perlite,*
    2024 WL 5112479 (N.D. Cal. Dec. 13, 2024) ...................................................15

28

*Total Recall Techs. v. Luckey*,
    2016 WL 199796 (N.D. Cal. Jan. 16, 2016) ..............................................15

*Valeo v. NVIDIA Corp.*,
    2025 WL 2505115 (N.D. Cal. Aug. 28, 2025) ..........................................11

*Waymo LLC v. Uber Techs., Inc.*,
    256 F. Supp. 3d 1059 (N.D. Cal. 2017) ..................................................14

**FEDERAL STATUTES**

Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* ...........................................4, 14

18 U.S.C. § 1839(5) ...........................................................................................4, 7

18 U.S.C. § 1839(5)(A) .............................................................................4, 11, 12

18 U.S.C. § 1839(5)(B) ...........................................................................................4

18 U.S.C. § 1839(6)(A) .........................................................................................12

**STATE STATUTES**

Cal. Bus. & Prof. Code § 16600................................................................................15

Cal. Civ. Code § 3426.7(b) .......................................................................................14

California Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426-3426.11 ..............2, 14, 15

Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ................................14, 15

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6) ..............................................................................................4

**OTHER AUTHORITIES**

Complaint, *Flexport, Inc. v. Freightmate AI, Inc.*,
    No. 3:25-cv-02500-RFL (N.D. Cal. Mar. 12, 2025), Dkt. No. 1 ...............9

I.      **INTRODUCTION**

This trade secret case represents yet another front in Elon Musk's campaign to harass a competitor with unfounded legal claims, and to prevent OpenAI from achieving its mission to ensure that artificial general intelligence benefits all of humanity.  Unable to keep up with OpenAI and its groundbreaking ChatGPT product, Musk and his company, xAI, have resorted to litigation to try and intimidate OpenAI and slow down its progress.  Here, Musk and xAI have lobbed baseless claims of trade secret misappropriation—about employees who simply sought to change jobs as they have every right to do—to intimidate current and former xAI employees from working at their place of choice.  These allegations are not only false, but also insufficient to state a claim.  xAI filed an unsupported Complaint, and when faced with OpenAI's motion to dismiss that it could not defend against (Dkt. No. 30), conjured up more spurious allegations and filed an even more flawed Amended Complaint (Dkt. No. 44, "FAC").  Stripped of its unsupported assertions, insinuations, and a smokescreen of alleged bad acts by others, the Amended Complaint still does not (and cannot) allege that OpenAI did anything wrong.  It should be dismissed.

xAI's federal trade secret misappropriation claim fails as a matter of law.  Remarkably, xAI never alleges that OpenAI actually acquired or disclosed xAI's trade secrets.  xAI focuses instead on allegations about what its former employees purportedly did *before* joining OpenAI, always stopping short of claiming that those employees ever transferred xAI trade secrets to OpenAI, that they ever used xAI trade secrets at OpenAI, or even that they possess any xAI trade secrets while working at OpenAI today.  That is fatal to any claim against OpenAI.  Just by way of example, xAI alleges on information and belief that Xuechen Li (who never joined OpenAI) downloaded xAI's source code after an OpenAI recruiter sent him a link to a "cloud storage location," but then alleges that he uploaded that code *not* to the OpenAI link, but to his own "personal cloud account."  xAI tries to create the illusion of a transfer to OpenAI, but does not (and cannot) actually allege one.  And that is not a surprise, because xAI knows that OpenAI's cloud storage link was simply a read-only repository for HR paperwork provided to Li during his recruitment process.  Other examples in the Amended Complaint follow the same pattern—

MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    misleading or baseless allegations of suspicious conduct by former xAI employees, with no

2    plausible allegations of actual acquisition or use by or at OpenAI.

3          xAI also fails to cure the preemption problem with its second cause of action.  xAI's state-

4    law claim under California's unfair competition statute thus fails as a matter of law.  It must be

5    dismissed as superseded by the California Uniform Trade Secrets Act ("CUTSA") because it is

6    entirely dependent on xAI's trade secret misappropriation claim.

7          The Court should dismiss the Amended Complaint with prejudice.

8    **II.    FACTUAL BACKGROUND**

9          xAI's original Complaint contained allegations related to former xAI employees Xuechen

10   Li and Jimmy Fraiture.  The Amended Complaint keeps those allegations.  xAI sought to retain Li

11   and Fraiture by offering them "millions of dollars" in cash and equity.  FAC ¶¶ 42, 48, 82, 86.

12   Notwithstanding that, both Li and Fraiture pursued and received offers to work at OpenAI.  *Id.*

13   ¶¶ 60, 91.  Fraiture eventually joined OpenAI.  *Id.* ¶ 97.  Li did not.  *Id.* ¶ 80.

14         xAI alleges, on information and belief, that Li received a link to a "cloud storage location"

15   from a recruiter at OpenAI.  *Id.* ¶ 58.  xAI does not allege (because it cannot) that this link was

16   anything but a read-only cloud-based portal with HR-related paperwork (e.g., benefits and

17   compensation).  xAI also does not allege (because it cannot) that the link was even configured to

18   allow him to upload anything.  xAI separately alleges that the next day, Li uploaded xAI's source

19   code to some separate "personal cloud account," and then onto his personal laptop.  *Id.* ¶¶ 59-60,

20   72.  xAI does not (and cannot) allege that Li ever transferred this source code to OpenAI.  xAI

21   also alleges that at some point Li connected his personal cloud account to a personal ChatGPT

22   account, but avoids alleging that Li uploaded any source code to ChatGPT or that OpenAI

23   accessed it.  *See id.* ¶ 83.

24         xAI also alleges on information and belief that Li gave a presentation during a job

25   interview to unspecified persons at OpenAI, allegedly containing confidential information that xAI

26   does not identify.  *Id.* ¶ 55.  Discovery will show that this presentation did not happen.  But even

27   taking this bare-bones allegation as true, and even assuming there was some sort of presentation

28   with some sort of xAI confidential information in it, xAI does not allege what *trade secret*s were

contained in the presentation, to whom the presentation was made, or how OpenAI knew or should have known that the presentation contained xAI trade secrets or was disclosed improperly.

xAI alleges that Fraiture also downloaded source code and various other confidential materials while working at xAI. *Id.* ¶¶ 98-102. But xAI does not allege that Fraiture transferred those xAI materials to OpenAI. To the contrary, xAI alleges Fraiture deleted the code from his personal device while on garden leave while still employed by xAI. *Id.* ¶¶ 98, 103, 106. Because xAI agrees the alleged trade secrets were deleted before his OpenAI start date, it does not and cannot allege that Fraiture used those secrets at OpenAI.

xAI has amended its complaint to add allegations concerning additional OpenAI employees, but does not allege specific facts suggesting that any of them possess xAI trade secrets, ever transferred xAI trade secrets to OpenAI, or ever used xAI trade secrets at OpenAI. xAI alleges that Ethan Knight and Hieu Pham kept xAI confidential information on their personal devices after departing xAI, that they have not returned copies of all such material to xAI, and that they provided copies of that information to unnamed third parties. *Id.* ¶¶ 122-29. xAI avoids alleging that either Knight or Pham possess any xAI confidential information (they do not), that either ever transferred such information to OpenAI (they did not), or that either used such information at OpenAI (they did not). xAI also conspicuously avoids identifying the unnamed third party to whom Knight and Pham allegedly provided copies of that information. *Id.* ¶ 128. (Remarkably, xAI knew and obscured from the Court the identity of the third party—a reputable forensics vendor hired by Knight and Pham's counsel to preserve, remove, and securely hold the materials outside of their possession, with notice to xAI's now former head of legal affairs.)

xAI also alleges that OpenAI employee Uday Ruddarraju attempted to—but did not—access an allegedly confidential xAI document from a Google Drive link while employed at OpenAI. *See id.* ¶¶ 14, 130. Even assuming the truth of that threadbare allegation, xAI does not and cannot plausibly establish an inference that Ruddarraju used an xAI document that he failed to access, let alone that he transferred it to OpenAI.

1    In addition to these allegations, xAI claims that OpenAI hired other employees who

2   formerly worked at xAI and had access to confidential information. *Id.* ¶¶ 109-21. But xAI does

3   not allege that they disclosed xAI trade secrets to OpenAI, or used them after starting at OpenAI.

4   **III.    ARGUMENT**

5    To overcome a motion to dismiss under Rule 12(b)(6), "a complaint must contain

6   sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

7   *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544,

8   570 (2007)). It must allege facts that "permit the court to infer more than the mere possibility of

9   misconduct" and push the claims across "the line between possibility and plausibility." *Id.* at 678-

10  79 (quoting *Twombly*, 550 U.S. at 557). The court need not accept as true "allegations that are

11  merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v.*

12  *Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001) (citation omitted).

13   **A.    xAI's Trade Secret Misappropriation Claim Fails as a Matter of Law**

14   xAI's amended trade secret misappropriation claim fails to allege the requisite non-

15  conclusory facts necessary to survive a motion to dismiss, just as its original claim did. To state a

16  claim under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, xAI must allege

17  that it owns a valid trade secret, that it has taken reasonable steps to protect that secret, and that

18  OpenAI misappropriated that trade secret. *See* 18 U.S.C. § 1839(5); *InteliClear, LLC v. ETC*

19  *Glob. Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020). To plead misappropriation, xAI must

20  plausibly allege either "(1) acquisition of the secret by improper means, or (2) disclosure or use of

21  the trade secret without consent" by OpenAI. *Flexport, Inc. v. Freightmate AI, Inc.*, No. 3:25-cv-

22  02500-RFL, 2025 WL 2399666, at *1 (N.D. Cal. July 10, 2025); *see also* 18 U.S.C. § 1839(5)(A)-

23  (B). xAI offers no such allegations.

24   Lacking allegations of direct misappropriation by OpenAI, xAI leans heavily on vicarious

25  liability. However, to plead that OpenAI is vicariously liable for a former xAI employee's alleged

26  misappropriation, xAI must plead specific facts plausibly supporting the inference that the former

27  employee committed misappropriation "within the scope of employment [and] at least in part[] to

28  benefit the employer." *Flexport*, 2025 WL 2399666, at *4 (alteration in original) (citation

omitted).  That requires plausibly alleging that the employee actually "used the trade secret files in the course of his employment" at OpenAI.  *Id.*; *see Alert Enter. v. Rana*, 2023 WL 2541353, at *3 (N.D. Cal. Mar. 16, 2023).  Alleging that OpenAI hired a former xAI employee who allegedly misappropriated trade secrets *before* joining OpenAI does not support vicarious liability.  As this Court explained, "[t]he *future* employer of a person who steals a company's trade secrets for the benefit of the future employer is not liable under respondeat superior, absent an allegation the future employer subsequently used the trade secrets or the wrongdoer used the trade secrets once he actually became employed."  *Flexport*, 2025 WL 2399666, at *4 (emphasis in original) (quoting *Alert Enter.*, 2023 WL 2541353, at *3).  Again, xAI offers no such allegations.

xAI spends the bulk of its Amended Complaint on argumentative insinuations about what certain individuals allegedly did *before* joining OpenAI, but cannot muster any concrete allegations that *OpenAI*—the only Defendant here—misappropriated any xAI trade secret.  xAI's attempts to salvage its DTSA claim with conclusory, unsupported allegations, a vicarious liability theory, and accusations of "inducement" all fail to establish plausibility.

### 1.    xAI Does Not Allege That OpenAI Itself Acquired, Used, or Even Knew About its Alleged Trade Secrets

xAI does not plausibly allege that OpenAI itself acquired or used xAI's trade secrets, or even that OpenAI knew or had reason to know about the alleged taking of the trade secrets.  In a single conclusory sentence, xAI alleges on "information and belief" that OpenAI "acquired" the alleged trade secrets "through improper means," including from xAI's former employees.  FAC ¶ 149.  This is a classic formulaic recitation of the "acquisition" element of the DTSA, and is given no independent weight.  *See Twombly,* 550 U.S. at 555.  To support that statement, xAI offers a smokescreen of alleged bad acts by former xAI employees, but none of those factual allegations is sufficient to plausibly allege that any individuals actually transferred xAI trade secrets to OpenAI or that those secrets were used at OpenAI.  Because xAI cannot allege that OpenAI acquired any xAI trade secrets itself, xAI's only path to avoid dismissal is to show that OpenAI is vicariously liable for its employees' use of the trade secrets *after* they started working at OpenAI.  *See, e.g.*, *Flexport*, 2025 WL 2399666, at *4.  xAI has not even tried to do so.

1

(a)    *Xuechen Li*

2        As an initial matter, xAI cannot establish vicarious liability for Li's alleged actions

3 because Li was never an OpenAI employee.  FAC ¶ 80; *see, e.g.*, *Apple Inc. v. Rivos, Inc.*, 2023

4 WL 5183034, at *8 (N.D. Cal. Aug. 11, 2023) (dismissing vicarious liability theory where the

5 individuals "were not [plaintiff] employees when they allegedly 'acquired' the information").

6        Nor does xAI allege that OpenAI acquired any alleged trade secrets from Li.  xAI alleges

7 that Li downloaded xAI source code after accepting an offer with OpenAI, but does not and

8 cannot allege that Li transferred that source code to OpenAI.  That is fatal to xAI's

9 misappropriation claim.  xAI resorts instead to speculative insinuation.  xAI alleges that Li

10 uploaded xAI's source code to a "*personal* cloud account" while working at xAI.  FAC ¶ 59

11 (emphasis added).  xAI *separately* alleges that an OpenAI recruiter sent Li a message "indicating

12 that a link to, on information and belief, a cloud storage location was sent to [him]."  *Id.* ¶ 58.  xAI

13 conspicuously avoids alleging that Li uploaded the code to the "cloud storage location" that the

14 OpenAI recruiter sent to him.  And xAI alleges nothing to counter the fact, and common-sense

15 notion, that this was a standard, read-only portal containing recruiting-related benefits information

16 for Li to access.  xAI has pled no plausible basis to infer OpenAI's acquisition of that source code.

17        Stretching even further, xAI alleges Li's *personal* cloud storage account was linked to his

18 *personal* ChatGPT account, and from there speculates that, theoretically, "OpenAI had a means to

19 access Li's [personal] files."  *Id.* ¶ 83.  xAI does not allege that Li uploaded any xAI trade secret

20 information to ChatGPT, much less that OpenAI accessed such information, so this allegation

21 necessarily falls short of pleading that OpenAI acquired its trade secrets.  And xAI's unstated

22 insinuation that OpenAI acquired xAI confidential information merely because Li used OpenAI's

23 widely used consumer ChatGPT product is implausible and should be rejected.  To sanction that

24 attenuated conjecture would endorse misappropriation allegations anytime a technology company

25 hires someone that previously used their consumer-facing products—a virtual certainty given the

26 ubiquity of these services.

27        xAI's allegation on "information and belief" that "Li actually shared xAI Confidential

28 Information and trade secrets with OpenAI at least during an apparent interview presentation" on

1    July 13 also fails to support a claim. *Id*. ¶ 147.[1]  Crucially, even after amending the complaint xAI

2    does not claim that the "apparent" July 13 presentation contained "trade secrets," as opposed to

3    information that is merely confidential or even public. *Id*. ¶ 55.  In fact, xAI alleges that OpenAI

4    was "unsatisfied" with the alleged July 13 interview presentation and "strung Li along" for over a

5    week until Li eventually stole xAI's source code, and only then did OpenAI offer him a job. *Id.*

6    ¶¶ 57-64.  The Amended Complaint's contradictory allegations fail to allege that OpenAI acquired

7    xAI's *trade secrets* during that alleged July 13 presentation. *See Flexport*, 2025 WL 2399666, at

8    *1 (dismissing misappropriation claim where plaintiff "ha[d] not alleged any facts supporting a

9    plausible inference that these documents contained trade secrets").

10        In an apparent attempt to obfuscate, xAI *separately* alleges that Li confessed that he took a

11   "slide deck specifically pertaining to xAI's highly sensitive and confidential AI model training and

12   tuning methods, which constitute trade secrets." *Id.* ¶ 56.  Crucially, xAI does not allege that this

13   is the same document as the alleged July 13 presentation (because it cannot), and merely making

14   adjacent references to presentations does not make them the same document.  Moreover, xAI

15   never alleges that Li delivered this presentation to OpenAI, so this allegation is irrelevant.

16        Further, even assuming the alleged July 13 presentation allegedly delivered by Li

17   contained trade secrets, xAI does not allege that OpenAI had the requisite knowledge to trigger

18   liability.  Where, as here, a plaintiff accuses a defendant of indirect misappropriation—*i.e.*, where

19   the defendant acquired the alleged trade secrets "indirectly from someone other than plaintiff"—

20   the plaintiff must allege facts showing that the defendant "knew or had reason to know before the

21   use or disclosure that the information was a trade secret and knew or had reason to know that the

22   disclosing party had acquired it through improper means or was breaching a duty of

23   confidentiality by disclosing it." *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 79

24   (N.D. Cal. 2020) (citation omitted); *see also Flexport*, 2025 WL 2399666, at *1 (similar); 18

25   U.S.C. § 1839(5).  xAI pleads nothing about OpenAI's actual or constructive knowledge regarding

26   the alleged presentation, if it even occurred.  It says nothing about the contents of the presentation.

27

28   _____

     [1] OpenAI denies that this presentation ever occurred.  Dkt. No. 31 (Answer) ¶ 51.

1    And it says nothing about who at OpenAI supposedly received that alleged presentation, and

2    whether they have the technical knowhow or experience to discern whether the contents were

3    confidential.  There is no specific fact alleged to justify the inference that OpenAI knew or should

4    have known this alleged presentation contained improperly obtained trade secrets.  *See Carr v.*

5    *AutoNation Inc.*, 2018 WL 288018, at *3 (E.D. Cal. Jan. 4, 2018) (dismissing claim for failure to

6    allege "what *specifically* would have caused [defendant] to know or have reason to know that

7    [another company]'s possession of the Business Plan was wrongful" (emphasis added)); *see also*

8    *Roche Molecular Sys., Inc. v. Foresight Diagnostics Inc.*, 2025 WL 1959995, at *2 (N.D. Cal. July

9    16, 2025) (allegations of defendant's knowledge were "too conclusory").  That inference is

10   especially unwarranted because xAI alleges that Li gave the alleged presentation during a *job*

11   *interview*.  FAC ¶ 55. There is no reason to think that OpenAI would know that a candidate

12   disclosed information without authorization.

13                              *(b)    Jimmy Fraiture*

14          xAI cannot establish vicarious liability for Fraiture's alleged actions, all of which took

15   place *before* Fraiture joined OpenAI.  xAI does not allege that Fraiture transferred trade secrets to

16   OpenAI, or that he used them after he joined OpenAI, as required for a vicarious liability claim.

17   xAI alleges only that Fraiture accepted an offer from OpenAI, that he then copied "xAI source

18   code and trade secrets" from his xAI laptop to his personal device, *id.* ¶ 98, and that he was not

19   forthcoming with xAI about what he downloaded, *id.* ¶ 103.  xAI does not allege that Fraiture ever

20   transferred the xAI information to OpenAI, or even that he accessed or used it prior to deleting it

21   from his personal device while still at xAI on garden leave.  *Id.* ¶¶ 103, 106.  In fact, xAI does not

22   even allege that Fraiture still possesses any xAI trade secrets, or that he possessed any xAI trade

23   secrets at any time after he started at OpenAI.  To the contrary, xAI alleges that he *deleted* the

24   code before starting at OpenAI.  *Id.*  If he did not possess the source code at the time of his

25   employment with OpenAI, then he could not have "used" it at OpenAI.  That is fatal to xAI's

26   claim.  *See Flexport*, 2025 WL 2399666, at *4; *Alert Enter.*, 2023 WL 2541353, at *3.

27          This Court's decision in *Alert Enterprise* is instructive and compels dismissal here.  There,

28   this Court rejected a trade secret plaintiff's vicarious liability theory against a competitor because

there was no allegation that the employee—who (unlike Fraiture) stole and *retained* plaintiff's trade secrets—ever used the trade secrets while working for the competitor. *See* 2023 WL 2541353, at \*1. The plaintiff alleged that its prior employee conspired with its competitor to steal plaintiff's trade secrets, downloaded thousands of files containing those secrets, erased all evidence of the theft, and refused to return any of the files even after starting work at the competitor. *Id.* at \*1. The court dismissed the case against the competitor, finding that the allegations were insufficient to "support a plausible inference [the employee] took, used, or disclosed [plaintiff]'s trade secrets *after* he became" the competitor's employee, as required for a vicarious liability claim against the competitor. *Id.* at \*3. The allegations here are even flimsier—xAI does not even allege that Fraiture possessed xAI information while employed at OpenAI.

*Flexport* provides further support. In *Flexport*, this Court found sufficient allegations of trade secret "use" to support vicarious liability against a competitor where plaintiff made concrete allegations demonstrating its former employee's use of the trade secrets *after* starting at the new employer. 2025 WL 2399666, at \*4. The plaintiff alleged that the former employee downloaded thousands of trade secret documents, founded a rival company in the same space, "retained" the trade secrets (Compl. ¶¶ 53, 60, *Flexport*, No. 3:25-cv-02500-RFL (N.D. Cal. Mar. 12, 2025)), and then "used, and continue[s] to use" those trade secrets to launch competing products and build partnerships at an "incredible" speed (*id.* ¶¶ 52, 58). The former employee's new company also launched a "product containing functionality similar to the allegedly stolen source code," from which this Court inferred that the former employee "actually" used the trade secrets at the new company. *Flexport*, 2025 WL 2399666, at \*4. Those key allegations are entirely absent here— there are no concrete allegations whatsoever that Fraiture used any xAI trade secrets at OpenAI.

### (c)   *Hieu Pham and Ethan Knight*

xAI's newly added allegations concerning Pham and Knight do not come close to alleging misappropriation by OpenAI. Crucially, xAI does not allege that Pham or Knight transferred xAI trade secrets to OpenAI, or that they have used them in their work at OpenAI. xAI does not even allege that Pham or Knight currently possess any xAI confidential information (because they do not)—complaining instead that xAI has not been able to "confirm deletion" of such information.

*See* FAC ¶ 129.  xAI falls back to alleging that OpenAI is vicariously liable for Pham and Knight
having kept xAI information on their personal devices for a time after leaving xAI, and for their
sharing of copies of that information with an unnamed third party.  *Id.* ¶¶ 127-29.  xAI's apparent
basis for suing OpenAI over that conduct is that Pham and Knight work at OpenAI and that Pham
and Knight are represented by the same lawyers as OpenAI.  *Id.* ¶ 129.  That is plainly inadequate.

xAI cannot plead vicarious liability based merely on Pham and Knight's alleged past
possession of xAI confidential information "absent an allegation [that OpenAI] subsequently used
the trade secrets or [that Pham or Knight] used the trade secrets once he actually became
employed."  *Alert Enter.*, 2023 WL 2541353, at *3; *see also Flexport*, 2025 WL 2399666, at *4;
*Apple*, 2023 WL 5183034, at *7 (former employee's "mere possession" of former employer's
information "does not support an inference that he has disclosed or used the information").  xAI
does not and cannot make any such allegations.  The allegations here fall far short even of the
alleged conduct in *Alert Enterprise*, where this Court dismissed allegations of vicarious liability
for misappropriation where the former employee downloaded thousands of files, took steps to
destroy evidence of his actions, and then upon joining his new employer refused to return the files
or submit his devices for examination.  2023 WL 2541353, at *1.

xAI's allegation of vicarious liability for Pham and Knight's alleged disclosure of xAI
information to a third party is even weaker and more egregious.  Note that xAI omits saying to
*whom* Pham and Knight allegedly disclosed that information, or under what circumstances.  That
is because, as xAI knows, it was a forensic vendor hired by Pham and Knight's counsel to
preserve and then remove the information securely out of their view after notice to xAI's counsel.
xAI does not and cannot allege that this information was disclosed to OpenAI or anybody who
could use it for OpenAI's benefit, because it was not.  Without describing anything at all about
this alleged disclosure, xAI fails to plead any factual basis from which this Court could infer that
Pham or Knight disclosed xAI confidential information "within the scope of [their] employment"
at OpenAI or "to benefit" OpenAI, as required to make out a claim for vicarious liability.  *Alert
Enter.*, 2023 WL 2541353, at *3 (citation omitted).  Pham and Knight's purported disclosure of
information to an unnamed third party cannot support a claim against OpenAI.

1    Most surprising is xAI's allegation that OpenAI is somehow liable for Pham and Knight's

2  alleged conduct just because Pham and Knight retained the same lawyers as OpenAI.  FAC ¶ 129.

3  No authority supports that troubling assertion.

4                          *(d)    Uday Ruddarraju*

5    xAI's allegations concerning Ruddarraju are deficient on their face.  xAI alleges only that

6  he "*attempt[ed]* to access" an xAI file—not that he (much less OpenAI) ever did so.  FAC ¶ 130

7  (emphasis added).  Trade secret misappropriation requires an allegation of actual "acquisition of a

8  trade secret."  18 U.S.C. § 1839(5)(A).  xAI's allegations cannot even support a claim of

9  "threatened" misappropriation, because Ruddarraju's single purported attempt to access xAI

10  information was evidently effectively thwarted.  *See* FAC ¶ 130.  To the extent xAI alleges

11  vicarious liability against OpenAI merely for Ruddarraju's "access to the *link*" that Ruddarraju

12  allegedly clicked, that cannot support a claim because xAI never alleges facts suggesting that the

13  link itself somehow constitutes a trade secret, or that Ruddarraju used any information within the

14  purported link in the scope of his work at OpenAI.  *See Flexport*, 2025 WL 2399666, at *1.

15                          *(e)    Senior Finance Executive and Other Individuals*

16    xAI also alleges that OpenAI targeted other xAI employees, including an unnamed "senior

17  finance executive," based on their past access to xAI confidential information, FAC ¶¶ 108-21, but

18  those claims are also clearly insufficient.  xAI does not even allege that those individuals

19  downloaded, disclosed, or used anything from xAI, let alone transferred confidential information

20  to OpenAI.  That forecloses xAI's claim.  xAI cannot allege that these individuals ever retained,

21  much less used, xAI trade secrets, so it resorts to levying disfavored "inevitable disclosure"

22  allegations.  But as courts have emphatically and consistently held in rejecting DTSA claims:

23  merely hiring a competitor's former employees who once had access to confidential information

24  cannot demonstrate misappropriation on its own.  *See, e.g.*, *Apple*, 2023 WL 5183034, at *7 ("The

25  fact that [former employee] is in mere possession of [former employer's information] does not

26  support an inference that he has disclosed or used the information . . . in his current . . .  role at

27  [current employer].");  *Valeo v. NVIDIA Corp.*, 2025 WL 2505115, at *7 (N.D. Cal. Aug. 28,

28  2025) (rejecting inference of "inevitable disclosure" even for employee who took a prior

employer's document).  This Court rejects the inevitable disclosure doctrine.  *SOAProjects, Inc. v. SCM Microsystems, Inc.*, 2010 WL 5069832, at *11 (N.D. Cal. Dec. 7, 2010) (explaining that "[t]he inevitable disclosure doctrine cannot be used as a substitute for proving actual or threatened misappropriation of trade secrets," and rejecting misappropriation claim even where employee "allegedly took trade secrets and is now performing the same work" (citation omitted)).  xAI cannot even allege that these employees retained any xAI trade secret.

The analysis is not changed by xAI's bare assertion that the finance executive "simply did not care" about protecting xAI's trade secrets—a claim supported only by unfounded allegations that he declined to sign a "Termination Certification" and then used profane language.  *See* FAC ¶ 118.  That conclusory assertion, which takes one email out of context, does not overcome xAI's wholesale failure to plead that he actually took, transferred, or used trade secrets from xAI.

### 2.    xAI's Inducement Allegations Do Not Support a Claim Against OpenAI

Because xAI cannot adequately allege that OpenAI itself "acquired" xAI trade secrets, or that former xAI employees "used" trade secrets at OpenAI, xAI repeatedly alleges that OpenAI directed or induced xAI employees to steal xAI trade secrets on OpenAI's behalf.  xAI states, on "information and belief," that OpenAI "directed, instructed, financially rewarded, and/or otherwise encouraged" Li, Fraiture, and the finance executive "to steal or otherwise misappropriate xAI's Confidential Information and trade secrets."  FAC ¶ 146; *see also id.* ¶¶ 11, 84, 85, 97, 105, 106, 116, 146, 135.  As an initial matter, xAI cannot skirt the vicarious liability standard with bare allegations that OpenAI induced or directed xAI's former employees to take trade secrets.  To assert misappropriation against OpenAI, xAI must allege that OpenAI actually "acquired" xAI trade secrets or that the employees "used" them within the scope of their employment at OpenAI.  *See Flexport*, 2025 WL 2399666, at *4; *Alert Enter.*, 2023 WL 2541353, at *3.  At most, these allegations would be relevant to whether OpenAI employed "improper means," which are defined to include "inducement of a breach of a duty to maintain secrecy."  *See* 18 U.S.C. § 1839(6)(A).  Even then, xAI would need to plead actual "*acquisition*" of the trade secrets by improper means to state a claim.  *See id.* § 1839(5)(A) (emphasis added); *Flexport*, 2025 WL 2399666, at *1.  xAI has not done so.  *See supra*, Part III.A.1.

1    What is more, xAI does not even allege the underlying facts that could raise its conclusory

2    (and legally inadequate) "inducement" allegation "above the speculative level." *Twombly*, 550

3    U.S. at 555.  xAI alleges that Li and Fraiture were talking to an OpenAI recruiter around the time

4    of their alleged downloading of xAI trade secrets, FAC ¶ 149, but that falls far short of the

5    requirement to plead facts supporting an inference that OpenAI induced those actions.  It is the job

6    of a recruiter to talk to potential new hires who may be looking to change roles.  As for xAI's

7    misleading allegations about the "cloud storage location" sent by the recruiter to Li, xAI does not

8    allege that OpenAI's storage link was designed for, or even configured to allow Li to upload

9    anything.  The Amended Complaint fails to acknowledge the clear and benign fact that it was just

10    a read-only folder of HR/hiring paperwork.  *See CleanFish v. Sims*, 2020 WL 1274991, at *1, *10

11    (N.D. Cal. Mar. 17, 2020) (dismissing misappropriation claim where allegations that defendants

12    "continuously communicated with [the former employee], while [he] was employed by Plaintiff,"

13    were consistent with "an innocent explanation" of the conduct).

14    Compare this case to the facts of *Alert Enterprise*, where this Court rejected a similar

15    agency theory despite allegations that the employee "repeatedly met" with the competitor's CEO

16    prior to resigning and "conspired" with the CEO to steal thousands of trade secret documents.

17    2023 WL 2541353, at *1.  The Court nonetheless rejected the plaintiff's agency theory, requiring

18    allegations that the employee actually used such information at his new job.  *Id.* at *4.  xAI's

19    inducement allegations are even weaker than those rejected in *Alert Enterprise*.

20    xAI also alleges that OpenAI offered to pay recruits from xAI "substantial compensation,"

21    insinuating this shows inducement to transfer trade secrets.  FAC ¶¶ 64, 97, 151.  That is also

22    insufficient.  AI employees command significant compensation in the current market—xAI itself

23    admits that it has spent "immense" sums to "employ top-tier AI researchers," *id.* ¶ 27, including

24    offering millions in cash and equity to Li and Fraiture themselves, *id.* ¶¶ 52, 92.  That OpenAI too

25    offered them "substantial compensation" does nothing to "plausibly establish" the inference that

26    OpenAI offered such compensation to induce trade secret theft rather than the "more likely

27    explanation[]" that OpenAI offered recruits market compensation.  *See Iqbal*, 556 U.S. at 681.

28

1    This Court considered and rejected arguments like xAI's in *Arthur J. Gallagher & Co. v.*

2    *Tarantino*, 498 F. Supp. 3d 1155, 1173 (N.D. Cal. 2020).  There, the plaintiff claimed that a

3    competitor gave "the directive" to departing employees "to take trade secrets" from plaintiff, but

4    there were "no specific facts to support [the competitor] giving such a directive."  *Id.* at 1173 &

5    n.4.  The Court held that the employees "could well have taken the trade secrets" without the

6    competitor knowing about it, "even if [the competitor] ultimately benefitted from their acquisition

7    and use of the trade secrets."  *Id.* at 1173.  The fact that the competitor gave financial "incentive[s]

8    to take trade secrets" based on "employee compensation" structure did not save the plaintiff's

9    claim from dismissal, particularly because the incentives "appear[ed] facially rational."  *Id.* at 1173

10    n.4.  As in *Tarantino*, xAI's conclusory allegation that OpenAI directed/induced these individuals,

11    including with financial compensation, is insufficient to clear the *Twombly* plausibility bar.

12    xAI's DTSA claim should be dismissed with prejudice.

13    **B.    The Court Should Dismiss xAI's Unfair Competition Claim**

14    xAI's claim under the Unfair Competition Law ("UCL") must be dismissed because it is

15    superseded by CUTSA, which "provides the exclusive civil remedy for conduct falling within its

16    terms."  *Alert Enter.*, 2023 WL 2541353, at *6 (citation omitted); *see* Cal. Civ. Code § 3426.7(b).

17    CUTSA supersedes state-law causes of action "based on the same nucleus of facts as trade secret

18    misappropriation" where the claim is no longer "viable after removing the trade secret facts."

19    *Alert Enter.*, 2023 WL 2541353, at *6.  Courts routinely hold that CUTSA supersedes UCL

20    claims.  *See, e.g.*, *Waymo LLC v. Uber Techs., Inc.*, 256 F. Supp. 3d 1059, 1064 (N.D. Cal. 2017).

21    xAI's UCL claim is superseded here.

22    xAI's allegations that OpenAI's conduct is "unlawful" under the UCL are superseded

23    because they are based solely on trade secret misappropriation.  First, xAI alleges that OpenAI's

24    conduct "violates the Defend Trade Secrets Act."  FAC ¶ 163.  This allegation is based *expressly*

25    on trade secret misappropriation and is accordingly superseded.  *See Albert's Organics, Inc. v.*

26    *Holzman*, 445 F. Supp. 3d 463, 482 (N.D. Cal. 2020) (holding that CUTSA superseded UCL claim

27    based on a "violation of . . . the Defend Trade Secrets Act").  Second, xAI alleges that OpenAI's

28    conduct is unlawful "because it tortiously interfered with xAI's economic relationships with its

1  employees, including by inducing them to breach their duty of loyalty owed to xAI." FAC ¶ 164.

2  But the only wrongful conduct alleged by xAI is that OpenAI purportedly induced xAI employees

3  to misappropriate xAI confidential information.[2]  Those allegations about misappropriation fall

4  squarely within the ambit of CUTSA supersession, and without them no tortious interference

5  claim remains.  *See Albert's Organics*, 445 F. Supp. 3d at 475, 479 (tortious interference claim

6  superseded by CUTSA because it "relie[d] on soliciting trade secrets and confidential information

7  as the intentional act to disrupt plaintiff's business relationships"); *Symphony Risk Sols. Ins.*

8  *Servs., Inc. v. Perlite*, 2024 WL 5112479, at *4 (N.D. Cal. Dec. 13, 2024) (same).  If xAI is

9  instead claiming that it was unlawful for OpenAI to induce xAI employees to depart xAI and join

10 OpenAI, any contract precluding that employment transfer is unenforceable.  *See Tarantino*, 498

11 F.Supp.3d at 1177 (N.D. Cal. 2020) (dismissing interference claim based on inducement to breach

12 unenforceable provisions of employment contracts); Cal. Bus. & Prof. Code § 16600.

13      xAI's claim that OpenAI's conduct is "unfair" under the UCL is also based on trade secret

14 misappropriation.  xAI claims that OpenAI obtains "unfair advantages *based on the innovations of*

15 *xAI*"; "incorporate[s] xAI's competitive differentiators into its own products"; and that xAI must

16 "unfairly compete against its own trade secrets."  FAC ¶¶ 166-68.  Those false and unsupported

17 assertions simply restate in other language xAI's same allegations of misappropriation.  *See*

18 *Snapkeys, Ltd. v. Google LLC*, 442 F. Supp. 3d 1196, 1210 (N.D. Cal. 2020) (UCL unfair prong

19 claim superseded by CUTSA because it was based on misappropriating confidential information

20 and otherwise "devoid of any allegation about how Google's conduct harmed competition"); *Total*

21 *Recall Techs. v. Luckey*, 2016 WL 199796, at *10 (N.D. Cal. Jan. 16, 2016) (same).

22      Therefore, the Court should dismiss xAI's UCL claim with prejudice.

23 **IV.   CONCLUSION**

24      Defendants respectfully request that the case be dismissed in its entirety with prejudice.

25

26 _____

[2] xAI incorporates by reference its "Second Cause of Action." FAC ¶ 164.  But its Second Cause
27 of Action is the UCL claim itself.  *Id.* ¶¶ 160-68.  In response to an emailed inquiry from
OpenAI's counsel about this cross-reference, xAI's counsel stated that "the inclusion of paragraph
28 164 of the First Amended Complaint was a clerical error."

1  DATED:  December 30, 2025                MUNGER, TOLLES & OLSON LLP

2

3
                                           By:    _____s/ Carolyn Hoecker Luedtke_____
4                                                 CAROLYN HOECKER LUEDTKE
                                                  JONATHAN I. KRAVIS
5                                                 DANE P. SHIKMAN
                                                  GABRIEL M. BRONSHTEYN
6                                                 JOSEPH N. GLYNN

7
                                                  Attorneys for Defendants OpenAI, Inc., OpenAI
8                                                 Global, LLC, and OpenAI OpCo, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS FIRST AMENDED COMPLAINT