1  KATHI VIDAL (State Bar No. 194971)
   kvidal@winston.com
2  MATTHEW R. MCCULLOUGH (State Bar No. 301330)
   mrmccullough@winston.com
3  CARSON SWOPE (State Bar No. 353352)
   cswope@winston.com
4  **WINSTON & STRAWN LLP**
   255 Shoreline Drive, Suite 520
5  Redwood City, CA 94065
   Telephone: (650) 858-6500
6  Facsimile: (650) 858-6550

7  LEELLE B. SLIFER (*pro hac vice*)
   lslifer@winston.com
8  NATHAN LEE (*pro hac vice*)
   n.lee@winston.com
9  JONATHAN HUNG (*pro hac vice*)
   johung@winston.com
10 **WINSTON & STRAWN LLP**
   2121 N. Pearl Street, Suite 900
11 Dallas, TX 75201
   Telephone: (214) 453-6500
12 Facsimile: (214) 453-6400

13 Attorneys for Plaintiffs X.AI CORP. and X.AI LLC

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| X.AI CORP. and X.AI LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>OPENAI, INC., OPENAI GLOBAL, LLC, and OPENAI OPCO, LLC,<br><br>Defendants. | **Case No. 3:25-cv-08133-RFL**<br><br>**XAI'S OPPOSITION TO DEFENDANTS' MOTION FOR A PROTECTIVE ORDER STAYING DISCOVERY**<br><br>Date: February 3, 2026<br>Time: 10:00 am<br>Judge: Honorable Rita F. Lin |

## I. INTRODUCTION

The Court should not stay discovery. OpenAI—in a scheme to target employees of its direct competitor based on their access to its most sensitive trade secrets—has hired or attempted to hire *at least five* former xAI employees who have stolen or attempted to steal xAI's trade secrets, up to and including the brazen theft of xAI's entire codebase. Of the employees OpenAI targeted, two (Li and Fraiture) unequivocally admitted to stealing xAI's source code and other confidential documents at the same time they were communicating with the same OpenAI recruiter, who responded with a secret Signal message amounting to "no way!" only a few hours after Li's theft. And Fraiture remains employed by OpenAI despite (or more plausibly because of) his admitted theft of xAI source code. Two others (Pham and Knight) have admitted to maintaining confidential xAI information while being employed by OpenAI and admitted to sharing that information with an unauthorized third-party while being represented by OpenAI's counsel. Yet another (Ruddarraju) was caught attempting to access a confidential xAI file using his personal Gmail account while employed by OpenAI and after this litigation was filed. And these are only the examples apparent in the limited data available to xAI; the consistent pattern of former xAI employees targeted by OpenAI misappropriating xAI's confidential information while communicating with or working at OpenAI strongly suggests that discovery will yield more. xAI is irreparably harmed every day that OpenAI continues to misappropriate and use xAI's trade secrets, including those related to xAI's competitive advantages in AI model design, training, and datacenter deployment.

In light of this irreparable harm, any stay of discovery would substantially prejudice xAI. The need for discovery to begin immediately is particularly acute here because at least two of the former xAI employees (Li and Fraiture) admitted to deleting evidence of their misconduct and both have refused and/or are unable to provide access to their devices (which have been seized by the FBI) to provide a complete accounting of their use, downloads, copying, and further disclosure of xAI's trade secrets. Indeed, Li is asserting the Fifth Amendment to block all discovery in xAI's separate litigation against him (including specifically in response to questions asking him to identify how and with whom he shared xAI trade secrets) and Li has also refused to represent that he complied with the Court's temporary restraining order, highlighting the need for discovery to begin here so that xAI can discover

1

and remediate any further use, disclosure, or other misappropriation of xAI's trade secrets that it has been unable to uncover due to Li's obstruction. The destruction and unavailability of other evidence further supports that discovery should not be delayed because that would risk further loss of evidence, including by Fraiture who remains employed by OpenAI with access to OpenAI's systems despite his admitted theft and admitted destruction of evidence.

OpenAI fails to meet the "heavy burden of making a strong showing why discovery should be denied." *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990) (denying motion to stay discovery pending ruling on motion to dismiss). Indeed, this very motion appears designed to cause even further delay and hide the evidence of misappropriation (and perhaps spoliation) for as long as possible. The development timeline in the landscape of frontier AI model development is extraordinarily compressed. Models are being trained and released at breakneck speed. The irreparable harm a delay in discovery would cause xAI (and the benefit it would confer on OpenAI) is therefore significantly amplified. OpenAI should have addressed this issue as part of the discovery plan in the case management report as directed by Federal Rule of Civil Procedure 26(f),[1] which would have been addressed by the Court at the case management conference on January 14. Instead, OpenAI filed this motion and noticed it for hearing nearly three weeks later for no apparent reason and over xAI's objection that it should be heard at the upcoming conference. The Court should not reward OpenAI's delay tactics. The Court should deny OpenAI's motion and confirm that—as specified by the Federal Rules of Civil Procedure—discovery is already open.

## II.     FACTUAL BACKGROUND

***This Litigation.*** OpenAI specifically targeted xAI employees with knowledge of xAI's key technologies and business plans, including xAI's source code and its operational advantages in launching data centers. Am. Comp. ¶ 10. Many of these xAI employees have taken xAI's confidential information and trade secrets with them to OpenAI. Xuechen Li admitted to stealing xAI's entire codebase and a slide deck containing xAI's highly sensitive and confidential AI model training and

---

[1] Specifically, Rule 26(f) expressly states the discovery plan should address any "changes" to the default discovery rules (Rule 26(f)(3)(E)) and any protective order the Court should issue (Rule 26(f)(3)(F)). OpenAI's motion for a protective order to change the default rule as to when discovery opens thus should have been addressed as part of the Rule 26(f) discovery plan.

tuning methods. *Id.* ¶ 56. Jimmy Fraiture admitted to stealing xAI's source code as well as a video recording of xAI's internal "All-Hands" meetings. *Id.* ¶ 99–102. Hieu Pham and Ethan Knight admitted to maintaining xAI information on their personal devices (while refusing to tell xAI the specific xAI information that they kept) and, while employed by OpenAI and represented by OpenAI's counsel, shared that information with a third party without xAI's approval. *Id.* ¶ 127–129. Uday Ruddarraju was caught attempting to access a confidential file relating to an xAI employee's hiring package, including compensation and strategy details over two months after Ruddarraju had left xAI. *Id.* ¶ 130. And a senior finance executive who left to work for OpenAI's data center team openly flouted his continuing confidentiality obligations to xAI, including by responding to xAI with crude and sexually profane remarks when reminded of his confidentiality obligations. *Id.* ¶ 115–120. All these employees, save Li, remain employed by OpenAI to this day.

The theft of xAI's confidential information and trade secrets occurred while OpenAI was communicating with at least Li and Fraiture. Signal messages between Li and OpenAI Recruiter Tifa Chen[2] show that Li stole xAI's entire codebase one day after receiving a cloud storage location from Chen. *Id.* ¶ 58. The theft is also reflected in xAI's data logs. *Id.* ¶ 73. And just hours after Li's theft, Chen sent a message to Li that equated to "no way!" Am. Comp. ¶ 61. Similarly, Fraiture stole xAI's source code and confidential All-Hands meeting just two days after receiving his offer from OpenAI, then lied about it to xAI investigators, only to admit it later when xAI found proof of the theft. *Id.* ¶¶ 97–98. And both Li and Fraiture admitted to deleting evidence of their theft while they were in communication with OpenAI. *Id.* ¶¶ 55, 59, 73, 103.

OpenAI does not dispute any of these facts in its motion to dismiss the amended complaint. Indeed, OpenAI does not even acknowledge them.

***Pleadings and Motion to Dismiss.*** xAI filed its Complaint on September 24, 2025. Dkt. No. 1. OpenAI filed its first motion to dismiss on October 2, 2025. Dkt. No. 30. xAI amended its complaint on October 27, 2025, and the Court dismissed OpenAI's motion to dismiss as moot on October 28, 2025. Dkt. No. 44–45. OpenAI filed its second motion to dismiss on December 30, 2025. Dkt. No. 59.

---

[2] OpenAI has since admitted, in response to a subpoena in the separate *Li* litigation that Ms. Chen's Signal messages with Li were deleted and are no longer available. Ex. D at 1.

xAI's Opposition is due on January 13, 2026. The argument is set for February 3, 2026.

***Discovery.***  The parties conducted their Rule 26(f) conference on December 22, 2025. McCullough Decl. ¶ 2. xAI served its first set of discovery requests on OpenAI on December 24, 2025. *Id.* ¶ 3.

***The Li Litigation.***  In xAI's separate litigation against Li, Li has asserted the Fifth Amendment in response to every interrogatory, request for production, and request for inspection served by xAI. *See* Exs. A, B.  Li did not produce any documents in response to these discovery requests.  McCullough Decl. ¶ 4.  On January 3, 2026, as part of negotiating a stipulated injunction, Li refused to represent that he had complied with the Court's Temporary Restraining Order, which had required he turn over all his devices and accounts, return all Confidential Information to xAI, and not possess, use, copy, reproduce, disclose, transfer, disseminate, or otherwise exploit any xAI Confidential Information.  *Id.* ¶ 5; Ex. C.  Li's counsel stated that such representations are not "necessary or appropriate for this stipulated injunction, particularly given the pending criminal investigation."  Ex. C at 1.

## III.  LEGAL STANDARD

"A party seeking a stay of discovery carries the heavy burden of making a strong showing why discovery should be denied." *Gray*, 133 F.R.D. at 40; *Onn v. Carnival Corp.*, No. 20-CV-07929-BLF, 2021 WL 1267264, at *1 (N.D. Cal. Apr. 6, 2021). A court may stay discovery when it is "convinced that the plaintiff will be unable to state a claim for relief." *Wenger v. Monroe*, 282 F.3d 1068, 1077 (9th Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (Apr. 17, 2002).

The Northern District of California applies "a two-part test to determine whether to stay discovery pending the resolution of a dispositive motion." *Realtek Semiconductor Corp. v. MediaTek, Inc.*, 732 F. Supp. 3d 1101, 1117 (N.D. Cal. 2024) (citing cases). First, "a pending motion must be potentially dispositive of the entire case." *Id.* at 1118. Second, the court must determine whether the pending motion can be decided absent additional discovery. *Id.*

In applying this test, a court must "take a preliminary peek at the merits of the pending motion to assess whether a stay is warranted." *Id.*; *Onn*, 2021 WL 1267264, at *1. If there are any contested issues which prevent a court from "ruling, before the motion is heard, that it is potentially dispositive," discovery should not be stayed. *Onn*, 2021 WL 1267264, at *1.

## IV.     ARGUMENT

Discovery should not be stayed. The Federal Rules "do not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending." *Onn*, 2021 WL 1267264, at *1 (citation omitted). Rather, the Federal Rules provide that a "party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(d)(1). The parties' Rule 26(f) conference occurred on December 22, 2025 (even though xAI repeatedly asked to conduct it weeks earlier). McCullough Decl. ¶ 2. Thus, discovery is now open under Rule 26.

OpenAI has not made the "strong showing" necessary to carry its "heavy burden" of demonstrating good cause for staying discovery. *Gray*, 133 F.R.D. at 40.

First, OpenAI's motion to dismiss would not dispose of the entire case. xAI pleads facts that, when accepted as true and when drawing all inferences in favor of xAI as required by Rule 12, state plausible claims that OpenAI violated the Defend Trade Secrets Act and California' Unfair Competition Law (UCL). As such, OpenAI's motion to dismiss is likely to fail. Further, even if OpenAI's motion to dismiss were successful, it could, at best, dispose of only parts of the First Amended Complaint because OpenAI failed to address numerous specific allegations in the First Amended Complaint. For example, OpenAI almost entirely failed to address xAI's claim that OpenAI engaged in "unfair" conduct in violation of California's UCL. Dkt. 44 ¶¶ 165–68. OpenAI asserts that xAI's UCL claim based on "unfair" conduct is grounded "on trade secret misappropriation," and OpenAI concedes that dismissal would only be appropriate if the complaint were "devoid of any allegation about how [the] conduct harmed competition." Dkt. 59 at 15. OpenAI is wrong. xAI pleaded that OpenAI's conduct "corrupted the competitive process" and had specific effects on "rival AI companies" which would result in "fewer choices for consumers." Dkt. 44 ¶¶ 166–67. OpenAI does not acknowledge any of these allegations, instead mischaracterizing the complaint as only alleging trade secret harm to xAI itself. *See* Dkt. 59 at 15 (citing FAC ¶¶ 166–68 together, without addressing the specific allegations about competitors or customers). Because OpenAI failed to address these allegations of "unfair" conduct, its motion cannot possibly dispose of the UCL claim and thus cannot dispose of the entire case. Thus, as the court did in *Onn* court, this Court should deny a stay because OpenAI's motion is not potentially dispositive of the entire case.

Second, OpenAI's motion to dismiss repeatedly relies on unsupported factual assertions that are nowhere alleged in xAI's First Amended Complaint. *See* Dkt. 59 at 2:6–7 (asserting that a cloud storage location sent by OpenAI Recruiter Chen to Li was merely a "read-only cloud-based portal with HR-related paperwork"), 3:14–18 (asserting that neither Knight or Pham possess xAI Confidential Information, transferred it to OpenAI, or used it at OpenAI). These unsupported factual assertions (which cannot be considered in a Rule 12(b)(6) motion to dismiss) confirm that discovery will be required to resolve this case, and there is no reason to delay that discovery any further.

Finally, a stay of discovery would prejudice xAI. Both Li and Fraiture—after initially attempting, unsuccessfully, to conceal their efforts—admitted to stealing xAI source code and other confidential information while in discussions with OpenAI, where Fraiture remains employed today despite (or more plausibly, because of) his admitted theft. Both Knight and Pham admitted to keeping xAI information after beginning employment with OpenAI, while refusing to tell xAI what specific xAI information they took. Ruddarraju attempted to access internal xAI documents months after leaving xAI, while employed at OpenAI, and even after this litigation began. Thus, there is a clear pattern of misappropriation occurring while the former xAI employees were in communication with OpenAI, and sometimes even after their employment with OpenAI began or even after this case was filed. Misappropriation and potential continued use of xAI's trade secrets by one of xAI's competitors threatens irreparable harm to xAI. Any stay of discovery that would delay uncovering the full extent of misappropriation would prejudice xAI and risk further harm from further misappropriation of its trade secrets.

The risk of prejudice is particularly strong here because at least Li and Fraiture admitted to deleting evidence of their theft. Li and Fraiture have also lost access to their devices because they were seized by the FBI. Consequently, Li and Fraiture have refused to provide evidence demonstrating the full extent of their copying, disclosure, downloads, and use of xAI's trade secrets. Li has also asserted the Fifth Amendment to block all discovery and refused to represent that he complied with the Court's TRO, which barred him, among other things, from using, disclosing, or otherwise exploiting xAI's Confidential Information. Ex. C at 2 (Li deleted representation he complied with paragraph 2(b) of the TRO). Li and Fraiture's refusal to provide evidence demonstrating the full extent

of their use of xAI's trade secrets and their inability to provide access to seized devices that might include relevant evidence heightens the need for discovery from OpenAI. Further, the fact that Fraiture—who has admitted to destroying evidence—remains employed at OpenAI with access to OpenAI's systems where he could delete further evidence of his (or any of the other former xAI employees') misappropriation is further cause not to stay discovery and risk further loss of evidence.

OpenAI argues there is no prejudice solely because "xAI is not seeking an expedited schedule nor any temporary or preliminary injunctive relief." Mot. at 4. But OpenAI turns the default rule that discovery should *not* be stayed on its head: the Federal Rules do not require either an expedited schedule or pending injunction motion as a prerequisite to discovery opening, and OpenAI cites no case in support of this argument. Conversely, xAI is prejudiced in at least two ways: first, by the misappropriation of xAI's trade secrets, and second, by the admitted destruction of evidence by Fraiture and Li and the possibility of further destruction by Fraiture or others. OpenAI's motion does not address either of these forms of prejudice and thus fails to make the heavy showing required to stay discovery.

## V.   CONCLUSION

For the reasons above, the Court should deny OpenAI's motion for a protective order staying discovery.

Dated: January 6, 2026

**WINSTON & STRAWN LLP**

By: */s/ LeElle B. Slifer*

KATHI VIDAL (State Bar No. 194971)
kvidal@winston.com
MATTHEW R. MCCULLOUGH (State Bar No. 301330)
mrmcullough@winston.com
CARSON SWOPE (State Bar No. 353352)
cswope@winston.com
**WINSTON & STRAWN LLP**
255 Shoreline Drive, Suite 520
Redwood City, CA 94065
Telephone: (650) 858-6500
Facsimile: (650) 858-6550

LEELLE B. SLIFER (*pro hac vice*)
lslifer@winston.com

|   |   |
|---|---|
| 1 | NATHAN LEE (*pro hac vice*) |
|   | n.lee@winston.com |
| 2 | JONATHAN HUNG (*pro hac vice*) |
|   | johung@winston.com |
| 3 | **WINSTON & STRAWN LLP** |
|   | 2121 N. Pearl Street, Suite 900 |
| 4 | Dallas, TX 75201 |
|   | Telephone: (214) 453-6500 |
| 5 | Facsimile: (214) 453-6400 |