KATHI VIDAL (State Bar No. 194971)
kvidal@winston.com
MATTHEW R. MCCULLOUGH (State Bar No. 301330)
mrmccullough@winston.com
CARSON SWOPE (State Bar No. 353352)
cswope@winston.com
**WINSTON & STRAWN LLP**
255 Shoreline Drive, Suite 520
Redwood City, CA 94065
Telephone: (650) 858-6500
Facsimile: (650) 858-6550

LEELLE B. SLIFER (admitted *pro hac vice*)
lslifer@winston.com
NATHAN LEE (*pro hac vice*)
n.lee@winston.com
JONATHAN HUNG (admitted *pro hac vice*)
johung@winston.com
**WINSTON & STRAWN LLP**
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Telephone: (214) 453-6500
Facsimile: (214) 453-6400

Attorneys for Plaintiffs X.AI CORP. and X.AI LLC

CAROLYN HOECKER LUEDTKE (SBN. 207976)
carolyn.luedtke@mto.com
DANE P. SHIKMAN (SBN. 313656)
dane.shikman@mto.com
GABRIEL M. BRONSHTEYN (SBN. 338011)
gabriel.bronshteyn@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

JONATHAN I. KRAVIS (*pro hac vice*)
jonathan.kravis@mto.com
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Avenue, NW, Suite 500E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Facsimile: (202) 220-2300

Attorneys for Defendants OpenAI, Inc., OpenAI Global, LLC, and OpenAI OpCo, LLC

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| X.AI CORP. and X.AI LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>OPENAI, INC., OPENAI GLOBAL, LLC, and OPENAI OPCO, LLC,<br><br>Defendants. | **Case No. 3:25-cv-08133-RFL**<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date: January 14, 2026<br>Time: 10:00 am<br>Judge: Honorable Rita F. Lin |

Pursuant to Local Rule 16-9 and the Clerk's Notice Setting Case Management Conference Upon Reassignment (Dkt. 20) ("CMC Notice"), and in compliance with Federal Rule of Civil Procedure 26(f), the Standing Order for Civil Cases Before Judge Rita F. Lin, and the Standing Order for All Judges of the Northern District of California entitled "Contents of Joint Case Management Statement," Plaintiffs (collectively, "xAI") and Defendants (collectively, "OpenAI"), by and through their counsel of record, submit the following Joint Case Management Statement.

**1.    JURISDICTION AND SERVICE**

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the action arises under the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.* This Court has supplemental jurisdiction over xAI's additional claim because it forms part of the same case or controversy. 28 U.S.C. § 1367(a). OpenAI has been served and no other parties remain to be served. No issues exist regarding personal jurisdiction, service, or venue.

**2.    FACTS**

*xAI's Factual Summary*

On September 24, 2025, xAI filed suit against OpenAI in the Northern District of California alleging violations of the DTSA, Intentional Interference With Prospective Economic Advantage, and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* On October 27, 2025, xAI filed the operative First Amended Complaint (Dkt. 44) alleging violations of the DTSA and California's UCL.

xAI alleges that OpenAI orchestrated a coordinated, unlawful campaign to access and use xAI trade secrets by poaching specific xAI employees based on their access to xAI's most sensitive trade secrets, including Grok's source code, training and tuning methods, and xAI's data center operations, to neutralize xAI's competitive threat and preserve OpenAI's market dominance. Specifically, xAI alleges OpenAI induced Xuechen Li and Jimmy Fraiture to steal xAI source code and other confidential documents, which both Li and Fraiture have admitted to stealing. xAI further alleges that Li and Fraiture deleted evidence of their wrongdoing after having signed employment offers with OpenAI. xAI further alleges that OpenAI targeted a senior finance executive with knowledge of xAI's datacenter operations, which the executive described as xAI's "secret sauce."   xAI further alleges

that OpenAI induced other employees, including two other employees (Pham and Knight) who admitted to keeping information and sharing it with an unauthorized third party and yet another employee (Ruddarraju) who got caught trying to access internal xAI files after he began working at OpenAI and even after this lawsuit began. xAI alleges that OpenAI induced these employees to misappropriate trade secrets, that OpenAI's conduct was willful, and that the employees acted as agents or putative employees of OpenAI. xAI further alleges that OpenAI's conduct is unfair, under California's UCL, because it is intended to destroy legitimate competition and neutralize xAI's innovations that provide competitive differentiation.

### *OpenAI's Factual Summary*

To advance its mission of ensuring that artificial general intelligence benefits all of humanity, OpenAI fairly and lawfully hires the best researchers, engineers, and experts in the field. This top talent comes to OpenAI for the opportunity to join the team that built and continues to advance groundbreaking artificial intelligence technology used by hundreds of millions of people around the world. Unable to match OpenAI's innovation, xAI has filed this groundless trade secret lawsuit in an effort to intimidate current and former xAI employees from working at their place of choice.

OpenAI has not misappropriated xAI's trade secrets or engaged in any unfair conduct. Indeed, xAI does not and cannot allege that OpenAI actually acquired or disclosed any xAI trade secrets. For example, xAI alleges that Li (who never joined OpenAI) downloaded xAI source code after an OpenAI recruiter sent him a link to a "cloud storage location," but then alleges that he uploaded that code *not* to the OpenAI link, but to his own "personal cloud account." xAI does not allege a transfer to OpenAI, because OpenAI's cloud storage link was simply a read-only repository for HR paperwork provided to Li during his recruitment process. Similarly, xAI does not allege that Fraiture transferred any xAI materials to OpenAI. To the contrary, xAI alleges Fraiture deleted the alleged downloaded xAI code from his personal device on garden leave while still employed by xAI. And OpenAI did not "target" the senior finance executive or other xAI employees with access to xAI confidential information. These employees exercised their right under California law to leave xAI and work elsewhere in the AI industry without harassment by xAI.

\*   \*   \*

The Parties submit that additional factual issues may arise as the case progresses, the subjects of which are not presently known.

**3. LEGAL ISSUES**

*xAI's Position:* xAI has asserted the following claims, which may raise issues of law and/or mixed questions of fact and law:

- Misappropriation of trade secrets in violation of DTSA, 18 U.S.C. § 1836 *et seq.*
- Unfair competition in violation of California's UCL, Cal. Bus. & Prof. Code § 17200 *et seq.*; *see also Nationwide Biweekly Admin., Inc. v. Superior Ct.*, 9 Cal. 5th 279, 302 (2020) (describing an "unfair" act or practice as "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.").

*OpenAI's Position:* OpenAI denies that it has violated any laws or otherwise engaged in any wrongdoing.  OpenAI submits that the primary legal issues in this case include, but are not limited, to the following:

- Whether xAI has properly pleaded its claims under Fed. R. Civ. P. 12(b)(6);
- Whether xAI's trade secret misappropriation claim fails because the alleged trade secrets are not protectable, 18 U.S.C. § 1839(3), reasonable steps were not taken to keep the alleged trade secrets confidential, and OpenAI did not have access to or knowledge of the alleged trade secrets information;
- Whether xAI's UCL claim is superseded by the California Uniform Trade Secrets Act ("CUTSA") because it is entirely dependent on xAI's trade secret misappropriation claim, *see* Cal. Civ. Code § 3426.7(b); *Albert's Organics, Inc. v. Holzman*, 445 F. Supp. 3d 463, 482-83 (N.D. Cal. 2020) (holding that CUTSA superseded UCL claim based on a "violation of . . . the Defend Trade Secrets Act");
- Whether xAI's trade secret misappropriation claim was made in bad faith, entitling OpenAI to attorneys' fees incurred in defending the claim pursuant to 18 U.S.C. § 1836(b)(3)(D).

The Parties submit that additional legal issues may arise as the case progresses, the subjects of which are not presently known.

**4.   MOTIONS**

OpenAI filed a motion to dismiss xAI's Original Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on October 2, 2025. Dkt. 30. The Court denied the motion as moot on October 28, 2025 in light of xAI's First Amended Complaint. Dkt. 46.

OpenAI filed a motion to dismiss xAI's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on December 30, 2025. Dkt. 59. xAI's opposition is due January 13, 2026, and OpenAI's reply will be due January 20, 2026. The motion is set for hearing on February 3, 2026 at 10:00 a.m.

OpenAI filed a Motion for Protective Order to Stay Discovery on December 23, 2025. Dkt. 57. xAI filed its opposition on January 6, 2026. OpenAI's reply will be due January 13, 2026. The motion is set for hearing on February 3, 2026 at 10:00 a.m. Through this motion, OpenAI requests that the Court exercise its discretion to stay discovery until after the Court rules on the motion to dismiss. xAI submits that whether discovery should be open is a question of case management that should be resolved by the Court at the case management conference, and the parties' positions relating to that issue are included below in Section 8.f. The Parties will be prepared to discuss OpenAI's request to stay discovery pending resolution of the motion to dismiss at the case management conference.

If the motion to dismiss is not granted, OpenAI anticipates later it will file a motion for summary judgment. The Parties do not anticipate any other specific motions at this time but expect to file motions as appropriate as issues may arise in this case.

**5.   AMENDMENT OF PLEADINGS**

With regard to OpenAI's pending motion to dismiss, xAI proposes that if the Court grants the motion in whole or in part and further grants xAI leave to amend, then xAI should have twenty-one (21) days to amend. OpenAI proposes that if the Court grants the motion in whole or in part and further grants xAI leave to amend, if discovery is stayed: (a) xAI shall be granted twenty-one (21) days to amend its Complaint; and (b) OpenAI shall be granted thirty (30) days to respond to any

Second Amended Complaint. If discovery is not stayed, OpenAI proposes that xAI amend its Complaint within seven (7) business days and OpenAI shall be granted ten (10) business days to respond to any Second Amended Complaint.

Additionally, the Parties propose, per the Court's Standing Order for Civil Cases, 60 days after the initial Case Management Conference as the deadline for amending the pleadings.

## 6. EVIDENCE PRESERVATION

xAI and OpenAI certify that they have reviewed the Court's ESI Guidelines, and confirm that they have met and conferred pursuant to Federal Rule of Civil Procedure 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action. The Parties have agreed to engage in additional meet-and-confer discussions regarding evidence preservation efforts.

***OpenAI's Position:*** One of the issues the Parties are discussing relates to xAI's employees' use of personal devices and personal accounts to send and receive xAI work related communications. For example, at least some employees used personal Signal accounts and personal X accounts for xAI work related communications. OpenAI has asked xAI to confirm that it is taking steps to preserve xAI work related information on relevant employees' personal devices that relate to xAI's claims. In OpenAI's view, this would include communications about the nature and value of the trade secrets xAI alleges are at issue in this litigation, steps taken (or lack thereof) to keep those alleged trade secrets confidential, xAI's efforts to remind employees departing for OpenAI of their confidentiality obligations, and any damage xAI alleges it suffered as a result of the claims at issue in the First Amended Complaint. It would also include communications related to the resignation of the former xAI employees named in the First Amended Complaint, efforts to retain them, and requests for them to continue to work at xAI even though they will be joining OpenAI. In addition, OpenAI has asked xAI to confirm that xAI has preserved communications related to the steps that xAI took or did not take to remove xAI work related communications from the personal devices and accounts of former xAI employees who joined OpenAI, including but not limited to XChat messages for Ethan Knight and Hieu Pham. Such communications are relevant to determining whether xAI took reasonable steps to protect the alleged trade secrets.

*xAI's Position:* OpenAI's one-sided recitation of preservation issues relating to personal devices is untethered to the specific claims in this case or any reasonable scope of discovery, and not "proportional to the needs of the case" as required by FRCP 26(b)(1). And notably, OpenAI omits that its own employees likewise used personal accounts and devices, but that at least some of those messages of critical relevance to this case were auto-deleted (including all Signal messages on OpenAI's recruiter Tifa Chen's personal account between Ms. Chen and Xuechen Li, who admitted to stealing xAI's source code at the same time that he was in communication with Ms. Chen). While knowing that its own employees' personal devices had already deleted relevant evidence, OpenAI on the one-hand contends that xAI is required to preserve every "work related communication" on any employee's personal device but, on the other hand, seeks to delay discovery and potentially risk further destruction of evidence as discussed at length in xAI's response to OpenAI's motion to stay discovery (Dkt. 60). This is overbroad and extraordinarily burdensome (not to mention contradictory), and appears to be designed to give OpenAI an excuse to deflect from OpenAI's own essentially confirmed spoliation and claim spoliation at every turn as to completely irrelevant documents, which will waste Court time and resources.

**7.   DISCLOSURES**

The parties agree to exchange Initial Disclosures on or before January 19, 2026. The Parties reserve the right to amend their initial disclosures as may be necessary or required.

**8.   DISCOVERY**

    **a.   Rule 26(f)(3)(A) – Initial Disclosures.**

See ¶ 7 *supra*.

    **b.   Rule 26(f)(3)(B) – Scope of Anticipated Discovery.**

The Parties anticipate pursuing discovery on the causes of action in its First Amended Complaint for trade secrets misappropriation and unfair competition, including but not limited to the following topics: liability, causation, damages, and willfulness, and issues related to OpenAI's affirmative defenses and counterclaims, if any.

The parties agree that expert discovery should be phased to occur after fact discovery.

     **c.**     **Rule 26(f)(3)(C) – ESI Discovery.**

The Parties expect to negotiate a separate ESI order based on this Court's model order.

     **d.**     **Rule 26(f)(3)(D) – Privilege.**

Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

The parties agree that, absent a showing of good cause, the parties need not provide a privilege log for any document created on or after September 24, 2025, the day that xAI filed suit.  OpenAI notes that some communications with xAI counsel related to at least Ethan Knight and Hieu Pham may be relevant after this period and reserves the right, as with any other category, to request a privilege log and, if there is a dispute, to raise it with the Court.  xAI notes that OpenAI has failed to identify what specific communications it contends "may be relevant" or why a privilege log would be required for such communications, particularly given that both Knight and Pham were represented by counsel from Munger, Tolles & Olson (OpenAI's counsel here) before this suit began.  xAI thus reserves all rights to oppose any request for a privilege log if OpenAI fails to show good cause, or for any other appropriate reason.

The parties agree that privilege logs should be provided on a rolling basis, with the first privilege log to be provided within four weeks of a party's first production and covering any documents withheld from that production.  All subsequent privilege logs shall be provided within two weeks of any subsequent production from which the allegedly privileged materials are withheld.  The parties agree that, absent good cause, all document production and privilege logs shall be provided no later than 30 days before the close of discovery to permit sufficient time for the parties to raise any disputes prior to the close of fact discovery.

     **e.**     **Rule 26(f)(3)(E) – Limitations on Discovery.**

The Parties do not propose any modifications to the limitations on discovery in the Federal Rules of Civil Procedure at this time.  OpenAI believes that until the pleadings are resolved, it is

premature to determine whether any modifications of the limits on discovery are necessary.

The Parties agree that any Rule 30(b)(6) deposition notice will contain a reasonable number of topics, and the Parties will negotiate in good faith if they believe the notice does not contain a reasonable number of topics.  The Parties acknowledge that Rule 30(b)(6) depositions may require more than the default 7-hour limit and may present counting issues concerning both the 7-hour limit and the 10-deposition limit specified in the Federal Rules of Civil Procedure if a party presents multiple designees in response to a single notice. Therefore, upon service of Rule 30(b)(6) deposition notices, the parties agree to meet and confer in good faith to discuss the number of topics, reasonable time limits or extensions to time limits as the case may be.

The Parties agree that drafts of expert reports (partial or complete), declarations, affidavits, or notes prepared by experts or their staff members, as part of the expert's investigation and/or in developing opinions and reports shall not be subject to discovery.  The limitation applies regardless of whether such draft reports have been disclosed, or otherwise transmitted to, or contain any notes, writing, or markings created by outside or in-house counsel, or employees of or consultants for the parties who engaged such expert.  Materials provided to an expert and other evidence of communications between counsel and experts (or with any intermediaries between counsel and experts) on the subject of the experts' actual or potential testimony are not discoverable, unless relied upon by the experts in forming any opinions disclosed in written reports provided in this litigation. Further, neither party needs to produce communications between: (1) counsel and expert witnesses; (2) an expert and staff members working at the direction of the expert to support the expert, or (3) communications regarding drafts of expert reports—unless expressly relied upon by the expert to support any opinions disclosed in written reports in this litigation.

  **f.**  **Rule 26(f)(3)(F) – Other Orders the Court Should Enter.**

The parties agree that documents produced by xAI or OpenAI in *X.AI Corp. et al. v. Xuechen Li*, Case No. 3:25-cv-07292-RFL (N.D. Cal. 2025) shall also be deemed produced in this case.  The parties agree to consider other ways to streamline discovery that may be appropriate as the cases proceed, such as coordinating on scheduling any depositions that may be relevant to both cases.

### 1. The Parties' Dispute Regarding Whether Discovery Has Opened

xAI served discovery requests on December 24. The parties dispute whether discovery should be open while OpenAI's motion to dismiss is pending. OpenAI filed a Motion for Protective Order to Stay Discovery on December 23. Dkt. 57. The parties will be prepared to discuss this issue at the case management conference. The parties' respective positions are provided below.

***OpenAI's Position:*** As explained in OpenAI's Motion for Protective Order (Dkt. 57), the Court should exercise its wide discretion to stay all discovery pending resolution of OpenAI's motion to dismiss, which, if granted, would dispose of all of xAI's claims or at a minimum would narrow the scope of the case. Given the strength of the motion to dismiss and its potential to be dispositive of the entire case, a stay will further the interests of judicial economy and protect against premature, invasive discovery between competitors before the scope of the claims at issue, if any, is clarified. The discovery xAI served on December 24 is far-ranging and would require responses that would raise competitively sensitive information. The Court is set to hear argument on the motion to dismiss on February 3, and xAI suffers no prejudice in waiting. xAI filed the case on September 24, 2025 and is not seeking any expedited relief or a temporary or preliminary injunction.

***xAI's Position:*** Discovery has opened because the parties conferred as required by Rule 26(f) on December 22, 2025. *See* Fed. R. Civ. P. 26(d)(1). OpenAI's request for a protective order altering this default rule is a matter that should be addressed at the case management conference because Rule 26(f) expressly states the discovery plan should address any "changes" to the default discovery rules (Rule 26(f)(3)(E)) and any protective order the Court should issue (Rule 26(f)(3)(F)). Further, by the time of the case management conference, OpenAI's motion for protective order will be fully briefed and thus ripe for decision. As explained in xAI's opposition to that motion, there is no good cause to stay discovery here and any stay would prejudice xAI, who has suffered irreparable harm from the unauthorized disclosure, use, and/or possession of its trade secrets by persons operating in coordination with and at the behest of OpenAI including at least one person (Fraiture) who remains employed by OpenAI despite (or more plausibly, because of) his admitted theft of xAI source code. *See* Dkt. 60.

2.  **The Parties' Dispute Regarding Whether xAI Must Identify Its Trade Secrets At Issue Now In A Trade Secret Disclosure**

***OpenAI's Position:***  During the Rule 26(f) conference, OpenAI asked xAI to provide a sufficiently particular description of the alleged trade secrets at issue in its DTSA claim once the parties had agreed upon a Protective Order.  xAI declined and pointed OpenAI generally to the First Amended Complaint, though xAI could not point to where specifically in the First Amended Complaint its trade secrets were defined.  The First Amended Complaint does not contain a description of the trade secrets at issue here in any level of detail that would allow OpenAI to prepare a defense or for this Court's effective and efficient case management pursuant to Federal Rules of Civil Procedure 16 and 26.

xAI does not state its trade secrets with sufficient particularity.  The First Amended Complaint simply states that with respect to Xuechen Li and Jimmy Fraiture, the alleged misappropriated trade secrets "included, without limitation, cutting-edge AI technologies that differentiate xAI's models and operation from those of other generative AI companies." FAC ¶ 140.  For the senior finance executive, xAI alleges that the misappropriated trade secrets "included, without limitation, detailed knowledge of xAI's industry-leading data center operations." FAC ¶ 141.  For Ethan Knight and Hieu Pham, xAI alleges on information and belief that they maintained after their departure "xAI trade secrets relating to the technical operation and training of xAI's Grok." FAC ¶ 142.  And for Uday Ruddarraju, xAI alleges on information and belief that he maintained access to "confidential internal information relating to xAI's employees and strategy relating to its data center and training operations." FAC ¶ 143.

All of these statements in the First Amended Complaint are broad, generic statements about business information.  And the expansive "included, without limitation" language indicates that xAI's statements of the alleged trade secrets are incomplete.  The vague statements that are included do not provide the type of descriptive information that would allow OpenAI to prepare a defense or for this Court to manage discovery.  For example, how would OpenAI take discovery of whether xAI derives independent economic value from "detailed knowledge of xAI's industry-leading data center operations" or ascertain whether that detailed knowledge has been kept secret?  The category is simply

too broad. xAI's statement that this can all be worked out in discovery ignores the practicalities of trade secret litigation, particularly in a complex technical area such as artificial intelligence and where the parties are competitors. OpenAI needs to know what the trade secrets at issue are *in order to* craft appropriately narrow discovery tailored to the claims at issue, and similarly, it needs to understand the scope of the trade secrets at issue *in order to* respond to xAI's discovery requests. Similarly, OpenAI needs to identify experts who can opine on the trade secrets at issue. OpenAI cannot identify experts based on generic statements such as knowledge of data center operations or internal information relating to employees.

xAI cites to *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081 (9th Cir. 2025) as support for not defining its trade secrets. That is not what *Quintara* held. In *Quintara*, the Ninth Circuit found that the district court went too far when it granted a motion to strike a DTSA claim in the litigation due to an inadequate trade secret disclosure. That is not the procedural posture here. Indeed, in walking through its ruling, the Ninth Circuit *did* acknowledge that courts have broad Rule 16 pretrial case management powers that they can and should use to manage trade secret cases. *Id.* at 1088. The Ninth Circuit also explained that "Rule 26 vests district courts 'with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery.'" *Id.* at 1089 (*citing Crawford-El v. Britton*, 523 U.S. 574, 598, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) and referencing Fed. R. Civ. P. 26(d)(3)). The Ninth Circuit recognized that these tools can and should be used by courts in trade secret cases where "not all proprietary information qualifies for protection as a property interest under DTSA." *Id.* at 1087. For that reason, "a plaintiff must prove that the claimed trade secret has 'sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons ... skilled in the trade.'" *Id.* (quoting *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020)).

Thus, after *Quintara,* this Court is not without its normal case management tools just because this is a federal trade secret case. xAI relies on *Core Health and Fitness LLC v. Transmedik Specialized Inc.*, No. 8:24-cv-02481-AB (JDE), 2025 WL 3691958, at *6 (C.D. Cal. Nov. 24, 2025) below, and there, the Court agreed with *Quintara* that courts have broad Rule 16 authority to manage and phase discovery, and the court in *Core Health* noted that in that case – unlike here – the defendant

"did not avail themselves of that process" and did not ask the Court as part of the joint Rule 26(f) report to require specification of the trade secret as OpenAI is doing here. *Id.* at \*6. Moreover, *Core Health* was explicitly "not a trade secret case" with no federal or state trade secret cause of action. *Id.*

This Court can and should provide case management direction that will set up an orderly litigation – such as requiring a trade secret plaintiff to define its trade secrets at the outset of the case so that the case and its discovery can be structured around those allegations. The Ninth Circuit made that clear in the conclusion of its decision, when it stated that "district courts have broad discretion and ample alternatives under the Federal Rules of Civil Procedure to manage the disclosure of trade secrets in discovery." *Quintara,* 149 F.4th at 1091.

OpenAI respectfully requests that this Court give xAI a deadline by which to define the trade secrets at issue in this case with sufficient particularity to separate them from matters of general knowledge. OpenAI asks that this deadline be built into any discovery schedule so that it is available to the parties prior to commencing discovery.

**xAI's Position**: The Ninth Circuit's ruling in *Quintara* is clear: "By its terms and unlike CUTSA, the federal DTSA does not require a plaintiff to identify with particularity its alleged trade secrets from the start." *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1085 (9th Cir. 2025). Thus, "DTSA does not set out requirements for the specific timing or scope for identifying trade secrets. Instead, the conventional procedures under the Federal Rules of Civil Procedure apply." *Id.* at 1089. OpenAI cites no post-*Quintara* case imposing a deadline to identify trade secrets for a DTSA claim, and xAI is aware of none. To the contrary, courts have expressly rejected attempts to impose CUTSA's reasonable particularity requirement as a prerequisite to discovery in non-CUTSA cases. *See, e.g.*, *Core Health and Fitness LLC v. Transmedik Specialized Inc.*, No. 8:24-cv-02481-AB (JDE), 2025 WL 3691958, at \*6 (C.D. Cal. Nov. 24, 2025). And just as in *Core Health*, OpenAI "did not avail" themselves of the ordinary discovery procedures including the ability to "conduct discovery actively *before* the Scheduling Conference." *Id.* (original emphasis).

OpenAI cites *Quintara*'s statement that "a plaintiff must *prove* that the claimed trade secret has 'sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons ... skilled in the trade.'" *Quintara*, 149 F.4th at 1087 (emphasis added).

But the Court made very clear "whether a plaintiff has sufficiently particularized a trade secret under DTSA is usually a matter for summary judgment or trial." *Id.* at 1088. Thus, OpenAI's argument about what xAI must ultimately prove at trial provides no support for its proposed early disclosure deadline.

As the Ninth Circuit recognized in *Quintara*, there are legitimate reasons a plaintiff should not be required to be overly specific at the outset of a case. Plaintiffs "may have commercially valid reasons to avoid being overly specific at the outset in defining their intellectual property . . . [including] because the more precise the claim, the more a party does to tip off a business rival to where the real secrets lie." *Quintara*, 149 F.4th at 1088. As a result, discovery in trade secret cases requires an "iterative process where requests between parties lead to a refined and sufficiently particularized trade secret identification." *Id.* OpenAI's proposed one-sided, early disclosure deadline is inconsistent with this "iterative process" and therefore should not be adopted.

## 9. CLASS ACTIONS

This is not a class action.

## 10. RELATED CASES

This case is related to *X.AI Corp. et al. v. Xuechen Li*, Case No. 3:25-cv-07292-RFL (N.D. Cal. 2025), which is pending before this Court.

## 11. RELIEF

xAI states that it seeks relief in the form of (i) restitution and disgorgement of any xAI Confidential Information and trade secrets in OpenAI's possession acquired through the wrongful conduct described in xAI's First Amended Complaint; (ii) money judgment against OpenAI for that amount of ordinary damages, trebled damages, punitive damages, and/or restitution, in an amount to be determined at trial; (iii) xAI's costs and attorneys' fees; (iv) temporary, preliminary, and/or permanent injunctive relief barring OpenAI's unlawful and unfair competition and anticompetitive practices, including the conduct described in xAI's First Amended Complaint and any other similar wrongful acts, requiring the return of any xAI Confidential Information, requiring the removal of any xAI Confidential Information from OpenAI's products and systems, requiring the destruction of any OpenAI technology or AI models developed using xAI Confidential Information, and any other

measures necessary to remediate any harm caused to xAI or competition and to restore a level field of competition in the AI industry; and (v) any other relief deemed just and proper by the Court.

OpenAI disputes that xAI is entitled to any relief. OpenAI is not seeking damages or other relief at this time. Should OpenAI prevail in this action, it reserves the right to seek all appropriate remedies, including but not limited to attorneys' fees pursuant to 18 U.S.C. § 1836.

**12.    SETTLEMENT AND ADR**

Pursuant to ADR L.R. 3-5, the Parties have reviewed the Court's ADR handbook, discussed the available ADR procedures, and have met and conferred regarding same. Since the filing of the Parties' ADR Certifications (Dkts. 56 and 58), the Parties have come to agreement and have elected private mediation.

**13.    OTHER REFERENCES**

The Parties do not believe that reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation is appropriate at this time.

**14.    NARROWING OF ISSUES**

The Parties are not aware of any issues that can be narrowed by agreement at this time. OpenAI believes that sufficiently defining the trade secrets at issue at the outset of the case will lead to a more orderly and efficient litigation of the claims and will better enable the court to adjudicate discovery disputes and OpenAI to prepare a defense, as set forth in section 8(f)(2) above. xAI disagrees because, as the Ninth Circuit held in *Quintara*, the "iterative process" of ordinary discovery is sufficient to identify trade secrets for a DTSA claim. *Id.* The parties will cooperate in good faith to identify additional issues where narrowing may be appropriate as the case proceeds.

**15.    SCHEDULING**

The Parties have proposed respective schedules in Exhibit A. OpenAI contends the Parties should confer on a proposed case schedule once the pleadings are resolved and the Court has ruled on OpenAI's request to stay discovery pending resolution of the pleadings. xAI contends that discovery should not be stayed (*see* Dkt. 60), and thus this case is ready for the Court to enter a complete schedule at this time.

## 16. TRIAL

Based on the current pleadings, the Parties expect this case will be tried to a jury. At this point the Parties are unable to estimate the length of the trial. Subject to any substantial narrowing of the issues, xAI suggests at this time that the court reserve at least 12 trial days. OpenAI does not yet know the scope of the issues, if any, in the case, nor does it know the definition of the alleged trade secrets at issue. Until the pleadings are settled and xAI serves a trade secret disclosure, OpenAI contends it is premature to estimate the length of trial or reserve any trial days.

## 17. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

xAI filed Certificates of Interested Entities or Persons pursuant to L.R. 3-15 ("Certificate of Interested Entities or Persons") on September 24, 2025, listing X Corp. and X.AI Holdings Corp. as entities that may have a potential interest in xAI. (Dkt. No. 7–8).

OpenAI filed a Certificate of Interested Entities or Persons on October 2, 2025, listing Microsoft Corp. as an entity that may have a potential interest in OpenAI. (Dkt. No. 28).

## 18. PROFESSIONAL CONDUCT

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

## 19. OTHER MATTERS

The parties have no other matters to raise at this time.

| | | |
|---|---|---|
| 1 | Dated: January 7, 2026 | Respectfully submitted, |
| 2 | */s/ LeElle B. Slifer* | */s/ Carolyn Hoecker Luedtke* |
| 3 | KATHI VIDAL (State Bar No. 194971) | CAROLYN HOECKER LUEDTKE (SBN. 207976) |
| | kvidal@winston.com | carolyn.luedtke@mto.com |
| 4 | MATTHEW R. MCCULLOUGH (State Bar No. 301330) | DANE P. SHIKMAN (SBN. 313656) |
| 5 | mrmccullough@winston.com | dane.shikman@mto.com |
| | CARSON SWOPE (State Bar No. 353352) | GABRIEL M. BRONSHTEYN (SBN. 338011) |
| 6 | cswope@winston.com | gabriel.bronshteyn@mto.com |
| | **WINSTON & STRAWN LLP** | **MUNGER, TOLLES & OLSON LLP** |
| 7 | 255 Shoreline Drive, Suite 520 | 560 Mission Street, Twenty-Seventh Floor |
| | Redwood City, CA 94065 | San Francisco, California 94105-3089 |
| 8 | Telephone: (650) 858-6500 | Telephone: (415) 512-4000 |
| | Facsimile: (650) 858-6550 | Facsimile: (415) 512-4077 |
| 9 | | |
| | LEELLE B. SLIFER (admitted *pro hac vice*) | JONATHAN I. KRAVIS (*pro hac vice*) |
| 10 | lslifer@winston.com | jonathan.kravis@mto.com |
| | NATHAN LEE (*pro hac vice*) | **MUNGER, TOLLES & OLSON LLP** |
| 11 | n.lee@winston.com | 601 Massachusetts Avenue, NW, Suite 500E |
| | JONATHAN HUNG (admitted *pro hac vice*) | Washington, D.C. 20001-5369 |
| 12 | johung@winston.com | Telephone: (202) 220-1100 |
| | **WINSTON & STRAWN LLP** | Facsimile: (202) 220-2300 |
| 13 | 2121 N. Pearl Street, Suite 900 | |
| | Dallas, TX 75201 | Attorneys for Defendants OpenAI, Inc., OpenAI Global, LLC, and OpenAI OpCo, LLC |
| 14 | Telephone: (214) 453-6500 | |
| | Facsimile: (214) 453-6400 | |
| 15 | | |
| | Attorneys for Plaintiffs X.AI CORP. and X.AI LLC | |
| 16 | | |

### **FILER'S ATTESTATION**

I, LeElle B. Slifer, am the ECF user whose identification and password are being used to file the parties' Joint Case Management Statement. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that all signatories hereto concur in this filing.

*/s/ LeElle B. Slifer*