KATHI VIDAL (SBN: 194971)
kvidal@winston.com
MATTHEW R. MCCULLOUGH (SBN: 301330)
mrmccullough@winston.com
CARSON SWOPE (SBN: 353352)
cswope@winston.com
**WINSTON & STRAWN LLP**
255 Shoreline Drive, Suite 520
Redwood City, CA 94065
Telephone: (650) 858-6500
Facsimile: (650) 858-6550

LEELLE B. SLIFER (*pro hac vice*)
lslifer@winston.com
NATHAN LEE (*pro hac vice*)
nlee@winston.com
JONATHAN HUNG (*pro hac vice*)
johung@winston.com
**WINSTON & STRAWN LLP**
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Telephone: (214) 453-6500
Facsimile: (214) 453-6400

*Attorneys for Plaintiffs X.AI CORP. and X.AI LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| X.AI CORP. and X.AI LLC,<br><br>             Plaintiffs,<br><br>       vs.<br><br>OPENAI, INC., OPENAI GLOBAL, LLC, and OPENAI OPCO, LLC,<br><br>             Defendants. | **Case No. 3:25-cv-08133-RFL**<br><br>**PLAINTIFFS' RESPONSE TO MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................ 2

    A.    OpenAI Directs and Encourages Xuechen Li to Steal xAI's Trade Secrets .................... 2

    B.    OpenAI Directs and Encourages Jimmy Fraiture to Steal xAI's Trade Secrets ............. 3

    C.    OpenAI Uses Other xAI Employees to Steal xAI's Trade Secrets ................................ 4

ARGUMENT AND AUTHORITIES ..................................................................................... 5

I.    xAI's Complaint States a Defend Trade Secrets Act Claim ............................................ 5

    A.    OpenAI Directed xAI's Former Employees to Steal xAI's Trade Secrets ..................... 5

        1.    OpenAI cannot disregard allegations made on information and belief ............... 7

        2.    OpenAI's cases do not support dismissal ........................................................ 9

        3.    OpenAI falls back on disregarding Rule 12(b)(6)'s basic tenets ......................... 9

    B.    OpenAI Used and Accessed xAI's Trade Secrets .................................................... 11

II.    xAI's Complaint States an Unfair Competition Claim .................................................. 14

CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*3D Sys., Inc. v. Wynne,*
  2022 WL 21697345 (S.D. Cal. Mar. 9, 2022) ..........................................................13

*Aavid Thermalloy LLC v. Cooler Master Co,*
  2018 WL 11348438 (N.D. Cal. June 15, 2018) ........................................................14

*Alert Enter., Inc. v. Rana,*
  2023 WL 2541353 (N.D. Cal. Mar. 16, 2023)............................................................9

*Applied Biological Lab'ys, Inc. v. Diomics Corp.,*
  2021 WL 4060531 (S.D. Cal. Sep. 7, 2021) ......................................................11, 13

*Arthur J. Gallagher & Co. v. Tarantino,*
  498 F. Supp. 3d 1155 (N.D. Cal. 2020) ...............................................................9, 11

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)...................................................................................................5

*Attia v. Google LLC,*
  983 F.3d 420 (9th Cir. 2020) ...................................................................................11

*Auris Health, Inc. v. Noah Med. Corp.,*
  2023 WL 7284156 (N.D. Cal. Nov. 3, 2023) .........................................................7, 8

*Autodesk, Inc. v. ZWCAD Software Co.,*
  2015 WL 2265479 (N.D. Cal. May 13, 2015) .........................................................11

*BladeRoom Grp. Ltd. v. Facebook, Inc.,*
  219 F. Supp. 3d 984 (N.D. Cal. Feb. 10, 2017) ......................................................14

*Cadence Bank v. Heritage Fam. Offs. LLP,*
  2024 WL 962174 (D. Ariz. Mar. 6, 2024) .................................................................6

*Citcon USA, LLC v. RiverPay Inc.,*
  2019 WL 917056 (N.D. Cal. Feb. 25, 2019) ..........................................................6, 9

*CleanFish, LLC v. Sims,*
  2020 WL 1274991 (N.D. Cal. Mar. 17, 2020).....................................................10, 11

*Coldwell Solar, Inc. v. ACIP Energy LLC,*
  2021 WL 3857981 (E.D. Cal. Aug. 30, 2021) .........................................................11

*Compstar Ins. Servs., LLC v. Summit Specialty Ins. Sols. LLC,*
  2025 WL 1674414 (C.D. Cal. May 6, 2025) ...........................................................15

*Copart, Inc. v. Sparta Consulting, Inc.*,
   277 F. Supp. 3d 1127 (E.D. Cal. Sep. 26, 2017)................................................14

*Cutera, Inc. v. Lutronic Aesthetics, Inc.*,
   2020 WL 4937129 (E.D. Cal. Aug. 24, 2020)................................................6

*Cutera, Inc. v. Lutronic Aesthetics, Inc.*,
   444 F. Supp. 3d 1198 (E.D. Cal. 2020)................................................6, 9, 12

*Elko, Inc. v. WTH Com. Servs., LLC*,
   2023 WL 6141623 (D. Nev. Sep. 20, 2023)................................................6, 7

*Flexport, Inc. v. Freightmate AI, Inc.*,
   2025 WL 2399666 (N.D. Cal. July 10, 2025)................................................9

*Gardner Denver, Inc. v. Accurate Air Eng'g, Inc.*,
   2025 WL 1753503 (C.D. Cal. Feb. 20, 2005)................................................14

*Gordon Grado M.D., Inc. v. Phx. Cancer & Blood Disorder Treatment Inst. PLLC*,
   603 F. Supp. 3d 799 (D. Ariz. 2022)................................................6

*Heller v. Cepia, LLC*,
   2012 WL 13572 (N.D. Cal. Jan. 4, 2012)................................................7

*Henry Schein, Inc. v. Cook*,
   2017 WL 783617 (N.D. Cal. Mar. 1, 2017)................................................14

*Homelight, Inc. v. Shkipin*,
   2022 WL 16528142 (N.D. Cal. Oct. 28, 2022)................................................10

*JEB Grp., Inc. v. San Jose*,
   2020 WL 2790012 (C.D. Cal. Mar. 31, 2020)................................................15

*Karma Auto. LLC v. Lordstown Motors Corp.*,
   2022 WL 17886045 (C.D. Cal. Nov. 18, 2022)................................................15

*Novation Sols., Inc. v. Issuance Inc.*,
   2023 WL 6373871 (C.D. Cal. Aug. 16, 2023)................................................9, 12

*NW Monitoring LLC v. Hollander*,
   534 F. Supp. 3d 1329 (W.D. Wash. 2021)................................................6

*Or. Right to Life v. Stolfi*,
   158 F.4th 1013 (9th Cir. 2025)................................................5, 13

*Park v. Thompson*,
   851 F.3d 910 (9th Cir. 2017)................................................7

*Russo v. Fed. Med. Servs., Inc.*,
   2025 WL 257607 (N.D. Cal. Jan. 21, 2025)................................................10

*Silver Fern Chem., Inc. v. Lyons*,
    2023 WL 8775478 (W.D. Wash. Dec. 19, 2023) ........................................................6

*SOAProjects, Inc. v. SCM Microsystems, Inc.*,
    2010 WL 5069832 (N.D. Cal. Dec. 7, 2010) ......................................................6, 7

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ...............................................................................11

*Titan Glob. LLC v. Organo Gold Int'l, Inc.*,
    2012 WL 6019285 (N.D. Cal. Dec. 2, 2012) .........................................................14

*Tri Tool, Inc. v. Hales*,
    2023 WL 7130610 (E.D. Cal. Oct. 30, 2023) ....................................................6, 13

*X.AI Corp. et al. v. Li*,
    Case No. 3:25-cv-07292 (Aug. 28, 2025) .................................................................3

*Xsolla (USA), Inc. v. Aghanim Inc.*,
    2025 WL 1222196 (C.D. Cal. Apr. 28,2025) .........................................................15

*Yeiser Rsch. & Dev. LLC v. Teknor Apex Co.*,
    281 F. Supp. 3d 1021 (S.D. Cal. 2017).............................................................11, 13

**Statutes**

California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200............................1, 5, 14, 15

California Uniform Trade Secrets Act ...............................................................................1, 14

Defend Trade Secrets Act .............................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6).............................................................................................1, 5, 9, 11

## INTRODUCTION

OpenAI's Motion ignores xAI's allegations, raises unsupported assertions outside the Complaint, and draws inferences in OpenAI's favor. That is not how Rule 12(b)(6) works. xAI's allegations, viewed in the light most favorable to xAI, plainly state a plausible claim. The Court should accordingly deny the Motion to Dismiss.

As described extensively in the Complaint (Dkt. No. 44), OpenAI poached xAI employees and encouraged them to steal xAI's trade secrets. Employees hired by OpenAI did just that, stealing volumes of xAI's trade secrets, including the **entire** Grok source code. This was not limited to a single employee. Two former xAI employees, including one currently working at OpenAI, communicated with the same OpenAI recruiter and then downloaded troves of xAI's trade secrets right before leaving. Yet another tried to log into xAI's systems and steal xAI trade secrets **while working at OpenAI**. These well-pleaded facts are more than enough to make it plausible that OpenAI is responsible for trade secret misappropriation. That is all xAI need do at this stage.

OpenAI's Motion similarly ignores xAI's allegations supporting its Unfair Competition Law (UCL) claim. OpenAI's sole argument for dismissing the UCL claim is that the claim is grounded on trade secrets and preempted by the California Uniform Trade Secrets Act (CUTSA). But xAI's UCL claim goes far beyond trade secrets. As explained in the Complaint, OpenAI engaged in a corrupt and anticompetitive campaign to harm rival AI companies and create fewer choices for consumers.

xAI has advanced clear, plausible allegations that OpenAI orchestrated a campaign to steal its intellectual property and unfairly compete. It is a sad reality that companies engaged in economic competition sometimes deploy illegal tactics to win rather than prevail through innovation. OpenAI did just that.[1] Its contrary narratives—that xAI filed this suit because it does not want its employees to work at OpenAI and that xAI somehow "agrees" with various factual statements OpenAI's motion makes— are not only inaccurate, but irrelevant at this stage. The Complaint is supported by objective, verifiable evidence and employee admissions: multiple employees who left for OpenAI at around the same time

---

[1] Indeed, a recent report notes that OpenAI directs contractors to provide work product from prior employers to be used to refine OpenAI's systems. *See* www.wired.com/story/openai-contractor-upload-real-work-documents-ai-agents/.

stole xAI's valuable trade secrets, including xAI's crown-jewel Grok source code; one former employee was extremely dismissive of his confidentiality obligations, telling xAI to "Suck my dick" when reminded of them; another tried to access files using secure links after he had been at OpenAI for two months; and xAI uncovered highly incriminating communications with an OpenAI recruiter (most of which were suspiciously deleted). If OpenAI disputes those facts, it is welcome to make its case at summary judgment or trial. But for now, the Court should deny OpenAI's Motion in its entirety.

## FACTUAL BACKGROUND

xAI is an artificial-intelligence company that offers one of the world's most intelligent generative AI systems: Grok. Compl. ¶¶ 32, 34. OpenAI is one of xAI's competitors with its own AI chatbot, ChatGPT. *Id.* ¶¶ 29, 32. Seeing Grok progress at a rate exponentially greater than ChatGPT, and not wanting to fall further behind xAI, OpenAI engaged in a scheme to steal xAI's trade secrets to counteract this competitive threat. *Id.* ¶¶ 42-43. OpenAI has resorted to poaching xAI employees with access to xAI's confidential information and directing and encouraging those employees to steal xAI's trade secrets. *Id.* ¶¶ 44-45, 84-86, 105-07, 116-17, 131-32. In a short period, numerous xAI employees left for OpenAI and stole xAI's trade secrets on the way out. *Id.* ¶ 132.

### A.    OpenAI Directs and Encourages Xuechen Li to Steal xAI's Trade Secrets

One such employee OpenAI used to access xAI's trade secrets is Xuechen Li—one of xAI's earliest engineers. *See* Compl. ¶ 46. Li had access to xAI's trade secrets, including source code. *Id.* ¶ 48. In mid-2025, OpenAI's Research Talent Advisor, Tifa Chen, recruited Li via the encrypted messaging app Signal as part of OpenAI's scheme to steal xAI's trade secrets. *Id.* ¶¶ 53-54, 58.

On July 24, 2025, Chen sent Li a Signal message stating that OpenAI had sent him a link to a cloud storage location. Compl. ¶ 58. **The very next day**, Li uploaded the entire xAI source code base to his personal cloud account and then downloaded the source code to a personal laptop. *Id.* ¶¶ 59-61. Li's personal cloud account was connected to his OpenAI ChatGPT account, which, under OpenAI's terms, allowed OpenAI to see and download xAI's source code. *Id.* ¶ 83. A few hours later, Chen sent Li a Signal message which said "nw!" or "No way!" *Id.* ¶¶ 60-61. Two minutes later, Chen and Li had a virtual meeting. *Id.* ¶ 62. Two days later, on July 27, Li downloaded even more xAI trade secrets to his personal laptop, and **the very next day**, Chen communicated to Li a multimillion-dollar offer to join

OpenAI. *Id.* ¶¶ 63-64. Tellingly, Chen and Li used encrypted Signal messages to communicate, which have the capability of being permanently deleted—which is what happened here. *See id.* ¶ 150.

Li's brazen theft continued. On August 12, Li downloaded another copy of xAI's trade secrets (a confidential slide deck containing xAI's AI model training and tuning methods), and he accessed the folder holding xAI's trade secrets on his personal cloud account. *See* Compl. ¶¶ 56, 72. At the same time, Li tried to cover his tracks by deleting his browser history and system logs, lying to xAI, and falsely certifying that he did not steal xAI's information. *Id.* ¶¶ 59, 65, 67-77.  It is xAI's understanding that the FBI seized Li's personal devices pursuant to a criminal investigation into trade secret theft.

Based on the timing of Li's actions, Chen's communications, the link sent to Li, OpenAI's offer, and the deletion of the Signal messages, upon information and belief, OpenAI directed, encouraged, and induced Li to steal xAI's source code, allow ChatGPT to access xAI's source code, and delete evidence of wrongdoing. Compl. ¶¶ 84-86. Although OpenAI ultimately rescinded its offer to Li, that was only because xAI discovered Li's malfeasance and obtained a temporary restraining order against Li in a separate action before he began his employment. *Id.* ¶ 80 (citing *X.AI Corp. et al. v. Li*, Case No. 3:25-cv-07292 (Aug. 28, 2025) (Lin, J.)). But for xAI uncovering Li and OpenAI's theft and obtaining injunctive relief, Li would likely be employed by OpenAI today. *Id.*

**B.    OpenAI Directs and Encourages Jimmy Fraiture to Steal xAI's Trade Secrets**

Another xAI employee whom OpenAI directed and encouraged to steal trade secrets is Jimmy Fraiture. Compl. ¶¶ 87-107. Fraiture was xAI's second engineering hire in London, and, like Li, he was granted access to xAI's most confidential trade secrets, including source code. *Id.* ¶¶ 87, 90.

Since at least July 2025, Chen—the same key OpenAI recruiter involved in Li's theft—also communicated with Fraiture. *See* Compl. ¶¶ 93-95. Fraiture visited OpenAI's offices on July 24, received a formal employment offer on July 29, and accepted the offer on July 30. *Id.* ¶¶ 96-97. Then, **the very next day**, Fraiture copied xAI's sensitive trade secrets from his xAI laptop to a personal device using an AirDrop feature. *Id.* ¶ 98. These trade secrets included xAI's source code, extensive infrastructure and training code, and folders from xAI's co-founders that contained experimental code, revealing potential innovations, research, and novel techniques and which Fraiture had no justification for accessing. *Id.* ¶¶ 99-101. Fraiture also stole a video recording of an internal meeting by xAI's founder. *Id.* ¶ 102. Similar

PLAINTIFFS' RESPONSE TO MOTION TO DISMISS
CASE NO. 3:25-CV-08133-RFL

to Li, Fraiture tried to cover his tracks by deleting evidence and lying to xAI. *Id.* ¶ 103. While Fraiture claims to have deleted xAI's source code, Fraiture admitted to lying about other aspects of his theft, *id.* ¶ 103, and xAI has no reason to believe Fraiture actually deleted the stolen trade secrets.

Fraiture officially started working at OpenAI on September 2, and within a week of starting, he traveled to OpenAI's California office, where Chen is based. *See* Compl. ¶¶ 97, 104. It is xAI's understanding that the FBI seized Fraiture's personal and OpenAI-issued devices while he was visiting California as part of an investigation into criminal trade secret theft. Yet even after Fraiture's theft came to light, OpenAI continues to employ him because, unlike Li, there is no injunction prohibiting Fraiture's employment with OpenAI.[2] *Id.* ¶ 107. As with Li, based on the timing of Fraiture's actions, Chen's communications and involvement, the timing of OpenAI's offer, and Fraiture's continued employment, upon information and belief, OpenAI encouraged and induced Fraiture to steal xAI's trade secrets and delete evidence of wrongdoing. *See* Compl. ¶¶ 105-07.

### C.    OpenAI Uses Other xAI Employees to Steal xAI's Trade Secrets

OpenAI's plot to steal trade secrets did not stop with Li and Fraiture. Around the same time, OpenAI targeted a senior finance executive to steal xAI's trade secrets related to data center operations. *See* Compl. ¶¶ 110-17. The executive admitted that data center operations are xAI's "secret sauce." *Id.* ¶ 114. Before working at xAI and being exposed to xAI's data center trade secrets, the executive had zero knowledge of or experience working with AI data centers. *Id.* ¶ 116. Despite this lack of experience and knowledge outside of what he gained from xAI's trade secrets, the executive left xAI to work at OpenAI in a data center–focused (and more junior) role. *Id.* ¶ 116. Those facts alone would create cause for concern, yet the executive's clear disregard for his confidentiality obligations makes clear that he had no intention of maintaining the confidence of xAI's trade secrets after joining OpenAI.

When xAI contacted the executive about his confidentiality obligations, he responded with vulgarity. Compl. ¶ 118. Then, when xAI's HR team reached out to confirm compliance with confidentiality obligations, the executive responded, "Leave me the fuck alone." *Id.* ¶ 119. The timing of OpenAI's recruitment and his position at OpenAI, lack of prior data center experience, and vulgar

---

[2] xAI filed an action against Fraiture in the United Kingdom and obtained a consent order, but the order does not prohibit Fraiture's employment at OpenAI given considerations of English law.

responses make clear that OpenAI hired the executive for the purpose of learning and using xAI's trade secrets related to data centers. *See* Compl. ¶¶ 116-17.

OpenAI's recruitment and actions related to other xAI employees further show OpenAI targeting xAI's trade secrets by poaching xAI's employees. Around the same time, many other xAI employees with access to xAI's most confidential trade secrets left xAI for OpenAI, with at least three taking xAI's confidential information with them. *See* Compl. ¶¶ 116-17, 121-22.

Two former xAI employees, Hieu Pham and Ethan Knight, have admitted to taking copies of xAI work chats and other information, but they have refused to identify what information they stole. *See* Compl. ¶ 127. Instead, while employed by OpenAI and represented by the same counsel as OpenAI in this litigation, Pham and Knight shared xAI's confidential information with an unauthorized third party in violation of their confidentiality agreements. *Id.* ¶¶ 128-29.

Another former xAI employee, Uday Ruddarraju, even got caught trying to steal xAI's trade secrets while working at OpenAI. After he had been at OpenAI for two months, Ruddarraju used a link he kept from xAI to try to access an internal xAI document containing confidential information about xAI's hiring, but xAI's security configurations prevented access. *See* Compl. ¶ 130. OpenAI does not dispute or defend Ruddarraju's brazen attempt to access xAI's trade secrets, merely contending that the allegations are "threadbare," Dkt. No. 59 at 3, even though these are highly specific and verifiable facts.

Based on these allegations, xAI brings claims against OpenAI under the Defend Trade Secrets Act (DTSA) and the UCL.

## ARGUMENT AND AUTHORITIES

The Court is familiar with the Rule 12(b)(6) standard: a court must accept factual allegations as true and view all facts in the light most favorable to the plaintiff. *See Or. Right to Life v. Stolfi*, 158 F.4th 1013, 1019 (9th Cir. 2025) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)).

## I.    xAI's Complaint States a Defend Trade Secrets Act Claim

### A.    OpenAI Directed xAI's Former Employees to Steal xAI's Trade Secrets

OpenAI does not deny Li and Fraiture stole xAI's trade secrets or that their conduct violates the DTSA. Instead, OpenAI denies its involvement. But the Complaint more than plausibly alleges OpenAI was involved. OpenAI engaged in a plot to steal and use xAI's trade secrets by directing and encouraging

1    xAI's employees to leave and to steal xAI's trade secrets. Courts regularly hold defendants liable for

2    trade secret misappropriation when they direct and encourage a plaintiff's employees to steal trade

3    secrets. *See, e.g.*, *Tri Tool, Inc. v. Hales*, 2023 WL 7130610, at *6 (E.D. Cal. Oct. 30, 2023) (holding

4    plaintiff sufficiently alleged DTSA claim when competitor targeted plaintiff's employees "for hire

5    because of their access to plaintiff's trade secrets").[3]

6        The *Citcon* case is instructive. *See Citcon USA, LLC v. RiverPay Inc.*, 2019 WL 917056 (N.D.

7    Cal. Feb. 25, 2019). Right before resigning and joining a competitor, two of Citcon's employees

8    downloaded voluminous confidential information, including source code. *Id.* at *2. The court held that

9    Citcon sufficiently pled a DTSA claim by alleging that the competitor "directed [the employee], and

10   encouraged him with a promise of 'co-founder' status, to misappropriate Citcon's trade secrets" and that

11   the employee "was directed to retain" a device containing Citcon's information. *Id.* at *4–5 ("[T]his alleged

12   direction is enough to plead [the competitor's] liability for misappropriation of trade secrets.").

13       Similarly, in *Cutera*, the court held that the plaintiff stated a DTSA claim by alleging that

14   numerous employees exfiltrated trade secrets just before resigning and joining a competitor. *See Cutera,*

15   *Inc. v. Lutronic Aesthetics, Inc.*, 444 F. Supp. 3d 1198, 1207 (E.D. Cal. 2020). As the court noted, the

16   former employees "cop[ying] files and folders . . . at the time of their departure or within a short time

17   thereafter strongly suggests they intended to use the information in their employment with" the

18   competitor. *Id.* The court noted rhetorically, "why else would they have copied this information in

19   particular?" *Id.*[4] And even OpenAI's own cited case—*SOAProjects*—holds that a plaintiff sufficiently

20

21   ---

    [3] *See also Elko, Inc. v. WTH Com. Servs., LLC*, 2023 WL 6141623, at *5-6 (D. Nev. Sep. 20, 2023)
    (holding competitor communicating with former employee and entering into agreement to acquire trade

22   secrets states DTSA claim); *Cadence Bank v. Heritage Fam. Offs. LLP*, 2024 WL 962174, at *9 (D.
    Ariz. Mar. 6, 2024) (holding plaintiff stated DTSA claim against competitor who encouraged former

23   employee to steal trade secrets); *Gordon Grado M.D., Inc. v. Phx. Cancer & Blood Disorder Treatment
    Inst. PLLC*, 603 F. Supp. 3d 799, 811 (D. Ariz. 2022) (denying motion to dismiss DTSA claim when

24   plaintiff alleged defendant "instructed Plaintiff's former employees to access proprietary systems and
    download" trade secrets); *NW Monitoring LLC v. Hollander*, 534 F. Supp. 3d 1329, 1338 (W.D. Wash.

25   2021) (denying motion to dismiss DTSA claim when plaintiff alleged defendant "'directly or indirectly
    aided, assisted, abetted, advised, encouraged, or counseled' [former employees] in their

26   misappropriation of [plaintiff's] trade secrets"); *Silver Fern Chem., Inc. v. Lyons*, 2023 WL 8775478, at
    *7 (W.D. Wash. Dec. 19, 2023) (holding plaintiff stated DTSA claim when former employees "had

27   communications with [Defendant] not long before their departure from Plaintiff and that some of
    Plaintiff's customers made or attempted communications with Defendants after their departure").

28   [4] In denying the competitor's motion to dismiss the DTSA claim, the court pointed to its analysis from
    the temporary restraining order. *See Cutera, Inc. v. Lutronic Aesthetics, Inc.*, 2020 WL 4937129, at *4

alleged a DTSA claim when its former employee's new employer "acted in concert with [the employee] in misappropriating [plaintiff's] trade secrets and is knowingly enjoying the fruits of his theft." *SOAProjects, Inc. v. SCM Microsystems, Inc*., 2010 WL 5069832, at *11 (N.D. Cal. Dec. 7, 2010).

Here, xAI alleges that OpenAI directed and encouraged Li and Fraiture to steal xAI's most confidential trade secrets. *See* Compl. ¶¶ 84-86; 105-07. xAI further alleges that Ruddarraju, a senior OpenAI engineer, attempted to steal confidential information **while at OpenAI**. *Id.* ¶ 130. And although xAI successfully blocked Ruddarraju's attempt, the fact that he tried while working for OpenAI shows OpenAI's direct involvement. Thus, contrary to OpenAI's assertion that xAI alleges only indirect misappropriation, because OpenAI participated in and encouraged the theft of trade secrets, OpenAI's misappropriation was direct. *See Elko, Inc*., 2023 WL 6141623, at *4-5 (D. Nev. Sep. 20, 2023) (distinguishing indirect and direct misappropriation and holding that new employer communicating with plaintiffs' former employees to steal trade secrets was direct misappropriation). This is not a case (as OpenAI suggests) in which former xAI employees simply retained trade secrets after leaving xAI. OpenAI was directly involved in the exfiltration of xAI's trade secrets.[5]

### 1.    OpenAI cannot disregard allegations made on information and belief

OpenAI's attempt to disregard xAI's allegations pleaded on information and belief is misplaced. "The Ninth Circuit has clarified that the *Iqbal*/*Twombly* plausibility standard permits allegations on information and belief where: (1) 'the facts are peculiarly within the possession and control of the defendants'; or (2) 'the belief is based on factual information that makes the inference or culpability plausible.'" *Auris Health, Inc. v. Noah Med. Corp*., 2023 WL 7284156, at *4 (N.D. Cal. Nov. 3, 2023) (quoting *Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017)). Both apply here.

Only OpenAI knows what Chen said to Li and Fraiture that resulted in them exfiltrating xAI's source code. Similarly, only OpenAI knows what was said to the senior finance executive (who is using xAI's data center trade secrets at OpenAI), to Pham and Knight (who retained xAI's information and

---

(E.D. Cal. Aug. 24, 2020) ("The court finds that plaintiff has sufficiently put defendant on notice of its claims with respect to misappropriation, for the same reasons articulated in the TRO Order.").

[5] Even if xAI's allegations are construed as indirect misappropriation, OpenAI does not dispute that it knew or had reason to know that the trade secrets Li and Fraiture stole were improperly obtained trade secrets. For this reason, OpenAI's Motion should still be denied. *See Heller v. Cepia, LLC*, 2012 WL 13572, at *7 (N.D. Cal. Jan. 4, 2012).

1   improperly shared it with an unauthorized third party), and to Ruddarraju (who improperly retained a

2   link to xAI's confidential information and tried to access it while employed by OpenAI). *See* Compl. ¶¶

3   110-17, 127-30. The facts showing OpenAI's direction and encouragement to steal xAI's trade secrets

4   are "particularly within [OpenAI's] possession and control," and xAI can properly make that allegation

5   on information and belief. *See Auris Health, Inc*., 2023 WL 7284156, at *4.

6       xAI also alleged facts supporting the inference that OpenAI directed and encouraged its

7   employees to steal xAI's trade secrets. OpenAI, through its employee Chen, communicated with Li in

8   July 2025, and Chen sent Li a message indicating a link to a cloud storage location was sent to Li. *See*

9   Compl. ¶ 58. **The very next day**, Li stole the entire xAI source code base and stored it in a location that

10  OpenAI could access through its ChatGPT service. *Id.* ¶¶ 59-61, 83. Within hours of stealing xAI's

11  source code, Chen sent Li a message along the lines of "no way!," and almost immediately Li and Chen

12  had a virtual meeting. *Id.* ¶¶ 60-62. Two days later, Li downloaded additional trade secrets, and **the very**

13  **next day**, Chen communicated to Li a multimillion-dollar offer to join OpenAI. *Id.* ¶¶ 63-64.

14      Chen was communicating with Fraiture at that time, and **the very next day** after Fraiture

15  accepted an OpenAI offer, he copied numerous xAI trade secrets, including source code. *See* Compl. ¶¶

16  93-94, 97-101. Incredibly, Fraiture still works at OpenAI, even after his theft came to light. *Id.* ¶ 107.

17      OpenAI also gave the senior finance executive a data center–focused position despite the

18  executive's lack of experience and knowledge related to AI data center operations outside of his exposure

19  to xAI's trade secrets. *See* Compl. ¶¶ 110-17. And the executive's vulgar and profane responses show

20  his complete disregard for his confidentiality obligations. *Id.* ¶¶ 118-19. Pham and Knight—both of

21  whom had access to xAI's valuable trade secrets—have admitted to retaining xAI's information, and

22  while employed at OpenAI and represented by OpenAI's counsel, they disclosed xAI's information to

23  an unauthorized third party. *See* Compl. ¶¶ 127-29. And Ruddarraju maintained a link to a confidential

24  xAI document and attempted to access it while working at OpenAI. *Id.* ¶ 130.

25      Remarkably, these independent acts of trade secret misappropriation all occurred within a span

26  of about one month. It would be highly unusual for all these individuals to independently come to the

27  same conclusion—that they should steal xAI's trade secrets to use at their new jobs at OpenAI—at the

28  same time, without any involvement by OpenAI. That these simultaneous acts of theft were so close in

1   time and so focused on xAI's most prized intellectual property, such as its source code and data center

2   knowledge, further supports the plausibility of xAI's allegations. *See Citcon USA, LLC*, 2019 WL

3   917056, at *4-5. As in *Cutera,* these allegations and the timing of the employees' actions more than

4   make plausible the inference that OpenAI directed and encouraged xAI's employees to steal xAI's trade

5   secrets. *Cutera*, 444 F. Supp. 3d at 1207. OpenAI cannot avoid xAI's allegations by claiming they are

6   based on information and belief or conclusory.

### 2.    OpenAI's cases do not support dismissal

8          OpenAI's cases do not suggest otherwise, and none involve allegations similar to OpenAI's

9   direction and encouragement to steal xAI's trade secrets. In *Flexport*, the plaintiff did not allege that the

10  defendant instructed or encouraged plaintiff's former employee to steal trade secrets. *Flexport, Inc. v.*

11  *Freightmate AI, Inc.*, 2025 WL 2399666, at *4-5 (N.D. Cal. July 10, 2025). Yet the court still held that

12  plaintiff adequately alleged a trade secret claim because it could plausibly infer that the defendant used the

13  stolen trade secrets from (1) when the former employee downloaded documents; (2) the volume of

14  downloaded documents; (3) the former employee's role with defendant; and (4) the defending launching a

15  similar competing product. *Id. Flexport* thus supports denying OpenAI's Motion.

16         In *Alert Enterprise*, the only allegation suggesting the competitor was involved in downloading

17  trade secrets was an allegation that it met with plaintiff's former employee before he resigned. *See Alert*

18  *Enter., Inc. v. Rana,* 2023 WL 2541353, at *2 (N.D. Cal. Mar. 16, 2023). There were not any other

19  allegations that could support "an inference that [the competitor] directed" the former employee to steal

20  trade secrets. *Id.* That is in contrast with the numerous allegations plausibly indicating OpenAI's direct

21  involvement here. And in *Tarantino*, the only allegation to suggest the defendant directed the plaintiff's

22  former employees to steal trade secrets was that the defendant had been sued in two other cases that

23  settled. *Arthur J. Gallagher & Co. v. Tarantino*, 498 F. Supp. 3d 1155, 1173 (N.D. Cal. 2020); *see also*

24  *Novation Sols., Inc. v. Issuance Inc*., 2023 WL 6373871, at *15 (C.D. Cal. Aug. 16, 2023) (distinguishing

25  *Tarantino*). Here, there are numerous factual allegations supporting the allegation that OpenAI

26  encouraged and directed the theft of trade secrets.

### 3.    OpenAI falls back on disregarding Rule 12(b)(6)'s basic tenets

28         Instead of following Rule 12(b)(6)'s foundational standards for analyzing pleadings, OpenAI

1   asks the Court to impermissibly consider facts outside the Complaint and draw inferences in OpenAI's

2   favor. Both are improper. *See, e.g.*, *Homelight, Inc. v. Shkipin*, 2022 WL 16528142, at *1 (N.D. Cal.

3   Oct. 28, 2022); *Russo v. Fed. Med. Servs., Inc.*, 2025 WL 257607, at *3 (N.D. Cal. Jan. 21, 2025).

4   According to OpenAI, the link sent to Li the day before he exfiltrated xAI's source code was simply a

5   "read-only cloud-based portal with HR-related paperwork." Dkt. No. 59 at 2. That unsupported

6   allegation is not in the Complaint, xAI is not aware of any facts to support it, and OpenAI does not

7   (because it cannot) point to any authority allowing the Court to consider this untested assertion. Nor, for

8   that matter, does OpenAI's unsupported allegation address the jubilant reaction of an OpenAI employee

9   to Li in secret Signal messages shortly after he purloined xAI's source code, nor does it explain why

10  most of the Signal messages between Li and OpenAI were suspiciously destroyed. Similarly, OpenAI

11  asserts that the unauthorized third party to whom Pham and Knight transferred xAI's information is "a

12  reputable forensics vendor hired by Pham and Knight's counsel to preserve, remove, and securely hold

13  the materials outside of their possession." *Id.* at 3. Yet again, the Complaint contains no such allegation.

14  xAI has not yet tested these factual assertions through discovery. OpenAI's unsupported assertion that

15  xAI "knew and obscured" the identity of the third party is completely false.

16      OpenAI asserts that the Court should infer the "common-sense notion" that the link to Li "was a

17  standard, read-only portal containing recruiting-related benefits information for Li to access." Dkt. No.

18  59 at 6. First, it is unclear why OpenAI believes Chen sending Li a link to a cloud storage device **one**

19  **day before Li exfiltrated xAI's source code** leads to such a conclusion as opposed to the equally (if

20  not more) plausible inference that it was part of OpenAI's scheme to steal xAI's trade secrets. If anything,

21  "common sense" suggests that when several xAI employees who just accepted offers at (or began work

22  at) OpenAI stole xAI's confidential information, including its entire codebase, during the same time and

23  had concerning, secret communications with OpenAI (which were later deleted), OpenAI was plausibly

24  in on it. In any event, as the nonmoving party, the Court **must** draw inferences in xAI's favor—not

25  OpenAI's. *See Russo*, 2025 WL 257607, at *3.[6] As OpenAI's own authority states: "if there are two

26

27  ---
    [6] To support its assertion that the Court can infer that Chen's link was innocuous, OpenAI cites
28  *CleanFish, LLC v. Sims*, 2020 WL 1274991 (N.D. Cal. Mar. 17, 2020). In *CleanFish*, the court held
    there were no allegations suggesting the defendant knew the information was improperly acquired from
    the plaintiff and that a competitor selling similar products, by itself, is insufficient to assert a trade secret

1    alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which

2    are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Tarantino*, 498 F.

3    Supp. 3d at 1173 (citation modified) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

4    Because xAI plausibly alleged OpenAI was directly involved in directing and encouraging xAI's former

5    employees to steal xAI's trade secrets, the Court should deny OpenAI's Motion.

6    **B.    OpenAI Used and Accessed xAI's Trade Secrets**

7    Under the DTSA, a defendant commits misappropriation in three ways: improper (1) acquisition;

8    (2) disclosure; or (3) use. *See Attia v. Google LLC*, 983 F.3d 420, 424 (9th Cir. 2020). OpenAI contends

9    xAI does not allege that OpenAI actually acquired, used, or disclosed xAI's trade secrets. OpenAI's

10   position mischaracterizes the Complaint. xAI alleges that OpenAI directed and encouraged xAI's former

11   employees to steal trade secrets, and OpenAI does not dispute that xAI alleged that its former employees,

12   including Li and Fraiture, acquired, used, and disclosed xAI's trade secrets. *See supra* n.2 and

13   accompanying text. Those allegations alone state a DTSA claim. *Id.* Regardless, xAI also does allege

14   facts showing actual acquisition, disclosure, and use by OpenAI.

15   "[T]here is no heightened standard of pleading in claims for misappropriation of trade secrets, a

16   plaintiff is simply required generally to aver misappropriation." *Coldwell Solar, Inc. v. ACIP Energy*

17   *LLC*, 2021 WL 3857981, at *11 (E.D. Cal. Aug. 30, 2021). "Considering the covert nature of trade secret

18   misappropriation, the exact means of knowing what was used is nearly impossible for Plaintiff to know

19   without discovery." *Applied Biological Lab'ys, Inc. v. Diomics Corp.*, 2021 WL 4060531, at *5 (S.D.

20   Cal. Sep. 7, 2021) (holding not feasible for plaintiff to "affirmatively demonstrate how Defendant used

21   its trade secrets"). "[A]s discovery has not yet commenced, it would be unreasonable to require a plaintiff

22   to demonstrate the precise ways in which Defendants may have used their trade secrets, given that

23   Defendants are the only ones who possess such information." *Autodesk, Inc. v. ZWCAD Software Co.*,

24   2015 WL 2265479, at *6 (N.D. Cal. May 13, 2015) (citation modified). For this reason, "a complaint

25   may . . . rely on circumstantial allegations of a defendant's misappropriation." *Yeiser Rsch. & Dev. LLC*

26   *v. Teknor Apex Co*., 281 F. Supp. 3d 1021, 1048 (S.D. Cal. 2017). These principles make clear that xAI

27

28   claim. *Id*. at *10. Not only has xAI alleged far more here, but also nothing in *CleanFish* suggests that a
     court may draw inferences in a moving party's favor under Rule 12(b)(6).

more than sufficiently alleges misappropriation by OpenAI.

The day before Li exfiltrated xAI's source code, OpenAI sent Li a cloud storage device link, and Chen messaged and met with Li almost immediately after Li's exfiltration. *See* Compl. ¶¶ 58-61. Li also stored xAI's stolen source code on a cloud account that was connected to ChatGPT, which gave OpenAI the ability to see and download xAI's source code. *Id*. ¶ 83. While only OpenAI knows if it actually acquired xAI's source code, OpenAI's actions in directing Li and OpenAI's ability to access the source code through either the link or Li's ChatGPT account provide circumstantial allegations showing OpenAI's actual acquisition of xAI's trade secrets.

OpenAI also acquired and used trade secrets stolen by Fraiture. OpenAI's sole argument for lack of use is that Fraiture deleted the source code before joining OpenAI. Dkt. No. 59 at 8. xAI, however, never alleges deletion by Fraiture. xAI alleges only that Fraiture "**claim[ed]** to have deleted the evidence from his personal device." Compl. ¶ 103 (emphasis added). Fraiture is an admitted liar. *Id.* xAI has no reason to believe that Fraiture actually deleted the stolen trade secrets. Drawing inferences in xAI's favor requires assuming Fraiture still has xAI's stolen trade secrets. As the *Cutera* court asked, if Fraiture did not intend to use the stolen trade secrets at OpenAI, "why else would [he] have copied this information in particular?" 444 F. Supp. 3d at 1207. The timing of Fraiture's offer, communications with Chen, theft of trade secrets, and continued employment at OpenAI all provide circumstantial allegations showing OpenAI's use and acquisition of the stolen trade secrets. *See Novation Sols., Inc*., 2023 WL 6373871, at *15 ("[T]here is no requirement at this phase of the proceedings that [plaintiff] allege exactly how the Defendants misappropriated the trade secrets.").

OpenAI further acquired and disclosed xAI's trade secrets through Pham and Knight. While employed by OpenAI and represented by OpenAI's counsel in this case, Pham and Knight disclosed xAI's information to an unauthorized third party. *See* Compl. ¶¶ 127-29. OpenAI takes issue with xAI not elaborating on the information Pham and Knight disclosed,[7] but that is due to Pham and Knight's refusal to identify the xAI information they retained and disclosed. *Id.* ¶ 127. Pham and Knight had access to xAI's trade secrets, and Pham lied to xAI about deleting all xAI information. *Id.* ¶¶ 123-24,

---

[7] OpenAI does not dispute the information stolen by Li and Fraiture constituted trade secrets.

127. There is thus a reasonable inference that the information they retained and disclosed contained xAI's trade secrets. *Cf. Tri Tool, Inc*., 2023 WL 7130610, at *6 (denying motion to dismiss DTSA claim when plaintiff alleged defendant stole hardware and files, even though "it 'remains unknown' whether the information on the stolen devices contains trade secrets").

OpenAI asserts xAI has not alleged that it is liable for Pham and Knight's actions. Dkt. No. 59 at 10. This is preposterous. xAI explicitly alleges that "OpenAI is vicariously liable for [their] conduct." Compl. ¶ 129. Pham and Knight are employed by OpenAI and represented by OpenAI's counsel. *See id.* ¶¶ 128-29. The Court may not ignore such allegations. *See Right to Life*, 158 F.4th at 1013.

Finally, OpenAI used xAI's data center trade secrets through the senior finance executive. OpenAI tries to avoid xAI's allegations by asserting that xAI is relying on the "inevitable disclosure" doctrine. Dkt. No. 59 at 11-12. OpenAI is again mistaken. xAI explicitly disclaims reliance on inevitable disclosure. *See* Compl. ¶ 120. Despite him having no experience with or knowledge of AI data centers but for exposure to xAI's trade secrets, OpenAI hired the executive for a data center–focused role. *See* Compl. ¶¶ 113, 116. Further, when confronted with his confidentiality obligations, the executive refused to confirm his compliance and instead used vulgarity, showing a complete disregard for his obligations. *Id.* ¶¶ 118-19. These circumstantial allegations support the inference the executive is using xAI's trade secrets at OpenAI. *See 3D Sys., Inc. v. Wynne*, 2022 WL 21697345, at *4 (S.D. Cal. Mar. 9, 2022) (holding plaintiff alleged misappropriation partly because defendants "had no previous experience working on 3D technology prior to joining" plaintiff); *Applied Biological Lab'ys, Inc*., 2021 WL 4060531, at *5 (considering allegations that defendant "had no prior experience in the field of antiviral nasal sprays before beginning its work" with plaintiff's former employee); *Yeiser Rsch. & Dev. LLC*, 281 F. Supp. 3d at 1047-49 (similar). The executive's behavior should also not be considered in a vacuum. It is part of the broader pattern of behavior, with several other individuals concededly stealing xAI's trade secrets at the same time they accepted roles at OpenAI. That broader pattern of behavior also bears significantly on the plausibility of the allegation that OpenAI was encouraging employees to bring xAI's trade secrets with them to OpenAI. *See Yeiser Rsch. & Dev. LLC*, 281 F. Supp. 3d at 1048.[8]

---

[8] Ruddarraju's attempt to access xAI's trade secrets while employed by OpenAI further shows that OpenAI's use and access of xAI's trade secrets was intentional. *See* Compl. ¶ 130.

1    Therefore, for this additional reason, the Court should deny OpenAI's Motion.

2    **II.    xAI's Complaint States an Unfair Competition Claim**

3    OpenAI does not dispute that xAI alleges sufficient facts to support its UCL claim. Instead,

4    OpenAI's sole UCL argument is that the claim is preempted by CUTSA. OpenAI is wrong because xAI's

5    claim is based on facts beyond trade secret misappropriation. *See Titan Glob. LLC v. Organo Gold Int'l,*

6    *Inc.*, 2012 WL 6019285, at *10 (N.D. Cal. Dec. 2, 2012) ("[A] claim is not preempted under § 3426.7 if

7    it is based upon alleged facts beyond trade secret misappropriation.").

8    A UCL claim is not preempted by CUTSA simply because of some overlap with trade secrets.

9    *See Henry Schein, Inc. v. Cook*, 2017 WL 783617, at *4 (N.D. Cal. Mar. 1, 2017) ("The Court

10   acknowledges that the last allegation relates to trade secrets. Nonetheless, the claim is not preempted

11   because it contains several allegations . . . that do not necessarily implicate [defendant's]

12   misappropriation of [plaintiff's] trade secrets"); *Aavid Thermalloy LLC v. Cooler Master Co*, 2018 WL

13   11348438, at *3 (N.D. Cal. June 15, 2018) (holding no preemption despite allegations "that amount to

14   misappropriation of trade secret information" because plaintiff "also alleges wrongful acts distinct from

15   such misappropriation"). Rather, courts analyze "whether, stripped of facts supporting trade secret

16   misappropriation, the remaining factual allegations can be reassembled to independently support other

17   causes of action." *Aavid Thermalloy,* 2018 WL 11348438, at *3. If a claim is based on a theory of

18   wrongdoing other than trade secrets, there is no preemption. *See Gardner Denver, Inc. v. Accurate Air*

19   *Eng'g, Inc.*, 2025 WL 1753503, at *10 (C.D. Cal. Feb. 20, 2005) (finding no preemption because of

20   "separate and independent conduct from the misappropriation of trade secrets or confidential information

21   in each of its common law claims"). Indeed, courts regularly hold that UCL claims are not preempted

22   by CUTSA when they are based on allegations beyond just trade secret misappropriation. *See, e.g.*,

23   *Henry Schein, Inc.*, 2017 WL 783617, at *4 (holding UCL claim not preempted despite allegations that

24   plaintiff's former employee downloaded confidential information for new employer because UCL claim

25   was also based on anticompetitive conduct related to diverting customers).[9] Here, xAI's UCL claim is

26   _____

27   [9] *See also BladeRoom Grp. Ltd. v. Facebook, Inc.*, 219 F. Supp. 3d 984, 995 (N.D. Cal. Feb. 10, 2017) ("Plaintiffs' UCL allegations—in particular those alleging Facebook's public disclosure of Plaintiffs'

28   technology—go well beyond those that constitute the acts of trade secret misappropriation."); *Copart, Inc. v. Sparta Consulting, Inc.*, 277 F. Supp. 3d 1127, 1160 (E.D. Cal. Sep. 26, 2017) ("Copart's unjust enrichment and unfair competition claims survive CUTSA preemption to the extent they rely on these

based on conduct beyond just trade secrets.

The UCL prohibits "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. xAI bases its UCL claim on allegations that "OpenAI's conduct is unfair because it is intended to destroy legitimate competition in the AI industry by neutralizing xAI's innovations that provide competitive differentiation from rivals and thus allow OpenAI to maintain its position in the AI industry." Compl. ¶ 166. xAI further alleges that "but for OpenAI's conduct, rival AI companies, including xAI, would be able to compete against OpenAI by developing superior technology and/or operations—without fear of losing those innovations to rivals—providing customers with additional and better choices for AI models." *Id.* ¶ 167. OpenAI did not just steal xAI's trade secrets, it sought to kill competition through a variety of means, including poaching xAI's essential employees and inducing them to lie and breach their agreements with xAI. *Id.* ¶¶ 10, 44, 45, 52, 132. OpenAI was not simply trying to benefit from xAI's information, it was engaging in "a strategic campaign to undermine xAI." *Id.* ¶ 2. These allegations do not rely on trade secret misappropriation but focus on OpenAI's anticompetitive conduct. *See Karma Auto. LLC v. Lordstown Motors Corp.*, 2022 WL 17886045, at *13 (C.D. Cal. Nov. 18, 2022) (holding no preemption when plaintiff alleged defendant engaged in scheme to poach employees and steal trade secrets and other information).

The Court must take xAI's plausible allegations as true and may not simply ignore them, as OpenAI suggests. Dkt. No. 59 at 15. Accordingly, for the same reasons the Court should reject OpenAI's DTSA arguments, it should also reject its UCL arguments.

## **CONCLUSION**

The Court should accordingly deny OpenAI's Motion to Dismiss.

---

other, non-[trade secret] theft related allegations"); *Compstar Ins. Servs., LLC v. Summit Specialty Ins. Sols. LLC*, 2025 WL 1674414, at *9 (C.D. Cal. May 6, 2025) (UCL claim not preempted because derivative of two non-preempted claims); *JEB Grp., Inc. v. San Jose,* 2020 WL 2790012, at *4 n.3, *5 (C.D. Cal. Mar. 31, 2020) (UCL claim not preempted because incorporated complaint's allegations including those not based on trade secret); *Xsolla (USA), Inc. v. Aghanim Inc.*, 2025 WL 1222196, at *20 (C.D. Cal. Apr. 28,2025) (UCL claim not preempted because did not plainly and exclusively allege only trade secret misappropriation).

Dated:  January 13, 2026                    **WINSTON & STRAWN LLP**


By: _/s/ LeElle B. Slifer_
    KATHI VIDAL (SBN: 194971)
    kvidal@winston.com
    MATTHEW R. MCCULLOUGH (SBN: 301330)
    mrmccullough@winston.com
    CARSON SWOPE (SBN: 353352)
    cswope@winston.com
    **WINSTON & STRAWN LLP**
    255 Shoreline Drive, Suite 520
    Redwood City, CA 94065
    Telephone: (650) 858-6500
    Facsimile: (650) 858-6550

    LEELLE B. SLIFER (*pro hac vice*)
    lslifer@winston.com
    NATHAN LEE (*pro hac vice*)
    nlee@winston.com
    JONATHAN HUNG (*pro hac vice*)
    johung@winston.com
    **WINSTON & STRAWN LLP**
    2121 N. Pearl Street, Suite 900
    Dallas, TX 75201
    Telephone: (214) 453-6500
    Facsimile: (214) 453-6400

    *Attorneys for Plaintiffs X.AI CORP. and X.AI LLC*