CAROLYN HOECKER LUEDTKE (SBN. 207976)
carolyn.luedtke@mto.com
DANE P. SHIKMAN (SBN. 313656)
dane.shikman@mto.com
GABRIEL M. BRONSHTEYN (SBN. 338011)
gabriel.bronshteyn@mto.com
JOSEPH N. GLYNN (SBN. 337652)
joseph.glynn@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-3089
Telephone:     (415) 512-4000
Facsimile:     (415) 512-4077

JONATHAN I. KRAVIS (admitted *pro hac vice*)
jonathan.kravis@mto.com
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue, NW, Suite 500E
Washington, D.C. 20001-5369
Telephone:     (202) 220-1100
Facsimile:     (202) 220-2300

Attorneys for Defendants OpenAI, Inc., OpenAI Global, LLC, and OpenAI OpCo, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| X.AI CORP. and X.AI LLC,<br><br>  Plaintiffs,<br><br>  vs.<br><br>OPENAI, INC., OPENAI GLOBAL, LLC, and OPENAI OPCO, LLC,<br><br>  Defendants. | Case No. 3:25-cv-08133-RFL<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:   February 3, 2026<br>Time:  10:00 am<br><br>Judge: Honorable Rita F. Lin |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ...................................................................................................................... 1

    A. xAI Does Not State a Claim for Trade Secret Misappropriation ............................. 1

        1. xAI's Inducement Theory Fails as a Matter of Law ................................... 2

        2. xAI Does Not Plausibly Allege Misappropriation by OpenAI ..................... 4

    B. The Court Should Dismiss xAI's Unfair Competition Claim ................................. 9

III. CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*3D Sys., Inc. v. Wynne*,
   2022 WL 21697345 (S.D. Cal. Mar. 9, 2022) ............................................................................ 9

*Alert Enter. v. Rana*,
   2023 WL 2541353 (N.D. Cal. Mar. 16, 2023) ..................................................................... 2, 3, 9

*Alvarez v. Chevron Corp.*,
   656 F.3d 925 (9th Cir. 2011) .................................................................................................. 10

*Apple Inc. v. Rivos, Inc*,
   2023 WL 5183034 (N.D. Cal. Aug. 11, 2023) ......................................................................... 7

*Applied Biological Lab'ys, Inc. v. Diomics Corp.*,
   2021 WL 4060531 (S.D. Cal. Sept. 7, 2021) ............................................................................ 9

*Arcell v. Google LLC*,
   744 F. Supp. 3d 924 (N.D. Cal. 2024) (Lin, J.) ........................................................................ 4

*Arthur J. Gallagher & Co. v. Tarantino*,
   498 F. Supp. 3d 1155 (N.D. Cal. 2020) .............................................................................. 7, 10

*Auris Health, Inc. v. Noah Med. Corp.*,
   2023 WL 7284156 (N.D. Cal. Nov. 3, 2023) ........................................................................... 5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................................................. 4, 5

*BladeRoom Grp. Ltd. v. Facebook, Inc.*,
   219 F. Supp. 3d 984 (N.D. Cal. 2017) .................................................................................... 10

*Cadence Bank v. Heritage Fam. Offs. LLP*,
   2024 WL 962174 (D. Ariz. Mar. 6, 2024) ................................................................................ 4

*Citcon USA, LLC v. RiverPay Inc.*,
   2019 WL 917056 (N.D. Cal. Feb. 25, 2019) ......................................................................... 3, 4

*CleanFish, LLC v. Sims*,
   2020 WL 1274991 (N.D. Cal. Mar. 17, 2020) ......................................................................... 5

*Compstar Ins. Servs., LLC v. Summit Specialty Ins. Sols. LLC*,
   2025 WL 1674414 (C.D. Cal. May 6, 2025) .......................................................................... 10

*Copart, Inc. v. Sparta Consulting, Inc.*,
   277 F. Supp. 3d 1127 (E.D. Cal. 2017) .................................................................................. 10

*Cutera, Inc. v. Lutronic Aesthetics, Inc.*,
  444 F. Supp. 3d 1198 (E.D. Cal. 2020) .................................................................................. 3, 7

*Elko, Inc. v. WTH Com. Servs., LLC*,
  2023 WL 6141623 (D. Nev. Sep. 20, 2023) ................................................................................ 4

*Flexport, Inc. v. Freightmate AI, Inc.*,
  No. 3:25-cv-02500-RFL, 2025 WL 2399666 (N.D. Cal. July 10, 2025) .......................... *passim*

*Henry Schein, Inc. v. Cook*,
  2017 WL 783617 (N.D. Cal. Mar. 1, 2017) ............................................................................... 10

*JEB Grp., Inc. v. San Jose*,
  2020 WL 2790012 (C.D. Cal. Mar. 31, 2020) ........................................................................... 10

*Karma Auto. LLC v. Lordstown Motors Corp.*,
  2022 WL 17886045 (C.D. Cal. Nov. 18, 2022) ........................................................................ 10

*Snapkeys, Ltd. v. Google LLC*,
  442 F. Supp. 3d 1196 (N.D. Cal. 2020) .................................................................................... 10

*SOAProjects, Inc. v. SCM Microsystems, Inc.*,
  2010 WL 5069832 (N.D. Cal. Dec. 7, 2010) ........................................................................... 4, 8

*Tri Tool, Inc. v. Hales*,
  2023 WL 7130610 (E.D. Cal. Oct. 30, 2023) ........................................................................... 3, 4

*Xsolla (USA), Inc. v. Aghanim Inc.*,
  2025 WL 1222196 (C.D. Cal. Apr. 28, 2025) ........................................................................... 10

*Yeiser Rsch. & Dev. LLC v. Teknor Apex Co.*,
  281 F. Supp. 3d 1021 (S.D. Cal. 2017) ....................................................................................... 9

**FEDERAL STATUTES**

18 U.S.C. § 1839(5)(A)-(B) ................................................................................................................ 2

**STATE STATUTES**

Cal. Bus. & Prof. Code § 16600 ....................................................................................................... 10

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6) ....................................................................................................................... 4

I.  INTRODUCTION

xAI's opposition confirms the fatal defect in its First Amended Complaint ("FAC"): xAI has not pled any facts to support a claim for misappropriation against OpenAI.  This is not a case against Xuechen Li, Jimmy Fraiture, or any of the other former xAI employees named in the FAC.  It is a case against OpenAI.  Yet xAI never alleges that OpenAI actually acquired or used xAI's trade secrets, as required under the DTSA.  Nor does xAI allege that any former xAI employee used xAI trade secrets within the scope of employment at OpenAI, as required to state a claim based on vicarious liability.  That is because xAI simply cannot do so.  So, instead, xAI urges this Court to infer OpenAI's liability from the mere fact that OpenAI offered employment to individuals who xAI alleges took trade secrets, with no plausible allegations of acquisition or use by OpenAI.  The law forecloses that theory.

Unable to plead acquisition or use by OpenAI, xAI attempts to bypass the statutory elements by asserting that OpenAI "induced" or "directed" those individuals' alleged misappropriation.  xAI offers no allegations supporting its speculation.  And the law is clear that xAI's "inducement" theory is not an independent basis for liability under the DTSA.  xAI must plead acquisition or use of its trade secrets by OpenAI to state a claim.  It has not done so.  Its claim must be dismissed.

xAI's unfair competition claim fares no better.  Because xAI's conclusory assertions of "unfairness" flow entirely from its allegations of misappropriation, the UCL claim is superseded by CUTSA and therefore must be dismissed.

The FAC should be dismissed in its entirety.

II.  ARGUMENT

A.  xAI Does Not State a Claim for Trade Secret Misappropriation

xAI's claim for trade secret misappropriation against OpenAI must be dismissed because xAI never alleges the requisite acquisition or use of xAI's trade secrets by or at OpenAI.  This Court's decisions make clear that xAI cannot state a claim merely by alleging that OpenAI recruited and communicated with individuals who allegedly took trade secret documents, absent

specific allegations supporting a reasonable inference of transfer to or use of those files by OpenAI, allegations that are not present here.

### 1.     xAI's Inducement Theory Fails as a Matter of Law

Recognizing that it failed to plead non-conclusory facts supporting a cognizable theory of misappropriation, xAI focuses on its illegitimate inducement theory.  As a threshold matter, xAI has not plausibly alleged that OpenAI directed anybody to take trade secrets.  But xAI's theory also fails as a matter of law.  The law is clear that a plaintiff cannot skirt the elements of misappropriation merely by alleging that a defendant "direct[ed] and encourage[d] a plaintiff's employees to steal trade secrets."  *Contra* Opp. at 6.  None of the cases xAI cites say otherwise.

To state a claim for misappropriation against OpenAI, xAI must plead "acquisition," "use" or "disclosure" of the trade secrets *by OpenAI*.  *See* 18 U.S.C. § 1839(5)(A)-(B); *Flexport, Inc. v. Freightmate AI, Inc.*, No. 3:25-cv-02500-RFL, 2025 WL 2399666, at *1 (N.D. Cal. July 10, 2025).  To state a vicarious liability claim for misappropriation against OpenAI based on the conduct of xAI's former employees, xAI must plead that the former employees committed misappropriation "within the scope of employment" at OpenAI "[and] at least in part[] to benefit" OpenAI.  *Flexport*, 2025 WL 2399666, at *4 (citation omitted).  That requires plausibly alleging that the employee actually "*used* the trade secret files in the course of his employment at" OpenAI.  *Id.* (emphasis added); *Alert Enter. v. Rana*, 2023 WL 2541353, at *3 (N.D. Cal. Mar. 16, 2023).  Those requirements flow directly from the statutory definition of misappropriation as "acquisition" or "use" by the defendant.  *See* 18 U.S.C. § 1839(5)(A)-(B).

xAI's "inducement" theory flouts those requirements.  OpenAI's hiring of a former xAI employee who allegedly took trade secrets cannot support a claim of misappropriation absent allegations of acquisition or use by or at *OpenAI*, even if xAI pleads the employee acted for OpenAI's benefit or at OpenAI's direction.  This Court was clear on this in *Flexport*:  "[t]he *future* employer of a person who steals a company's trade secrets for the benefit of the future employer is not liable under respondeat superior, absent an allegation the future employer subsequently *used* the trade secrets or the wrongdoer used the trade secrets once he actually became employed." 2025 WL 2399666, at *4 (emphasis in original) (quoting *Alert Enter.*, 2023 WL 2541353, at *3).

For that reason, this Court granted a motion to dismiss in *Alert Enterprise* despite allegations that the former employee was acting as an agent of the new employer, "repeatedly met with" the new employer and "conspired to steal confidential trade secret information" from plaintiff, and then proceeded to steal thousands of files and destroy evidence of his actions. 2023 WL 2541353, at *1. xAI's efforts to distinguish those cases by arguing that they lacked strong allegations of direction thus miss the point. *Flexport* and *Alert Enterprise* articulate the *legal* test required by the statute: allegations of actual "use" of the trade secrets by or at the defendant are required to state a claim. Pleading direction by the defendant cannot short-circuit the statutory elements.

xAI's cases do not support its alternative theory. *None* of those cases say that misappropriation claims may proceed based on bare allegations that defendant directed a third party to take trade secrets, without the required acquisition or use of those trade secrets by the defendant. To the contrary, those cases reaffirm the statutory requirements. For example, the court in *Citcon USA, LLC v. RiverPay Inc.*, was clear that misappropriation may be established only "via wrongful acquisition or wrongful use" by the defendant. 2019 WL 917056, at *4 (N.D. Cal. Feb. 25, 2019). Similarly, the court in *Tri Tool, Inc. v. Hales*, denied the motion to dismiss because plaintiff had plausibly alleged facts showing "that defendant . . . *acquired* plaintiff's" trade secrets, distinguishing from cases where "barebones accusation" of misappropriation was "insufficient because it relied exclusively on information and belief." 2023 WL 7130610, at *6 (E.D. Cal. Oct. 30, 2023) (emphasis added) (citation omitted).

Although these cases contain allegations that the defendant directed the misappropriation, xAI misleads by suggesting that those allegations alone were sufficient. The ultimate question in xAI's cited cases was the one required by the statute: whether plaintiff plausibly alleged facts from which the court could infer that the defendant acquired or used the trade secret. Accordingly, these cases necessarily featured additional allegations from which the court could reasonably infer the alleged acquisition or use *by the defendant*. For instance, in *Cutera, Inc. v. Lutronic Aesthetics, Inc.*, the court cited evidence of use by defendant—that defendant's "employees have, in fact, deployed a sales method claimed by [plaintiff] as a trade secret." 444 F. Supp. 3d 1198,

1207-08 (E.D. Cal. 2020).[1]  xAI's cited cases demonstrate that its conclusory inducement theory—without allegations that OpenAI acquired or used xAI trade secrets—fails to state a claim.

### 2.  xAI Does Not Plausibly Allege Misappropriation by OpenAI

xAI offers no plausible allegations that OpenAI acquired or used its trade secrets, as required by the DTSA.  Nor does xAI even offer allegations that could plausibly support the (legally inadequate) inference that OpenAI directed anybody to take its trade secrets.  Instead, xAI urges this Court to infer misappropriation by OpenAI based only on allegations that its former employees took its trade secrets and that OpenAI recruited and thus communicated with those individuals.  That inference would dramatically expand the scope of third-party misappropriation liability.  It is unreasonable as a matter of law and foreclosed by the statutory text and precedent.

The many flaws in xAI's defense of its misappropriation allegations flow from a common source:  xAI's failure to faithfully apply the standard for evaluating Rule 12(b)(6) motions.  It is revealing that in reciting that "familiar" standard (Opp. at 5), xAI omits the essential principles introduced by *Iqbal* and *Twombly*—namely, that a complaint must "plead[] facts, as opposed to conclusory allegations," and those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Arcell v. Google LLC*, 744 F. Supp. 3d 924, 929 (N.D. Cal. 2024) (Lin, J.) (citations omitted).[2]  The Court need not credit "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.* at 930 (citation omitted).

---

[1] *See, e.g.*, *Tri Tool, Inc.*, 2023 WL 7130610, at *6 (plaintiff alleged that former employee had spent seven months diverting business to defendant, including after joining defendant, and relied on stolen customer information to solicit customers); *Citcon*, 2019 WL 917056, at *2 (plaintiff alleged that the former employees "disclosed" source code, designs, and other trade secrets to the competitor defendant "for use in [its] products" and to "unfairly solicit [its] customers"); *SOAProjects, Inc. v. SCM Microsystems, Inc.*, 2010 WL 5069832, at *11 (N.D. Cal. Dec. 7, 2010) (plaintiff alleged defendant "acquired or is using" trade secrets where defendant stopped using consultant plaintiff's services after hiring former employee who exfiltrated files and then contacted plaintiff clients while working for defendant); *Elko, Inc. v. WTH Com. Servs., LLC*, 2023 WL 6141623, at *5-6 (D. Nev. Sep. 20, 2023) (defendant "targeted [plaintiff's] customer base by contacting them and pressuring them to switch providers, using confidential information about those customers"); *Cadence Bank v. Heritage Fam. Offs. LLP*, 2024 WL 962174, at *9 (D. Ariz. Mar. 6, 2024) (defendant used trade secrets to poach customers from plaintiff).

[2] Ironically, xAI accuses OpenAI of "disregarding Rule 12(b)(6)'s basic tenets," Opp. at 9-11, yet its opposition is replete with factual assertions from outside the FAC.  *See id.* at 3-4, 8, 10, 12.

It is helpful to get into the precise allegations in the FAC rather than the sweeping characterizations of them in xAI's opposition.

**Xuechen Li.**  xAI largely focuses on Li's alleged actions.  First, xAI does not contest that it cannot assert vicarious liability for Li's actions because he never worked at OpenAI.  Mot. at 5.

Second, xAI does not allege that Li transferred any alleged trade secrets to OpenAI.  xAI instead urges this Court to infer that OpenAI acquired trade secrets from Li based on speculative insinuations.  xAI emphasizes that OpenAI's recruiter "sent Li a message indicating a link to a cloud storage location was sent to Li," and that "[t]he very next day, Li stole the entire xAI source code base and stored it in a location that OpenAI could access through its ChatGPT service."  Opp. at 8.  xAI obfuscates.  Per xAI's own allegations, the "cloud storage location" sent to Li in the midst of his recruiting communications was *not* the *personal* cloud storage account to which Li allegedly uploaded the source code.  FAC ¶¶ 58-59.  xAI's own allegations thus refute its implausible inference of acquisition, confirming that Li uploaded the source code to a different location that had nothing to do with OpenAI on a different day.  As xAI never contests, that Li allegedly linked his cloud account to ChatGPT's consumer platform, which is used by millions of people, does nothing to bring its assertion of acquisition by OpenAI "above the speculative level." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While xAI may rely on circumstantial allegations and allegations on information and belief, it must still supply concrete factual allegations that "make[] the inference or culpability plausible," as xAI itself acknowledges.  Opp. at 7 (quoting *Auris Health, Inc. v. Noah Med. Corp.*, 2023 WL 7284156, at *4 (N.D. Cal. Nov. 3, 2023)).  Here, xAI offers only speculation atop conjecture—no allegations of transfer or receipt.

Nor does xAI's allegation that Li was talking to an OpenAI recruiter during the time he allegedly misappropriated source code support an inference that OpenAI acquired xAI's trade secrets.  A recruiter sending a job candidate a link is normal.  So is a recruiter talking to a job candidate.  *See CleanFish, LLC v. Sims*, 2020 WL 1274991, at *10 (N.D. Cal. Mar. 17, 2020) (dismissing allegations that defendants "contacted and continuously communicated with"

---

OpenAI's motion may be granted based only on the inadequate allegations of the FAC.

plaintiff's employee). That one of the recruiter's messages allegedly said "nw!"[3]—the only message that xAI chose to quote, with no context—does not supply any inference that trade secrets were transferred. In truth, xAI's allegations concerning Li amount to the following: OpenAI communicated with Li in the course of recruiting him, and during that time Li took xAI's trade secrets. That is not enough. To infer acquisition by OpenAI under these circumstances would flout this Court's case law and threaten to expand liability for misappropriation any time a new employer recruits someone who turns out to have misappropriated trade secrets. As this Court has explained, even when a former employee who took trade secrets *does* start work at the new employer, pleading misappropriation requires alleging that "the future employer subsequently used the trade secrets or the wrongdoer used the trade secrets once he actually became employed." *Flexport*, 2025 WL 2399666, at *4 (citation omitted). xAI offers nothing close to that. xAI does not cite any case inferring misappropriation against a competitor under these circumstances— particularly where the former employee *never joined* the competitor. xAI's cases not only feature former employees who started work at defendant, but additional allegations evidencing defendant's use or acquisition of the trade secrets. *See supra* Part. A.1.

xAI's opposition conspicuously drops its allegation that OpenAI acquired xAI information at the purported July 13 presentation (which OpenAI has denied occurred at all). If those spurious allegations are even still in play, xAI has no response to the fact that xAI failed to plead that the purported July 13 presentation contained trade secrets, or that OpenAI would have any reason to know that the alleged presentation contained trade secrets. Mot. at 6-7. Nor does xAI contest that it never pled that Li ever transferred the *other* slide deck to OpenAI. *Id.* at 7.

xAI's theory that OpenAI directed Li's conduct, which does not state a claim regardless, is entirely conclusory, and not supported by any factual allegations. The mere allegation that OpenAI communicated with Li in the course of a job application process does not support an

---

[3] After initially claiming in the FAC that the recruiter responded with something that "equated to 'no way!'" (FAC ¶ 61), xAI backpedals in its opposition that the message said only "nw!" (Opp. at 2). xAI offers no context to show the recruiter meant "no way" rather than its commonly understood meaning of "no worries." In any event, neither shows misappropriation.

inference that OpenAI directed Li to take trade secrets.  That is pure conjecture, and it is not to be credited.  *See Arthur J. Gallagher & Co. v. Tarantino*, 498 F. Supp. 3d 1155, 1173 (N.D. Cal. 2020)  (dismissing allegations that competitor gave "directive to take the trade secrets" where plaintiff pled "no specific facts to support" that conclusion, given that employees "could well have taken the trade secrets" on their own, "even if [the competitor] ultimately benefitted").

    ***Jimmy Fraiture.***  Nor does xAI allege that Jimmy Fraiture "used the trade secrets" he allegedly took "once he actually became employed." *Flexport*, 2025 WL 2399666, at *4 (citation omitted).  In fact, xAI does not even allege that Fraiture possessed any xAI trade secrets at any time after he started at OpenAI.  xAI now speculates that Fraiture may have lied about deleting the files he allegedly downloaded, but xAI *did not plead that*, and did not plead that he retained any trade secrets.  The court cannot credit allegations that do not exist.  Moreover, it is well established that a former employee's "mere possession" of a former employer's information "does not support an inference that he has disclosed or used the information." *Apple Inc. v. Rivos, Inc*, 2023 WL 5183034, at *7 (N.D. Cal. Aug. 11, 2023).  xAI's claim with respect to Fraiture is even weaker, because xAI does not allege that he still possesses any xAI trade secrets.  xAI cites to *Cutera*, but that case undermines xAI's theory.  That court acknowledged that "mere possession" is "not sufficient to establish misappropriation," and thus emphasized allegations that the defendant "ha[d], in fact, deployed a sales method claimed by [plaintiff] as a trade secret" to support the inference that the trade secret had actually been used by defendant.  444 F. Supp. 3d at 1207-08.

    xAI's conjecture that OpenAI directed Fraiture to take trade secrets is similarly unsupported.  That OpenAI recruited someone who allegedly took trade secrets does not de facto support an inference that OpenAI directed that conduct.  *See Tarantino*, 498 F. Supp. 3d at 1173.

    ***Hieu Pham and Ethan Knight.***  xAI's allegations with respect to Pham and Knight are weaker still.  xAI offers the empty assertion that it is "preposterous" that OpenAI would not be vicariously liable for Pham and Knight's conduct, Opp. at 13, yet xAI entirely ignores the applicable legal standard set out by this Court in *Flexport* for asserting vicarious liability in this context.  As with Fraiture, xAI offers no allegations that Pham and Knight even possess xAI trade secrets, much less that they "used the trade secrets once [they] actually became employed" by

OpenAI for its benefit. *See Flexport*, 2025 WL 2399666, at *4 (citation omitted).[4] OpenAI thus cannot be liable for their alleged past retention of xAI information. Nor can OpenAI be liable for their alleged disclosure of xAI information to a third party that is *not* OpenAI, unless xAI pleads facts showing that such disclosure was effectuated "within the scope of [their] employment" or "to benefit" OpenAI. *See id.* xAI does not contest that it did not plead a single fact to that effect. No inference of vicarious liability is possible when xAI chose not to allege to whom Pham and Knight allegedly disclosed the files and under what circumstances. Nor does xAI contest that there exists no basis for holding OpenAI liable for third parties' conduct just because they retained the same lawyers. xAI cites no case approving of vicarious liability under remotely similar circumstances.

*Uday Ruddarraju.* xAI offers no argument or authority whatsoever to defend its allegations with respect to Ruddarraju. As OpenAI explained, there can be no liability for an alleged *attempted* access because the DTSA requires "acquisition of a trade secret." Mot. at 11. xAI has no answer. Nor does xAI argue that Ruddarraju's alleged maintaining the link itself could be actionable, given that xAI never alleges the link itself is a trade secret. *See id.*; FAC ¶ 130.

*Senior Finance Executive and Other Unnamed Individuals.* xAI's opposition disclaims reliance on the inevitable disclosure doctrine, Opp. 13, yet continues to rely on it. xAI cannot state a claim based on OpenAI's hiring of an xAI employee with past access to xAI information. *See* Mot. at 11-12; *SOAProjects*, 2010 WL 5069832, at *11 (rejecting misappropriation claim against competitor where employee "allegedly took trade secrets and is now performing the same work"). xAI's allegations are even weaker than those rejected in *SOAProjects*, because it never alleges that these employees retained any xAI information, much less that they used it at OpenAI.

xAI's allegation that the finance executive lacked prior experience in data center operations does not suffice to support a misappropriation claim against OpenAI. xAI's cases do not say otherwise. Those courts found that lack of prior knowledge can support an inference of misappropriation "*when the defendant develops a similar product*" based on the allegedly

---

[4] xAI is wrong to assert that OpenAI does not dispute that information allegedly retained by Fraiture and Li constitutes a trade secret. xAI alleged that, so OpenAI takes it as true only in moving to dismiss.

misappropriated information. *Applied Biological Lab'ys, Inc. v. Diomics Corp.*, 2021 WL 4060531, at *2 (S.D. Cal. Sept. 7, 2021) (emphasis added) (noting allegations that defendant used "information in [p]laintiff's encrypted repositories to develop" a similar product).[5]  In stark contrast to those cases, here xAI offers nothing but the repeated reference to the senior finance executive's alleged use of vulgarity.  *See* FAC ¶ 118.  No authority supports misappropriation, much less vicarious liability, on those vacuous allegations.

### B.     The Court Should Dismiss xAI's Unfair Competition Claim

xAI's UCL claim is superseded by CUTSA because no "viable" claim remains "after removing the trade secret facts." *Alert Enter.*, 2023 WL 2541353, at *6.  xAI does not even bother to defend much of its UCL claim.  xAI abandons its allegations under the UCL's unlawful prong (FAC ¶¶ 162-64) and effectively admits those allegations are superseded by CUTSA.  Opp. at 14.

xAI focuses instead on trying to salvage its claim under the UCL's unfair prong.  But xAI's argument that it has pled "conduct beyond just trade secrets" is unsupported by the very allegations it cites to prove that point.  xAI quotes—selectively—its references to competitive harm in paragraphs 166 and 167, but both paragraphs attribute anticompetitive effects only to trade secret misappropriation, described as "neutralizing xAI's innovations," "unfair advantages *based on the innovations of xAI*," "fear of losing . . . innovations to rivals," and "acquir[ing] and then incorporat[ing] xAI's competitive differentiators."  FAC ¶¶ 166, 167 (emphasis added).

xAI boldly asserts that it alleged alternative theories of unfair competition based on "poaching xAI's essential employees and inducing them to lie and breach their agreements with xAI," Opp. at 15, but those allegations are nowhere to be found in the FAC.  The allegations xAI cites for this proposition either address trade secret misappropriation directly, *see* FAC ¶ 44 (describing "poaching of xAI employees with access to the xAI Confidential Information most critical to xAI's technical and operational innovations and using those employees to steal xAI's

---

[5] *Yeiser Rsch. & Dev. LLC v. Teknor Apex Co.*, 281 F. Supp. 3d 1021, 1048 (S.D. Cal. 2017) (similar); *3D Sys., Inc. v. Wynne*, 2022 WL 21697345, at *4 (S.D. Cal. Mar. 9, 2022) (emphasizing that defendant filed multiple patents "contain[ing] trade secrets which the [former employees] could only have acquired during their employment" with plaintiff).

Confidential Information"), ¶ 45 (same), ¶ 132 (same), or do not reference any other actionable obligations beyond breach of confidentiality (which is plainly based on the same nucleus of facts as misappropriation), *see id.* ¶ 10 (alleging OpenAI "induce[d] [xAI] employees to breach their confidentiality and other obligations to xAI" without specifying other obligations), ¶ 52 ("xAI wanted to retain Li" and "awarded Li substantial equity"). To the extent xAI argues that OpenAI induced a breach of employment agreements by hiring xAI employees, that theory is foreclosed by Cal. Bus. & Prof. Code § 16600, which invalidates agreements restricting employee mobility. *See* Mot. at 15 (citing *Tarantino*, 498 F. Supp. 3d at 1177 (dismissing intentional interference and derivative UCL claims because contractual restriction was unenforceable under § 16600)); *see Alvarez v. Chevron Corp.*, 656 F.3d 925, 933 (9th Cir. 2011) ("[C]ourts may not use the unfair competition law to condemn actions the Legislature permits." (citation omitted)).

Once trade-secret allegations are "removed," what remains are vague and conclusory references to competition and a "campaign to undermine xAI." FAC ¶ 2. That does not suffice to state a claim under the UCL's unfair prong. xAI does not address *Snapkeys, Ltd. v. Google LLC* (Mot. at 15), which makes clear that a UCL unfairness claim must be dismissed if, after stripping away trade secret allegations, only "conclusory allegations of competitive harm" remain. 442 F. Supp. 3d 1196, 1209-10 (N.D. Cal. 2020). None of xAI's cases are to the contrary—each case involved independent non-trade secret conduct beyond conclusory assertions of unfair competition.[6] Not so here. The Court should follow *Snapkeys* and dismiss xAI's UCL claim.

## III.   CONCLUSION

Defendants respectfully request that the case be dismissed in its entirety with prejudice.

---

[6] *See Compstar Ins. Servs., LLC v. Summit Specialty Ins. Sols. LLC*, 2025 WL 1674414, at *9 (C.D. Cal. May 6, 2025) (breach of fiduciary duty); *Xsolla (USA), Inc. v. Aghanim Inc.*, 2025 WL 1222196, at *12 (C.D. Cal. Apr. 28, 2025) (misleading use of plaintiff's name); *Karma Auto. LLC v. Lordstown Motors Corp.*, 2022 WL 17886045, at *13 (C.D. Cal. Nov. 18, 2022) (sabotaging a project); *JEB Grp., Inc. v. San Jose,* 2020 WL 2790012, at *4 & n.3, *5 (C.D. Cal. Mar. 31, 2020) (improper solicitation of clients); *Henry Schein, Inc. v. Cook*, 2017 WL 783617, at *4 (N.D. Cal. Mar. 1, 2017) ("deceiving [plaintiff's] customers"); *BladeRoom Grp. Ltd. v. Facebook, Inc.*, 219 F. Supp. 3d 984, 995-96 (N.D. Cal. 2017) ("public disclosure of Plaintiffs' technology"); *Copart, Inc. v. Sparta Consulting, Inc.*, 277 F. Supp. 3d 1127, 1160 (E.D. Cal. 2017) ("fraud" and "negligence").

| | | |
|---|---|---|
| DATED: January 20, 2026 | | MUNGER, TOLLES & OLSON LLP |

By:     */s/ Carolyn Hoecker Luedtke*
           CAROLYN HOECKER LUEDTKE
           JONATHAN I. KRAVIS
           DANE P. SHIKMAN
           GABRIEL M. BRONSHTEYN
           JOSEPH N. GLYNN

Attorneys for Defendants OpenAI, Inc., OpenAI Global, LLC, and OpenAI OpCo, LLC