UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| X.AI CORP., et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>OPENAI, INC., et al.,<br><br>        Defendants. | Case No. 25-cv-08133-RFL<br><br>**NOTICE OF QUESTIONS FOR HEARING**<br><br>Re: Dkt. No. 59 |

    Having reviewed the briefing on OpenAI's motion to dismiss, the Court is of the tentative view that the motion should be granted in full with leave to amend. Below is a summary of the Court's tentative views, which are provided to focus the hearing set for February 3, 2026, at 10:00 a.m., in Courtroom 15 at the San Francisco Courthouse:

    "The [DTSA] provides the following three definitions of misappropriation: (1) the acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; (2) the disclosure of a trade secret without the owner's consent; and (3) the use of a trade secret without the owner's consent." *Attia v. Google LLC*, 983 F.3d 420, 424 (9th Cir. 2020) (citations and quotation marks omitted). The FAC does not allege facts sufficient to support a plausible inference that OpenAI itself directly acquired, disclosed, or used xAI's trade secrets. It also does not allege facts sufficient to support a plausible inference that OpenAI directed or induced xAI's former employees to do so. Though a number of xAI's former employees allegedly downloaded source code or other confidential materials prior to their departure, there is no indication that OpenAI told them to do so or otherwise encouraged such actions. For example, xAI alleges that Li allegedly downloaded its source code during the time when he was being recruited by OpenAI; OpenAI's recruiter

communicated with Li over Signal and using cloud-based storage; and the recruiter had a positive reaction ("nw!") to an unknown statement by Li at around the time of one of Li's downloads.  (*See* FAC ¶¶ 58-61.)  That is not sufficient to support a plausible inference that OpenAI encouraged Li to steal source code.  Similarly, while xAI alleges that Li disclosed its trade secrets to OpenAI during a presentation that he gave in the interview process, no facts are alleged from which one could plausibly infer that OpenAI knew the information was an xAI trade secret or had been improperly acquired.  (*See id.* ¶ 55.)  The Court is therefore inclined to reject a theory of direct liability.

As for vicarious liability, "[t]he future employer of a person who steals a company's trade secrets for the benefit of the future employer is [not] liable under respondeat superior, absent an allegation the future employer subsequently used the trade secrets or the wrongdoer used the trade secrets once he actually became employed." *Flexport, Inc. v. Freightmate AI, Inc.*, No. 25-cv-02500-RFL, 2025 WL 2399666, at *4 (N.D. Cal. July 10, 2025) (citation and emphasis omitted).  The use must be "within the scope of employment [and] at least in part[] to benefit the employer, though the employer may forbid it."  *See id.* (citation omitted).

The FAC does not allege facts sufficient to support a plausible inference that OpenAI used xAI's trade secrets, or that the employees in question used xAI's trade secrets within the scope of their employment and to benefit OpenAI once they were actually employed by OpenAI:

- Li never worked at OpenAI.
- The unnamed finance executive's hostility to xAI's request for a certification during his departure is not sufficient to support a plausible inference that he subsequently used xAI trade secrets at OpenAI.  Employees may have many reasons for being hostile to their former employer during their departure.
- The allegations don't permit a reasonable inference that Pham or Knight misappropriated trade secrets (as opposed to non-trade secret information) or that their sharing of the information with an unnamed third party was within the scope of their employment and done to benefit OpenAI.

2

- Ruddarraju allegedly attempted to access xAI's information but did not succeed.
- There are no allegations about any specific actions by Pothanis or Dalton.
- As for Fraiture, allegedly, one day after he accepted his offer from OpenAI and about a month before he began working there in a similar role, he airdropped xAI's source code onto his personal device and stole a video of Elon Musk discussing nonpublic information about the company. Without more, however, these allegations are insufficient to support a plausible inference that he actually used the source code or video after he arrived at OpenAI. *See, e.g.*, *Alert Enter., Inc. v. Rana*, No. 22-cv-06646-JSC, 2023 WL 2541353, at *3 (N.D. Cal. Mar. 16, 2023). If the Court were to adopt such a view, a future employer would automatically face potential trade secret liability every time it hired someone who, without its knowledge beforehand or ratification afterwards, had improperly taken confidential information from their former employer on the way out the door, even if there is no indication that the information was actually used in the subsequent job. That is a hair's breadth away from imposing liability based on mere possession.

The Court is therefore also inclined to reject a theory of vicarious liability.

Turning to the UCL claim, the CUTSA "provides the exclusive civil remedy for conduct falling within its terms and supersedes other civil remedies based upon misappropriation of a trade secret." *See Mattson Tech., Inc. v. Applied Materials, Inc.*, No. 23-cv-06071-SVK, 2024 WL 3558849, at *6 (N.D. Cal. July 25, 2024) (citations and emphasis omitted). CUTSA preemption therefore bars the UCL claim. The unlawful prong claim is based on a DTSA violation, which is necessarily a claim arising from alleged trade secret misappropriation. Likewise, the unfair prong claim stems from anticompetitive harm flowing from OpenAI's alleged misappropriation of xAI's trade secrets. While xAI argues that the anticompetitive harm also derives from OpenAI's poaching of its employees, the poaching allegations all focus on poaching in service of acquiring xAI's trade secrets and do not identify any other reason why the hiring of those employees was anticompetitive. (*See, e.g.*, FAC ¶ 44.) And, in detailing why

OpenAI's conduct qualifies as unfair under the UCL, the FAC relies solely on misappropriation of xAI's confidential information as the source of the alleged anticompetitive harm. (*See id.* ¶¶ 166-68.)

The Court requests that the parties be prepared to address the Court's tentative reasoning at the hearing. Each side will address the tentative reasoning outlined above, and then at the end, the parties will have time to present any additional argument that they wish the Court to hear. The parties **shall not** file written responses to this Notice of Questions.

**IT IS SO ORDERED.**

Dated: January 30, 2026

RITA F. LIN
United States District Judge