# Exhibit C

CAROLYN HOECKER LUEDTKE (SBN 207976)
carolyn.luedtke@mto.com
DANE P. SHIKMAN (SBN 313656)
dane.shikman@mto.com
GABRIEL M. BRONSHTEYN (SBN 338011)
gabriel.bronshteyn@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-3089
Telephone:      (415) 512-4000
Facsimile:      (415) 512-4077

JOSEPH N. GLYNN (SBN 337652)
joseph.glynn@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:      (213) 683-9100
Facsimile:      (213) 687-3702

Attorneys for Defendants OpenAI, Inc., OpenAI
Global, LLC, and OpenAI OpCo, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| *In re* Application of X.AI LLC for Subpoena to OpenAI, Inc., OpenAI Global, LLC, and OpenAI OpCo, LLC | Case No. 3:25-mc-80299-JCS |
| X.AI LLC, | **RESPONDENTS' OPPOSITION TO APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO TAKE DISCOVERY FOR USE IN A FOREIGN PROCEEDING** |
| Petitioner, | |
| vs. | |
| OPENAI, INC., OPENAI GLOBAL, LLC, and OPENAI OPCO, LLC, | Judge:    Honorable Joseph C. Spero |
| Respondents. | |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ........................................................................................................1

II.    BACKGROUND .......................................................................................................4

     A.     The U.K. Proceeding ...................................................................................4

     B.     xAI's Proceedings Against OpenAI in this Court ....................................6

     C.     xAI's Application Under Section 1782 .....................................................7

III.   ARGUMENT .............................................................................................................7

     A.     First Factor: xAI Has Sought and Can Obtain the Very Same Discovery Through the U.K. Proceeding ......................................................8

     B.     Second Factor: U.K. Courts' Receptivity and the Character of the Proceedings Are In Equipoise ...................................................................10

     C.     Third Factor: xAI Circumvents Discovery Restrictions in the U.K.........................10

     D.     Fourth Factor: The Requested Discovery Is Overbroad and Unduly Burdensome ...............................................................................................13

     E.     Granting the Application Would Circumvent Discovery Supervision in the U.S. Proceeding ...............................................................................16

IV.   CONCLUSION ........................................................................................................18

RESPONDENTS' OPPOSITION TO APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Matter of Action and Protection Found.*,
2015 WL 1906984 (N.D. Cal. Apr. 27, 2015) ............................................................13

*In re Appl. of Credit Suisse Virtuoso SICAV-SIF etc.*,
2022 WL 1786050 (N.D. Cal. June 1, 2022) ............................................................13

*In re Appl. of Procter & Gamble Co*
334 F. Supp. 2d 1112 (E.D. Wis. 2004) .....................................................................13

*In re Appl. of Shahrokh Mireskandari*,
2013 WL 12085135 (C.D. Cal. Jan. 7, 2013).............................................................17

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
2012 WL 6878989 (N.D. Cal. Oct. 22, 2012) ............................................................11

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
2013 WL 183944 (N.D. Cal. Jan. 17, 2013) ..........................................3, 10, 11, 12

*CPC Patent Techs. Pty Ltd. v. Apple Inc.*,
119 F.4th 1126 (9th Cir. 2024).....................................................................................7

*In re Ex Parte Appl. of Qualcomm Inc.*,
162 F. Supp. 3d 1029 (N.D. Cal. 2016) ........................................................ 7, passim

*In re Ex Parte Appl. Varian Med. Sys. Int'l AG*,
2016 WL 1161568 (N.D. Cal. Mar. 24, 2016) ........................................................8, 11

*In re Ex Parte Lee-Shim*,
2013 WL 5568713 (N.D. Cal. Oct. 9, 2013) ..............................................................13

*In re Jud. Assistance Pursuant to 28 U.S.C. § 1782 by Macquarie Bank Ltd.*,
2014 WL 7706908 (D. Nev. June 4, 2014) ................................................................10

*In re Jud. Assistance Pursuant to 28 U.S.C. § 1782 by Macquarie Bank Ltd.*,
2015 WL 3439103 (D. Nev. May 28, 2015) ............................................................9, 10

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004) ................................................................................... 2, passim

*In re King.com Ltd.*,
2016 WL 4364286 (N.D. Cal. Aug. 16, 2016)............................................................15

*In re Kreke Immobilien KG*,
2013 WL 5966916 (S.D.N.Y. Nov. 8, 2013) ..............................................................12

RESPONDENTS' OPPOSITION TO APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782

*MetaLab Design Ltd. v. Zozi Int'l, Inc.*,
  2018 WL 368766 (N.D. Cal. Jan. 11, 2018) .................................................................8

*In re Newbrook Shipping Corp.*,
  498 F. Supp. 3d 807 (D. Md. 2020) .........................................................................13

*In re Pioneer Corp. v. Technicolor, Inc.*,
  2018 WL 4961911 (C.D. Cal. Sept. 12, 2018) ....................................................7, 11

*In re Quadre Invs., L.P.*,
  2025 WL 502054  (S.D. Cal. Feb. 14, 2025) ......................................................8, 11

*In re Qualcomm Inc.*,
  2018 WL 3845882 (N.D. Cal. Aug. 13, 2018) ...........................................................11

**FEDERAL STATUTES**

28 U.S.C. § 1782 .................................................................................................. 1, passim

**FEDERAL RULES**

Fed. R. Civ. P. 45 ...........................................................................................................11

**U.K. CIVIL PROCEDURE RULES**

U.K. Civil Procedure Rule § 31.6 ....................................................................................5

U.K. Civil Procedure Rule § 31.12 ..................................................................................5

U.K. Civil Procedure Rule § 31.17 ......................................................................5, 9, 10, 12

# I.   INTRODUCTION

This Section 1782 application is the latest step in an anticompetitive campaign by xAI to use overreaching litigation and baseless allegations to try to stem the tide of xAI employees exercising their right to change jobs and to seek employment elsewhere, including at OpenAI.  For this step, xAI filed a new lawsuit in this District seeking overbroad discovery, most of which is unrelated to the U.K. action it purports to support, all in an effort to jump the gun on discovery in the U.K. and in xAI's recently-filed litigation against OpenAI before the Honorable Rita F. Lin that include substantially *the same allegations*.  OpenAI respectfully requests that the application be denied.  If granted, OpenAI reserves its right to timely serve objections and responses to the subpoena's broad scope.

To put this all in context, xAI has been hemorrhaging talent to other AI competitors, including OpenAI.  xAI employees have been driven from the company for a number of reasons, including dissatisfaction with the management style of Elon Musk, a lack of faith in the future success of xAI or its products, concerns about company decisions, and an unforgiving, unmanageable work schedule.  Former xAI employees have joined OpenAI, leading xAI to file an unjustified lawsuit against OpenAI alleging it was improperly inducing employees to leave Musk's company.  *See X.AI Corp. et al. v. OpenAI, Inc. et al.*, No. 3:25-cv-08133-RFL (N.D. Cal. Sept. 24, 2025) (the "U.S. Proceeding").  OpenAI moved to dismiss and that motion is pending. *See* U.S. Proceeding Dkt. Nos. 30, 43.  The Case Management Conference is scheduled for January 2026 and xAI has made no effort to expedite discovery in that case—indeed, it has done nothing to advance the litigation there apart from Musk tweeting about it in an apparent effort to intimidate more employees from fleeing xAI.

Of the many employees who left xAI, xAI has accused two of downloading source code.  One, Xuechen Li, is the subject of a separate lawsuit by xAI in this District, also pending before Judge Lin.  *See X.AI Corp. et al. v. Li*, No. 3:25-cv-07292-RFL (N.D. Cal. Aug. 28, 2025).  Li never joined OpenAI.  The second is Jimmy Fraiture, who resides in the U.K. and works for OpenAI there.  Fraiture is alleged to have downloaded source code and then deleted it while working at xAI and prior to starting work at OpenAI.  After receiving outreach from xAI's U.K.

RESPONDENTS' OPPOSITION TO APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782

1   counsel raising concerns about the downloading, Fraiture cooperated by signing a Consent Order

2   to, among other things, provide a recitation of facts under oath related to the allegations and to

3   allow for an inspection of his personal devices and accounts to confirm all source code was

4   deleted and not shared, and there are U.K. proceedings against Fraiture in support of that Consent

5   Order (the "U.K. Proceeding"). The U.S. Proceeding includes allegations aimed at OpenAI

6   related to Fraiture based on the same alleged conduct and property as the U.K. Proceeding.

7   Apart from another opportunity to tout its baseless claims and get another bite at the apple

8   for broad discovery requests aimed at trawling its competitor's internal communications to

9   identify, among other things, who is trying to leave xAI for OpenAI, it is unclear why xAI

10  believes this Section 1782 application is appropriate and warranted given (1) it has pending

11  litigation in this District based on substantially identical allegations where, if warranted, discovery

12  could be taken, (2) xAI has a process in place in the U.K. to inspect Fraiture's devices and

13  accounts to get much of the same discovery it seeks from OpenAI here, *and* (3) there are

14  opportunities for further discovery from third parties in the U.K. Proceeding if appropriate under

15  the law and procedure there.

16  OpenAI does not contest that the Section 1782 eligibility criteria are met here—OpenAI

17  resides in this District, there is pending litigation in the U.K., and xAI is an interested person in

18  the U.K. Proceeding. However, the traditional four non-exclusive, discretionary factors applicable

19  to Section 1782 applications under *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241

20  (2004), counsel against granting the application, as does the fact that this application is an end-run

21  around discovery for xAI's claims against OpenAI in the U.S. Proceeding.

22  The first *Intel* factor considers whether the material is obtainable through the foreign

23  proceedings. That factor is not just about whether OpenAI is a party to the U.K. Proceeding, as

24  xAI argues. Dkt. No. 1-1, Memorandum of Law in Support of Application ("Memo.") at 6–7.

25  Instead, this factor considers whether the information is available in the U.K. Proceeding,

26  including from a *party*. As such, this factor weighs against granting the application because xAI is

27  able to obtain the relevant documents it seeks through the normal discovery process in the U.K.

28

RESPONDENTS' OPPOSITION TO APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782

Proceeding.  Other requested material, if appropriate, could be obtained through third-party discovery processes that may be available to xAI under U.K. procedure.

The second *Intel* factor considers the nature of the foreign tribunal, the character of the proceedings, and the receptivity of the court to foreign discovery assistance.  This factor is neutral.  While there is no indication that the U.K. court would reject discovery obtained under Section 1782, there is also no indication that the U.K. court would accept the requested discovery in the U.K. Proceeding.  And the character of the proceedings—in particular, the narrow allegations against Fraiture and the ongoing cooperative discovery in the U.K.—weigh against permitting a broad fishing expedition into OpenAI records.

The third *Intel* factor considers whether the applicant's conduct "has 'side-stepped' less-than-favorable discovery rules by resorting immediately to § 1782."  *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 183944, at *3 (N.D. Cal. Jan. 17, 2013).  This factor weighs strongly against granting the application.  xAI filed this application just two weeks after initiating the U.K. Proceeding, without waiting to examine responsive records that Fraiture is making available.  Moreover, the scope of xAI's subpoena sweeps far beyond its allegations against Fraiture, seemingly hoping to rely on more permissive third-party discovery provisions of U.S. procedure as compared to those in the U.K. for third-party discovery.

The fourth *Intel* factor considers whether the subpoena contains unduly intrusive, harassing, or burdensome requests.  This factor also weighs strongly against granting the application.  The subpoena is breathtakingly broad and does not even attempt to tailor its fourteen requests to xAI's allegations against Fraiture.  Instead, it appears designed as a competitive tool to learn about OpenAI's business and recruitment, and to get information to bully employees looking for a new job.  For example, it seeks discovery into *all* of OpenAI's recruiting from xAI.  Such a request would risk outing current xAI employees who may be seeking to leave, or those who sought to leave, and has nothing to do with the U.K. Proceeding about whether Fraiture violated his confidentiality agreement by downloading source code.  Another example is xAI's request for *all* of OpenAI's documents related to training Fraiture about OpenAI's business when he arrived.  Such an intrusive and harassing request into a competitor's internal training for new employees

cannot be defended as related to the U.K. Proceeding.  xAI claims that its proposed subpoena here

seeks "only to have OpenAI turn over responsive materials related to Fraiture's possession, use,

and/or other misappropriation of xAI source code and Confidential Information."  Memo. at 9.

Not so.  Even when xAI's requests are limited to Fraiture on their face, they ask for documents

relating to sensitive OpenAI business operations with no bearing on xAI's allegations against

Fraiture in the U.K. Proceeding.

Finally, courts consider other factors in adjudicating applications under Section 1782,

including whether an applicant is attempting to circumvent discovery rulings and oversight by

other U.S. courts.  That consideration weighs strongly against granting xAI's application.  xAI

seeks broad discovery into OpenAI's hiring of xAI employees, which is plainly intended to

advance the improper aims of its baseless claims in the U.S. Proceeding.  Remarkably, xAI's

arguments in support of its Section 1782 application never mention the U.S. Proceeding, filed days

earlier in this District even though that litigation includes the same allegations about Fraiture as

the U.K. Proceeding.  *See* U.S. Proceeding Dkt. No. 1 ("U.S. Proceeding Complaint").  Because

party discovery has not even begun in the U.S. Proceeding, this application seeks to jump the gun

on party discovery there.  xAI should not be permitted to use Section 1782 and the U.K.

Proceeding as a pretext to flout the ordinary oversight of discovery by U.S. courts and to get one-

sided discovery here to advance its U.S. Proceeding.

Accordingly, the Court should deny xAI's application.

## II.    BACKGROUND

### A.    The U.K. Proceeding

On September 10, 2025, xAI initiated the U.K. Proceeding in the High Court of Justice,

King's Bench Division.  *See* Dkt. No. 1-3, Decl. of Carson Swope in Supp. of X.AI LLC's Appl.

for an Order Pursuant to 28 U.S.C. § 1782 ("Swope Decl.") Ex. 12.  xAI brought claims against

Fraiture for breach of contract, breach of fiduciary duty, and breach of confidence.  *Id.* at 7.  xAI

alleges that before leaving xAI, Fraiture downloaded onto a personal device xAI source code and a

recording of an xAI internal meeting.  *See* Dkt. No. 1, Appl. for an Order Pursuant to 28 U.S.C.

§ 1782 ¶ 12; *see also* Swope Decl. Ex. 14 ¶¶ 4–5.  xAI alleges that Fraiture did this while

employed by xAI and that after receiving outreach from xAI, he deleted the download while still employed by xAI and before joining OpenAI. *See* U.S. Proceeding Complaint ¶¶ 97, 100; *see also* Swope Decl. Ex. 14 ¶¶ 6–9.

Fraiture and xAI agreed to a Consent Order, which was filed with the High Court just a day after the U.K. Proceeding began and entered by a Master a week later. *See* Decl. of Lucy Chaize in Supp. of Resp'ts' Opp'n to Appl. for an Order Pursuant to 28 U.S.C. § 1782 ("Chaize Decl.") Ex. 1. Under that Consent Order, Fraiture committed to deliver to xAI's counsel any xAI confidential information in his possession or control, and to furnish devices and account access to an "Independent IT Expert" for imaging. *Id.* Ex. 1 at 6–7. Fraiture also agreed to provide a witness statement explaining his downloading and storage of xAI confidential information, and any use or disclosure of that information. *See id.* at 6. xAI has never suggested Fraiture is not in compliance with the Consent Order. Chaize Decl. ¶ 7.

In the U.K., Fraiture and xAI are presently engaged in the process defined by the Consent Order. Counsel for Fraiture and xAI are negotiating a protocol for review of the forensic images of Fraiture's available personal devices and accounts. *Id.* ¶ 10. In draft protocols exchanged, Fraiture has agreed in principle that the Independent IT Expert can obtain and review Fraiture's correspondence and other documents which mention OpenAI (which will necessarily include documents related to OpenAI's recruitment and hiring of Fraiture) in his personal accounts, to the extent necessary to obtain confirmation that Fraiture no longer holds xAI confidential information, and that he has not provided any xAI confidential information to OpenAI. *Id.*

If xAI proceeds to trial against Fraiture in the U.K., xAI would have additional opportunities to obtain relevant evidence from Fraiture. *See* Chaize Decl. ¶ 13; U.K. CPR §§ 31.6, 31.12.[1] In addition, third-party discovery would be available. Chaize Decl. ¶ 14. Pursuant to U.K. Civil Procedure Rule 31.17, a party may apply to a U.K. court to seek disclosure of documents from third parties. *See* U.K. CPR § 31.17. But the application must meet several

---

[1] A copy of Part 31 of the U.K. Civil Procedure Rules is attached as Exhibit 2 to the Chaize Declaration.

requirements.  The application "must be supported by evidence."  *Id.* § 31.17(2).  The court will only grant the application if "the documents of which disclosure is sought are likely to support the case of the applicant or adversely affect the case of one of the other parties to the proceedings" and "disclosure is necessary in order to dispose fairly of the claim or to save costs."  *Id.* § 31.17(3).  And any disclosure order must "specify the documents or the classes of documents which the respondent must disclose."  *Id.* § 31.17(4).  A U.K. court has discretion over whether to issue a third-party disclosure order.  *See* Chaize Decl. ¶ 14.  xAI has not requested one.  *Id.* ¶ 16.

A party may also file a letter of request for evidence located outside the court's jurisdiction.  The letter would take the form of a request to a tribunal in another jurisdiction for assistance in obtaining the requested documents.  *Id.* ¶ 17.  No such letter has been sought in the U.K. Proceeding.  *Id.*

**B.      xAI's Proceedings Against OpenAI in this Court**

On September 24, 2025, xAI brought claims against OpenAI for trade secret misappropriation and related state-law causes of action—a point that xAI does not mention in its Section 1782 application analysis.  *See* U.S. Proceeding Complaint.  xAI makes many of the same allegations in the U.S. Proceeding as it makes in the U.K. Proceeding regarding Fraiture's alleged downloading and deletion of xAI information before he joined OpenAI.  *Id.* ¶¶ 81–101.  xAI also alleges that another one of its former employees, Xuechen Li, who never joined OpenAI, had copied xAI information while he was employed by xAI.  *Id.* ¶¶ 42–80.

xAI's Complaint is flawed because, among other things, it does not adequately plead that the information allegedly copied by Fraiture or Li was ever acquired, used, or disclosed by OpenAI.  Nor could it.  OpenAI has accordingly moved to dismiss xAI's Complaint in its entirety.  U.S. Proceeding Dkt. No. 30.  That motion is set for December 9, 2025.  *Id.* Dkt. No. 43.

Discovery has not begun.  The Court set a deadline of December 18, 2025 for the parties' Rule 26(f) Conference and scheduled an Initial Case Management Conference on January 8, 2026.  *Id.* Dkt. No. 16.  xAI has not sought to alter that schedule.  Instead, xAI has sought and received more time to assess whether to oppose the motion to dismiss or amend its complaint.  *Id.* Dkt. Nos. 42–43.

**C.**     **xAI's Application Under Section 1782**

xAI filed this application on September 26.  The application attaches a proposed subpoena to OpenAI with fourteen requests for production.  The requests are sweeping and broad—they are not limited to communications with Fraiture about xAI information or any alleged transfer of xAI information by him.  xAI instead seeks *inter alia* all documents and communications related to OpenAI's "soliciting, inducing, or encouraging . . . any xAI employee, consultant, or independent contractor to terminate his or her relationship with xAI or to consider joining OpenAI" (RFP No. 6), and all documents and communications at OpenAI "related to xAI Confidential Information" (RFP No. 12).  *See* Swope Decl. Ex. 1.

**III.     ARGUMENT**

The Court has "substantial discretion" in ruling on an application under Section 1782.  *See CPC Patent Techs. Pty Ltd. v. Apple Inc.*, 119 F.4th 1126, 1129 (9th Cir. 2024).  In *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), the Supreme Court articulated four non-exclusive factors for district courts to consider in exercising that discretion:  (1) "whether the material sought is within the foreign tribunal's jurisdictional reach"; (2) "the nature of the foreign tribunal, the character of the proceedings," and the "receptivity" of the court to assistance; (3) whether the request "attempt[s] to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) "whether the subpoena contains unduly intrusive or burdensome requests."  *Id.* at 264–65; *In re Ex Parte Appl. of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1035 (N.D. Cal. 2016) (citing *Intel*, 542 U.S. 241 at 264).  These factors are "neither dispositive nor exclusive."  *In re Pioneer Corp. v. Technicolor, Inc.*, 2018 WL 4961911, at *8 (C.D. Cal. Sept. 12, 2018).  The Court should exercise its discretion to deny xAI's application because the four *Intel* factors on balance weigh against xAI's application and because xAI's application seeks to jump the gun on party discovery that is not yet authorized in the U.S. Proceeding.

**A.** **First Factor: xAI Has Sought and Can Obtain the Very Same Discovery Through the U.K. Proceeding**

Courts applying the first *Intel* factor "focus on whether the evidence 'is available to the foreign tribunal,' because in some circumstances, evidence may be available to a foreign tribunal even if it is held by a non-participant to the tribunal's proceedings." *Qualcomm*, 162 F. Supp. 3d at 1039. xAI focuses its application solely on OpenAI's non-party status. Memo. at 6. But xAI ignores the "key issue" under this factor, which is "whether the material is obtainable through the foreign proceeding." *In re Ex Parte Appl. Varian Med. Sys. Int'l AG*, 2016 WL 1161568, at *3 (N.D. Cal. Mar. 24, 2016).

Courts have held that the first factor weighs against granting a Section 1782 application when discovery sought from a U.S.-based party is also available from a *party* to the foreign proceeding. *See MetaLab Design Ltd. v. Zozi Int'l, Inc.*, 2018 WL 368766, at *3 (N.D. Cal. Jan. 11, 2018) (denying former employer's application for discovery in the U.S. seeking a former employee's communications because the former employee was a party to the litigation, and the communications could therefore be obtained through party discovery in Canada). And at a minimum, when that result is likely, U.S. discovery is inappropriate before the applicant has reviewed the materials being produced by parties in the foreign litigation to avoid making duplicative requests. *See In re Quadre Invs., L.P.*, 2025 WL 502054, at *9 (S.D. Cal. Feb. 14, 2025) (holding that first factor weighed against an application for Section 1782 discovery where the applicant had not first received and reviewed discovery from a party to the Cayman Islands proceeding that was likely in possession of the same information sought from a U.S.-based non-party).

Under the Consent Order, Fraiture has committed to make available relevant correspondence and data that xAI seeks from OpenAI. For example, if Fraiture had sent OpenAI confidential xAI source code (he did not), that would be identified in the forensic inspection of his personal email in the U.K. Proceeding and made available to xAI. Similarly, if OpenAI personnel had asked Fraiture in an email to download source code (no one did), that email would be available to the Independent IT Expert in its inspection of Fraiture's email. Fraiture's U.K.

counsel have agreed to allow the Independent IT Expert to review his personal accounts to confirm that Fraiture no longer holds xAI confidential information and has not provided xAI confidential information to OpenAI. *See* Chaize Decl. ¶ 10. That will encompass much of any appropriate responsive scope of xAI's requests here. To the extent xAI believes that the discovery obtained from Fraiture's devices and accounts through that ongoing process is incomplete, it could renew its petition and make that argument at the appropriate time. *See In re Jud. Assistance Pursuant to 28 U.S.C. § 1782 by Macquarie Bank Ltd.*, 2015 WL 3439103, at *6–7 (D. Nev. May 28, 2015) (holding that first factor weighed against Section 1782 discovery because participant in foreign proceeding with relevant documents was "cooperating" with discovery process, rejecting applicant's "worries" that the foreign discovery process will not be "successful in obtaining the information" and that participant "may not comply with its discovery obligations in those proceedings").

To the extent xAI requests material that is uniquely in the possession of OpenAI, xAI fails to show that there is any relevant information unobtainable through discovery in the U.K. Proceeding. Much of the material requested from OpenAI seeks recruiting and other business practices that have no bearing on xAI's narrow claims against Fraiture in the U.K. Proceeding for breach of his employment agreement. *See infra* at 13–16. In any event, much of the requested information may still be obtainable through discovery in the U.K. Proceeding if relevant to xAI's allegations against Fraiture. xAI asserts that it "may not" be able to obtain the requested information in the U.K. Proceeding. Memo. at 6. But xAI does not acknowledge that U.K. procedure provides for third-party discovery in appropriate circumstances. *See* U.K. CPR § 31.17. And xAI does not explain why it did not seek permission from the U.K. court to file this application or instead seek a letter of request from the U.K. court for any documents over which the U.K. court lacks jurisdiction. Chaize Decl. ¶¶ 17–18. None of xAI's cited cases involved situations in which—much less addressed arguments that—the requested discovery was already available through foreign discovery procedures. Memo. at 6–7 (citing *In re Qualcomm Inc.*, 2018 WL 3845882, at *2 (N.D. Cal. Aug. 13, 2018); *In re Jud. Assistance Pursuant to 28 U.S.C. § 1782 by Macquarie Bank Ltd.*, 2014 WL 7706908, at *3 (D. Nev. June 4, 2014)).

Accordingly, the first *Intel* factor weighs strongly against xAI's application.

**B.** **Second Factor: U.K. Courts' Receptivity and the Character of the Proceedings Are In Equipoise**

The second *Intel* factor—which considers "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government . . . to U.S. federal-court jurisdictional assistance," *Qualcomm*, 162 F. Supp. 3d at 1035 (quoting *Intel*, 542 U.S. at 264)—is neutral. xAI has neither sought nor received any indication from the U.K. court in this case that it would accept broad evidence about OpenAI's recruiting practices in xAI's narrow case against Fraiture. Chaize Decl. ¶ 18; *cf. Macquarie Bank*, 2015 WL 3439103, at *7 (noting indication from foreign judicial official that he would receive information obtained through Section 1782 application). And while xAI points to case law holding that there is no evidence U.K. courts would refuse to admit evidence obtained under Section 1782, the character of the U.K. Proceeding here offers countervailing considerations, i.e., that xAI's claims are narrow, Fraiture has already provided a statement admitting to some of the allegations, and Fraiture is cooperating with discovery and forensic analysis pursuant to a Consent Order—all of which weigh against a fishing expedition into OpenAI's records to support xAI's claims in the U.K. Proceeding.

**C.** **Third Factor: xAI Circumvents Discovery Restrictions in the U.K.**

Addressing the third *Intel* factor, xAI's effort to obtain discovery from OpenAI through Section 1782 leaves a strong "perception that [the] applicant has 'side-stepped' less-than-favorable discovery rules by resorting immediately to § 1782." *Cathode Ray Tube (CRT)*, 2013 WL 183944, at *3. Litigants in the U.K. can request relevant documents from third parties, but the application "must be supported by evidence," U.K. CPR § 31.17(2), the disclosure must be not merely relevant but "*necessary* in order to dispose fairly of the claim or to save costs," *id.* § 31.17(3) (emphasis added), and any disclosure order must "specify the documents or the classes of documents which the respondent must disclose," *id.* § 31.17(4). As a procedural matter, such applications are generally made at a later stage of U.K. litigation, once the pleading stage is

RESPONDENTS' OPPOSITION TO APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782

1   complete.  *See* Chaize Decl. ¶ 16.  Litigants can also ask the U.K. court for assistance with

2   obtaining documents outside the U.K. court's jurisdiction through a letter of request.  *Id.* ¶ 17.

3          But rather than attempt to make the relevant evidentiary showing and persuade the U.K.

4   judge that this discovery is appropriate at what would be an unusually early stage in U.K.

5   procedure, xAI filed this application to preempt that process and avail itself of more permissive

6   U.S. discovery rules.  As discussed above, the relevant scope of xAI's requests is already subject

7   to the ongoing Consent Order inspection process into Fraiture's available devices and accounts, as

8   well as potential party disclosures in the future.  *Supra* at 8–9; Chaize Decl. ¶ 13; *see Quadre*,

9   2025 WL 502054, at *12 (requesting documents already subject to ongoing foreign party

10  discovery process suggests an attempt to side-step that process).  To the extent xAI seeks

11  information uniquely available to OpenAI, xAI never argues that it could not obtain the same

12  information through discovery procedures available in the U.K., such as third-party discovery, if a

13  court determined that such discovery is appropriate.  Memo. at 8–9; *see Pioneer Corp.*, 2018 WL

14  4961911, at *10 (weighing against Section 1782 discovery applicant's "fail[ure] adequately to

15  explain why German processes governing discovery were not sufficient"); *In re Qualcomm Inc.*,

16  2018 WL 3845882, at *4 (N.D. Cal. Aug. 13, 2018) (applicant made a "meager showing" on the

17  third factor by "primarily rel[ying] on other cases" and "say[ing] nothing about what it has done to

18  obtain the information it seeks" through the foreign tribunal); *In re Cathode Ray Tube (CRT)*

19  *Antitrust Litig.*, 2012 WL 6878989, at *3 (N.D. Cal. Oct. 22, 2012) (third factor weighed against

20  granting application where the applicant "made no attempt to use the discovery processes that are

21  available in the Korean courts"), *R. & R. adopted*, 2013 WL 183944 (N.D. Cal. Jan. 17, 2013).

22  Nor has xAI received any approval from the U.K. judge to undertake this application.  Chaize

23  Decl. ¶ 18.  The timing of xAI's application (just two weeks after initiating the U.K. Proceeding

24  and before reviewing any documents made available under the Consent Order), the availability of

25  third-party discovery subject to strict limitations and judicial oversight under U.K. procedure, and

26  the disconnect between the discovery requested and the scope of xAI's allegations against Fraiture

27  in the U.K. strongly indicate that xAI's maneuver was designed to avoid an unfavorable discovery

28  ruling by a U.K. court—and to seek a decision on its overbroad discovery requests under the more

1    permissive U.S. third-party procedure.  *See Cathode Ray Tube (CRT)*, 2013 WL 183944, at *3

2    ("resorting *immediately*" to a Section 1782 application can indicate a "that an applicant has 'side-

3    stepped' less-than-favorable discovery rules" (emphasis added)); *cf.* Fed. R. Civ. P. 45; *see also*

4    *Varian Med. Sys.*, 2016 WL 1161568, at *5 ("The proper scope of discovery arising out of a

5    [Section] 1782 application is generally determined by the Federal Rules of Civil Procedure.").

6        Section 1782 cannot be employed "as a vehicle to avoid . . . an unfavorable discovery

7    decision." *In re Kreke Immobilien KG*, 2013 WL 5966916, at *6 (S.D.N.Y. Nov. 8, 2013)

8    (alteration in original), *abrogated on other grounds by In del Valle Ruiz*, 939 F.3d 520 (2d Cir.

9    2019).  "It would create a perverse system of incentives—one counter to the efficiency and comity

10   goals of [Section] 1782—to encourage foreign litigants to scurry to U.S. courts to preempt

11   discovery decisions from tribunals with clear jurisdictional authority." *Id.*

12       OpenAI's argument does not turn on a foreign discoverability requirement or a quasi-

13   exhaustion requirement.  *Cf.* Memo. at 8.  OpenAI is not suggesting the third factor weighs against

14   discovery solely because of the restrictive standard for third-party discovery in the U.K. or solely

15   because OpenAI has not pursued every available discovery procedure.  The relevant question

16   under the third *Intel* factor is whether the  applicant's conduct gives rise to "a *perception*" that the

17   applicant "has 'side-stepped' less-than-favorable discovery rules." *Cathode Ray Tube (CRT)*,

18   2013 WL 183944, at *3 (emphasis added).  The circumstances of xAI's application give rise to

19   such a perception here.  U.K. procedural rules adopt a policy that confers discretion on U.K.

20   judges to evaluate whether third-party discovery is appropriate under restrictive criteria, *see*

21   Chaize Decl. ¶¶ 14–16; U.K. CPR § 31.17, and granting xAI's application would permit sweeping

22   discovery unmoored from the allegations in the U.K. Proceeding while evading any scrutiny into

23   that discovery by the U.K. court.  *See Qualcomm*, 162 F. Supp. 3d at 1042 (holding that the third

24   factor weighed against discovery because "principles of comity direct this court not to substitute

25   its own judgment for [a foreign tribunal] on how to best manage its affairs").

26       xAI claims that whether material would not be discoverable under foreign law is irrelevant

27   under *Intel*, but *Intel* only held that there is no categorical bar to seeking such material.  542 U.S.

28   at 260.  *Intel* of course went on to explain that a court "could consider" such "proof-gathering

1    restrictions" or "other policies" in exercising its discretion.  *Id.* at 265.  And xAI's own authority

2    confirms that circumstances indicating an applicant's attempt to "side-step[] less-than-favorable

3    discovery rules" weigh against granting a Section 1782 application.  *In re Appl. of Credit Suisse*

4    *Virtuoso SICAV-SIF etc.*, 2022 WL 1786050, at *11 (N.D. Cal. June 1, 2022).[2]

5          The third *Intel* factor therefore weighs against granting the application.

6    **D.      Fourth Factor: The Requested Discovery Is Overbroad and Unduly**
             **Burdensome**

7

8          Under the fourth *Intel* factor, a court can reject a Section 1782 application with requests

     that it finds "unduly intrusive or burdensome."  542 U.S. at 265.  Requests should be rejected if
9
     they "are not narrowly tailored" and "appear to be a broad 'fishing expedition' for irrelevant
10
     information."  *Qualcomm*, 162 F. Supp. 3d at 1043 (citation omitted).  A court may also consider
11
     whether a Section 1782 request is being used as "a vehicle for harassment."  *Matter of Action and*
12
     *Protection Found.*, 2015 WL 1906984, at *6 (N.D. Cal. Apr. 27, 2015).  That is all true here and
13
     this factor weighs strongly against xAI's Section 1782 application.
14
           xAI's application makes no effort to defend or justify the breadth of its requests.  In fact, it
15
     never references the language of its requests.  Memo. at 9–10.  Instead, it speaks in broad terms
16
     and claims to seek "the sort of information that parties routinely seek in the context of trade
17
     secrets litigation."  *Id.* at 10.  This is not correct.  The so-called "trade secrets litigation" here is a
18
     breach of confidentiality agreement claim in the U.K. against one former employee, Jimmy
19
     Fraiture, based on alleged acts by the employee before he joined OpenAI.  But xAI's sweeping
20
     requests directed at OpenAI stretch far beyond Fraiture and the subject of the U.K. Proceeding.
21
     xAI argues that the requests in its application seek documents to support its claims that source
22
     code and confidential information were misappropriated by Fraiture in violation of his agreement.
23

24   _____
     [2] None of xAI's other authority should alter this analysis.  *In re Newbrook Shipping Corp.*, 498 F.
25   Supp. 3d 807 (D. Md. 2020), was vacated on appeal.  *See* 31 F.4th 889 (4th Cir. 2022).  Even if
     xAI were correct that this factor requires a showing of "bad faith" (a standard not mentioned by
26   the vast majority of cases), Memo. at 8 (citing *In re Ex Parte Lee-Shim*, 2013 WL 5568713, at *2
     (N.D. Cal. Oct. 9, 2013)), that standard would be met for all the same reasons discussed above.
27   And *In re Appl. of Procter & Gamble Co.* addressed an argument about discovery costs that has no
     relevance here.  334 F. Supp. 2d 1112, 1115–16 (E.D. Wis. 2004).
28

*Id.* But that is not what the fourteen expansive requests seek. Nor is OpenAI the best source for that information, all of which can be obtained (if it exists) through the forensic inspection of Fraiture's devices and accounts.

An examination of actual requests made in this application paints a clear picture of their unjustified overbreadth, intrusiveness, and harassing nature. For example:

Request Not Limited to Fraiture or xAI Confidential Information.

- RFP No. 6: "All DOCUMENTS and COMMUNICATIONS related to your soliciting, inducing, or encouraging Fraiture or any xAI employee, consultant, or independent contractor to terminate his or her relationship with xAI or to consider joining OpenAI."

xAI requests all documents about OpenAI's recruiting and hiring of *anyone affiliated with xAI* (or even if someone just encourages them to "consider joining OpenAI") with no date limitation. Any such conduct is unrelated to *Fraiture* and the U.K. Proceeding. Moreover, there is nothing in this request related to any request or solicitation for xAI Confidential Information as part of recruiting, making it even further afield from any conceivable relevance. This request is facially irrelevant to the claims in the U.K. and xAI's application makes no effort to defend it.

In addition to being irrelevant, the request is highly burdensome. xAI is asking OpenAI to ask all of its employees for the whole history of the company for all communications with anyone ever affiliated with xAI that might have encouraged them to even "consider joining OpenAI."

This request is particularly nefarious given xAI's effort to bully employees to stop the mass departure of talent in recent months. This request appears to be a dragnet that would identify additional employees seeking to leave, or who tried to leave, the company for OpenAI—risking marking them for retaliation by a vengeful xAI bent on keeping its employees at all costs. The U.S. Proceeding highlights this danger. xAI's allegations in the U.S. Proceeding named a number of individuals who left xAI for OpenAI for whom there are no allegations of wrongdoing—no allegations they did anything but leave xAI for OpenAI. U.S. Proceeding Complaint ¶ 114. OpenAI's motion to strike those allegations is pending. OpenAI will vigorously object to any discovery requests in the U.S. Proceeding that seek to advance this campaign of intimidation

against OpenAI's employees.  Such requests are all the more inappropriate in the context of the U.K. Proceeding, which solely concerns Fraiture's alleged downloading of xAI information.

RFP No. 6 is a vivid example that xAI's requests in this application are directed at OpenAI's conduct generally (and not limited to Fraiture), which shows that they are designed to feed into xAI's U.S. Proceeding—with all its improper aims—and is a telltale sign of a fishing expedition.  *See In re King.com Ltd.*, 2016 WL 4364286, at *8 (N.D. Cal. Aug. 16, 2016) (observing that there is no "more obvious evidence" of an "impermissible fishing expedition" than a party's use of discovery for its relevance "to other judicial proceedings" the applicant "may wish to initiate").

<u>Request Not Limited to Fraiture.</u>

- RFP No. 12:  "All DOCUMENTS and COMMUNICATIONS related to xAI Confidential Information," which is defined to include "ideas," "know-how, improvements, discoveries, developments," and "any other work product of any nature."

xAI requests all documents "related to xAI Confidential Information," with a broad definition of that phrase and no reference to Fraiture.  Again, this has no linkage to the U.K. Proceeding, and seems another fishing expedition for evidence to support the U.S. Proceeding. Whether OpenAI has xAI Confidential Information from a source other than Fraiture (it does not) has no connection to the U.K. Proceeding, and xAI's application makes no effort to justify it.

<u>Request Unrelated to Pleaded Allegations.</u>

- RFP No. 7:  "All DOCUMENTS and COMMUNICATIONS related to Fraiture soliciting, inducing, or encouraging any xAI employee, consultant, or independent contractor to terminate his or her relationship with xAI or to consider joining OpenAI."

This request does not relate to any conduct alleged in either the U.S. Proceeding or the U.K. Proceeding—in neither case is there any allegation that Fraiture improperly solicited anyone. Chaize Decl. ¶ 9; *see also* U.S. Proceeding Complaint.  It is simply another attempt to identify additional xAI employees to add to its campaign of harassment.  And again, xAI makes no effort to defend this request.

Requests That Are Otherwise Overbroad, Intrusive, and Harassing.

- RFP No. 4: "All DOCUMENTS and COMMUNICATIONS related to Your internal review and decision-making process about whether to hire Fraiture, including without limitation internal memoranda, recruitment notes, Fraiture's job application, notes or correspondence regarding a review of Fraiture's background and/or concerns, risks, or questions related to hiring Fraiture."

- RFP No. 5: "All DOCUMENTS and COMMUNICATIONS related to Your onboarding, orientation, and/or intended or actual training of Fraiture."

These requests are unduly intrusive and seek highly sensitive records relating to OpenAI's operation of its business, including its hiring strategy and training of employees. They are indefensibly overbroad. The allegations against Fraiture in the U.K. Proceeding do not warrant discovery of such information and xAI does not allege that they do. xAI makes no effort to defend these requests. For example, how could it be relevant to the U.K. Proceeding what OpenAI taught Fraiture about *OpenAI's* models, algorithms, and systems in any onboarding training, all of which would be within the scope of RFP No. 5? xAI's requests stretch beyond the U.K. Proceeding and instead dive into the highly sensitive, internal operations of a competitor.

The fourth factor weighs strongly against granting xAI's application and reveals the improper motives and purposes of this application. xAI dramatically overreached in its fourteen requests, which belies the improper purpose and intent of this application.[3]

**E.** **Granting the Application Would Circumvent Discovery Supervision in the U.S. Proceeding**

In addition to the discretionary *Intel* factors, the Court should consider xAI's efforts to seek one-sided, early discovery for its parallel U.S. Proceeding before Judge Lin and deny this application to avoid duplicative and potentially contradictory rulings in this District. It is notable that over the span of an eleven-page memorandum of points and authorities in support of its

---

[3] To the extent the Court is inclined to grant xAI's application, it should exercise its discretion to excise all overbroad and unduly burdensome requests, including those identified above.

Case No. 3:25-mc-80299-JCS
RESPONDENTS' OPPOSITION TO APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782

application, xAI never mentions the U.S. Proceeding pending before Judge Lin that it had already filed.[4]

Although not among the four factors that courts consider in every case, *Intel* expressly recognized that such interference in other U.S. proceedings could be a significant consideration in adjudicating Section 1782 applications. *See Intel*, 542 U.S. at 266 n.19 (observing that a court evaluating an application under Section 1782 may "consider the significance" of another district court's discovery order regarding the same information requested from the same party). Section 1782 discovery is inappropriate when employed "to evade discovery supervision in the various state and federal proceedings that these parties (or related parties) are part of in this country, or to otherwise forum shop with regard to consideration of these discovery issues." *In re Appl. of Shahrokh Mireskandari*, 2013 WL 12085135, at *1 (C.D. Cal. Jan. 7, 2013).

This factor weighs heavily against xAI's application. xAI seeks broad discovery into OpenAI's recruiting practices and its purported receipt of xAI confidential information that are the subject of the U.S. Proceeding. Discovery there has not even begun for either side. Moreover, OpenAI has filed a motion to dismiss, which is set for hearing on December 9, 2025. U.S. Proceeding Dkt. Nos. 30, 43. If that motion is granted and the case is dismissed, no discovery will occur. And even if discovery did occur on xAI's claims against OpenAI, Judge Lin has not yet weighed in on how to manage that discovery and whether xAI's sweeping requests in this application would be appropriate if repurposed there. For example, the U.S. Proceeding involves alleged misappropriation of trade secrets, and the Court will need to manage the process by which xAI identifies its trade secrets with specificity and the timing of those disclosures. That will have a significant impact on the scope of discovery related to xAI's allegations and the types of requests it advances in this application. Judge Lin's orders on those case management issues in the U.S. Proceeding could be undermined if xAI could nevertheless obtain early, unlimited, and solely one-

---

[4] xAI did file a motion to relate this application to the U.S. Proceeding, which Judge Lin denied without explanation. Dkt. No. 9.

sided discovery against OpenAI on the very same allegations based on only a tenuous connection with the claims against Fraiture in the U.K. Proceeding.

## IV. CONCLUSION

Taken together, the relevant factors strongly weigh against granting xAI's application. The first, third, and fourth factors weigh against granting the application, the second factor is neutral, and another significant factor—the circumvention of discovery oversight by Judge Lin in the U.S. Proceeding—weighs strongly against granting xAI's application. OpenAI therefore respectfully requests that the application be denied.

DATED: October 20, 2025                    MUNGER, TOLLES & OLSON LLP


                                    By:    _s/ Carolyn Hoecker Luedtke_
                                           CAROLYN HOECKER LUEDTKE
                                           DANE P. SHIKMAN
                                           GABRIEL M. BRONSHTEYN
                                           JOSEPH N. GLYNN

                                           Attorneys for Defendants OpenAI, Inc., OpenAI
                                           Global, LLC, and OpenAI OpCo, LLC

RESPONDENTS' OPPOSITION TO APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782