CAROLYN HOECKER LUEDTKE (SBN. 207976)
carolyn.luedtke@mto.com
DANE P. SHIKMAN (SBN. 313656)
dane.shikman@mto.com
GABRIEL M. BRONSHTEYN (SBN. 338011)
gabriel.bronshteyn@mto.com
JOSEPH N. GLYNN (SBN. 337652)
joseph.glynn@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-3089
Telephone:     (415) 512-4000
Facsimile:      (415) 512-4077

JONATHAN I. KRAVIS (admitted *pro hac vice*)
jonathan.kravis@mto.com
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue, NW, Suite 500E
Washington, D.C. 20001-5369
Telephone:     (202) 220-1100
Facsimile:      (202) 220-2300

Attorneys for Defendants OpenAI, Inc., OpenAI Global, LLC, and OpenAI OpCo, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| X.AI CORP. and X.AI LLC,<br><br>    Plaintiffs,<br><br>    vs.<br><br>OPENAI, INC., OPENAI GLOBAL, LLC, and OPENAI OPCO, LLC,<br><br>    Defendants. | Case No. 3:25-cv-08133-RFL<br><br>**DEFENDANTS' OPPOSITION TO XAI'S MOTION TO STAY CASE**<br><br>Judge:    Honorable Rita F. Lin |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................. 1

II. BACKGROUND ................................................................................................................... 3

    A. xAI Files This Lawsuit ............................................................................................. 3

    B. OpenAI Responds to Third-Party Discovery in the *Li* Case and Produces Documents While xAI Remains Silent for Three Months ........................................ 4

    C. xAI Requests to Stay the U.K. Litigation Even While Fraiture Voluntarily Produces Available Accounts .................................................................................... 6

    D. This Court Dismisses with Leave to Amend, and xAI Moves to Stay ..................... 7

III. ARGUMENT ......................................................................................................................... 7

    A. xAI Has Not Shown It Will Suffer Damage, Hardship, or Inequity from the Denial of a Stay ......................................................................................................... 8

        1. xAI's Lack of Plausible Allegations Against OpenAI Is Not a Proper Basis to Stay the Case ................................................................................... 8

        2. xAI's Requested Stay Would Harm OpenAI and Its Employees ............... 10

        3. xAI's Purported Need for Further Discovery Is a Problem of Its Own Making ................................................................................................ 11

    B. Judicial Economy Weighs Against a Stay of the Case .......................................... 13

IV. CONCLUSION ................................................................................................................... 15

**TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................. 1, 8

*Big Lagoon Rancheria v. California*,
  2010 WL 1532323 (N.D. Cal. Apr. 16, 2010) ............................................................. 11

*Christian v. Mattel, Inc.*,
  286 F.3d 1118 (9th Cir. 2002) ...................................................................................... 1

*In re Cisco Sys. Inc. Sec. Litig.*,
  2013 WL 1636384 (N.D. Cal. Apr. 16, 2013) ............................................................... 9

*CMAX, Inc. v. Hall*,
  300 F.2d 265 (9th Cir. 1962) ........................................................................................ 7

*Dependable Highway Express, Inc. v. Navigators Ins. Co.*,
  498 F.3d 1059 (9th Cir. 2007) ...................................................................................... 9

*In re German Auto. Mfrs. Antitrust Litig.*,
  335 F.R.D. 407 (N.D. Cal. 2020) .................................................................................. 8

*Langley v. Guiding Hands Sch., Inc.*,
  2022 WL 605358 (E.D. Cal. Mar. 1, 2022) ................................................................. 14

*Lockyer v. Mirant Corp.*,
  398 F.3d 1098 (9th Cir. 2005) ...................................................................................... 9

*McElrath v. Uber Techs., Inc.*,
  2017 WL 1175591 (N.D. Cal. Mar. 30, 2017) .............................................................. 9

*Merritt v. Redwood Invs., LLC*,
  2019 WL 4416130 (S.D. Cal. Sep. 13, 2019) ............................................................ 1, 8

*Mujica v. AirScan, Inc.*,
  771 F.3d 580 (9th Cir. 2014) ........................................................................................ 8

*Nken v. Holder*,
  556 U.S. 418 (2009) ...................................................................................................... 8

*Noble v. JP Morgan Chase Bank, N.A.*,
  2022 WL 4229311 (N.D. Cal. Sep. 13, 2022) ............................................................... 9

*Persian Gulf Inc. v. BP W. Coast Prods. LLC*,
  225 F. Supp. 3d 1178 (S.D. Cal. 2016) ......................................................................... 8

*In re PG&E Corp. Sec. Litig.*,
  100 F.4th 1076 (9th Cir. 2024) .................................................................................. 7, 9

*SEC v. Alexander*,
  2010 WL 5388000 (N.D. Cal. Dec. 22, 2010) ............................................................ 14

*Vance v. Google LLC*,
   2021 WL 534363 (N.D. Cal. Feb. 12, 2021) ............................................................... 9

*Whitaker v. Tesla Motors, Inc.*,
   985 F.3d 1173 (9th Cir. 2021) ............................................................................. 1, 8

*Wilson v. Frito-Lay N. Am., Inc.*,
   2015 WL 846546 (N.D. Cal. Feb. 25, 2015) .............................................................. 11

*Wroth v. City of Rohnert Park*,
   2018 WL 888466 (N.D. Cal. Feb. 14, 2018) .............................................................. 14

**FEDERAL STATUTES**

28 U.S.C. § 1782 ........................................................................................... 6, 12, 13

**FEDERAL RULES**

Fed. R. Civ. P. 8 .................................................................................................... 8

Fed. R. Civ. P. 11 .................................................................................................. 1

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 9

## I.   INTRODUCTION

xAI's Motion to Stay reveals the fundamental flaw at the core of xAI's case. Under Rule 11, xAI should have conducted a "reasonable factual investigation" and had a factual basis to bring this lawsuit "prior to filing." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002). It is plain that xAI failed to do so. As this Court has recognized, xAI did not make plausible allegations of fact supporting its conclusory allegations in the First Amended Complaint ("FAC"), and xAI's Motion to Stay effectively admits that xAI possesses no facts to cure the FAC's fatal deficiencies by the Court's March 17 deadline to amend. Unless xAI can put forward a viable complaint by March 17, this case should not proceed.

xAI's Motion to Stay asks this Court to postpone the March 17 deadline so it can try to obtain discovery to find facts to support the claim it *already* filed. Courts routinely deny post-dismissal discovery to resuscitate an insufficient complaint, and xAI cites no authority to depart from the law. Instead, xAI brazenly mispresents the state of discovery in parallel civil proceedings to try to manufacture a basis for a third bite at the apple in this case (after having already filed two deficient complaints). xAI tries to sell a six-month stay as something that promotes "judicial efficiency." But there is nothing efficient about it. A stay would subject OpenAI and this Court to extended litigation on unsubstantiated claims that do not meet the well-established federal pleading standards and would invite future litigants to also bring baseless claims against competitors in hopes of getting discovery to support them. OpenAI respectfully requests the Court deny the Motion to Stay.

*First*, the balancing of relative hardships favors denying the Motion to Stay. xAI has no right to take discovery to satisfy its pleading obligations and it thus suffers no harm if it cannot pursue discovery prior to March 17. xAI's approach would turn the entire federal pleading system on its head. It is a foundational feature of federal civil procedure after *Iqbal* and *Twombly* that "pleadings must assert well-pleaded factual allegations to advance to discovery." *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021). Accordingly, courts routinely reject similar requests by plaintiffs for post-dismissal discovery in order to identify plausible allegations. *See, e.g.*, *Merritt v. Redwood Invs., LLC*, 2019 WL 4416130, at *3 (S.D. Cal. Sep. 13, 2019). xAI

1  does not cite a single case supporting a stay to enable a plaintiff to look for plausible allegations to
2  cure a dismissed complaint.

3  On the flip side, OpenAI and its employees are harmed every additional day that these
4  unfounded allegations remain unresolved.  xAI's lawsuit was a transparent effort to intimidate
5  employees from leaving xAI for their choice of employer, including to OpenAI.  It publicly
6  impugned the integrity of many individuals who did nothing but change jobs.  xAI touted and
7  tweeted about the lawsuit.  OpenAI obtained a dismissal because xAI did not assert plausible
8  allegations that OpenAI did anything wrong.  To allow a six-month stay that keeps the lawsuit and
9  its attendant intimidation alive will result in ongoing hardship for OpenAI and its employees.

10  *Second*, OpenAI did not engage in improper tactics to resist third-party discovery in other
11  proceedings as xAI claims.  Even if a post-dismissal stay to pursue further third-party discovery
12  were appropriate (which it is not), xAI's motion wrongly claims that xAI has been "actively
13  pursuing discovery from OpenAI" in parallel civil cases against Xuechen Li and Jimmy Fraiture
14  and that OpenAI has "resisted at every turn."  Mot. at 2-3.  xAI's assertions to the Court are
15  simply not true.  OpenAI responded promptly and thoroughly to third-party discovery in *Li*,
16  including by producing documents months ago.  xAI has not identified problems with "many of
17  xAI's discovery requests," as it told the Court.  Declaration of LeElle Slifer in Support of Motion
18  to Stay Case ("Slifer Decl.") ¶ 3.  Indeed, xAI now concedes that there is only a subset of one
19  request at issue, and for that subset, OpenAI communicated its position last *November* and xAI
20  took no action to follow up until this motion to stay.  xAI cannot now claim harm from not having
21  a portion of discovery that it did not pursue.  Continuing their misrepresentations about the state of
22  discovery, xAI fails to tell the Court in its motion that with respect to *Fraiture,* last December,
23  xAI asked the court in the U.K. to stay that case and the court granted that stay.  So there are no
24  ongoing proceedings there in which to seek discovery.  Separate from the stay, xAI has already
25  performed an inspection of Fraiture's available accounts in the U.K., with Fraiture's cooperation,
26  to try to gather evidence.  xAI does not describe any problem with that inspection, any discovery
27  disputes, or any discovery it has not yet pursued in that case.
28

*Third*, xAI couches this motion as advancing "judicial economy."  Mot. at 2.  Not so.  There is nothing economical about staying this baseless case because xAI cannot cure the deficiencies in xAI's FAC by the Court's March 17 deadline.  To the contrary, it is xAI's position that threatens judicial economy.  If xAI obtains a stay to fish for additional evidence against OpenAI, it would sanction a new playbook for trade secret plaintiffs.  They could sue both the departing individual and the competing company (with clearly insufficient allegations against the latter), and then just ask for a stay of a motion to dismiss claiming "no harm from delay."  That not only opens the door to competition-chilling litigation, but is inefficient for the courts.

With respect to the alleged criminal investigations of Li and Fraiture, xAI offers nothing but speculation that they will ever yield relevant information.  xAI does not articulate any anticipated timeline for any such investigations, it has not alleged that the federal prosecutors have expressed any interest in continuing any such investigation or proceeding to indictment, it has not claimed that federal prosecutors have indicated any willingness to share information with xAI, and it has not explained why a six-month stay will be sufficient for there to be "substantial progress" that meaningfully changes xAI's ability to cure the deficiencies in its FAC.  The alleged investigations provide no support for a stay here.

## II.     BACKGROUND

### A.     xAI Files This Lawsuit

On August 28, 2025, xAI filed its lawsuit alleging trade-secret misappropriation against Li.  *See* Complaint, *X.AI Corp. et al. v. Li*, No. 25-cv-07292 (N.D. Cal. Aug. 28, 2025), Dkt. No. 1.  On September 10, 2025, xAI initiated litigation alleging trade-secret misappropriation against Fraiture in the U.K.  Slifer Decl. Ex. C at 4.  Apparently rather than investigate any connection between OpenAI and Li and Fraiture's alleged misappropriation through those cases, xAI brought this lawsuit against OpenAI just two weeks later.  Dkt. No. 1 ("Compl.").  xAI has never suggested there was any exigency in filing this lawsuit.  xAI never moved for a temporary restraining order or preliminary injunction.

B. **OpenAI Responds to Third-Party Discovery in the *Li* Case and Produces Documents While xAI Remains Silent for Three Months**

On September 18, 2025, xAI served OpenAI with a third-party subpoena in the *Li* case. Declaration of Carolyn Hoecker Luedtke in Support of Opposition to Motion to Stay Case ("Luedtke Decl.") ¶ 2. That subpoena attached 17 requests for production. *Id.* OpenAI timely served its responses and objections on October 2, 2025. *Id.* ¶ 4. It did not ask for an extension or delay. Later that month, at xAI's request, counsel met and conferred, and OpenAI expanded what it agreed to produce and clarified other responses. *Id.* ¶ 5. One request—Request No. 4— remained at issue. On November 19, 2025, OpenAI's counsel emailed xAI's counsel confirming that OpenAI would stand on its earlier responses and objections as to Request No. 4. *Id.* ¶ 6. Request No. 4 sought "[a]ll DOCUMENTS and COMMUNICATIONS related to Your internal review and decision-making process about whether to hire [Li]." *Id.* ¶ 3. OpenAI agreed to produce any documents "reflecting the disclosure of xAI information to OpenAI by [Li] or any request by OpenAI for [Li] to disclose xAI information," and further confirmed that OpenAI had not located any such documents after a reasonable and diligent search. *Id.* ¶ 6. OpenAI objected to producing internal recruiting notes and discussion about whether to hire Li that did not reflect the disclosure of xAI information because, among other reasons, "documents reflecting OpenAI's internal decision-making regarding recruiting that do not reflect actual or anticipated disclosure of xAI information by Li are irrelevant." *Id.* It was not clear to OpenAI why, in the litigation against Li, internal discussion at OpenAI about its internal-only hiring strategy would be relevant. On the other hand, it could reveal sensitive confidential communications to a competitor who was actively in a fight for talent in the AI industry. OpenAI explained this position in its objections and meet and confer. Overall, OpenAI agreed to produce documents in response to a variety of requests, including, among other categories, all communications with Li in 2025, all documents exchanged with Li in 2025 with certain agreed upon exceptions for immigration documents, any source code generated by Li in 2025 in response to interview prompts, and employment offer paperwork. *Id.* ¶ 7. Further, for a variety of requests, as a result of meet and confer, OpenAI provided amended

1  responses outlining that it did not have documents responsive to certain requests. *Id.* ¶ 8. On
2  December 10, 2025, OpenAI produced documents in response to xAI's subpoena. *Id.* ¶ 9.
3       xAI did not respond to OpenAI's November 19 position on Request No. 4 for months. The
4  first time OpenAI learned that xAI took issue with OpenAI's response was when xAI's counsel
5  referenced "discovery disputes" during the initial February 25 meet and confer for this Motion to
6  Stay. *Id.* ¶ 11. Counsel for OpenAI was not aware of any discovery disputes and had to ask what
7  the disputes were. xAI explained that it was the single Request No. 4. *Id.* ¶ 12. xAI has
8  confirmed there were no other disputes. *Id.* ¶ 17. Nevertheless, after that meet and confer, xAI
9  filed its Motion to Stay and the supporting declaration from its counsel. In the declaration of
10 xAI's counsel, she attested that "OpenAI has refused to comply with many of xAI's discovery
11 requests," Slifer Decl. ¶ 3, and that OpenAI's "refusal to respond to certain third-party discovery
12 requests is plainly improper," *id.* ¶ 4. She also stated that xAI intended to file a motion to compel
13 to address these "deficiencies." *Id.* When asked why Ms. Slifer's declaration repeatedly
14 referenced problems with "many" discovery "requests" (plural) and "deficiencies" (plural) when
15 there was only Request No. 4 at issue, xAI's only explanation was that the declaration's
16 description was "unintentional." Luedtke Decl. ¶¶ 13-14. Intentional or not, xAI's motion
17 presents a false narrative that OpenAI "resist[ed]" discovery "at every turn," refused to respond to
18 a subpoena, and that "many" requests that are at issue. Mot. at 3; Slifer Decl. ¶ 3. What is
19 undisputed is that xAI's concern is about a subset of a single request that seeks internal recruiting
20 documents that do not reference the disclosure of xAI information or efforts to seek xAI
21 information, that xAI has known OpenAI's position on that subset of documents since November,
22 and that xAI took no steps to file a motion to compel or otherwise escalate.
23      xAI's motion claims that it is raising a concern with Request No. 4 now because of what it
24 describes as "new information." Mot. at 3 n.2; Slifer Decl. ¶ 4. Tellingly, xAI's motion does not
25 disclose to the Court what this purported "new information" is. After reading the Motion to Stay,
26 OpenAI immediately asked about the cited "new information" and sought to meet and confer.
27 Luedtke Decl. ¶ 13. In response, on March 4, 2026, xAI provided OpenAI with a PowerPoint that
28 xAI alleges was presented to OpenAI. xAI claimed that it was procured from Li's accounts and

1  that an xAI internal expert recently said that it contained confidential xAI information. *Id.* ¶ 15.
2  xAI agreed that its possession of the document was not new and that it had the document since at
3  least last October—*5 months ago*. *Id.* ¶ 16. Indeed, xAI references an alleged "presentation to
4  OpenAI" that "contain[ed] xAI's Confidential Information" in the Complaint and FAC. Compl.
5  ¶ 51; FAC ¶ 55. Although OpenAI has found no evidence that Li presented a document to
6  OpenAI, all this suggests the PowerPoint is not "new information" or a basis for a stay to revive a
7  long-dormant meet and confer.

        **C.**    **xAI Requests to Stay the U.K. Litigation Even While Fraiture Voluntarily Produces Available Accounts**

        Fraiture and xAI agreed to a Consent Order shortly after the U.K. litigation began. Slifer
10  Decl. Ex. C at 5. Under that Consent Order, Fraiture committed to furnish available devices and
11  account access to an Independent IT Expert for imaging and inspection. *Id.* The parties agreed to
12  a Forensic Search Protocol on November 17, 2025, and the forensic review is ongoing. Luedtke
13  Decl. ¶ 19. xAI's counsel has never suggested that there is any dispute about Fraiture's
14  compliance or about the forensic review itself, and OpenAI is aware of none. *Id.* ¶ 18.

        Rather than pursue the equivalent of discovery in the U.K., xAI chose to stay the U.K.
16  litigation. On December 5, 2025, xAI requested a stay of proceedings until after the FBI returns
17  other Fraiture devices that it seized. *Id.* ¶ 19. The High Court of Justice stayed the U.K. litigation
18  on January 27, 2026 until seven days after Mr. Fraiture's devices are returned. *Id.* In light of the
19  stay, none of the U.K. procedures similar to formal U.S. discovery have occurred. And prior to
20  requesting the stay, xAI took no steps to pursue third-party discovery from OpenAI in the U.K.
21  litigation. *Id.* ¶ 20; *see* Slifer Decl. Ex. C at 6 (describing letter of request process).

        On September 26, 2025, xAI filed an application for an order pursuant to 28 U.S.C. section
23  1782 seeking to take discovery of OpenAI in support of its U.K. litigation against Fraiture. Slifer
24  Decl. Ex. C at 7. Many of xAI's requests had little connection to Fraiture, and were instead thinly
25  veiled efforts to obtain early discovery for its case against OpenAI in this Court. *Id.* at 14-16. On
26  November 11, 2025, Judge Spero denied xAI's application under 28 U.S.C. section 1782. Slifer
27  Decl. Ex. D. Judge Spero explained that xAI could still pursue the requested discovery from

Fraiture in the U.K. through the Consent Order process (which it is doing), and that xAI's requested discovery amounted to a "fishing expedition" that was far broader than the "narrow allegations against Fraiture in the U.K. Proceeding" could support. *Id.* at 9, 12.

### D. **This Court Dismisses with Leave to Amend, and xAI Moves to Stay**

xAI has already had two opportunities to assert plausible allegations of trade-secret misappropriation against OpenAI. On October 2, 2025, OpenAI filed a motion to dismiss xAI's initial complaint. Dkt. No. 30. Then on October 27, 2025, after OpenAI agreed to give xAI additional time, Dkt. No. 43, xAI filed the FAC, Dkt. No. 44. Instead of addressing the deficiencies in the Complaint related to Li and Fraiture, and despite extra time provided for them to try to do so, xAI loaded the FAC with spurious allegations against new individuals, including claiming that two individuals improperly disclosed trade secrets to an unauthorized and unnamed third party that was, in fact, a forensics vendor hired by the individuals' counsel and disclosed to xAI, and a claim that another individual tried unsuccessfully to connect to an inactive link. OpenAI moved to dismiss again. Dkt. No. 59.

On February 24, 2026, the Court granted OpenAI's motion to dismiss the FAC, and allowed xAI 21 days to file an amended complaint curing the deficiencies identified. Dkt. No. 73. xAI sought to meet and confer with OpenAI, and asked for agreement to a six-month stay to be revisited after six months to see if it should be extended for another six months. Luedtke Decl. ¶ 11. OpenAI declined to stipulate and xAI filed this motion seeking a six-month stay. *See* Mot. The motion does not say what xAI proposes to happen at the end of six months.

### III. ARGUMENT

In assessing whether to grant a stay, courts must weigh "the competing interests which will be affected," including "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). These factors are "non-exclusive." *In re PG&E Corp. Sec. Litig.*, 100 F.4th 1076, 1085 (9th Cir. 2024). As "[t]he party requesting a stay," xAI "bears the burden of

showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433-34 (2009). xAI comes nowhere close to sustaining that burden here.

> A. **xAI Has Not Shown It Will Suffer Damage, Hardship, or Inequity from the Denial of a Stay**
>
>> 1. **xAI's Lack of Plausible Allegations Against OpenAI Is Not a Proper Basis to Stay the Case**

xAI's Motion to Stay is based on the erroneous premise that it is somehow harmful or unjust to xAI to comply with the deadline to file its amended complaint before it has additional time to pursue discovery in its separate cases against Li and Fraiture and to wait for some unspecified provision of information by federal prosecutors at some unspecified time in connection with investigations the prosecutors are alleged to be pursuing. That premise is contrary to law.

It is a foundational principle—recognized by the Supreme Court and the Ninth Circuit—that "a plaintiff must satisfy the pleading requirements of Federal Rule of Civil Procedure 8(a) before proceeding to discovery." *Merritt*, 2019 WL 4416130, at *3; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *Whitaker*, 985 F.3d at 1177 ("[P]leadings must assert well-pleaded factual allegations to advance to discovery."). Discovery "to satisfy Rule 8's plausibility standard" is "simply incompatible with *Iqbal* and *Twombly*." *Mujica v. AirScan, Inc.*, 771 F.3d 580, 593 n.7 (9th Cir. 2014).

Accordingly, district courts in this Circuit have repeatedly rejected efforts to obtain discovery *after* dismissal of a complaint where the plaintiff has sought discovery to try to develop plausible allegations in an amended complaint. *See Merritt*, 2019 WL 4416130, at *3-4 (holding that after a motion to dismiss was granted, plaintiffs could not serve third-party discovery "to allege sufficient facts to nudge their civil RICO claim into the realm of plausibility"); *In re German Auto. Mfrs. Antitrust Litig.*, 335 F.R.D. 407, 409 (N.D. Cal. 2020) ("Once a court has found a plaintiff's complaint deficient under Rule 8, that plaintiff is no longer entitled to plausibility discovery."); *Persian Gulf Inc. v. BP W. Coast Prods. LLC*, 225 F. Supp. 3d 1178,

1180 (S.D. Cal. 2016) (holding that plaintiffs were "not entitled to pre-amendment plausibility discovery").

Courts also reject efforts by plaintiffs to buy more time to investigate after dismissal of a complaint to identify facts to plead in an amended complaint. That work, of course, must be done before filing a lawsuit. In *In re Cisco Sys. Inc. Securities Litig.*, 2013 WL 1636384 (N.D. Cal. Apr. 16, 2013), the court dismissed the plaintiffs' complaint under Rule 12(b)(6), and the plaintiffs requested an extension of time to allow them to "renew their prior investigation in attempt to secure new evidence to support their" allegations. *Id.* at *1. The court rejected that argument because the plaintiffs were "required to have completed [their] investigation *before* filing suit, *not after*." *Id.* (emphasis in original). "If Plaintiffs lacked the requisite information to allege their claims … when they filed suit," the court continued, "they should not have sued Defendants in the first instance." *Id.*

xAI offers no authority to the contrary. The only cases that plaintiffs cite where the court granted a stay based on parallel civil proceedings involve situations in which the *adjudication* of issues in other cases is likely to produce inconsistent results or narrow issues. *See Noble v. JP Morgan Chase Bank, N.A.*, 2022 WL 4229311, *2, *9 (N.D. Cal. Sep. 13, 2022) (granting a stay of proceedings because continuing the federal case would risk "inconsistent rulings and confusion" given that there were three cases pending in state court involving the same issues); *Vance v. Google LLC*, 2021 WL 534363, at *5-6 (N.D. Cal. Feb. 12, 2021) (granting a stay pending another case brought by the same plaintiff involving "overlapping factual and legal questions" that could render discovery and litigation moot and "create inconsistent and confusing outcomes"); *McElrath v. Uber Techs., Inc.*, 2017 WL 1175591, at *6-7 (N.D. Cal. Mar. 30, 2017) (granting a stay pending an outcome-determinative Supreme Court case).[1] None of these cases suggest that a stay is proper based on speculation that other civil proceedings will generate evidence that would give rise to plausible claims against OpenAI.

---

[1] In Plaintiffs' other cited cases, the Ninth Circuit *vacated* a stay rather than granted one. *See PG&E Corp.*, 100 F.4th at 1088; *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1067 (9th Cir. 2007); *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1113 (9th Cir. 2005).

Instead of legal authority to support their position, xAI misleadingly quotes this Court from the Motion to Dismiss hearing. xAI suggests multiple times in its motion that this Court has accepted that xAI should be able to use discovery in the individual cases against Li and Fraiture to develop plausible allegations against OpenAI. Mot. at 2, 6. But xAI is taking the Court's comments out of context. In the passage cited by xAI, the Court was responding to Ms. Slifer's argument that xAI does not "have access to" information that might give rise to plausible allegations "because it's in discovery and only OpenAI has it." Slifer Ex. A at 13:20-14:1. The Court clarified that, in discussing xAI's litigation against Li and Fraiture, it was addressing "as a general matter" that "in many of these cases, the plaintiff company could just sue the individual employees and get discovery from them," so the Court was "not sure it makes sense to make an exception to the usual plausibility requirement … because of the need for discovery in these cases." *Id.* at 15:11-16:5. Here, xAI did *not* choose to pursue discovery in the cases against its employees before filing this suit.

### 2. xAI's Requested Stay Would Harm OpenAI and Its Employees

On the other side of the ledger, OpenAI and its employees would suffer harm from a stay. xAI's litigation against OpenAI has already lasted six months, and from the outset xAI has sought and obtained publicity for its claims. Those claims falsely alleged that OpenAI has a broad strategy of profiting from the innovations of others and undermining fair competition, *see, e.g.*, FAC ¶ 15, which is completely at odds with the heart of OpenAI's mission to benefit all of humanity through its own research. Although xAI has never backed up those claims with plausible allegations—despite two prior attempts—xAI asks this Court for a six-month stay (and said in meet and confers that it might seek an additional stay at the end of that period). xAI's lawsuit also falsely and publicly accuses several OpenAI employees of misconduct, unfairly causing great distress. It is harmful to OpenAI and its employees to delay final adjudication in this case for another six months (or more) when xAI has no plausible allegations to sustain litigation under the Federal Rules.

### 3. xAI's Purported Need for Further Discovery Is a Problem of Its Own Making

Even if xAI had a proper basis to seek additional time in this litigation for discovery in its individual litigation against Li and Fraiture (which it does not), xAI cannot claim harm because it has failed to diligently pursue that discovery in the ample time it has already been afforded. Courts routinely consider a party's diligence in seeking discovery before allowing additional time to do so. *See Big Lagoon Rancheria v. California*, 2010 WL 1532323, at *2 (N.D. Cal. Apr. 16, 2010) (denying motion to stay discovery deadline to allow further third-party discovery where movant was not "reasonably diligent in seeking discovery"); *Wilson v. Frito-Lay N. Am., Inc.*, 2015 WL 846546, at *2 (N.D. Cal. Feb. 25, 2015) (denying request for additional time to take discovery because "[p]laintiffs have not demonstrated that they diligently pursued the discovery").

In *Li*, xAI failed to diligently pursue the discovery that it now claims to need at least six months to pursue. xAI's assertions about discovery from OpenAI are flatly wrong and its continued lack of candor with the Court is concerning. *See* Section II.B above. As detailed above, OpenAI fully cooperated with xAI's third-party subpoena in the *Li* case and produced documents. OpenAI heard nothing from xAI to suggest that xAI took issue with OpenAI's responses or production for *three* months until xAI raised this motion to stay last week. And while xAI asserts that OpenAI has "refused to comply" with "many" requests and references multiple "deficiencies," Slifer Decl. ¶¶ 3-4, xAI's counsel confirmed in meet and confer on March 4 that the only issue that xAI now seeks to raise relates to a subset of the single Request No. 4. Luedtke Decl. ¶ 17.

xAI's motion is based on the false narrative that OpenAI somehow refused to participate in discovery or was withholding swaths of information. But xAI cannot credibly seek a stay based on the real facts—there is one dispute over a portion of one request that xAI has dredged up after months of inaction. Had xAI moved to compel on this issue in November when it now says there was an impasse, the issue could have been resolved and the purported need to address that dispute would not justify a stay.

1    xAI also claims that the issue related to Request No. 4 is based on new information.  But again, this is not true.  *See* Section II.B above.  In meet and confer this week, xAI disclosed that the "new information" is a PowerPoint that xAI obtained from Li and that xAI claims was presented by Li to OpenAI.  Luedtke Decl. ¶ 15.  xAI conceded in meet and confer that xAI has had this document in its possession for months.  *Id.* ¶ 16.  Indeed, the original Complaint and the FAC describe an alleged presentation made to OpenAI that "contain[ed] xAI's Confidential Information."  Compl. ¶ 51; FAC ¶ 55.  Although xAI claims in meet and confer that it recently reviewed that document with an expert, it does not claim that it never reviewed the document previously, such as when it made its allegations in the Complaint and FAC.  There is nothing "new" here to warrant a stay.

In *Fraiture*, although xAI's counsel references "ongoing discovery disputes," Mot. at 7-8, xAI has once again misrepresented the state of play.  xAI does not describe any ongoing disputes in *Fraiture* and OpenAI is not aware of any ongoing disputes.  Luedtke Decl. ¶ 18.  Nor does the declaration of xAI's counsel mention any disputes related to Fraiture.  *See generally* Slifer Decl.  Moreover, xAI does not inform the Court that xAI itself sought and obtained a stay of the U.K. litigation.  Luedtke Decl. ¶ 19.  Nevertheless, xAI's counsel is carrying out an inspection of available accounts pursuant to a process agreed upon by xAI and Fraiture in a Consent Order and Forensic Search Protocol.  *See* Slifer Decl. Ex. C at 5; Luedtke Decl. ¶ 19.  xAI's motion raises no issue with that inspection.  Further, prior to requesting the stay, xAI took no steps to pursue third-party discovery from OpenAI in the U.K. proceedings.  *See* Luedtke Decl. ¶ 20; Slifer Decl. Ex. C at 6 (describing letter of request process to obtain foreign discovery).

Contrary to xAI's suggestion, there was nothing improper about OpenAI referencing this litigation in objections to discovery sought from OpenAI in *Li* and the Section 1782 application in *Fraiture*.  Mot. at 7-8.  These objections were appropriate because in both cases, xAI sought broad discovery from OpenAI that was unrelated to xAI's individual allegations against Li and Fraiture—seeking to jump the gun on discovery in this litigation.  In *Li*, OpenAI's objection—which xAI's selective quotation omits—spoke to "premature third-party document requests" that "go[] beyond xAI's narrow allegations concerning [Li's] alleged misappropriation in this

litigation." Luedtke Decl. ¶ 8. And in response to xAI's Application to Take Discovery under 28 U.S.C. § 1782, OpenAI pointed out—and Judge Spero agreed—that xAI's document requests would interfere with this Court's management of discovery because xAI sought "broad discovery into OpenAI's recruiting process and its purported receipt of xAI confidential information," which had "only a tenuous connection with the claims against Fraiture in the U.K. Proceeding." Slifer Decl. Ex. C at 17-18; *id.* Ex. D at 12. Those objections proved prescient because this Court would go on to stay discovery and then dismiss all claims. This Court also agreed that there needed to be a protocol in this case, if it proceeded, to define the trade secrets at issue so discovery could be tailored, which xAI's broad third-party requests in the individual litigation sought to avoid.

### B. Judicial Economy Weighs Against a Stay of the Case

xAI claims that a "stay will promote judicial efficiency." Mot. at 5-6. To the contrary, staying this case will lead to just the opposite.

First, xAI claims that a stay in lieu of the *Li* and *Fraiture* proceedings will be more efficient because the claims are intertwined so discovery in those cases may produce relevant information for this case. Mot. at 5. But that assumes that xAI has a right to continue this case—a right that evaporates if it cannot plead plausible allegations sufficient to state a claim, something it must do by March 17. Putting xAI to that test, and potentially ending this litigation if it cannot meet that test, is more efficient than letting this case continue without an adequate pleading while xAI explores discovery.

Next, xAI claims that it is efficient to stay the case because an amended complaint and further motion to dismiss briefing will be needed if the case is not stayed. *Id.* at 5-6. But on that logic, staying a case will always be more efficient because litigation activity will not occur during the stay. The only reason xAI offers for why it would be less efficient to complete the amendment and motion to dismiss briefing now is pure speculation that "[t]he ongoing factfinding in those other cases will likely produce information relevant to xAI's claims against OpenAI." *Id.* at 5. But xAI offers no specifics about the kind of information it will be searching for to support its confident assertion that additional relevant information will likely be uncovered.

1    xAI's invocation of the pending criminal investigation makes the inefficiency of its approach all the more apparent. xAI gives no explanation for how it would obtain information or documents in the federal criminal investigation that could cure the deficiencies in its complaint, what kind of information or documents might be provided by federal prosecutors, or why they would even provide information to xAI. Nor does xAI explain when "substantial progress" in the criminal case would occur. The stay may continue for years with no update related to the criminal investigation, and the government may ultimately decide not to pursue that investigation further. Staying the case indefinitely based on sheer speculation about obtaining hypothetical information through potential future criminal charges is surely not efficient.

None of xAI's cases suggests that a stay pending criminal investigation is appropriate in these circumstances. In two of the cases, criminal charges had already been filed, and the charges were filed against parties to the case. *See Langley v. Guiding Hands Sch., Inc.*, 2022 WL 605358, at *2-3 (E.D. Cal. Mar. 1, 2022); *SEC v. Alexander*, 2010 WL 5388000, at *5 (N.D. Cal. Dec. 22, 2010). That scenario is inapposite to OpenAI as a third party. And in *Wroth v. City of Rohnert Park*, 2018 WL 888466 (N.D. Cal. Feb. 14, 2018), an investigation was ongoing, but that investigation followed a prescribed protocol which provided a deadline to either file charges or prepare a summary report within 90 days, allowing the stay to be limited to roughly six weeks. *Id.* at *1. By contrast, xAI offers no information about any timeline for the investigation. And even if there were an investigative protocol here, xAI gives no indication it will result in actionable information that the prosecutors would be willing to share with xAI at the end of the investigation. Moreover, none of xAI's cases involve a dismissed complaint with no amended complaint on file and a vague hope that a criminal investigation will give rise to plausible allegations.

xAI suggests the Court should continue the stay until Li can no longer assert a Fifth Amendment privilege, but that open-ended suggestion is not workable. If he is not indicted, Li could continue to assert that privilege long into the future. Moreover, Li is not even a party to this case, rendering any prejudice to xAI from proceeding in this case at best tenuous. And most importantly, xAI has no right to delay amending its complaint to pursue further fact investigation or discovery to develop plausible allegations for a lawsuit xAI has already decided to bring.

## IV. CONCLUSION

For the foregoing reasons, OpenAI respectfully requests that the Court deny xAI's Motion to Stay.

DATED: March 6, 2026

MUNGER, TOLLES & OLSON LLP

By: *s/ Carolyn Hoecker Luedtke*
CAROLYN HOECKER LUEDTKE
JONATHAN I. KRAVIS
DANE P. SHIKMAN
GABRIEL M. BRONSHTEYN
JOSEPH N. GLYNN

Attorneys for Defendants OpenAI, Inc., OpenAI Global, LLC, and OpenAI OpCo, LLC