CAROLYN HOECKER LUEDTKE (SBN. 207976)
carolyn.luedtke@mto.com
DANE P. SHIKMAN (SBN. 313656)
dane.shikman@mto.com
GABRIEL M. BRONSHTEYN (SBN. 338011)
gabriel.bronshteyn@mto.com
JOSEPH N. GLYNN (SBN. 337652)
joseph.glynn@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-3089
Telephone:     (415) 512-4000
Facsimile:      (415) 512-4077

JONATHAN I. KRAVIS (admitted *pro hac vice*)
jonathan.kravis@mto.com
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue, NW, Suite 500E
Washington, D.C. 20001-5369
Telephone:     (202) 220-1100
Facsimile:      (202) 220-2300

Attorneys for Defendants OpenAI, Inc., OpenAI Global, LLC, and OpenAI OpCo, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| X.AI CORP. and X.AI LLC,<br><br>    Plaintiffs,<br><br>vs.<br><br>OPENAI, INC., OPENAI GLOBAL, LLC, and OPENAI OPCO, LLC<br><br>    Defendants. | Case No. 3:25-cv-08133-RFL<br><br>**DECLARATION OF CAROLYN HOECKER LUEDTKE IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION TO STAY CASE** |

**DECLARATION OF CAROLYN HOECKER LUEDTKE**

I, Carolyn Hoecker Luedtke, hereby declare:

1. I am admitted to practice before this Court. I am a partner at the law firm of Munger, Tolles & Olson LLP and counsel for Defendants OpenAI, Inc., OpenAI Global, LLC, and OpenAI OpCo, LLC (collectively, "OpenAI"). I have personal knowledge of the facts set forth in this declaration, and, if called as a witness, I could and would testify competently to the matters set forth herein.

**Li Subpoena**

2. On September 18, 2025, X.AI Corp. and X.AI LLC ("xAI") served OpenAI with a third-party subpoena in *X.AI Corp. et al. v. Li*, No. 25-cv-07292 (N.D. Cal.). The subpoena attached 17 requests for production with a requested response date of October 2, 2025.

3. Request No. 4 sought "[a]ll DOCUMENTS and COMMUNICATIONS related to Your internal review and decision-making process about whether to hire [Li]."

4. On October 2, 2025, OpenAI served its responses and objections on xAI.

5. On October 18, 2025, xAI's counsel asked by email to meet and confer regarding OpenAI's responses and objections. Thereafter, my colleague Gabriel Bronshteyn and xAI's counsel Matt McCullough met and conferred by email and by video or phone conference. Through those meet and confers, OpenAI agreed to expand some of what it originally agreed to produce and to clarify other of its responses.

6. On November 19, 2025, Mr. Bronshteyn emailed xAI's counsel to confirm that OpenAI would stand on its earlier responses and objections to the full scope of Request No. 4. That email stated in relevant part:

> For RFP 4, we stand by our responses and objections, including that documents reflecting OpenAI's internal decision-making regarding recruiting that do not reflect actual or anticipated disclosure of xAI information by Li are irrelevant. Your proposal to sweep in internal OpenAI recruiting or hiring discussions that reflect "information communicated by or to Defendant," without respect to whether the information is xAI information, is unduly burdensome and overbroad. We maintain our agreement to produce documents reflecting the disclosure of xAI information to OpenAI by Defendant or any request by OpenAI for Defendant to disclose xAI information. After a reasonable and diligent search for non-privileged documents, OpenAI has located no such documents.

7. Overall, in response to the subpoena, OpenAI agreed to produce, among other categories, all communications with Li in 2025, all documents exchanged with Li in 2025 with agreed exceptions for immigration documents, any source code generated by Li in 2025 in response to interview prompts, and employment offer paperwork.

8. On November 21, 2025, OpenAI served amended responses and objections on xAI to reflect the revised positions resulting from the meet and confer process. Those amended responses and objections included attestations that OpenAI did not locate documents responsive to certain requests. The amended responses and objections to Request No. 4 included objections, among others, that "xAI cannot short-circuit the process of party discovery in its separate litigation against OpenAI by serving premature third-party document requests on OpenAI here, particularly to the extent that the Request goes beyond xAI's narrow allegations concerning Defendant's alleged misappropriation in this litigation." OpenAI also objected to the "Request as seeking confidential commercial and trade secret information without substantial need." And, OpenAI objected that the "Request is not tailored to any alleged trade secret misappropriation. Documents reflecting OpenAI's internal decision-making regarding recruiting that do not reflect actual or anticipated disclosure of xAI information by Defendant are irrelevant. OpenAI will construe this request to be limited to documents that reflect the disclosure of xAI information to OpenAI by Defendant or any request by OpenAI for Defendant to disclose xAI information." In OpenAI's response to Request No. 4, it ultimately responded, "OpenAI has conducted a reasonable and diligent search for non-privileged documents, if any, in its possession, custody or control that reflect (i) the disclosure of xAI information to OpenAI by Defendant, and/or (ii) any request by OpenAI for Defendant to disclose xAI information. OpenAI has located no such documents after a reasonable search and inquiry."

9. On December 10, 2025, OpenAI produced documents in response to xAI's third-party subpoena.

10. Counsel at my firm did not receive any further outreach from xAI's counsel about OpenAI's position on Request No. 4 after the November 19 email from Mr. Bronshteyn until my meet and confer with xAI's counsel LeElle Slifer on February 25, 2026 about the stay request.

11. On February 25, 2026, I met and conferred with Ms. Slifer by videoconference regarding xAI's request to stay this case. During that meet and confer, Ms. Slifer asked for agreement to a six-month stay to be revisited after six months to see if it should be extended for another six months. Ms. Slifer also mentioned that there were outstanding discovery disputes relating to the third-party subpoena in the *Li* case. I told her I was not aware of any disputes. She said that her colleague Matt McCullough would follow up and explain what they were.

12. Later that day, Mr. McCullough sent an email identifying Request No. 4 as the request in dispute and forwarding Mr. Bronshteyn's November 19 email. I asked if there had been further meet and confer dialog since that November 19 email about Request No. 4, and Mr. McCullough confirmed that there had not.

13. After reviewing xAI's Motion to Stay, I emailed Ms. Slifer and Mr. McCullough on March 2 to ascertain Ms. Slifer's basis for asserting in her declaration that "OpenAI has refused to comply with many of xAI's discovery requests" and that OpenAI "refus[ed] to respond to certain third-party discovery requests." I also asked what the "new information" was referenced in Paragraph 4 of Ms. Slifer's declaration.

14. On March 3, 2026, Ms. Slifer responded to my March 2 email by stating that "our dispute relates solely to RFP 4" and "any suggestion that it was more than one RFP versus the requests for different sorts of documents was unintentional."

15. On March 4, 2026, I met and conferred with Ms. Slifer and Mr. McCullough by videoconference. A few minutes before our scheduled call, Mr. McCullough provided a copy of a PowerPoint file by email. During the meet and confer, xAI's counsel stated that the PowerPoint was procured from an account belonging to Mr. Li, that xAI alleges it was presented to OpenAI, and that an xAI internal expert recently told them that the PowerPoint contained confidential xAI information.

16. xAI's counsel confirmed that they had access to this PowerPoint file at least as early as October 2025.

17. xAI's counsel also again confirmed that its only remaining discovery dispute with OpenAI arising out of the third-party subpoena in the *Li* litigation concerned the scope of OpenAI's response to Request No. 4.

**Fraiture Litigation in U.K.**

19. I am not aware of any discovery disputes between OpenAI and xAI in connection with xAI's U.K. litigation against Jimmy Fraiture.

20. Based on my review of filings in that litigation, I understand that xAI's U.K. litigation against Mr. Fraiture is presently stayed until the FBI returns to Mr. Fraiture the devices that it seized. xAI requested the stay in a filing on December 5, 2025. In that application, xAI told the court that its Forensic Search Protocol of Mr. Fraiture's available accounts under a Forensic Search Protocol dated November 17, 2025 would continue during the stay. The U.K. court issued an Order dated January 27, 2026 staying the U.K. litigation against Mr. Fraiture until seven days following the return of Mr. Fraiture's devices by the FBI.

21. xAI has taken no steps with OpenAI to pursue third-party discovery from OpenAI in the U.K. litigation.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on March 6, 2026, at San Mateo, California.

By:    *s/ Carolyn Hoecker Luedtke*
       CAROLYN HOECKER LUEDTKE