CAROLYN HOECKER LUEDTKE (SBN 207976)
carolyn.luedtke@mto.com
DANE P. SHIKMAN (SBN 313656)
dane.shikman@mto.com
GABRIEL M. BRONSHTEYN (SBN 338011)
gabriel.bronshteyn@mto.com
JOSEPH N. GLYNN (SBN 337652)
joseph.glynn@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-3089
Telephone:    (415) 512-4000
Facsimile:    (415) 512-4077

JONATHAN I. KRAVIS (*pro hac vice*)
jonathan.kravis@mto.com
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue, NW, Suite 500E
Washington, D.C. 20001-5369
Telephone:    (202) 220-1100
Facsimile:    (202) 220-2300

Attorneys for Defendants OpenAI, Inc., OpenAI
Global, LLC, and OpenAI OpCo, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| X.AI CORP. and X.AI LLC, | Case No. 3:25-cv-08133-RFL |
|---|---|
| Plaintiffs, | **NOTICE OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STRIKE ALLEGATIONS FROM SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| vs. | |
| OPENAI, INC., OPENAI GLOBAL, LLC, and OPENAI OPCO, LLC, | |
| Defendants. | Date:    May 12, 2026 |
| | Time:    10:00 a.m. |
| | Judge:    Honorable Rita F. Lin |

Case No. 3:25-cv-08133-RFL

MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STRIKE XAI'S SECOND AMENDED COMPLAINT

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on May 12, 2026, at 10:00 a.m., in Courtroom 15 of the above-entitled Court, located on the 18th floor of 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable Rita F. Lin, Defendants ("OpenAI") will and hereby do move to dismiss with prejudice Plaintiffs' Second Amended Complaint (Dkt. Nos. 81 [public], 82-2 [sealed]) in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6), and, in the alternative, move to strike pursuant to Federal Rule of Civil Procedure 12(f) portions of the Second Amended Complaint as immaterial, impertinent, scandalous, and outside the scope of the Court's leave to amend.

DATED:  March 31, 2026                    MUNGER, TOLLES & OLSON LLP


                                          By:      _s/ Carolyn Hoecker Luedtke_
                                                  CAROLYN HOECKER LUEDTKE
                                                  JONATHAN I. KRAVIS
                                                  DANE P. SHIKMAN
                                                  GABRIEL M. BRONSHTEYN
                                                  JOSEPH N. GLYNN

                                          Attorneys for Defendants OpenAI, Inc., OpenAI
                                          Global, LLC, and OpenAI OpCo, LLC

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION................................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................................. 3

III.  ARGUMENT ..................................................................................................................... 6

      A.    xAI's Trade Secret Claim Should Be Dismissed With Prejudice ........................... 6

            1.    xAI Still Fails to Allege Direct Misappropriation by OpenAI ..................... 7

                  (a)    OpenAI Did Not Tell or Encourage Li to Disclose xAI Trade
                         Secrets ................................................................................................ 7

                  (b)    The Purported Presentation is Insufficient to Allege That
                         OpenAI Itself Misappropriated Trade Secrets ................................... 9

            2.    xAI Still Fails to Allege that OpenAI Indirectly Misappropriated
                  Trade Secrets With Knowledge or Reason to Know of Improper
                  Disclosure ..................................................................................................... 10

                  (a)    Indirect Misappropriation Allegations Regarding Li ..................... 10

                  (b)    Indirect Misappropriation Allegations Regarding the Senior
                         Finance Executive............................................................................ 12

            3.    xAI Still Fails to Allege Misappropriation Through Vicarious
                  Liability ........................................................................................................ 13

            4.    Leave to Amend Would Be Futile and Unduly Prejudicial......................... 14

      B.    At a Minimum, the Court Should Strike Implausible Allegations of Trade
            Secret Misappropriation As Impertinent, Immaterial, and Scandalous.................. 15

IV.   CONCLUSION ................................................................................................................. 15

MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STRIKE XAI'S SECOND AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*ABC Acquisition Co., LLC v. AIP Prods. Corp.*,
   2020 WL 4607247 (N.D. Ill. Aug. 11, 2020) ............................................................................ 9

*Arthur J. Gallagher & Co. v. Tarantino*,
   498 F. Supp. 3d 1155 (N.D. Cal. 2020) ................................................................................... 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................. 6, 8

*Attia v. Google LLC*,
   983 F.3d 420 (9th Cir. 2020) .................................................................................................. 7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................. 6, 8

*Boquist v. Courtney*,
   32 F.4th 764 (9th Cir. 2022) .................................................................................................. 6

*Bus. Sols. LLC v. Ganatra*,
   2020 WL 1279209 (C.D. Cal. Jan. 22, 2020) ......................................................................... 9

*Carr v. AutoNation Inc.*,
   2018 WL 288018 (E.D. Cal. Jan. 4, 2018) ............................................................................ 10

*CellMark, Inc. v. Webster*,
   2025 WL 1426825 (E.D. Ky. May 16, 2025) .......................................................................... 9

*In re Century Aluminum Co. Sec. Litig.*,
   729 F.3d 1104 (9th Cir. 2013) ................................................................................................ 6

*CleanFish, LLC v. Sims*,
   2020 WL 4732192 (N.D. Cal. Aug. 14, 2020) ...................................................................... 14

*Flexport, Inc. v. Freightmate AI, Inc.*,
   2025 WL 2399666 (N.D. Cal. July 10, 2025) ....................................................................... 11

*Genentech, Inc. v. JHL Biotech, Inc.*,
   2019 WL 1045911 (N.D. Cal. Mar. 5, 2019) ....................................................................... 11

*Golden v. Google LLC*,
   2024 WL 1880336 (N.D. Cal. Apr. 3, 2024) ........................................................................ 14

*In re Hernandez*,
   2011 WL 3300927 (B.A.P. 9th Cir. Jan 5, 2011) ................................................................... 9

MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STRIKE XAI'S SECOND AMENDED COMPLAINT

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ................................................................................................ 6

*Lesnik v. Eisenmann SE*,
  374 F. Supp. 3d 923 (N.D. Cal. 2019) ................................................................................. 15

*Luna v. Vineyard*,
  2020 WL 13281524 (C.D. Cal. Dec. 3, 2020)...................................................................... 15

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ......................................................................................... 6, 14

*Navigation Holdings, LLC v. Molavi*,
  445 F. Supp. 3d 69 (N.D. Cal. 2020) ..............................................................................10, 13

*Oki Semiconductor Co. v. Wells Fargo Bank, N.A.*,
  298 F.3d 768 (9th Cir. 2002) ...........................................................................................13, 14

*P2i Ltd. v. Favored Tech USA Corp.*,
  2024 WL 4294652 (N.D. Cal. Sept. 24, 2024)..................................................................... 13

*Perimiter Sols. L.P. v. Fortress N. Am., LLC*,
  2025 WL 553288 (E.D. Cal. Feb. 19, 2025) .......................................................................... 8

*Salameh v. Tarsadi*,
  726 F.3d 1124 (9th Cir. 2013) .............................................................................................. 15

*Space Data Corp. v. X*,
  2017 WL 5013363 (N.D. Cal. Feb. 16, 2017)....................................................................... 13

*Strifling v. Twitter Inc.*,
  2024 WL 54976 (N.D. Cal. Jan. 4, 2024) ............................................................................. 12

*Veronica Foods Co. v. Ecklin*,
  2017 WL 2806706 (N.D. Cal. June 29, 2017).............................................................8, 12, 14

*Whittlestone, Inc. v. Handi-Craft Co.*,
  618 F.3d 970 (9th Cir. 2010) ................................................................................................ 15

**STATE CASES**

*Silvaco Data Sys. v. Intel Corp.*,
  184 Cal. App. 4th 210 (2010) ................................................................................................. 9

**FEDERAL STATUTES**

18 U.S.C. § 1839(3)(B)................................................................................................................ 13

18 U.S.C. § 1839(5)....................................................................................................................... 9

MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STRIKE XAI'S SECOND AMENDED COMPLAINT

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6)..................................................................................................... 6

Fed. R. Civ. P. 12(f)........................................................................................................ 15

Fed. R. Civ. P. 15........................................................................................................... 12

MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STRIKE XAI'S SECOND AMENDED COMPLAINT

## I.    INTRODUCTION

This is xAI's third attempt to state a viable claim that OpenAI stole its trade secrets.  It still cannot do so.  Nothing has changed that would fix the myriad deficiencies in xAI's pleading since the Court dismissed the last complaint five weeks ago.  xAI previewed its inability to move the needle: in its recent motion to stay, xAI argued it would suffer "considerable inequity" if it did not get at least six months to take third-party discovery from OpenAI to try to find "more detailed allegations establishing a link to OpenAI."  Request for Judicial Notice ("RJN"), Ex. B at 7-8 (arguing a stay was "necessary").  Rebuffed by the Court, xAI now says "never mind" and files the Second Amended Complaint ("SAC").  Not surprisingly, the SAC still "does not point to any misconduct by OpenAI."  Motion to Dismiss Order, Dkt. No. 73 ("MTD Order") at 1.  The new text is focused on Xuechen Li and the finance executive, and *not* on *OpenAI's* conduct.  What remains the same is OpenAI does not need or want anyone's trade secrets, especially not from xAI, which is failing in the marketplace and hemorrhaging talent.

*First*, xAI still fails to plausibly allege "direct misappropriation" based on its inducement theory.  MTD Order at 8.  xAI's "information and belief" allegations relating to Li's interview process do not "indicat[e] that OpenAI told or encouraged" Li to copy, disclose, or otherwise misappropriate xAI information.  MTD Order at 8.  Even accepting xAI's inference in the SAC that Li was asked to deliver a presentation about a prior project during his interview (which is speculative and false[1]), simply asking a candidate about prior work experience is standard interviewing practice, and does not plausibly allege inducement.  Without more, xAI's allegations regarding Li only amount to—at most—OpenAI's passive receipt of xAI information, which is insufficient to state a claim for misappropriation.

*Second*, the SAC also does not support a theory of "indirect misappropriation."  With respect to Li and his alleged interview presentation, xAI still fails to make "nonconclusory

---

[1] To be clear, OpenAI denies that Li made the interview presentation he is alleged to have made in the SAC.  And xAI only makes this allegation on information and belief.  SAC ¶ 68.  Even if the Court accepts this information and belief allegation as true for purposes of a motion to dismiss, the SAC is insufficient to state a claim.

MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STRIKE XAI'S SECOND AMENDED COMPLAINT

allegations that permit a reasonable inference that OpenAI knew that the information was a trade secret, that Li had improperly acquired the information, or that Li was improperly or mistakenly disclosing the information." MTD Order at 9. Even assuming the presentation was made (and it was not), xAI does not allege any facts about what information Li provided and therefore cannot plausibly support its bare-bones allegation that the secrecy of any disclosure would have been evident to Li's interviewers. And the facts do not support a plausible inference that information from the slides, if communicated, must necessarily have been known by OpenAI to be a trade secret. In fact, xAI concedes the alleged trade secret nature of the slides could not have readily been discerned, including because the slides "demonstrate" that Li "attempt[ed] to mask" any xAI information, and moreover, it took an *xAI* engineer to now allege they contained xAI trade secrets (months after this lawsuit was filed). *See* RJN Ex. A at 2, 11, 16; SAC ¶ 68. Indeed, many aspects of the slides are concededly ***not*** confidential as xAI only sought to seal a fraction of the content. *X.AI Corp. et al. v. Li*, No. 3:25-cv-07292-RFL (N.D. Cal.) ("*Li*"), Dkt. No. 122-8.

xAI's additional allegations regarding disclosures by the senior finance executive fare no better. These allegations should be stricken or disregarded because they exceed the Court's grant of leave to amend, which barred "chang[ing] the allegations except to correct the identified deficiencies" absent stipulation or leave. MTD Order at 15. Yet even if considered, those allegations do not plausibly establish misappropriation because xAI fails to allege that the broad categories of information identified are trade secrets and does not allege facts that plausibly establish that OpenAI knew or should have known any disclosure was improper.

*Third*, xAI fails to allege that OpenAI is vicariously liable under a theory of *respondeat superior*. xAI's largely unchanged allegations still do not "support a plausible inference that xAI's former employees used its trade secrets in their work at OpenAI." *Id.* at 14. And the bare allegation that OpenAI pursued partnerships related to computing capacity reflects ordinary market behavior, and does not remotely suggest misappropriation.

Because xAI fails to cure the defects identified in the Court's Order, leave to amend would be futile, and the Court should dismiss this case with prejudice.

MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STRIKE XAI'S SECOND AMENDED COMPLAINT

## II.    FACTUAL BACKGROUND

xAI spills a lot of ink on its latest round of allegations, but very little of substance has changed.  None of it "point[s] to any misconduct by OpenAI."  MTD Order at 1.

**Xuechen Li.**  Li interviewed with but never came to work for OpenAI.  xAI has long alleged that while working for xAI, Li downloaded confidential xAI information to a personal account and took steps to conceal it.  First Amended Complaint, Dkt. No. 44 ("FAC") ¶¶ 56, 59-63; SAC ¶¶ 77, 79-82.  But xAI has never alleged that Li's conduct had anything to do with OpenAI.  xAI has speculated about means by which Li could have transferred xAI information to OpenAI, including improbably a read-only cloud storage link that an OpenAI recruiter sent to Li (FAC ¶ 58; SAC ¶ 75) and a "setting[]" in Li's ChatGPT account that allowed ChatGPT to access Li's files (FAC ¶ 83; SAC ¶¶ 78, 101).  However, the Court found these allegations inadequate to "state a plausible misappropriation claim against OpenAI," and xAI's SAC does nothing to cure that fatal defect.  MTD Order at 1, 8-10.

xAI has also previously alleged, on information and belief, that Li disclosed xAI information in his interviews with OpenAI.  FAC ¶ 55.  The Court held, *inter alia*, that xAI did not allege "what specific information Li disclosed in the presentation" and that it failed to allege OpenAI knew or should have known that any information presented "was a trade secret" and that "Li had improperly acquired the information, or that Li was improperly or mistakenly disclosing the information."  MTD Order at 2, 9.  xAI has focused most of its efforts in the SAC on adding more words to its claims about Li's alleged interview presentation even though xAI's counsel had that presentation when it filed the FAC.  xAI now alleges, "[o]n information and belief, as part of the OpenAI interview process," that OpenAI generally asks job candidates to "deliver a presentation about a prior project," but it does not allege that OpenAI asked *Li* to deliver a presentation, let alone to share xAI trade secrets, or that it *ever* asks candidates from competitors to deliver technical presentations.  SAC ¶ 66.  xAI also alleges, again "[o]n information and belief, that to prepare for his interviews with OpenAI, Li created a slide deck titled 'interview slides 07-13-25,' which, on information and belief, he presented, either visually or by verbally sharing the contents, to his OpenAI interviewers during one or more of his interviews.'"  *Id.* ¶¶ 66, 68.  xAI

MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STRIKE XAI'S SECOND AMENDED COMPLAINT

admits that it cannot say what specific information, if any, was actually shared with OpenAI in the alleged interviews. *See id.* ¶¶ 68, 72. xAI nevertheless makes a conclusory, unwarranted deduction that "[t]here can be almost no question that Li made this presentation to share during his interviews" and that "the title of the file [is] essentially an admission of such disclosure." *Id.* ¶ 68. This unsupported assertion ignores the question of what happened after the slides were made (July 13 was a *Sunday*) and is not accompanied by any allegation that OpenAI asked Li to make a presentation.

Like the FAC, the SAC does not plausibly allege "that OpenAI was aware" that the information in the alleged presentation "constituted xAI's confidential information or trade secrets." MTD Order at 2. The facts do not support xAI's conclusory allegation that the "content of the presentation" itself showed that OpenAI would have known that Li was "divulging xAI trade secrets." SAC ¶¶ 12, 71-72. Even though xAI had the slides before filing the FAC, it could not tell what aspects allegedly were xAI trade secrets until after an *xAI* engineer recently reviewed the slides, something that an OpenAI interviewer in the moment obviously could not do. *See id.* ¶ 68; RJN Ex. A (Motion to Compel, *Li* Dkt. No. 109, at 1, 6). Moreover, when seeking to block OpenAI from limiting a production to only documents about "xAI information," xAI told the Court that "OpenAI … lacks any basis to determine what constitutes 'xAI information'" and warned that Li may have "repackaged information in such a way to attempt to mask" it or "orally communicated proprietary details about xAI model training that he may have passed off as his own personal knowledge or invention (e.g., as relating to his academic research work from before he started working at xAI)." RJN Ex. A at 2, 16. All these scenarios suggested by xAI—Li "masking" xAI information, or passing off xAI information as his academic research—defeat the plausibility of any inference that OpenAI knew trade secrets were being disclosed. Further, while the SAC includes high-level categories of information that the slides contain (SAC ¶ 71.a), xAI does not allege that the entirety of the presentation consists of trade secrets, nor could xAI do so given that it only sealed a small fraction of the slides, *Li* Dkt. No. 122-8.

**Jimmy Fraiture.** Like the FAC, the SAC alleges that Fraiture copied xAI information while he was working at xAI. FAC ¶¶ 98-102; SAC ¶¶ 118-22. The Court recognized "that is not

-4-                                                Case No. 3:25-cv-08133-RFL

MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STRIKE XAI'S SECOND AMENDED COMPLAINT

enough to allow a reasonable inference that Fraiture actually used" the information while employed at OpenAI and that "there is no indication that OpenAI told or encouraged" him to take the information. MTD Order at 8, 11-12. xAI does not even try to cure these defects.

**Senior Finance Executive.** xAI previously alleged that OpenAI hired a senior finance executive for a role related to data centers though he lacked relevant experience before his time at xAI, FAC ¶ 116; SAC ¶ 145, and that he used hostile language in responding to outreach from xAI representatives after he joined OpenAI, FAC ¶¶ 118-19, ¶¶ 139-40. The Court held that those allegations do not "support a plausible inference" that the senior finance executive "*used* xAI's trade secrets at OpenAI." MTD Order at 11 (emphasis added).

xAI introduces a new conclusory allegation that the senior finance executive disclosed "other xAI Confidential Information" to OpenAI. SAC ¶¶ 142, 165. That information allegedly relates to "executive compensation," "business deals" and "transactions," "communications with xAI's investors," and "financial practices and strategies." *Id.* xAI does not allege anything further about what was disclosed—to whom it was disclosed, whether the recipients would know it was confidential to xAI, or how it was disclosed, nor does it allege the information was a trade secret. Moreover, xAI does not disclose how it learned this new information. This suspicious and conclusory allegation that does not tie to any trade secrets does not save xAI's trade secret claim.

**Uday Ruddarraju.** xAI previously alleged Ruddarraju unsuccessfully attempted to open a link to a document containing xAI information, FAC ¶ 130, which, as the Court correctly recognized, gives "no basis to infer that he used" the xAI information in that document "while employed at OpenAI." MTD Order at 12. xAI does not attempt to cure that defect. SAC ¶ 153.

**Ethan Knight and Hieu Pham.** xAI alleged Knight and Pham possessed "xAI related work chats and information" on personal devices (FAC ¶ 127), but xAI failed to allege any facts showing the information included trade secrets. MTD Order at 12. xAI also alleged Knight and Pham disclosed that information to an unidentified third party for unspecified reasons (xAI omitted this was a forensics vendor hired by Knight and Pham's counsel). FAC ¶ 128. The Court recognized there were no allegations to suggest OpenAI could be liable for that disclosure. MTD Order at 12. The SAC adds none. SAC ¶¶ 150-53.

MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STRIKE XAI'S SECOND AMENDED COMPLAINT

**Other OpenAI Employees.**  xAI never identified any basis for naming other OpenAI employees "beyond identifying what they did at xAI and the fact that they left for OpenAI around the same time as xAI's other former employees."  MTD Order at 12.  The SAC still does not allege any wrongdoing by them or by OpenAI.  Instead, xAI adds conclusory allegations that OpenAI sought to hire individuals with access to trade secrets who would allegedly "flout[]" their confidentiality obligations.  *E.g.,* SAC ¶¶ 20, 142-43, 149.  This flimsy allegation does not suffice.

## III.    ARGUMENT

To overcome a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).  It must allege facts that "permit the court to infer more than the mere possibility of misconduct" and push the claims across "the line between possibility and plausibility."  *Id.* at 678-79 (quoting *Twombly*, 550 U.S. at 557).  Assessing plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022).  The court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018).  "When faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are 'merely consistent with' their favored explanation"; "[s]omething more is needed, such as facts tending to exclude the possibility that the alternative explanation is true in order to render plaintiffs' allegations plausible."  *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013).  Dismissal with prejudice is proper when the deficiencies in a plaintiff's complaint "persisted in every prior iteration."  *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008).

### A.    xAI's Trade Secret Claim Should Be Dismissed With Prejudice

To state a claim under the DTSA, xAI must plead, among other things, misappropriation.  Misappropriation can be established through "(1) the acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;

MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STRIKE XAI'S SECOND AMENDED COMPLAINT

(2) the disclosure of a trade secret without the owner's consent; and (3) the use of a trade secret without the owner's consent." *Attia v. Google LLC*, 983 F.3d 420, 424 (9th Cir. 2020) (citations and quotation marks omitted).  xAI still fails to allege misappropriation by OpenAI.

### 1.    xAI Still Fails to Allege Direct Misappropriation by OpenAI

As with its prior pleadings, xAI does not make any allegations that OpenAI directly acquired, disclosed, or used xAI's trade secrets.  The central hypothesis of xAI's direct misappropriation theory is once again its allegation, made "on information and belief," that OpenAI misappropriated xAI trade secrets by directing, instructing or otherwise encouraging xAI employees "to steal or otherwise misappropriate xAI's Confidential Information and trade secrets."  SAC ¶ 170; *see also id.* ¶¶ 10, 103, 104, 117, 125, 137; *cf.* FAC ¶ 146.  But, as this Court has recognized, xAI has never "offer[ed] … nonconclusory allegations that permit a reasonable inference of inducement."  MTD Order at 8.  Alleged misappropriation by former xAI employees does not, standing alone, suffice to show that "OpenAI told or encouraged them" to take those steps.  *Id.*  The SAC does not fix this problem.

### (a)    OpenAI Did Not Tell or Encourage Li to Disclose xAI Trade Secrets

xAI attempts to support its inducement theory by alleging, "[o]n information and belief," that OpenAI's interview process involves "ask[ing] candidates to deliver a presentation about a prior project" and that the presentation by engineering candidates "typically addresses technical aspects of the project and the candidate's specific contributions."  SAC ¶ 66.  But xAI does not allege that OpenAI followed this alleged process in every case, or that OpenAI followed this process with Li, or that OpenAI actually asked Li to deliver a presentation, let alone that OpenAI told or encouraged him to disclose xAI confidential information during any portion of his interview.  Instead, it relies on an unwarranted deduction of fact regarding the title of slides with a Sunday date in their file name ("interview slides 07-13-25") and on conclusory "information and belief" allegations that speculate (incorrectly) that he presented the slides to OpenAI.  These allegations do not permit a reasonable inference that the slides were prepared at the request of OpenAI or that OpenAI asked Li to share xAI confidential information contained in those slides during his interview or that anyone from OpenAI ever saw those slides.

MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STRIKE XAI'S SECOND AMENDED COMPLAINT

The new allegations, without more, do not give rise to a plausible inference that OpenAI induced Li to disclose xAI confidential information because they do not tend to exclude an "innocent explanation." *Perimiter Sols. L.P. v. Fortress N. Am., LLC*, 2025 WL 553288, at *9 (E.D. Cal. Feb. 19, 2025); *see Veronica Foods Co. v. Ecklin*, 2017 WL 2806706, at *12, *14 (N.D. Cal. June 29, 2017). Under the plausibility standard, a plaintiff must present "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678, and an inference is not "plausible" when there is an "obvious alternative explanation," *id.* at 681 (quoting *Twombly*, 550 U.S. at 567), absent facts which "tend to exclude" that explanation. *Perimeter*, 2025 WL 553288, at *9. Courts have relied on these principles in finding allegations of misappropriation implausible when they are based on innocuous and commonplace employment practices. *See id.* at *9 ("[s]eeking out a plaintiff's qualified former employee or contractor" does not establish misappropriation "because it would not tend to exclude the innocent explanation that" the defendant's interest was based on the person's "general knowledge in the trade or … special knowledge of those persons who are skilled in the trade"); *Arthur J. Gallagher & Co. v. Tarantino*, 498 F. Supp. 3d 1155, 1173 & n.4 (N.D. Cal. 2020) (alleging that "employee compensation" was an "incentive to take trade secrets" did not plausibly support plaintiff's claim that a competitor gave a "directive" to departing employees "to take trade secrets").

Applying those pleading principles, xAI fails to plausibly allege that OpenAI induced Li to disclose xAI confidential information because the SAC contains no facts permitting a reasonable inference that OpenAI told or encouraged Li to do so. For one thing, xAI fails to allege OpenAI followed its allegedly typical practice of having candidates present on a prior project for Li despite his employment at xAI. Moreover, there is nothing unusual or nefarious about a prospective employer asking a recruit "why [he was] applying" or asking him to discuss prior experiences to evaluate the suitability of the applicant's skills and experience to the prospective employer's needs. SAC ¶ 68 (alterations in original). There are no allegations tending to exclude that "obvious alternative explanation" for OpenAI's alleged interview practice. *Iqbal*, 556 U.S. at 682.

MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STRIKE XAI'S SECOND AMENDED COMPLAINT

(b)    *The Purported Presentation Is Insufficient to Allege That OpenAI Itself Misappropriated Trade Secrets*

xAI also cannot plead misappropriation *by OpenAI*.  *See* 18 U.S.C. § 1839(5).  Like the FAC, the SAC "does not offer any nonconclusory allegations that OpenAI itself acquired, disclosed, or used xAI's trade secrets."  MTD Order at 7.

It is not enough to allege that OpenAI interviewers passively heard or saw Li present about xAI trade secrets.  "[I]nadvertently coming into possession of a trade secret will not constitute acquisition."  *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 223 (2010).  This Court agreed that "mere possession of trade secrets is not sufficient to constitute misappropriation."  MTD Order at 11.  Numerous federal courts have recognized that passive receipt absent purposeful conduct does not amount to acquisition.  *See Bus. Sols. LLC v. Ganatra*, 2020 WL 1279209, at *6 (C.D. Cal. Jan. 22, 2020) ("[A] person *acquires* a trade secret when they actively seek to gain ownership or control of the trade secret, but not when they are merely a passive recipient."); *see also In re Hernandez*, 2011 WL 3300927 (B.A.P. 9th Cir. Jan 5, 2011) (construing acquisition of a trade secret to be a "willful injury" because "the term 'acquired' as used in the statute 'implies more than passive reception; it implies pointed conduct intended to secure dominion over the thing'"); *CellMark, Inc. v. Webster*, 2025 WL 1426825, at *8 (E.D. Ky. May 16, 2025) (granting motion to dismiss trade secrets claim where plaintiff alleged that its former employee disclosed trade secrets to new employer because "[a] defendant's passive receipt of trade secrets without soliciting or using them is insufficient to show misappropriation of trade secrets"); *ABC Acquisition Co., LLC v. AIP Prods. Corp.*, 2020 WL 4607247, at *11 (N.D. Ill. Aug. 11, 2020) (granting summary judgment where trade secret claim was based on "read[ing] emails that [plaintiff's former employee] sent them that might have contained trade secrets").

Here, at most, xAI alleges that OpenAI passively received information from Li's alleged presentation.  That is nothing more than mere possession.  xAI does not allege that OpenAI engaged in any "pointed conduct" to seek or obtain trade secrets from Li.  Nor do any other allegations in the SAC support a reasonable inference that OpenAI engaged in purposeful actions to acquire xAI trade secrets through a job interview about his prior experience.  There is no

MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STRIKE XAI'S SECOND AMENDED COMPLAINT

allegation or any indication that OpenAI employees even retained the information presented and no allegation that OpenAI subsequently used it.  Just as the FAC failed to allege "any misconduct by OpenAI," the SAC still fails to plausibly allege that OpenAI did anything wrong.

**2.      xAI Still Fails to Allege that OpenAI Indirectly Misappropriated Trade Secrets With Knowledge or Reason to Know of Improper Disclosure**

The Court held that xAI failed to allege that OpenAI had indirectly misappropriated trade secrets.  MTD Order at 9.  None of xAI's allegations in the SAC alter that result.

*(a)      Indirect Misappropriation Allegations Regarding Li*

The Court held xAI had failed to allege "facts that permit a reasonable inference that OpenAI knew that" any disclosed information "was a trade secret, that Li had improperly acquired the information, or that Li was improperly or mistakenly disclosing the information."  MTD Order at 9.  xAI did not try to cure its allegations regarding the cloud storage link and ChatGPT setting. Instead, xAI focuses solely on Li's slides, which cannot plausibly establish OpenAI's knowledge.

xAI fails to cure the deficient allegations of knowledge that the Court identified in the FAC.  *Id.*  xAI offers the overarching allegation that OpenAI engineers "knew or should have known" that Li's alleged presentation "was improperly disclosing xAI trade secrets."  SAC ¶ 71. But that allegation itself is conclusory.  And conclusory allegations—even of knowledge—must be disregarded in evaluating the sufficiency of a complaint.  *See Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 79 (N.D. Cal. 2020) (holding that "conclusory assertion" of defendant's knowledge "devoid of any factual substantiation" was insufficient to establish indirect misappropriation); *Carr v. AutoNation Inc.*, 2018 WL 288018, at *3 (E.D. Cal. Jan. 4, 2018) (dismissing for failure to allege "what specifically would have caused [defendant] to know or have reason to know that [another company]'s possession of the Business Plan was wrongful").

None of xAI's other allegations plausibly support an inference of OpenAI's knowledge:

First, xAI focuses on the "content" of the slides.  SAC ¶¶ 12, 71.a.  But xAI does not allege what Li actually presented to OpenAI during those interviews, what portions of the slides were discussed, or that everything in the slides was a trade secret.  As such, there are no allegations of fact supporting xAI's implausible assertion that OpenAI engineers would have or should have

MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STRIKE XAI'S SECOND AMENDED COMPLAINT

known that Li was sharing xAI trade secrets. Indeed, xAI confirmed in multiple filings with this Court that the secrecy of those slides would not have been clear. For one thing, xAI only sought to seal a small portion of the slides. *Li* Dkt. No. 122-8. Moreover, xAI argued in a motion to compel that OpenAI could not recognize what was "xAI information" in the slides. RJN Ex. A at 2, 16. xAI's lead argument for that point was that "[t]he interview slides demonstrate" that "Li may have repackaged information in such a way to attempt to mask that the information he shared included or derived from xAI trade secrets." *Id.* And xAI admits that it took an *xAI* engineer to understand the confidential aspects of the slides. SAC ¶ 68. As such, even if the Court accepts the "information and belief" claim that Li presented from the slides, xAI demonstrates that it is not plausible to jump to the further conclusion that OpenAI interviewers would have known Li was improperly disclosing confidential xAI information.

Second, for similar reasons, the "relationship between the presentation's content and Grok 4" does not support OpenAI's knowledge without allegations about what content allegedly was presented to OpenAI, nor do those allegations tend to exclude an alternative innocent explanation. SAC ¶¶ 12, 71.b. xAI concedes that at the time of Li's interviews, Grok 4 "had just been released" and that its performance was "widely publicized." *Id.* ¶ 71.b. xAI alleges that "[i]ndustry commentators" were talking about Grok 4 and "attributed Grok 4's success to reinforcement-learning-related innovations," and xAI goes on to describe some of those innovations that were the subject of industry commentary. *Id.* ¶ 63. So even if Li did discuss Grok 4 in his interview (which xAI does not allege and for which there is no evidence), conversations about Grok 4 were happening in the industry—they certainly were not *per se* confidential or necessarily a red flag to OpenAI.

Third, the alleged "confidentiality label" on the slides (*id.* ¶¶ 12, 71.c) does not plausibly show OpenAI's knowledge. xAI does not allege they were labeled "xAI confidential," instead just "confidential." *Cf. Genentech, Inc. v. JHL Biotech, Inc.*, 2019 WL 1045911, at *12 (N.D. Cal. Mar. 5, 2019) (confidentiality marker supported allegations of knowledge where it said "GENENTECH Pharm R & D Technical Report – CONFIDENTIAL"); *see also Flexport, Inc. v. Freightmate AI, Inc.*, 2025 WL 2399666, at *1 (N.D. Cal. July 10, 2025) (recognizing that a "bare

MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STRIKE XAI'S SECOND AMENDED COMPLAINT

label of confidentiality" on a document does not "confer trade secret status"). It would make little sense for an interviewer to understand "confidential material" to refer to xAI confidential information when the slides were allegedly prepared for an interview. SAC ¶¶ 6, 12. And as alleged by xAI, Li stated that he was under an NDA with his future employer (*id.* ¶ 86) so OpenAI, if it even saw the marking, would very likely have viewed "confidential" as relating to the future employment relationship. Indeed, xAI itself separately alleges that confidentiality agreements are prevalent in the AI industry. SAC ¶¶ 12, 71.d. Nothing in the SAC tends to exclude that alternative explanation. *Veronica*, 2017 WL 2806706 at *12, *14.

*(b)    Indirect Misappropriation Allegations Regarding the Senior Finance Executive*

xAI alleges for the first time that the senior finance executive disclosed to OpenAI—under unspecified circumstances—"executive compensation," "business deals and other financial transactions," "communications with xAI's investors," and "financial practices and strategies." SAC ¶¶ 142, 165. As an initial matter, the Court should strike or disregard those allegations as outside the scope of its leave to amend. Courts in this District "consistently strike or dismiss parties and claims that exceed the scope of an order granting leave to amend." *Strifling v. Twitter Inc.*, 2024 WL 54976, at *1 (N.D. Cal. Jan. 4, 2024). The Court specified in its dismissal that it granted leave to amend subject to the following limitation: "The amended complaint may not add new claims or parties, or otherwise change the allegations except to correct the identified deficiencies, absent leave of the Court or stipulation by the parties pursuant to Federal Rule of Civil Procedure 15." MTD Order at 15. xAI's allegations about the senior finance executive's disclosures did not "correct the identified deficiencies," and nothing similar is in the FAC.

Even if considered on the merits, xAI fails to offer nonconclusory allegations that adequately allege indirect misappropriation—or any of the other elements of a DTSA claim. For one thing, xAI only alleges that the information disclosed by the senior finance executive is "xAI Confidential Information"—not that such information constitutes trade secrets. SAC ¶¶ 142, 165; *see* MTD Order at 12 (allegations fail to establish misappropriation if they do not "allow[] a reasonable inference that the confidential information included trade secrets"). Although xAI

-12-                              Case No. 3:25-cv-08133-RFL

alleges that the senior finance executive "flouted" his "obligations to protect xAI's trade secrets and Confidential Information," SAC ¶¶ 142, 165, xAI does not allege what he did to "flout" them, nor does it describe those purported trade secrets with the requisite level of detail. *See, e.g.*, *P2i Ltd. v. Favored Tech USA Corp.*, 2024 WL 4294652, at *4 (N.D. Cal. Sept. 24, 2024) (dismissing trade secret claim because allegations such as "confidential information pertaining to the specific chemical identity of reaction precursors" were "too high-level to provide effective notice"); *Space Data Corp. v. X*, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) (same for these descriptions: "data on the environment in the stratosphere" and "data on the propagation of radio signals from stratospheric balloon-based transceivers"). Further, xAI does not allege any of the facts necessary to show the alleged trade secrets have "independent economic value." 18 U.S.C. § 1839(3)(B).

xAI also fails to allege facts suggesting that OpenAI had knowledge regarding the alleged misappropriation by the finance executive. xAI's conclusory allegation—that "OpenAI was necessarily aware of the confidential nature of this information"—does not suffice. SAC ¶ 142; *see Navigation Holdings*, 445 F. Supp. 3d at 79. And without any allegations about what information was disclosed, xAI cannot plausibly allege that it would have been obvious to unidentified xAI recipients of this information that it was improperly disclosed.

### 3.    xAI Still Fails to Allege Misappropriation Through Vicarious Liability

The FAC failed to allege that OpenAI was vicariously liable under a theory of *respondeat superior*. MTD Order at 10-14. The SAC has no new allegations that would alter that result. As to Li, the Court acknowledged that Li never worked at OpenAI, and that xAI likewise did not allege that any OpenAI employee used a trade secret obtained from Li. *Id.* at 11. No new allegations affect that analysis. As to Fraiture, the FAC failed to make allegations "to allow a reasonable inference that Fraiture actually used" the information he allegedly copied at OpenAI. MTD Order at 11. And neither does the SAC. As to the senior finance executive, none of the new allegations, if considered, plausibly establish misappropriation. *See* p. 12, *supra*. And in any event, xAI fails to allege the senior finance executive's disclosures were "[w]ithin the course and scope of employment." *Oki Semiconductor Co. v. Wells Fargo Bank, N.A.*, 298 F.3d 768, 776 (9th Cir. 2002). As to Ruddarraju, xAI still alleges no conduct other than unsuccessfully attempting to

access xAI information, and there is accordingly still no basis to infer use of xAI information at OpenAI.  MTD Order at 12; *see* FAC ¶ 130; SAC ¶ 153.  And as to Pham and Knight, xAI's only material change was to delete allegations.  FAC ¶¶ 127-29; SAC ¶¶ 150-52.  xAI still does not allege Pham and Knight possessed trade secrets and does not allege that sharing such information with the unidentified third party was undertaken "to 'serve' OpenAI or that doing so was 'a kind [of act] that [they were] hired to perform.'"  MTD Order at 12 (quoting *Oki Semiconductor*, 298 F.3d at 776).  xAI makes no allegations of misappropriation within the course and scope of employment as to any other OpenAI employees.  MTD Order at 12; *see* FAC ¶ 121; SAC ¶ 143.

xAI's SAC continues to make conclusory and speculative allegations related to data centers:  that OpenAI allegedly "poach[ed]" xAI employees with data center experience in the summer of 2025 (SAC ¶¶ 18, 149), and that the timing of OpenAI's partnership with Oracle was "no coincidence" (*id.* ¶ 149).  Those allegations are not sufficient to allege that any OpenAI employee used xAI trade secrets relating to data centers.  Seeking additional computing power is commonplace market behavior for AI companies.  Moreover, beyond a timing "coincidence" (*id.* ¶ 149), xAI does not allege how any xAI information about xAI *building* Colossus 1 and 2 (*id.* ¶ 8) could have informed OpenAI's different business strategy of *partnering* with Oracle (*id.* ¶ 18).  In short, nothing in the SAC "tend[s] to exclude" the "innocent explanation" of OpenAI's "innocent market entry" or business activity.  *Veronica Foods*, 2017 WL 2806706, at *14; *accord CleanFish, LLC v. Sims*, 2020 WL 4732192, at *7 (N.D. Cal. Aug. 14, 2020) (dismissing complaint where allegations "indicat[ed] nothing more than the typical business practices").

### 4.    Leave to Amend Would Be Futile and Unduly Prejudicial

Dismissal with prejudice is warranted here.  The SAC is xAI's *third* attempt to state a viable trade secrets claim.  The Court identified a fundamental flaw with the FAC that xAI failed to "point to any misconduct by OpenAI."  MTD Order at 1.  The SAC barely attempts to cure this defect, and its allegation that OpenAI asks interviewees about prior work experience does not allege misconduct by OpenAI.  Because this fundamental deficiency "persisted in every prior iteration of the" complaint, *Metzler*, 540 F.3d at 1072, and xAI has still not corrected this deficiency even after the Court's order, leave to amend would be futile.  *See Golden v. Google*

MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STRIKE XAI'S SECOND AMENDED COMPLAINT

*LLC*, 2024 WL 1880336, at *4 (N.D. Cal. Apr. 3, 2024) (dismissing without leave to amend because further amendment would be futile when the plaintiff "was already granted leave to amend once … but was unable to correct the deficiencies"). And "it would be unduly prejudicial to [OpenAI] to litigate a third motion to dismiss regarding the same deficiencies," *Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923, 960 (N.D. Cal. 2019), as well as a "waste of scarce judicial resources," *Luna v. Vineyard*, 2020 WL 13281524, at *3 (C.D. Cal. Dec. 3, 2020).

Nor can xAI claim at this point that it still has further facts to plead—xAI "may not in substance say 'trust me,' and thereby gain a license for further amendment." *Salameh v. Tarsadi*, 726 F.3d 1124, 1133 (9th Cir. 2013). xAI effectively admitted in its motion to stay that it needed more discovery to identify additional facts to plead. RJN Ex. B at 7-8. However, as the Court recognized, xAI was required to have completed its investigation "*before* filing suit, not after." Dkt. No. 79 at 2. xAI still has not done the requisite investigation despite having now filed three different iterations of a complaint. xAI has demonstrated time and again that it seeks to use this lawsuit as part of a campaign of intimidation against former xAI employees, as it has continued to name employees in the SAC with no material change in the allegations despite this Court rejecting those allegations as inadequate. SAC ¶¶ 143, 153. xAI's persistent failure to identify facts to support its claims warrants dismissal with prejudice.

**B.     At a Minimum, the Court Should Strike Implausible Allegations of Trade Secret Misappropriation As Impertinent, Immaterial, and Scandalous**

If the Court does not dismiss the SAC in its entirety, and instead denies the motion based on xAI's allegations relating to Li (which it should not do), the Court should strike the allegations relating to all former xAI employees except Li because those allegations are "impertinent," "immaterial," and "scandalous." Fed. R. Civ. P. 12(f). Striking those allegations would avoid "the expenditure of time and money that must arise from litigating spurious issues." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). Further, this Court should strike the new allegations related to the finance executive as newly added without leave.

## IV.    CONCLUSION

OpenAI respectfully requests that the case be dismissed with prejudice.

MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STRIKE XAI'S SECOND AMENDED COMPLAINT

DATED:  March 31, 2026                    MUNGER, TOLLES & OLSON LLP


By:      *s/ Carolyn Hoecker Luedtke*
                    CAROLYN HOECKER LUEDTKE
                    JONATHAN I. KRAVIS
                    DANE P. SHIKMAN
                    GABRIEL M. BRONSHTEYN
                    JOSEPH N. GLYNN

                    Attorneys for Defendants OpenAI, Inc., OpenAI
                    Global, LLC, and OpenAI OpCo, LLC

Case No. 3:25-cv-08133-RFL

MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STRIKE XAI'S SECOND AMENDED COMPLAINT