# EXHIBIT A

KATHI VIDAL (State Bar No. 194971)
kvidal@winston.com
MATTHEW R. MCCULLOUGH (State Bar No. 301330)
mrmccullough@winston.com
CARSON SWOPE (State Bar No. 353352)
cswope@winston.com
**WINSTON & STRAWN LLP**
255 Shoreline Drive, Suite 520
Redwood City, CA 94065
Telephone: (650) 858-6500
Facsimile: (650) 858-6550

LEELLE B. SLIFER (*pro hac vice*)
lslifer@kslaw.com
JONATHAN HUNG (*pro hac vice*)
jhung@kslaw.com
**KING & SPALDING LLP**
2601 Olive Street, Suite 2300
Dallas, TX 75201
Telephone: (214) 764-4600
Facsimile: (214) 764-4601

Attorneys for Plaintiffs X.AI CORP. and X.AI LLC

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| X.AI CORP. and X.AI LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>XUECHEN LI,<br><br>Defendant. | Case No. 3:25-cv-07292-RFL<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL THIRD-PARTY PRODUCTION PURSUANT TO SUBPOENA**<br><br>**REDACTED**<br><br>Date:   April 14, 2026<br>Time:   10:00 am<br>Judge:  Honorable Rita F. Lin |

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on April 14, 2026, at 10:00 a.m., in Courtroom 15 of the above-entitled Court, located on the 18th floor of 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable Rita F. Lin, Plaintiffs ("xAI") will and hereby do move to compel third parties OpenAI Inc., OpenAI OpCo LLC, and OpenAI Global LLC ("OpenAI") to produce documents in response to RFP 4 in a third-party subpoena issued pursuant to Federal Rule of Civil Procedure 45 for the reasons explained below. xAI's motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities below, and all other papers in this matter.

Dated: March 6, 2026

**KING & SPALDING LLP**

By: */s/ Jonathan Hung*
KATHI VIDAL (State Bar No. 194971)
kvidal@winston.com
MATTHEW R. MCCULLOUGH (State Bar No. 301330)
mrmccullough@winston.com
CARSON SWOPE (State Bar No. 353352)
cswope@winston.com
**WINSTON & STRAWN LLP**
255 Shoreline Drive, Suite 520
Redwood City, CA 94065
Telephone: (650) 858-6500
Facsimile: (650) 858-6550

LEELLE B. SLIFER (*pro hac vice*)
lslifer@kslaw.com
JONATHAN HUNG (*pro hac vice*)
jhung@kslaw.com
**KING & SPALDING LLP**
2601 Olive Street, Suite 2300
Dallas, TX 75201
Telephone: (214) 764-4600
Facsimile: (214) 764-4601

Attorneys for Plaintiffs X.AI CORP. and X.AI LLC

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................................. 3

    A.    Li misappropriated xAI's trade secrets and destroyed evidence, all while in communication with OpenAI about potential employment. ...................................... 3

    B.    OpenAI refuses to produce a single document in response to RFP 4 of the subpoena. ................................................................................................................... 4

    C.    OpenAI refuses xAI's offer to narrow RFP 4. .......................................................... 6

    D.    xAI learns new information showing OpenAI likely does have documents responsive to RFP 4, yet OpenAI refuses to change its position. ............................ 6

III.  LEGAL STANDARD .......................................................................................................... 8

IV.   ARGUMENT ...................................................................................................................... 9

    A.    xAI's RFP 4 is relevant and proportional to the needs of this case. .......................... 9

        1.    RFP 4 seeks information relevant to xAI's trade secrets claims against Li. ................................................................................................................... 9

        2.    RFP 4 is proportional to the needs of the case. .............................................. 11

    B.    OpenAI's boilerplate objections fail to justify its refusal to produce even a single responsive document. ..................................................................................... 13

    C.    OpenAI's unilateral narrowing of RFP 4 is improper. ............................................ 15

V.    CONCLUSION ................................................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Athletics*, 2024 WL 3916100, at *3 (N.D. Cal. Aug. 23, 2024)........................................................15

*Availink, Inc. v. Texas Instruments, Inc.*,
   No. 22-CV-06947-EKL (PHK), 2025 WL 1592734 (N.D. Cal. June 5, 2025) ...............8, 9, 12

*Burlington*, 408 F.3d at 1148 (9th Cir. 2005) ...............................................................................15

*Cisco Sys., Inc. v. Chung*,
   462 F. Supp. 3d 1024 (N.D. Cal. 2020) ...................................................................................11

*Krypt, Inc. v. Ropaar LLC*,
   No. 19CV03226BLFVKD, 2020 WL 6084056 (N.D. Cal. Oct. 15, 2020) .........................9, 10

*Mandel v. Thrasher (In re Mandel)*,
   720 F. App'x 186 (5th Cir. 2018) ............................................................................................11

*In re Subpoena to PayPal Holdings, Inc.*,
   No. 18CV937CFCMPTDDEL, 2020 WL 3073221 (N.D. Cal. June 10, 2020) ......................11

*X.AI Corp., et al. v. OpenAI, Inc., et al.*,
   Case No. 3:25-cv-08133-RFL, Dkt. 78..........................................................................................2

*X.AI Corp. v. OpenAI, Inc. et al.*,
   N.D. Cal. Case No. 3:25-cv-08133 .............................................................................................5

**Statutes**

18 U.S.C. § 1836...............................................................................................................................9, 10

18 U.S.C. § 1839...............................................................................................................................9, 11

**Other Authorities**

FED. R. CIV. P. 45(a)(1)(A)(iii) .........................................................................................................8

Rule 26(b) ................................................................................................................. *passim*

Rule 45 ...........................................................................................................................4, 8, 14

**STATEMENT OF ISSUES TO BE DECIDED**

Whether the Court should compel OpenAI to produce documents responsive to RFP 4 of xAI's subpoena.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

The Court should compel OpenAI to produce documents responsive to RFP 4 of xAI's subpoena to OpenAI, which seeks documents relating to OpenAI's decision to hire Defendant Xuechen Li ("Li"). Those documents are directly relevant to xAI's trade secret claims against Li in at least three ways: (1) by showing evidence of acts of misappropriation by Li, including evidence that Li transmitted xAI trade secrets to OpenAI during the recruitment process; (2) by showing the value of the xAI information Li misappropriated, which is relevant to damages; and (3) by showing that the value of the xAI information Li misappropriated is derived from its secrecy, i.e., the fact that it is not publicly available but uniquely available from individuals at xAI with access (such as Li), which is relevant to establishing that xAI's information qualifies as a trade secret.

A recent development in xAI's ongoing investigation highlights why the discovery requested from OpenAI is both relevant and critically important. xAI's forensic analysis revealed that Li created a slide deck with the file name " ▇▇▇▇▇▇▇▇ " in July 2025 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Only two weeks ago, Li's counsel permitted an xAI engineer to review the presentation pursuant to the stipulated Preliminary Injunction (Dkt. 90). That engineer confirmed that the presentation contains numerous examples of xAI's trade secrets and confidential information. For instance, many of the slides include details about xAI's highly sensitive and confidential AI model training methods and checkpoints, as well as notes about problems Li encountered during his work developing those training methods and the solutions to those problems that he devised at xAI (and that he was ostensibly marketing to OpenAI in the context of this interview presentation).

Both the context and substance of this slide deck indicate that Li disclosed trade secrets to OpenAI during his interview process. That underscores the importance of OpenAI providing

discovery into its internal deliberations and records about Li's recruitment and interview process, as further evidence of the nature and extent of Li's misappropriation of xAI's trade secrets.

OpenAI is also the only available source of information regarding Li's communications and interviews with OpenAI. Li has asserted his Fifth Amendment rights and is refusing to provide any response to xAI's discovery requests in this case. Additionally, Li has admitted to deleting information from his personal devices and accounts. Given the relevance of the requested documents, the unique obstacles to obtaining further discovery from Li, and the pressing need for xAI to confirm its trade secrets are protected, OpenAI should produce documents responsive to RFP 4 of the subpoena.

But rather than produce documents, OpenAI unilaterally narrowed RFP 4 in a way that reduced the universe of responsive documents to **nothing**. Specifically, OpenAI "limited [RFP 4] to documents that reflect the disclosure of xAI information to OpenAI by Defendant or any request by OpenAI for Defendant to disclose xAI information" and then made its own determination as to what constituted xAI's information. That would make OpenAI's discovery obligation impossibly narrow, requiring it only to produce irrefutable, "smoking gun" evidence. But there is no legal basis for OpenAI to ex ante determine what constitutes xAI information or to withhold responsive, relevant documents simply because they do not explicitly reference "xAI information." Moreover, OpenAI not only lacks any basis to determine what constitutes "xAI information," but also has a clear conflict of interest in making such a determination, given xAI's related lawsuit against OpenAI. OpenAI is stonewalling narrowly-tailored discovery in this case because it hopes it can run out the clock in its own litigation with xAI: xAI must amend its petition in that case by March 17 and OpenAI opposes any stay of that matter.[1]

OpenAI's remaining objections to RFP 4 are nothing more than a litany of boilerplate objections. OpenAI's primary objection is that xAI should not be permitted discovery from OpenAI in *this case* when xAI has also separately sued OpenAI directly for trade secrets misappropriation. But that misses the point: the fact that the requested documents might *also* be relevant to the separate

---

[1] *See X.AI Corp., et al. v. OpenAI, Inc., et al.*, Case No. 3:25-cv-08133-RFL, Dkt. 78, OpenAI's Opposition to xAI's Motion to Stay Case. xAI hereinafter refers to this lawsuit as *OpenAI*.

OpenAI litigation is no reason to limit discovery here, because the documents are also relevant to *this case*. Further, OpenAI refused xAI's offer to narrow this RFP to address OpenAI's concerns about tying the request to this case, making it clear that OpenAI is simply stonewalling rather than advancing any legitimate objection based on the scope of the issues in this case.

Because the requested documents are plainly relevant to this case and OpenAI's unilateral narrowing cannot be justified, the Court should compel OpenAI to provide a full production in response to RFP 4 of the subpoena.

## II.    FACTUAL BACKGROUND

### A.    Li misappropriated xAI's trade secrets and destroyed evidence, all while in communication with OpenAI about potential employment.

Li admitted to stealing xAI's Confidential Information and trade secrets in July 2025. Compl. ¶¶ 43, 66. At the same time, Li was communicating and finalizing his employment with OpenAI. First Am. OpenAI Compl. ¶¶ 54–65.[2] As discussed further *infra* 7–8, in July 2025, Li created a slide deck for an interview with OpenAI with the file name " █████████████ (which he later deleted to conceal his misdeeds) that contained xAI's Confidential Information. Exs. A (Interview Slides) and B (Interview Slides Metadata); *see also* First Am. OpenAI Compl. ¶ 55. On July 23, OpenAI Research Talent Advisor Tifa Chen sent a message request to Li, and on July 24, sent him a link to a cloud storage location. *Id.* ¶ 58. Then, just hours after Li pilfered practically the entire xAI codebase by uploading it to his personal cloud storage location, Chen messaged with Li over the encrypted messaging application Signal, including via disappearing messages that xAI was unable to recover. *Id.* ¶¶ 59–61, 83, 95, 150. They met a few minutes later. *Id.* ¶ 62.

Li later admitted to destroying evidence of his wrongdoing. Compl. ¶¶ 43, 66. For example, after xAI discovered his theft, Li deleted the xAI Confidential Information and trade secrets he had stored in his personal cloud account, and then prevented xAI's access to his personal cloud account. First Am. OpenAI Compl. ¶¶ 66–77. And during his interviews with xAI where Li admitted to stealing

---

[2] xAI cites its First Amended Complaint in *OpenAI*, Dkt. 44, because it reflects additional information about Li that has been learned through the ongoing forensic analysis of Li's accounts and devices through the discovery process specified by the TRO in this case. Dkt. 20.

the source code, Li hid OpenAI's involvement, failing to mention that he had accepted an offer to work for OpenAI. *Id.* ¶ 67. Indeed, when asked directly where he would work upon departing xAI, Li refused to reveal the name of his future employer. *Id.*

**B.    OpenAI refuses to produce a single document in response to RFP 4 of the subpoena.**

To determine whether and to what extent Li disclosed xAI's trade secrets to OpenAI or used them in his conversations with OpenAI, xAI served OpenAI with a subpoena under Rule 45 on September 18, 2025. Ex. C (Sep. 18, 2025 Subpoena to OpenAI).  OpenAI served its operative response to RFP 4 on November 21, 2025. Ex. D (Nov. 21, 2025 OpenAI Response to Subpoena). RFP 4 seeks information relevant to Li's misappropriation, damages, and establishing that xAI's information qualifies as a trade secret.  But OpenAI's response unilaterally redefined the scope of RFP 4 to such an extent that OpenAI claimed it had no responsive documents to produce:

> **REQUEST FOR PRODUCTION NO. 4:**
>
> All DOCUMENTS and COMMUNICATIONS related to Your internal review and decision-making process about whether to hire Defendant, including without limitation internal memoranda, recruitment notes, Defendant's job application, notes or correspondence regarding a review of Defendant's background and/or concerns, risks, or questions related to hiring Defendant.
>
> **AMENDED RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**
>
> OpenAI incorporates the Objections to xAI's Definitions and Instructions as if fully set forth herein. OpenAI objects to this Request as unduly burdensome and not proportional to the needs of the case on the ground that it seeks information that is in the possession, custody, or control of a party in this case, or is readily available to a party to the extent that it requests Defendant's job application. Communications between Defendant and OpenAI about Defendant's candidacy are available to Defendant and should be requested from and obtained from Defendant in the first instance if they are properly discoverable. OpenAI further objects to this Request as premature and unduly burdensome because party discovery in this matter has only recently commenced, and the Request is thus likely to duplicate requests that may be propounded in party discovery. Third party discovery here should await resolution of the appropriate scope of party discovery covering many of the same documents. That is especially so given that xAI has filed a

4

separate lawsuit against OpenAI in this Court relating to xAI's allegations that Li misappropriated trade secrets. *See X.AI Corp. v. OpenAI, Inc. et al.*, N.D. Cal. Case No. 3:25-cv-08133. Party discovery in that case has not begun. In fact, xAI just served that complaint on OpenAI on September 29, OpenAI has moved to dismiss that complaint, and the Initial Case Management Conference in that case is not scheduled until January 2026. xAI cannot short-circuit the process of party discovery in its separate litigation against OpenAI by serving premature third-party document requests on OpenAI here, particularly to the extent that the Request goes beyond xAI's narrow allegations concerning Defendant's alleged misappropriation in this litigation.

OpenAI accordingly further objects to this Request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. OpenAI also objects to this Request as seeking confidential commercial and trade secret information without substantial need. OpenAI further objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, not reasonably limited in scope, and not seeking information relevant to any issue in the case, including because it calls for the production of "all" documents and communications related to "internal review and decision-making" by OpenAI, without regard to whether the documents are likely to have any connection to the claims or defenses at issue in this case (to the extent OpenAI can understand those claims and defenses given the redaction of operative pleadings). OpenAI understands that this suit pertains to Defendant's alleged trade secret misappropriation. But this Request is not tailored to any alleged trade secret misappropriation. Documents reflecting OpenAI's internal decision-making regarding recruiting that do not reflect actual or anticipated disclosure of xAI information by Defendant are irrelevant. OpenAI will construe this request to be limited to documents that reflect the disclosure of xAI information to OpenAI by Defendant or any request by OpenAI for Defendant to disclose xAI information.

Subject to, and without waiving the foregoing objections, OpenAI responds as follows: OpenAI has conducted a reasonable and diligent search for non-privileged documents, if any, in its possession, custody or control that reflect (i) the disclosure of xAI information to OpenAI by Defendant, and/or (ii) any request by OpenAI for Defendant to disclose xAI information. OpenAI has located no such documents after a reasonable search and inquiry.

**C.      OpenAI refuses xAI's offer to narrow RFP 4.**

After OpenAI served its original responses on October 2, 2025,[3] counsel for xAI and OpenAI conferred by videoconference on October 24, 2025, and by several further emails after that videoconference.  xAI offered to narrow RFP 4 to address OpenAI's concerns as follows:

> All DOCUMENTS and COMMUNICATIONS related to Your internal review and decision-making process about whether to hire Defendant that reflect, refer to, or describe information communicated by or to Defendant, documents shared or presented by or to Defendant (including any description of the content thereof), or the type, quantity, quality, or value of information about xAI or its products possessed by Defendant, including without limitation internal memoranda, recruitment notes, Defendant's job application, notes or correspondence regarding a review of Defendant's background and/or concerns, risks, or questions related to hiring Defendant.

Ex. E at 2 (Nov. 15, 2025 Email from Matt McCullough to Gabriel Bronshteyn).

OpenAI flatly refused this offer to narrow the RFP and insisted on maintaining its own unilateral narrowing that resulted in OpenAI claiming it had no responsive documents to produce. *Id.* at 1 (Nov. 19, 2025 Email from Gabriel Bronshteyn to Matt McCullough).

**D.      xAI learns new information showing OpenAI likely does have documents responsive to RFP 4, yet OpenAI refuses to change its position.**

In an effort to develop further evidence as to why OpenAI's position on RFP 4 was improper, xAI sought to have one of its engineers review the interview slides to explain precisely what sort of information contained within those slides constituted xAI's information since, to xAI's in-house and outside counsel, it was not entirely apparent from the face of the document.[4]

But xAI could not show those slides to an engineer without Li's consent because Li had designated the slides (as he designated all of the documents identified by the forensic experts pursuant to the TRO) as Attorneys' Eyes Only.  xAI identified the interview slides on December 16, 2025, as a document that it believed contained xAI's trade secrets or confidential information.  xAI and Li then

---

[3] The original responses are identical to the operative November 21 amended responses for RFP 4.  The only amendments related to other RFPs not at issue on this motion.

[4] To be sure, given that the slides reference xAI products by name, on information and belief, xAI believed they included xAI's trade secrets and confidential information, and thus referenced the interview slides in its First Amended Complaint in *OpenAI*.  First Am. OpenAI Compl. ¶ 55.

XAI'S MOTION TO COMPEL                                      CASE NO. 3:25-cv-07292-RFL

negotiated the Stipulated Preliminary Injunction, which allowed Li until February 6 to contest that position.  Therefore, if Li did not contest xAI's position, then xAI could have used that fact to seek to remove Li's Attorneys' Eyes' Only designation and show the deck to its engineer.  It could also use that fact in its communications with OpenAI or in any subsequent motion to compel.  But since Li did contest that the interview slides contained xAI's trade secrets and confidential information, xAI did not need to contest Li's Attorneys' Eyes' Only designation and could show the deck to an engineer after it determined that its attorneys needed an engineer's assistance to identify the trade secrets with more specificity.  Dkt. 90.   xAI thereafter timely identified to Li the engineer that would conduct that review on February 18, and the engineer reviewed the interview slides on February 20, 2026.  During that review, the engineer identified several disclosures of xAI trade secrets and Confidential Information.  The review also allowed xAI's attorneys to better understand what Li was disclosing to OpenAI in those slides and what OpenAI's engineers likely should have known Li was disclosing to them.

Specifically, the interview slides contain confidential details about xAI's products and model training, including █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.  This is precisely the type of information that would be most useful to a competitor in improving the design of their AI models.  A competitor could take the learnings reflected in this slide deck, for example, and incorporate the improvements and solutions xAI identified through hard work and significant investments into their competing products to unfairly compete against xAI.

Metadata reveals that these interview slides were created at the very same time that Li was talking with OpenAI and setting up meetings.  Ex. B. ████████████████████████████████████████████████████████████████████████████████████████████

---

7

The timing of these communications supports a plausible conclusion that Li created these interview slides for his interviews with OpenAI and that he actually presented the slides (or the content within the slides) with one or more people at OpenAI in connection with his communications and meetings with OpenAI.

In light of this new information, xAI yet again conferred with OpenAI on March 4, 2026 about RFP 4, reiterating that it was unworkable for OpenAI's attorneys to determine on the front end what constitutes "xAI information" when even xAI's own inside and outside counsel needed to rely on an engineer to understand just how sensitive the information was that Li disclosed to OpenAI in those interview slides. As of the time of this filing, and despite following up with OpenAI's counsel two days after the conferral, OpenAI "do[es] not have a response yet" to xAI's second attempt to confer on this dispute. Ex. H (March 6, 2026 email from Carolyn Leudtke to Matt McCullough). Although xAI would like to afford OpenAI more time to reconsider, OpenAI has forced xAI into a Catch-22. Either xAI files a motion to compel before OpenAI responds or it bears risking the dismissal of its complaint in *OpenAI* since OpenAI opposes any stay in that matter. OpenAI's positions across the two lawsuits amount to "heads I win, tails you lose," and so xAI now moves to compel OpenAI to respond to RFP 4 in full.[5]

## III.    LEGAL STANDARD

Rule 45 permits a party to serve a subpoena requiring the production of "documents, electronically stored information, or tangible things in that person's possession, custody, or control." FED. R. CIV. P. 45(a)(1)(A)(iii). "The scope of discovery allowed under a Rule 45 subpoena is generally the same as the scope of discovery permitted under Rule 26(b)." *Availink, Inc. v. Texas*

---

[5] It is unclear why OpenAI says in its Opposition to the Motion to Stay in the *OpenAI* case that "xAI now concedes that there is only a subset of one request at issue." *OpenAI*, Dkt. 78. To be clear: the entirety of RFP 4 is at issue, which includes requests for several types of documents, **none of which OpenAI has produced**. *See* Ex. H (March 3, 2026 Email from LeElle Slifer to Carolyn Leudtke) ("As to your first point, you are correct that our dispute relates solely to RFP 4. This is what we described in our motion to stay on page 3: 'xAI served OpenAI with a third-party subpoena, but OpenAI has refused to produce all documents in response to xAI's request, leaving xAI with no choice but to file a motion to compel in the near future.' That RFP does have request several different types of documents, but any suggestion that it was more than one RFP versus the requests for different sorts of documents was unintentional. Our motion to compel will relate only to RFP 4.").

*Instruments, Inc.*, No. 22-CV-06947-EKL (PHK), 2025 WL 1592734, at *2 (N.D. Cal. June 5, 2025) (citation omitted). Thus, a party is entitled to "'discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.'" *Id.* (quoting Fed. R. Civ. P. 26(b)).

## IV.    ARGUMENT

### A.    xAI's RFP 4 is relevant and proportional to the needs of this case.

xAI's RFP 4 satisfies Rule 26(b)'s requirements because it seeks information that is both relevant to the trade secrets claims against Li and proportional to the specific needs of this case given Li's destruction of evidence and loss of access to his devices. Every factor that courts consider when evaluating the scope of discovery under Rule 26(b)—the importance of the issues at stake, the amount in controversy, the parties' relative access to information, the parties' resources, the importance of discovery in resolving the issues, and the relative burden or expense of discovery—favors xAI.

#### 1.    RFP 4 seeks information relevant to xAI's trade secrets claims against Li.

First, RFP 4 is directly relevant to the claims at issue here. xAI has sued Li under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.* Under the DTSA, a misappropriation occurs when there is a "*disclosure* or *use* of a trade secret of another without express or implied consent by a person who used improper means to acquire knowledge of the trade secret." § 1839(5)(B). "Improper means" include theft, misrepresentation, and "breach of a duty to maintain secrecy." § 1839(6).  Any information regarding whether Li disclosed or used xAI's trade secrets in his communications is thus directly relevant to the claims against Li.  And OpenAI's internal discussions of Li's candidacy would likely reflect that disclosure.  Indeed, the evidence currently in xAI's possession shows that Li was communicating with OpenAI ▓▓▓▓▓▓▓▓▓ throughout July 2025, at the same time he was creating interview slides containing xAI confidential information, and at the same time he was stealing xAI's trade secrets and later destroying evidence of his theft. That is enough for relevancy. *See Krypt, Inc. v. Ropaar LLC*, No. 19CV03226BLFVKD, 2020 WL 6084056, at *2 (N.D. Cal. Oct. 15, 2020) (permitting broad discovery when the plaintiff's employee, who later began working for a competitor, communicated with a competitor's client contemporaneous with his theft of the plaintiff's trade

secrets).

RFP 4 seeks documents from OpenAI that would reveal whether Li disclosed or used xAI's trade secrets during the interview process. It asks for documents and communications related to OpenAI's review and decision-making process about whether to hire Li, including internal memos, recruitment notes, Li's job application, and notes or correspondence regarding a review of Li's background and concerns, risks, or questions related to hiring Li. These documents and communications would tend to show *what information* Li disclosed to OpenAI, and thus, whether Li disclosed or used xAI's trade secrets to OpenAI. Internal memos and recruitment notes, for example, will likely contain a summary of OpenAI's discussions with Li (from which OpenAI based its decision to hire Li), which could reflect Li's disclosure of xAI's trade secrets themselves or other information derived from use of xAI's trade secrets. That would include any internal documents describing any presentation Li made (such as the interview slides discovered in Li's online account) or other information he shared during his interviews, which would confirm whether Li violated his confidentiality agreement with xAI and misappropriated xAI's trade secrets by disclosing the confidential information in the interview slides to OpenAI. Similarly, OpenAI's internal assessments of its concerns, risks, or questions related to Li may show whether Li actually used or disclosed xAI trade secrets during the recruitment process or, at least, whether OpenAI suspected that he did.  Thus, all of the documents requested by RFP 4 would tend to show whether Li disclosed or used xAI trade secrets in his communications with OpenAI, especially considering that Li was communicating with OpenAI contemporaneous with his theft of xAI's information. *See Krypt*, 2020 WL 6084056, at *2.

RFP 4 is also directly relevant to the issue of damages—in particular, the value of the xAI information Li had access to and misappropriated.  RFP 4 seeks information regarding OpenAI's assessment of Li, which would show OpenAI's assessment of the value of information possessed by Li.  The value of xAI's trade secrets is directly at issue for damages in this case.  xAI's proposed offer to narrow the RFP—which OpenAI flatly rejected without cause—made this clear by expressly including documents relating to "the type, quantity, quality, or value of information about xAI or its products possessed by Defendant."  Any OpenAI document reflecting an assessment (whether one communicated to OpenAI by Li or one discussed internally by OpenAI) of the value of the information

Li misappropriated would be relevant to proving the amount of xAI's damages. § 1836(b)(3)(B)(i)–(ii) (providing both unjust enrichment and a reasonable royalty as bases for calculating damages under the DTSA); *Mandel v. Thrasher (In re Mandel)*, 720 F. App'x 186, 194 (5th Cir. 2018) (noting that "[t]he usual approach [for calculating damages] is to measure the value of the [trade] secret to the defendant"); *see also In re Subpoena to PayPal Holdings, Inc.*, No. 18CV937CFCMPTDDEL, 2020 WL 3073221, at *3 (N.D. Cal. June 10, 2020) (ordering compliance with a third-party subpoena when the third party possessed documents containing valuations of damages).

Finally, RFP 4 is directly relevant to proving that the xAI information at issue qualifies as a trade secret under the DTSA, which requires that a trade secret "derive[] independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." § 1839(3)(B). RFP 4 seeks documents relating to OpenAI's assessment of Li and the xAI information he possessed, shared with, or used in connection with OpenAI. These documents would show not only the value of that xAI information (as explained above), but also that the value is derived from secrecy and that the information is only available through persons with authorized access, like Li. Thus, the documents requested by RFP 4 would show that the xAI information has independent economic value derived from its secrecy. *See Cisco Sys., Inc. v. Chung*, 462 F. Supp. 3d 1024, 1052 (N.D. Cal. 2020) ("A plaintiff may show independent economic value by circumstantial evidence of . . . the willingness of others to pay for its access.") (internal quotations omitted) (citation omitted). Yet again, xAI's proposed narrowing made this relevance clear by expressly including documents relating to "the type, quantity, quality, or value of information about xAI or its products possessed by Defendant," but OpenAI refused to produce any documents.

For these reasons, the documents required by RFP 4 are directly relevant to xAI's claims.

### 2.     RFP 4 is proportional to the needs of the case.

RFP 4 is also proportional to the needs of this case. The documents sought by RFP 4 are crucial to protecting xAI's interests in this case. *See* Rule 26(b)(1) (considering "the amount in controversy" as a factor for the scope of permissible discovery). Li stole xAI's *entire codebase*, which, as this Court acknowledged, threatens xAI with irreparable harm. *See* Dkt. 46, TRO Hearing Tr. at 6:19.

11

Further, Li's intentional destruction of relevant evidence supports that OpenAI should be compelled to respond to RFP 4 in full without limitation. Contrary to OpenAI's assertions, xAI cannot obtain sufficient documents relating to the subject matter of RFP 4 from Li, and the only known custodian of these documents is OpenAI. *See* Rule 26(b)(1) (considering "the parties' relative access to relevant information" as a factor for the scope of permissible discovery). For example, Li may have orally disclosed or used xAI's trade secrets during his interview with OpenAI (for example, by reading the information from the interview slides discovered in Li's Google account, even if he did not visually display the presentation). As the person being interviewed, Li is unlikely to have a contemporaneous written record of what he orally disclosed during the interview (and if he did, he may have deleted it, as he deleted so many other files in this case). By contrast, as the interviewer who likely would have prepared internal notes or evaluations to guide its ultimate decision of whether to offer Li employment, OpenAI is likely to have a record of what Li disclosed during the interview.  Thus, OpenAI is likely to have unique, relevant documents that cannot be obtained from any other source.

There are also unique obstacles to obtaining discovery from Li.  For one, Li has destroyed relevant evidence to conceal his misconduct. Compl. ¶¶ 43, 66.  In addition, several of Li's devices have been seized by the FBI, limiting the information accessible to both Li and xAI. *See* Dkt. 46, TRO Hearing Tr. at 10:5–6; 21:22–22:10.  And in light of the parallel criminal investigation, Li has asserted his Fifth Amendment rights and refused to respond to discovery requests in this matter.  Exs. I, J (Sep. 9, 2025 Li's Responses to xAI's ROGs and RFPs).  Because of those unique circumstances, the only source of records showing what Li disclosed to OpenAI is OpenAI itself.

Nor is it burdensome for OpenAI to produce the documents requested by RFP 4. OpenAI bears the burden for showing that it is unduly burdensome or costly to produce the electronically stored information.  *See* Rule 26(b)(2)(B) ("[o]n motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost."); *Availink, Inc. v. Texas Instruments, Inc.*, No. 22-CV-06947-EKL (PHK), 2025 WL 1592734, at *2 (N.D. Cal. June 5, 2025) ("[t]he resisting party. . . has the burden to show that the discovery should not be allowed."). It cannot make that showing.  The universe of relevant documents is limited to documents about a single individual over likely no more than a few

weeks.[6] OpenAI has ample resources to produce these documents and has retained sophisticated counsel to respond to xAI's subpoenas. *See* Rule 26(b)(1) (considering the parties' resources). It will not cost OpenAI much of anything—time, money, or labor—to produce documents that are central to xAI's claims against Li.

Moreover, in an attempt to avoid burdening the Court with a discovery dispute, xAI even offered to narrow RFP 4 solely to documents and communications "that reflect, refer to, or describe information communicated by or to Defendant, documents shared or presented by or to Defendant (including any description of the content thereof), or the type, quantity, quality, or value of information about xAI or its products possessed by Defendant." Ex. E at 2. This further limitation expressly ties the RFP to Li and the information he shared with OpenAI, which is undoubtedly relevant to this case. OpenAI simply refused this proposed limitation without any explanation beyond restating its boilerplate objections, which are addressed below in Section IV.B.

**B.      OpenAI's boilerplate objections fail to justify its refusal to produce even a single responsive document.**

None of OpenAI's boilerplate objections justify its refusal to produce any documents.

*First*, OpenAI argues that RFP 4 seeks information "that is in the possession, custody, or control of a party in this case, or is readily available to a party" and that such information "should be requested from and obtained from Defendant in the first instance if they are properly discoverable." But RFP 4 is directed to documents that exist uniquely at OpenAI, such as OpenAI's *internal* review and memoranda reflecting disclosures by and information possessed by Li.  OpenAI fails to explain how any third party would have access to such documents.  And as explained, given the nature of an oral interview, it is likely that *only* OpenAI would have a record of what Li said in his interviews and other oral communications with OpenAI.  Thus, the documents sought by RFP 4 can only be obtained from OpenAI itself.

---

[6] OpenAI has thus far not disclosed exactly when communications with Li began, but based on the evidence available so far the majority of communications appear to have occurred in a single month (July 2025).  As such, it appears the time period at issue is limited, minimizing any burden on OpenAI. And OpenAI certainly has not established any burden given that it has failed to provide any information at all about the time period or volume of documents at issue.

xAI's Motion to Compel                                         Case No. 3:25-cv-07292-RFL

Moreover, even assuming some of the requested information might be obtained from Li in the ordinary case, several unique circumstances impede discovery from Li here. Li has asserted his Fifth Amendment rights and refused to provide any discovery. Exs. I, J. He also intentionally destroyed evidence of his wrongdoing and hid OpenAI's involvement in his theft of xAI's trade secrets, failing to mention that he had accepted an offer to work for OpenAI (let alone any of his clandestine conversations with OpenAI's recruiter). And several of Li's devices were seized by the FBI, limiting the information accessible to both Li and xAI. Without production from OpenAI—the only custodian that still possesses the requested documents—xAI will be unfairly restricted from determining the full scope or content of Li's disclosures as necessary to protect its trade secrets.

*Second*, OpenAI argues that RFP 4 is an attempt to "short-circuit the process of party discovery in its separate litigation against OpenAI by serving premature third-party document requests on OpenAI." Not so. RFP 4 is relevant to proving xAI's claims against *Li* in *this lawsuit*. RFP 4 specifically seeks documents that would tend to show whether Li disclosed or used xAI's trade secrets in connection with his recruitment by and interactions with OpenAI, as well as the value of the information possessed by Li as is relevant to proving damages or establishing that xAI's information qualifies as a trade secret. *See supra* Section IV.A. These are factual issues that go to an element of xAI's claims for trade secrets misappropriation by *Li*. OpenAI points to no authority showing that a nonparty is excused from responding to a Rule 45 subpoena just because the responsive documents might *also* be relevant to an additional lawsuit involving the non-party. Indeed, this Court has recognized that the considerable overlap between these two cases would mean that xAI would likely seek the "very same discovery" in this case as would be relevant to the *OpenAI* case. *See* Ex. K (Mot. to Dismiss Hr'g Tr. 14:9–18 (Feb. 3, 2026)).

*Third*, OpenAI argues that RFP 4 seeks information "without regard to whether the documents are likely to have any connection to the claims or defenses at issue in this case (to the extent OpenAI can understand those claims and defenses given the redaction of operative pleadings)." But as explained, the documents and communications sought by RFP 4 tend to show what information Li disclosed to OpenAI and the value of such information, which is relevant to damages and to establishing that xAI's information qualifies as a trade secret. This is directly relevant to central

14

elements of xAI's claims against Li.

*Finally*, OpenAI argues that RFP 4 seeks (1) "documents that are protected from disclosure by the attorney-client privilege" and "the attorney work product doctrine" and (2) "confidential commercial and trade secret information without substantial need." OpenAI's objections based on privilege and the work-product doctrine lack requisite specificity. *Athletics*, 2024 WL 3916100, at *3 (N.D. Cal. Aug. 23, 2024) ("The Ninth Circuit has held that boilerplate assertions of privilege do not satisfy Rule 26(b)(5)'s notice requirement.") (citing *Burlington*, 408 F.3d at 1148–49 (9th Cir. 2005)). OpenAI's concerns about confidential commercial and trade secret information have been adequately addressed by the Court's Protective Order, including the supplemental protective order providing further protections specifically for OpenAI produced material. Dkt. 60, Dkt. 72.

### C. OpenAI's unilateral narrowing of RFP 4 is improper.

OpenAI unilaterally narrowed RFP 4 to include only documents that **OpenAI** identified as related to "xAI information." OpenAI justified this narrowing by arguing that xAI's "proposal to sweep in internal OpenAI recruiting or hiring discussions that reflect 'information communicated by or to Defendant,' without respect to whether the information is xAI information, is unduly burdensome and overbroad." Ex. E at 1. This unilateral narrowing is improper and should be rejected.

Initially, OpenAI's narrowing restricts the scope of RFP 4 to "disclosure" of or a "request . . . to disclose" xAI information. But Li's *use* of xAI's trade secrets is another form of misappropriation here and OpenAI offers no justification for limiting the scope of its response to disclosure but not use. For this reason alone, OpenAI's unilateral narrowing must be rejected as inconsistent with the scope of the allegations at issue in this case.

Further, the term "xAI information" is not defined in the subpoena or OpenAI's responses, and OpenAI does not provide any explanation of how it assessed whether information qualifies as xAI information. Indeed, in other communications, OpenAI's counsel have stated that they would not provide documents that "don't contain xAI information but relate to working at xAI or just reference xAI." Ex. L (November 20, 2025 Email from Carolyn Luedtke to Matt McCullough). It is unclear if this is the same test that OpenAI used to arrive at the conclusion that it had no responsive documents in response to RFP 4 of the subpoena (because OpenAI does not say), but this test would be wholly

15

improper. OpenAI's distinction between "xAI information" and information that "relate[s] to working at xAI" is arbitrary and appears to permit OpenAI to make self-serving judgment calls. For example, OpenAI might construe an interview question to Li such as "What can you offer OpenAI based on your experience working at xAI?" or Li's response to such a question as not relating to "xAI information" but merely to information that "relates to working at xAI" and therefore exclude it from the scope of its response, even though a jury could conclude that such a question and any response by Li—an xAI employee knowledgeable about xAI's products and with access to xAI's source code— would support that Li used or disclosed xAI trade secrets in his communications with OpenAI.

Further, permitting OpenAI to make the assessment of whether information qualifies as xAI information is problematic for at least two reasons. *First*, Li may have repackaged information in such a way to attempt to mask that the information he shared included or derived from xAI trade secrets. The interview slides demonstrate exactly that. For example, slides 9 and 10 contain ████████████ ██████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████. Someone with a technical background in the AI space—such as the engineers Li met with at OpenAI ████████████████—would recognize these sorts of confidential details as relating to xAI's model training frameworks. Beyond sharing the xAI confidential information in the interview slides, Li may have also orally communicated proprietary details about xAI model training that he may have passed off as his own personal knowledge or invention (e.g., as relating to his academic research work from before he started working at xAI). OpenAI might claim not to know that such information is really xAI information, but documents reflecting Li's communication of such information would still tend to prove that *Li misappropriated xAI trade secrets by disclosing or using them in his conversations with OpenAI*. This concern is not merely theoretical, but reflected in Li's attempt to disguise his use of xAI confidential information in the interview slides described above.

*Second*, allowing OpenAI to assess whether documents contain xAI information is troubling because OpenAI has a clear conflict of interest given that xAI has separately asserted trade secret misappropriation claims against OpenAI. Although those claims are not before this Court in the present case, the mere existence of that separate suit gives ample reason to doubt whether OpenAI

could fairly assess whether information qualifies as xAI information. And the fact that OpenAI applied arbitrary distinctions when concluding that it had no responsive documents to produce only highlights the risk of allowing OpenAI to screen discovery in ways that may be influenced by its own self-interest.

Simply put, for the purposes of this suit, OpenAI's *opinion* that certain documents do not contain xAI information is irrelevant—what matters is whether Li *actually disclosed or used* xAI trade secrets, the value of those trade secrets, and the fact that those trade secrets derive value from their secrecy. RFP 4 is directed to documents that would provide evidence in support of these elements of xAI's claims *against Li*. OpenAI's refusal to produce any responsive documents and insistence on maintaining its own improper, unilateral narrowing of RFP 4 is thus unwarranted and unjustifiable. *This* lawsuit is about whether *Li* misappropriated xAI's trade secrets by disclosing them to OpenAI or using them in connection with his interactions with OpenAI. Li does not have the documents or communications sought by the RFP (such as OpenAI's *internal* memoranda reflecting the substance of OpenAI's assessment of Li and any information he shared), and has destroyed relevant evidence and concealed OpenAI's role in his theft of xAI's trade secrets. OpenAI, by contrast, has a complete record of the information that Li disclosed and any assessment of the type, value, or nature of that information. OpenAI cannot escape its obligations under the Federal Rules to produce the documents and communications that xAI seeks.

## V.    CONCLUSION

For the reasons above, the Court should grant xAI's motion to compel OpenAI to produce documents and communications responsive to the full scope of RFP 4.

17

XAI'S MOTION TO COMPEL

CASE NO. 3:25-CV-07292-RFL

Dated: March 6, 2026

**KING & SPALDING LLP**

By: */s/ Jonathan Hung*
KATHI VIDAL (State Bar No. 194971)
kvidal@winston.com
MATTHEW R. MCCULLOUGH (State Bar
No. 301330)
mrmcullough@winston.com
CARSON SWOPE (State Bar No. 353352)
cswope@winston.com
**WINSTON & STRAWN LLP**
255 Shoreline Drive, Suite 520
Redwood City, CA 94065
Telephone: (650) 858-6500
Facsimile: (650) 858-6550

LEELLE B. SLIFER (*pro hac vice*)
lslifer@kslaw.com
JONATHAN HUNG (*pro hac vice*)
jhung@kslaw.com
**KING & SPALDING LLP**
2601 Olive Street, Suite 2300
Dallas, TX 75201
Telephone: (214) 764-4600
Facsimile: (214) 764-4601

Attorneys for Plaintiffs X.AI CORP. and X.AI
LLC

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for xAI conferred with counsel for OpenAI on October 24, 2025 and March 4 and March 6, 2026 in good faith and failed to reach an agreement regarding the discovery dispute.

*/s/   Jonathan Hung*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record in the Attached Service List who have consented to electronic service are being served with a copy of this document via email on March 6, 2026.

*/s/   Jonathan Hung*

18

## SERVICE LIST
### United States District Court for the Northern District of California
### *X.AI CORP., et al. v. LI*
### Case No. 3:25-CV-07292-RFL

| | |
|---|---|
| CAROLYN HOECKER LUEDTKE<br>Carolyn.Luedtke@mto.com<br>DANE P. SHIKMAN<br>Dane.Shikman@mto.com<br>GABRIEL M. BRONSHTEYN<br>Gabriel.Bronshteyn@mto.com<br>MUNGER, TOLLES & OLSON LLP<br>560 Mission Street, Twenty-Seventh Floor<br>San Francisco, California 94105-2907<br>Telephone: (415) 512-4000<br>Facsimile: (415) 512-4077<br><br>JONATHAN I. KRAVIS<br>jonathan.kravis@mto.com<br>MUNGER, TOLLES & OLSON LLP<br>601 Massachusetts Avenue, NW, Suite 500E<br>Washington, D.C. 20001-5369<br>Telephone: (202) 220-1100<br>Facsimile: (202) 220-2300<br><br>JOSEPH N. GLYNN<br>joseph.glynn@mto.com<br>MUNGER, TOLLES & OLSON LLP<br>350 S Grand Ave 50th Fl<br>Los Angeles, CA 90071<br>Telephone: (213) 683-9100 | Attorneys for Non-Parties,<br><br>OpenAI Inc., OpenAI Global LLC, and OpenAI OpCo LLC |
| BENJAMIN S. KINGSLEY (CSB No. 314192)<br>bkingsley@fenwick.com<br>FENWICK & WEST LLP<br>One Front Street, 33rd Floor<br>San Francisco, CA 94111<br>Telephone: 415.875.2300<br>Facsimile: 415.281.1350<br><br>JESSICA M. KAEMPF (admitted *pro hac vice*)<br>jkaempf@fenwick.com<br>FENWICK & WEST LLP<br>401 Union Street, 5th Floor<br>Seattle, WA 98101<br>Telephone: 206.389.4510<br>Facsimile: 206.389.4511<br><br>CHRISTIAN E. PICONE, CA State Bar No. 218275<br>ANGELA SHAW, CA State Bar No. 321726<br>BERLINER COHEN, LLP<br>Ten Almaden Boulevard<br>Eleventh Floor | Attorneys for Defendant<br><br>Xuechen Li |

19

San Jose, California 95113-2233
Telephone: (408) 286-5800
Facsimile: (408) 998-5388
christian.picone@berliner.com
angela.shaw@berliner.com