CAROLYN HOECKER LUEDTKE (SBN 207976)
carolyn.luedtke@mto.com
DANE P. SHIKMAN (SBN 313656)
dane.shikman@mto.com
GABRIEL M. BRONSHTEYN (SBN 338011)
gabriel.bronshteyn@mto.com
JOSEPH N. GLYNN (SBN 337652)
joseph.glynn@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-3089
Telephone:    (415) 512-4000
Facsimile:    (415) 512-4077

Attorneys for Defendants OpenAI, Inc., OpenAI
Global, LLC, and OpenAI OpCo, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| X.AI CORP. and X.AI LLC,<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>OPENAI, INC., OPENAI GLOBAL, LLC, and OPENAI OPCO, LLC,<br><br>　　　　　Defendants. | Case No. 3:25-cv-08133-RFL<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STRIKE ALLEGATIONS FROM SECOND AMENDED COMPLAINT**<br><br>Date:　　May 12, 2026<br>Time:　　10:00 a.m.<br><br>Judge:　　Honorable Rita F. Lin<br>Ctrm:　　Courtroom 15 - 18th Floor |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................................ 1

II.   ARGUMENT ..................................................................................................................... 2

A.    xAI Fails to State a Claim for Trade Secret Misappropriation ................................ 2

1.    xAI's Inducement Allegations Fail to State a Claim Under the DTSA ................................................................................................................. 2

2.    xAI's Allegations Do Not Establish Acquisition ........................................ 4

3.    xAI Fails to Plausibly Allege OpenAI Had the Requisite Knowledge ......... 7

B.    This Case Should Be Dismissed with Prejudice .......................................................... 9

C.    Alternatively, the Court Should Strike Allegations That Have No Relation to Any Plausible Allegations of Trade Secret Misappropriation ........................... 10

III.  CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*ABC Acquisition Co., LLC v. AIP Prods. Corp.*,
2020 WL 4607247 (N.D. Ill. Aug. 11, 2020) ........................................................................ 5, 6

*Alert Enter., Inc. v. Rana*,
2023 WL 2541353 (N.D. Cal. Mar. 16, 2023) ........................................................................... 4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................................... 3

*Attia v. Google LLC*,
983 F.3d 420 (9th Cir. 2020) ..................................................................................................... 2

*Bal Seal Eng'g, Inc. v. Nelson Prods., Inc.*,
2016 WL 11523446 (C.D. Cal. Oct. 17, 2016) ......................................................................... 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................................... 3

*Blue Cross & Blue Shield of Alabama v. Unity Outpatient Surgery Ctr., Inc.*,
2011 WL 13356160 (C.D. Cal. Apr. 21, 2011) ......................................................................... 9

*CellMark, Inc. v. Webster*,
2025 WL 1426825 (E.D. Ky. May 16, 2025) ............................................................................ 6

*In re Century Aluminum Co. Sec. Litig.*,
729 F.3d 1104 (9th Cir. 2013) ................................................................................................... 4

*In re Cisco Sys. Inc. Sec. Litig.*,
2013 WL 1636384 (N.D. Cal. Apr. 16, 2013) ........................................................................... 9

*Cisco Systems, Inc. v. Chung*,
462 F.Supp.3d 1024 (N.D. Cal. 2020) ....................................................................................... 6

*Citcon USA, LLC v. RiverPay Inc.*,
2019 WL 917056 (N.D. Cal. Feb. 25, 2019) ......................................................................... 2, 3

*Colgate-Palmolive Co. v. Carter Prods., Inc.*,
230 F.2d 855 (4th Cir. 1956) ..................................................................................................... 6

*Elec. Props. East, LLC v. Marcus & Millchap Co.*,
751 F.3d 990 (9th Cir. 2014) ..................................................................................................... 4

*Genentech, Inc. v. JHL Biotech, Inc.*,
2019 WL 1045911 (N.D. Cal. Mar. 5, 2019) ..................................................................... 5, 6, 8

REPLY ISO MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STRIKE XAI'S SAC

*JustMed, Inc. v. Byce*,
   600 F.3d 1118 (9th Cir. 2010) .......................................................................................... 6

*Kearns v. Ford Motor Co.*,
   2007 WL 5110308 (C.D. Cal. Mar. 22, 2007) ............................................................... 10

*LiButti v. United States*,
   107 F.3d 110 (2d Cir. 1997) .............................................................................................. 9

*LiButti v. United States*,
   178 F.3d 114 (2d Cir. 1999) .............................................................................................. 9

*MicroTechnologies, LLC v. Autonomy, Inc.*,
   2018 WL 5013567 (N.D. Cal. Oct. 16, 2018) .................................................................. 9

*Miller v. Rykoff-Sexton, Inc.*,
   845 F.2d 209 (9th Cir. 1988) ........................................................................................... 10

*Missouri ex rel. Koster v. Harris*,
   847 F.3d 646 (9th Cir. 2017) ....................................................................................... 9, 10

*ML Prods. Inc. v. Ninestar Tech. Co.*,
   2023 WL 12171006 (C.D. Cal. Sept. 27, 2023) .............................................................. 4

*Reynolds Family Revocable Trust U/A Dated 04/08/2015 v. Schwab*,
   2025 WL 2399664 (N.D. Cal. Mar. 3, 2025) ................................................................... 9

*Source Prod. & Equip. Co., Inc. v. Schehr*,
   2017 WL 3721543 (E.D. La. Aug. 29, 2017) ................................................................... 6

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) .......................................................................................... 4

*United States v. Sing*,
   2016 WL 54906 (C.D. Cal. Jan. 4, 2016) ......................................................................... 6

*Walters v. Performant Recovery, Inc.*,
   124 F. Supp. 3d 75 (D. Conn. 2015) ............................................................................... 10

*Wisk Aero LLC v. Archer Aviation Inc.*,
   2021 WL 8820180 (N.D. Cal. Aug. 24, 2021) ............................................................... 10

**STATE CASES**

*Belvedere Hotel P'ship v. Tasco*,
   2019 WL 6271024 (Cal. Ct. App. Nov. 25, 2019) ........................................................... 5

*Silvaco Data Sys. v. Intel Corp.*,
   184 Cal. App. 4th 210 (2010) ........................................................................................... 5

REPLY ISO MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STRIKE XAI'S SAC

**FEDERAL STATUTES**

18 U.S.C. § 1839(5)............................................................................................................... 2

18 U.S.C. § 1839(5)(A)....................................................................................................... 2, 5

18 U.S.C. § 1839(6)(A)........................................................................................................... 2

**FEDERAL RULES**

Fed. R. Civ. P. 12(f)............................................................................................................. 10

## I.    INTRODUCTION

xAI's Opposition confirms that after three attempts, it still cannot point to any misconduct by OpenAI.  xAI's defense of its Second Amended Complaint ("SAC") relies solely on speculative inferences and implausible information and belief allegations about an alleged presentation during Li's job interview with OpenAI.  As to other former xAI employees and the other allegations related to Li, xAI does nothing more than repeat the same allegations this Court already found inadequate.  This is not surprising:  xAI unsuccessfully sought a stay on the premise that it would be prejudiced if it had to amend its First Amended Complaint ("FAC") without discovery.  But as the Court recognized, xAI should have investigated *before* filing suit.  It is now abundantly clear that xAI, all too eager to intimidate the employees who were (and still are) fleeing in droves, rushed to bring this lawsuit against OpenAI before having any grounds to do so.

The SAC's allegations about Li's interview do not save xAI's trade secret claim.  *First*, xAI contends that OpenAI induced Li to disclose trade secrets during his job interview, but that theory fails as a matter of law—an allegation of inducement by itself without acquisition, use, or disclosure does not state a claim for misappropriation under the Defend Trade Secrets Act ("DTSA").  In any event, xAI fails to plausibly allege that OpenAI induced Li to disclose xAI trade secrets.  *Second*, even assuming Li made such a presentation (and he did not), OpenAI's passive receipt of any information during that presentation does not constitute acquisition.  xAI offers no legal authority to the contrary.  *Third*, xAI does not allege facts showing that OpenAI knew or had reason to know that Li was disclosing xAI trade secrets.  That inference is not supported by the alleged content of the slides.  xAI does not dispute that the vast majority of that content is not confidential, and some of it was the subject of public industry commentary.  Indeed, xAI's own statements—that Li's slides "attempted to mask" the source of the xAI information allegedly presented—refute the inference that the trade secret nature of any information would have been obvious to Li's interviewers.

Because xAI's third complaint fails to cure defects identified in the Court's detailed dismissal order, leave to amend would be futile.  The case should be dismissed with prejudice.

## II.   ARGUMENT

### A.   xAI Fails to State a Claim for Trade Secret Misappropriation

In its Opposition, xAI has dramatically narrowed the allegations it tries to defend:  the survival of the SAC now turns on whether it plausibly alleged that OpenAI misappropriated xAI's trade secrets during Li's job interview.  Through that one unsupported information and belief claim about an alleged interview presentation, xAI then asks the Court to sweep in all the other allegations the Court previously found insufficient to plausibly assert a claim.  This approach does not support a claim for trade secret misappropriation.

### 1.   xAI's Inducement Allegations Fail to State a Claim Under the DTSA

xAI continues to rely on a theory that OpenAI induced Li to disclose trade secrets.  Opp. at 9.  This argument fails as a matter of law.  Alleging that OpenAI has induced someone to divulge trade secrets does not amount to misappropriation under the DTSA, which requires a plaintiff to plead that the defendant itself acquired, used, or disclosed trade secrets.  *See Attia v. Google LLC*, 983 F.3d 420, 424 (9th Cir. 2020); 18 U.S.C. § 1839(5).  xAI attempts to skirt this requirement by claiming that "direct misappropriation includes 'inducement of a breach of a duty to maintain secrecy.'"  Opp. at 9 (quoting 18 U.S.C. § 1839(6)(A)).  But the provision quoted by xAI is *not* from the definition of "misappropriation."  Rather, it is in the definition of "improper means." 18 U.S.C. § 1839(6)(A).  To establish misappropriation based on purported acquisition of trade secrets in Li's alleged interview presentation, xAI would have to plausibly allege "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means."  *Id.* § 1839(5)(A).  The SAC fails to do so.

xAI cites *Citcon USA, LLC v. RiverPay Inc.*, 2019 WL 917056 (N.D. Cal. Feb. 25, 2019), as support for its legal theory that inducement is sufficient to state a misappropriation claim, but *Citcon* itself explained that misappropriation requires "wrongful acquisition or wrongful use."  *Id.* at *4.  And as the Court has recognized, *Citcon* only "illustrate[s] what is absent from the [SAC]" (MTD Order at 9):  the plaintiff alleged not only that the defendant had "encouraged misappropriation by promising co-founder status to one of the plaintiff company's former employees," but also that the promise was "conditioned … on that former employee 'retain[ing]

REPLY ISO MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STRIKE XAI'S SAC

[a] POS device' upon leaving the plaintiff company." MTD Order at 9 (quoting *Citcon*, 2019 WL 917056, at *4-5). xAI makes no similar allegations of acquisition or use here.

But even if inducement is sufficient to plead misappropriation (and it is not), xAI fails to allege facts that OpenAI "told or encouraged" Li to share xAI trade secrets during his job interviews. *Id.* at 8. The only act of "inducement" alleged by xAI is that it claims OpenAI "typically" "asks candidates to deliver a presentation about a prior project." SAC ¶ 66. Under *Iqbal-Twombly*, that does not plausibly allege inducement because there is an "obvious alternative explanation" for OpenAI's alleged conduct, *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009)—that OpenAI was carrying out an ordinary hiring process and asking Li about his experience, not xAI trade secrets.[1] xAI alleges no facts tending to exclude that explanation. xAI's contrary theory would chill employee mobility: if interviewing a competitor's employee about prior work were enough to support a trade secret claim, any routine interview of an employee working on proprietary areas could be actionable. That is not the law. xAI offers little more than speculation unsupported by the SAC. xAI claims that "it is reasonable to infer that OpenAI requested that Li deliver a presentation on a significant technical project from his time at xAI." Opp. at 9. But that is neither alleged in the SAC nor a reasonable inference. *Cf.* SAC ¶ 66 (alleging only that "OpenAI asks candidates to deliver a presentation about a prior project"). The Opposition also posits that OpenAI failed to stop Li's presentation or discourage disclosure of trade secrets (Opp. at 1, 10), but none of those allegations are in the SAC. And, in any event, this purported inaction would not amount to affirmative inducement by OpenAI.

In an effort to resist the obvious alternative explanations here, xAI attempts to avoid the lessons of *Iqbal-Twombly*. Opp. at 4. Considering alternative explanations is central to plausibility. *See Iqbal*, 556 U.S. at 681-82 (inference of discriminatory purpose for arrests was not plausible given "obvious alternative explanation"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567-

---

[1] In addition, xAI does not allege OpenAI followed its supposedly typical practice and requested a presentation from Li. xAI claims that a job candidate would not prepare a presentation without being asked (Opp. at 9-10), but if, as xAI alleges, it was known that interviewing at OpenAI or other companies involved a presentation (SAC ¶¶ 66, 72), the SAC does not negate that Li prepared the presentation on his own in anticipation of being asked.

68 (2007) (allegation of conspiracy was not plausible because of an "obvious alternative explanation"). "When considering plausibility," courts not only may but "*must* also consider an 'obvious alternative explanation' for defendant's behavior." *Elec. Props. East, LLC v. Marcus & Millchap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (emphasis added). xAI's own cases confirm that.[2] xAI fails to address OpenAI's cases applying this principle to DTSA claims. Mot. at 8.

xAI's allegations of inducement are implausible because the SAC does not "tend[] to exclude the possibility that the alternative explanation is true." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013). xAI points to the timing of Li's recruitment around Grok 4's release date, and that both Li and his interviewers worked on post-training. Opp. at 9-10 (citing SAC ¶¶ 63, 64, 70, 149). But those allegations merely show that Li possessed relevant work experience—not that OpenAI solicited xAI trade secrets. xAI's allegations about post-interview events are unchanged from those the Court already deemed insufficient in the FAC. That Li allegedly copied xAI information later to his personal devices does not show that OpenAI asked Li to do so—or that OpenAI asked Li to disclose xAI information. *Id.*; *accord Alert Enter., Inc. v. Rana*, 2023 WL 2541353, at *2-4 (N.D. Cal. Mar. 16, 2023) (employee downloading information after defendant's job offer does not show that the defendant "directed him to do so").

## 2.    xAI's Allegations Do Not Establish Acquisition

OpenAI cannot be liable for misappropriation of trade secrets because the SAC still "does not offer any nonconclusory allegations that OpenAI itself acquired, disclosed, or used xAI's trade secrets." MTD Order at 7. xAI's Opposition appears to rely only on a theory that OpenAI

---

[2] An alternative explanation can only be discounted as xAI suggests *after* a court has concluded that the plaintiff's allegations are plausible. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (explaining that "plaintiff's complaint survives a motion to dismiss" when there are "two alternative explanations … both of which are plausible"); *ML Prods. Inc. v. Ninestar Tech. Co.*, 2023 WL 12171006, at *8 (C.D. Cal. Sept. 27, 2023) (recognizing that a plaintiff need not "disprove any alternate or 'innocent' explanation … where the plaintiff's allegations are plausible").

*acquired* xAI trade secrets through Li's interview, but xAI's allegations do not constitute acquisition as a matter of law.[3]  Mot. at 9-10.

xAI argues that Li's alleged disclosure of xAI trade secrets in OpenAI's presence makes OpenAI liable for acquisition.  Opp. at 11.  That argument fails.  Courts have recognized that, by using the term "acquisition" instead of a passive term like reception, the text of the DTSA itself requires purposeful conduct.  18 U.S.C. § 1839(5)(A); *see, e.g.*, *ABC Acquisition Co., LLC v. AIP Prods. Corp.*, 2020 WL 4607247, at *11 (N.D. Ill. Aug. 11, 2020).  In trade secrets statutes, acquisition "implies more than passive reception; it implies pointed conduct intended to secure dominion over the thing."  *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 223 (2010).  As such, "inadvertently coming into possession of a trade secret will not constitute acquisition."  *Id.*; *accord* MTD Order at 11 (recognizing that "mere possession of trade secrets" does not amount to misappropriation).  Here, xAI at most alleges that OpenAI interviewed Li and was present when Li allegedly uttered or displayed the alleged trade secrets—not that OpenAI engaged in "pointed conduct intended to secure dominion" over those alleged trade secrets.

Unable to allege anything beyond passive receipt, xAI attempts to resist this well established interpretation of "acquisition."  Opp. at 11.  While the *Silvaco* court did not ultimately decide on the "outer limits of acquisition," 184 Cal.App.4th at 223, it conducted a rigorous analysis based on dictionary definitions, *id.*, and courts have accordingly applied *Silvaco*'s interpretation of the term "acquisition."  *See Belvedere Hotel P'ship v. Tasco*, 2019 WL 6271024, at *12 (Cal. Ct. App. Nov. 25, 2019) (denying preliminary injunction because "wrongful acquisition of a trade secret requires more than just passive receipt, and passive receipt by [the defendant] is all [the plaintiff] showed" (quoting *Silvaco*, 184 Cal.App.4th at 222-23)).

Under *Silvaco*'s influence, federal courts interpret "acquisition" under the DTSA to require "pointed conduct."  *See* Mot. at 9.  xAI's cited case, *Genentech, Inc. v. JHL Biotech, Inc.*, 2019 WL 1045911 (N.D. Cal. Mar. 5, 2019), did not "limit[]" *Silvaco*'s holding (Opp. at 11)—it

---

[3] xAI claims that OpenAI's arguments about the definition of "acquisition" apply only to direct misappropriation.  Opp. at 11 n.6.  That argument lacks a statutory basis.  xAI must allege acquisition, disclosure, or use under a direct or indirect misappropriation theory.  MTD Order at 7.

REPLY ISO MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STRIKE XAI'S SAC

recognized that the allegations there showed more than "passive reception" because the defendant had "actively sought out and discussed Genentech's trade secrets with [a co-defendant]." *Id.* at *11. And xAI is wrong to characterize that requirement as mere dicta in OpenAI's cases. Opp. at 11. For example, in *ABC Acquisition Co.*, the court granted summary judgment for the defendant because the only evidence of acquisition—the company "read emails that [plaintiff's former employee] sent them that might have contained trade secrets"—was not "pointed conduct." 2020 WL 4607247, at *11. And in *CellMark, Inc. v. Webster*, 2025 WL 1426825 (E.D. Ky. May 16, 2025), a case that xAI fails to address, the court dismissed a complaint that alleged "passive receipt" but not that the defendant "solicited or actively used [the plaintiff's] trade secrets." *Id.* at *8.

xAI's cases stand in stark contrast to the allegations against OpenAI, which never employed Li and is not alleged to have done anything with the information allegedly presented in Li's interview. In *Cisco Systems, Inc. v. Chung*, 462 F.Supp.3d 1024 (N.D. Cal. 2020), an employee conveyed his employer's confidential information to the defendant's executives through an interview, and the executives then proceeded to "request[] additional related information" *and* communicate over months with the employee about carrying out the plaintiff's specific codenamed strategies. *Id.* at 1057. There are no comparable allegations here. Similarly, in *Source Production & Equipment Co., Inc. v. Schehr*, 2017 WL 3721543 (E.D. La. Aug. 29, 2017), the plaintiff alleged not mere passive receipt of trade secrets but that the defendant "accepted these secrets" and formed a new venture to offer competing products. *Id.* at *4-5. xAI offers no similar allegations about what, if anything, OpenAI did with what Li allegedly disclosed. *JustMed, Inc. v. Byce*, 600 F.3d 1118 (9th Cir. 2010), simply held that acquisition does not encompass an employee's continued possession of information, which only demonstrates that acquisition requires pointed conduct. *Id.* at 1129.[4]

---

[4] xAI's other authorities are irrelevant. *See United States v. Sing*, 2016 WL 54906, at *12-13 (C.D. Cal. Jan. 4, 2016) (findings of fact after bench trial in criminal case); *Colgate-Palmolive Co. v. Carter Prods., Inc.*, 230 F.2d 855, 864 (4th Cir. 1956) (observing that an employer who has hired an employee from a competitor must "ascertain[] the extent to which" the employee was "restricted in what he might disclose" in the course of his employment).

### 3. xAI Fails to Plausibly Allege OpenAI Had the Requisite Knowledge

xAI also fails to plausibly allege that OpenAI employees knew or had reason to know that Li was improperly disclosing xAI trade secrets. Mot. at 10-12. xAI focuses on the content of the slides and alleges "it would have been obvious that Li was disclosing xAI trade secrets" to his OpenAI interviewers. Opp. at 5. xAI contends that it has alleged "what content … was presented to OpenAI" (*id.* at 6 n.2), but all it points to are generalities—"characteristics," "methods," and "problems" relating to xAI model training. *Id.* at 6 & n.2; *see* SAC ¶ 71.a. This content is not "obviously" a trade secret. And xAI does not allege what portions of the slides were presented or discussed in Li's interviews. *Cf.* SAC ¶ 68. That is a critical omission because xAI does not dispute or even address that most of the slides' content is not confidential and not even filed under seal. *See* Mot. at 2, 10-11. Nor does the SAC allege facts making it more likely that the limited trade secret portions were presented. While xAI alludes to "details" discussed in Li's interviews "far beyond the text of his slides" (Opp. at 6 n.2), the SAC does not expand on those "details." xAI's allegations lack sufficient information about what OpenAI interviewers allegedly saw or heard to give rise to a plausible inference that it must have been recognizable as trade secrets.

xAI also characterizes portions of the slides in its Opposition as "detail[ing] Li's work training Grok 4 and its predecessors," "referencing Grok 4 explicitly by name," and "essentially a roadmap for the techniques that xAI used and lessons it learned along the way." Opp. at 5-6 & n.3. Such allegations are nowhere to be found in the SAC. *Cf.* SAC ¶ 71.a. But even if they were, they would not show that Li's interviewers necessarily should have known any such information was a trade secret. xAI itself alleges that Grok 4 was widely known. SAC ¶¶ 63-64; Opp. at 2 (conceding the public nature of information about Grok).

xAI also relies on the "confidential"—*not* "xAI confidential"—label found only on the first page of the slides (SAC ¶ 71.c) to show OpenAI's knowledge. The word "confidential" alone does not indicate *to whom* the information belongs. It would have been viewed—if it was seen at all—as applying to the NDA with Li's potential new employer (*id.* ¶ 86), and would not plausibly have been viewed as indicating that the content was confidential to xAI. Mot. at 11-12. xAI's authorities do not suggest otherwise. In *Genentech*, a researcher at Genentech's competitor

REPLY ISO MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STRIKE XAI'S SAC

received a hard copy of a technical report, "clearly labeled as 'GENENTECH Pharm R & D Technical Report – CONFIDENTIAL," with the additional marking, "Internal Only."  2019 WL 1045911, at *12.  The markings clearly indicated that the document came directly from Genentech and should be kept internal to Genentech.[5]  That is not the case here.  *See also Bal Seal Eng'g, Inc. v. Nelson Prods., Inc.*, 2016 WL 11523446, at *3 (C.D. Cal. Oct. 17, 2016) (holding that "Proprietary" marking on customer-specific drawings supported defendant's knowledge of improper disclosure because defendant was not one of the customers for whom the drawings were produced).  Moreover, it is not alleged that the one page with the "confidential" stamp was necessarily presented.  xAI alleges that the presentation was made "either visually *or* by verbally sharing the contents."  SAC ¶ 68 (emphasis added).

xAI's own prior statements are not consistent with a reasonable inference that the trade secret nature of the information would have been obvious to Li's interviewers.  xAI did not oppose OpenAI's request for judicial notice (Dkt. No. 91-1, "RJN"), so the Court may consider the prior statements in adjudicating this motion.  xAI claims that it "never said that Li 'attempted to mask' xAI trade secrets from OpenAI engineers."  Opp. at 7 n.4.  That is exactly what xAI said in its motion to compel:  "Li may have repackaged information in such a way to *attempt to mask* that the information he shared included or derived from xAI trade secrets.  *The interview slides demonstrate exactly that*."  RJN Ex. A at 16 (emphasis added).  In fact, xAI now alleges that this "masking" prevented xAI from determining that the slides contained xAI trade secrets until consulting an xAI engineer.  SAC ¶ 68; *cf.* Compl. (Dkt. No. 1) ¶ 51; FAC (Dkt. No. 44) ¶ 55.

xAI suggests that Li's alleged deletion of the slides and invocation of the Fifth Amendment in xAI's separate action against Li warrants an inference against OpenAI that could close the gap in xAI's allegations.  Opp. at 7.  But even if Li's deletion of the slides suggests that

---

[5] xAI also cites *Genentech* to argue that knowledge can be established through the recipient's "technical expertise" in the field.  Opp. at 6-7.  Although *Genentech* mentioned that the report related to its recipient's current research, it did not address the same inference xAI makes here (knowledge of secrecy from comprehension of subject matter), and there were other, more significant allegations establishing knowledge, such as the unambiguous markings and an express instruction not to show the document to others.  2019 WL 1045911, at *12.

REPLY ISO MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STRIKE XAI'S SAC

*Li* viewed them as *self*-incriminating, that does not suggest that Li believed the slides show misconduct *by OpenAI*.  Further, an adverse inference is neither appropriate nor helpful to xAI on this motion.  xAI cites no case drawing an adverse inference in a motion to dismiss.  And it is not appropriate to draw an adverse inference *against OpenAI* based on *Li's* invocation of the Fifth Amendment.[6]  Even if such an adverse inference could be drawn against OpenAI, it could not establish what OpenAI knew during Li's interview process.  *See Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*, 2011 WL 13356160, at *1 (C.D. Cal. Apr. 21, 2011) (an adverse inference must be supported by "sufficient independent evidence").

### B.    This Case Should Be Dismissed with Prejudice

This third attempt to state a claim against OpenAI should be xAI's last.  xAI does not identify any additional facts to allege if given a fourth chance.  Instead, xAI points to "ongoing discovery in the related civil cases" and says that more facts might emerge.  Opp. at 15.  However, the Court has already admonished xAI on this very point:  "if [xAI] 'lacked the requisite information to allege [its] claims in the manner required … when [it] filed suit, [it] should not have sued [OpenAI] in the first instance.'"  Order Denying Motion to Stay, Dkt. No. 79, at 2 (alteration in original) (quoting *In re Cisco Sys. Inc. Sec. Litig.*, 2013 WL 1636384, at *1 (N.D. Cal. Apr. 16, 2013)).  xAI still has not done the investigation it was required to do *before* suing OpenAI.  Because xAI "has already had multiple attempts to plead a viable claim, including after having the benefit of the analysis in the prior dismissal order," further amendment would be futile and prejudicial to OpenAI.  *Reynolds Family Revocable Trust U/A Dated 04/08/2015 v. Schwab*, 2025 WL 2399664, at *3 (N.D. Cal. Mar. 3, 2025) (Lin, J.) (dismissing with prejudice).[7]

---

[6] For instance, xAI has not shown that it satisfies the four-part test followed by some courts to determine whether an adverse inference may be drawn against a third party.  *See LiButti v. United States*, 107 F.3d 110, 123-24 (2d Cir. 1997); *see, e.g.*, *MicroTechnologies, LLC v. Autonomy, Inc.*, 2018 WL 5013567, at *3 (N.D. Cal. Oct. 16, 2018) (declining to draw adverse inference against third party and citing *LiButti*).  xAI cites a subsequent opinion in the *LiButti* case addressing a different issue.  Opp. at 7 (citing *LiButti v. United States*, 178 F.3d 114, 119-20 (2d Cir. 1999)).

[7] Dismissal without prejudice was appropriate in xAI's cited case, *Missouri ex rel. Koster v. Harris*, 847 F.3d 646 (9th Cir. 2017), because dismissal was "for lack of subject matter jurisdiction."  *Id.* at 657.  And its reference to the "no set of facts" language derives from pre-

REPLY ISO MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STRIKE XAI'S SAC

### C.    Alternatively, the Court Should Strike Allegations That Have No Relation to Any Plausible Allegations of Trade Secret Misappropriation

If the Court concludes that xAI has plausibly stated a claim against OpenAI in connection with the interview, Rule 12(f) authorizes this Court to "strike" the "immaterial," "impertinent," and "scandalous" matter in the SAC regarding individuals other than Li. Mot. at 15. xAI attempts to sidestep Rule 12(f) by urging the Court to look at "the whole gestalt" of the complaint. *See Wisk Aero LLC v. Archer Aviation Inc.*, 2021 WL 8820180, at *11 (N.D. Cal. Aug. 24, 2021). But the Court already made clear that the "gestalt" of the FAC did not plausibly plead that OpenAI acquired, disclosed, or used xAI trade secrets. *See* MTD Order at 14. Here, xAI does not dispute that the SAC offers no new allegations regarding individuals other than Li beyond those the Court held insufficient.[8] Further, xAI neither explains nor pleads how allegations regarding the other individuals make it more likely that OpenAI misappropriated trade secrets in Li's interview. *See Kearns v. Ford Motor Co.*, 2007 WL 5110308, at *3 (C.D. Cal. Mar. 22, 2007) (striking reference to prior lawsuit because "Plaintiff has not shown why the previous lawsuit is relevant to any of his claims"), *aff'd*, 567 F.3d 1120 (9th Cir. 2009). The allegations about individuals besides Li are irrelevant and merely intended to portray OpenAI and its employees in a negative light, and would also prejudice OpenAI by requiring far-reaching and unnecessary discovery. *See Cornerstone Staffing Sols., Inc. v. James*, 2013 WL 3568511, at *2-3 (N.D. Cal. July 12, 2013) (striking irrelevant allegations aimed at discovery of defendant's tax returns); *see also Walters v. Performant Recovery, Inc.*, 124 F. Supp. 3d 75, 79 (D. Conn. 2015) (recognizing "[i]ncreases in the time and expense" of trial and discovery as a form of prejudice supporting a motion to strike).

## III.    CONCLUSION

OpenAI respectfully requests that the case be dismissed with prejudice.

---

*Iqbal*/*Twombly* case law. *See id.* at 656 (quoting *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)).

[8] xAI relegates the finance executive to a footnote (Opp. at 15 n.8), which does not respond to OpenAI's points that the new allegations exceeded the Court's leave to amend and do not show disclosure of *trade secrets* or that OpenAI had the requisite knowledge. *See* Mot. at 2, 12-13.

DATED:  April 21, 2026            MUNGER, TOLLES & OLSON LLP


                              By:      *s/ Carolyn Hoecker Luedtke*
                                  CAROLYN HOECKER LUEDTKE
                                  DANE P. SHIKMAN
                                  GABRIEL M. BRONSHTEYN
                                  JOSEPH N. GLYNN

                                  Attorneys for Defendants OpenAI, Inc., OpenAI
                                  Global, LLC, and OpenAI OpCo, LLC

REPLY ISO MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STRIKE XAI'S SAC