CAROLYN HOECKER LUEDTKE (SBN 207976)
carolyn.luedtke@mto.com
DANE P. SHIKMAN (SBN 313656)
dane.shikman@mto.com
GABRIEL M. BRONSHTEYN (SBN 338011)
gabriel.bronshteyn@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-3089
Telephone:     (415) 512-4000
Facsimile:     (415) 512-4077

JOSEPH N. GLYNN (SBN 337652)
joseph.glynn@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:     (213) 683-9100
Facsimile:     (213) 687-3702

Attorneys for Defendants OpenAI, Inc., OpenAI
Global, LLC, and OpenAI OpCo, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| X.AI CORP. and X.AI LLC,<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>OPENAI, INC., OPENAI GLOBAL, LLC,<br>and OPENAI OPCO, LLC,<br><br>　　　　　Defendants. | Case No. 3:25-cv-08133-RFL<br><br>**DEFENDANTS' NOTICE OF MOTION FOR ATTORNEY'S FEES UNDER 18 U.S.C. § 1836 AND CAL. CIV. CODE § 3426.4; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:　　September 8, 2026<br>Time:　　10:00 a.m.<br><br>Judge:　　Honorable Rita F. Lin |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on September 8, 2026, at 10:00 a.m., in Courtroom 15 of the above-entitled Court, located on the 18th floor of 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable Rita F. Lin, Defendants OpenAI, Inc., OpenAI Global, LLC, and OpenAI Opco, LLC ("OpenAI") will and hereby do move for attorney's fees in the amount of $1,041,859.90 pursuant to 18 U.S.C. § 1836(b)(3)(D), Cal. Civ. Code § 3426.4, Federal Rule of Civil Procedure 54(d)(2), and Local Rule 54-5.

DATED:  July 13, 2026                    MUNGER, TOLLES & OLSON LLP


                                         By:    _s/ Carolyn Hoecker Luedtke_
                                                CAROLYN HOECKER LUEDTKE
                                                DANE P. SHIKMAN
                                                GABRIEL M. BRONSHTEYN
                                                JOSEPH N. GLYNN

                                                Attorneys for Defendants OpenAI, Inc., OpenAI
                                                Global, LLC, and OpenAI OpCo, LLC

DEFENDANTS' MOTION FOR ATTORNEY'S FEES UNDER 18 U.S.C. § 1836 AND CAL. CIV. CODE § 3426.4

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................................1

II.   FACTUAL BACKGROUND .............................................................................................2

      A.    xAI Fails to Respond to OpenAI's Repeated Requests for Information So
            That It Could Investigate the Allegations of Misappropriation ...............................2

      B.    xAI Files a Complaint Despite Knowing Its Allegations Were Unsupported ..........3

      C.    xAI Amends Its Complaint to Expand Allegations Rather Than Cure
            Defects ......................................................................................................................4

      D.    xAI Then Sought a Stay to Search for Facts It Lacked .............................................5

      E.    xAI's SAC Repeated a Baseless Misappropriation Theory This Court
            Rejected .....................................................................................................................5

III.  ARGUMENT ......................................................................................................................6

      A.    The Court Should Award Attorney's Fees to OpenAI ...............................................6

            1.    DTSA .............................................................................................................6

                  (a)    OpenAI Is the Prevailing Party ...........................................................6

                  (b)    xAI's Misappropriation Claim Was Brought in Bad Faith ...............6

                         (i)    Objective Speciousness ..........................................................6

                         (ii)   Subjective Bad Faith ..............................................................9

            2.    State-Law Claims .........................................................................................12

                  (a)    OpenAI Is the Prevailing Party on xAI's State-Law Claims ...........12

                  (b)    xAI's State-Law Claims Were Brought in Bad Faith ......................13

      B.    OpenAI's Requested Fees Are Reasonable .............................................................13

            1.    The Hourly Rates Are Reasonable ...............................................................14

            2.    The Number of Hours Billed Is Reasonable ................................................14

IV.   CONCLUSION .................................................................................................................15

DEFENDANTS' MOTION FOR ATTORNEY'S FEES UNDER 18 U.S.C. § 1836 AND CAL. CIV. CODE § 3426.4

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Acculmage Diagnostics Corp. v. Terarecon, Inc.*,
260 F. Supp. 2d 941 (N.D. Cal. 2003) ...................................................................................9

*Alamar Biosciences, Inc. v. Difco Laboratories, Inc.*,
1996 WL 784495 (E.D. Cal. Feb. 27, 1996) .......................................................................10

*Camacho v. Bridgeport Fin., Inc.*,
523 F.3d 973 (9th Cir. 2008)..........................................................................................14, 15

*Cataphora Inc. v. Parker*,
848 F. Supp. 2d 1064 (N.D. Cal. 2012) ..............................................................................14

*Cherokee Chem. Co., Inc. v. Frazier*,
2022 WL 2036305 (C.D. Cal. Apr. 27, 2022)...........................................................6, 9, 10, 13

*Christensen v. Stevedoring Servs. of Am.*,
557 F.3d 1049 (9th Cir. 2009).............................................................................................13

*CRST Van Expedited, Inc. v. EEOC*,
578 U.S. 419 (2016) .............................................................................................................6

*Direct Techs., LLC v. Elec. Arts, Inc.*,
836 F.3d 1059 (9th Cir. 2016).............................................................................................6

*Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*,
2025 WL 2209999 (N.D. Cal. Aug. 4, 2025).......................................................................13

*Franchek v. Workrite Ergonomics, LLC*,
2022 WL 3137928 (N.D. Cal. May 9, 2022) ..................................................................14, 15

*Gonzalez v. City of Maywood*,
729 F.3d 1196 (9th Cir. 2013)..........................................................................................13, 15

*Greenmount LLC v. Cleanline Mgmt. LLC*,
2025 WL 2631605 (C.D. Cal. Aug. 22, 2025).......................................................................6

*Indigo Grp. USA, Inc. v. Polo Ralph Lauren Corp.*,
2014 WL 12573380 (C.D. Cal. Mar. 17, 2014) ..................................................................12

*Ingram v. Oroudjian*,
647 F.3d 925 (9th Cir. 2011)...............................................................................................14

*Kerr v. Screen Extras Guild, Inc.*,
526 F.2d 67 (9th Cir.1975)...................................................................................................15

DEFENDANTS' MOTION FOR ATTORNEY'S FEES UNDER 18 U.S.C. § 1836 AND CAL. CIV. CODE § 3426.4

*Li v. ArcSoft, Inc.*,
    2024 WL 4800753 (N.D. Cal. Oct. 8, 2024) ...................................................................14

*Mintz v. Mark Bartelstein and Assocs.*,
    2013 WL 12182602 (C.D. Cal. June 14, 2013).................................................................8

*Murphy v. Celestron Acquisition, LLC*,
    2024 WL 1221963 (N.D. Cal. Mar. 20, 2024) ................................................................14

*RBC Bearings Inc. v. Caliber Aero, LLC*,
    2016 WL 6562068 (C.D. Cal. Aug. 1, 2016) ................................................... 7, passim

*Rosenfeld v. U.S. Dep't of Just.*,
    903 F. Supp. 2d 859 (N.D. Cal. 2012) ...........................................................................15

*Sahdev v. Hyundai Motor Am.*,
    2023 WL 8634796 (N.D. Cal. Dec. 13, 2023) ................................................................14

*Shirrod v. Dir., Off. of Workers' Comp. Programs*,
    809 F.3d 1082 (9th Cir. 2015)........................................................................................13

*Stonebrae, L.P. v. Toll Bros.*,
    2011 WL 1334444 (N.D. Cal. Apr. 7, 2011) .................................................................13

*Teetex LLC v. Zeetex, LLC*,
    2022 WL 2439176 (N.D. Cal. July 5, 2022) ........................................................6, 7, 9, 11

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
    896 F.2d 403 (9th Cir. 1990)..........................................................................................14

*Villasenor v. Cmty. Child Care Council of Santa Clara Cnty., Inc.*,
    2021 WL 242924 (N.D. Cal. Jan. 25, 2021) ..................................................................13

**STATE CASES**

*Cypress Semiconductor Corp. v. Maxim Integrated Prods., Inc.*,
    236 Cal. App. 4th 243 (2015).............................................................................7, 8, 9, 11

**FEDERAL STATUTES**

18 U.S.C. § 1836(b)(3)(D) ...........................................................................................6, 9

**STATE STATUTES**

Cal. Civ. Code § 3426.4 .....................................................................................................12

DEFENDANTS' MOTION FOR ATTORNEY'S FEES UNDER 18 U.S.C. § 1836 AND CAL. CIV. CODE § 3426.4

## I.    INTRODUCTION

This trade secret case should never have been filed.  xAI sued OpenAI first and looked for evidence later, forcing OpenAI to spend substantial resources defeating a sprawling, aggressively litigated trade secret claim for which xAI had no evidentiary support.  xAI should now compensate OpenAI.  It is always disappointing to see multi-trillion dollar companies engage in bad-faith trade secrets lawsuits in an attempt to disrupt and slow down innovation.  OpenAI has always believed in fair competition that is driven by genuine innovation, and its hope is that competitors can adopt the same ethos.

The trade secret statutes (the "DTSA" and "CUTSA") allow for attorneys' fees to be awarded when a claim is brought in bad faith, as xAI did here.  In assessing bad faith, courts ask whether a claim is objectively specious and brought for an improper purpose.  There can be no question that xAI's conduct meets this standard.  OpenAI hired former xAI employees who sought to escape xAI's challenges and join OpenAI, as was their right under California law.  xAI's claims portrayed this ordinary competition for talent as sinister and unlawful, but xAI's theory that OpenAI's hiring was wrongful failed at every turn.  xAI never advanced a credible theory, or supporting evidence, that *OpenAI* did something to induce, receive, or use anything that it recognized, or should have recognized, as xAI's trade secret information.

Despite OpenAI and this Court repeatedly highlighting the flaws in xAI's claims, xAI brought, maintained, and then dragged out the demise of its claims unnecessarily.  In pre-litigation correspondence, OpenAI explained the weaknesses of xAI's position and asked for specific evidence so OpenAI could investigate further.  xAI did not respond but sued instead.  The Court dismissed xAI's First Amended Complaint ("FAC"), holding that xAI did not allege acts showing wrongdoing by *OpenAI*.  xAI then made a remarkable motion asking the Court to stay the deadline to amend for at least 6 months so that xAI could try to find the evidence of wrongdoing by OpenAI missing from its FAC.  This Court denied that motion, noting that a plaintiff must investigate "before filing suit, not after."  Dkt. No. 79 at 1.  Despite just having told the Court that it needed discovery to satisfy the pleading standard, and not getting that discovery, xAI did not give up—it filed a Second Amended Complaint ("SAC") reiterating the baseless misappropriation

DEFENDANTS' MOTION FOR ATTORNEY'S FEES UNDER 18 U.S.C. § 1836 AND CAL. CIV. CODE § 3426.4

theory that the Court had already rejected. Dkt. No. 92-1. The Court dismissed the case without leave to amend because xAI "should not have sued OpenAI in the first instance" without "the requisite information" to support its claims. Dkt. No. 110 ("Second MTD Order") at 7.

The DTSA and CUTSA have fee-shifting provisions to compensate for and deter exactly the conduct that xAI exhibited here. To that end, OpenAI requests that the Court award $1,041,859.90 in fees. In requesting this amount, OpenAI was conservative in an effort to narrow the disputes presented to the Court and, as a result, excluded fees incurred for several timekeepers altogether and for certain categories of work like pre-litigation investigation. The rates and hours underlying OpenAI's request are reasonable given the complexity of the case and xAI's unrelenting and sometimes deceptive tactics. OpenAI reserves the right to seek fees for litigating this fees motion and defending xAI's expected appeal of the dismissal order.

## II.    FACTUAL BACKGROUND

### A.    xAI Fails to Respond to OpenAI's Repeated Requests for Information So That It Could Investigate the Allegations of Misappropriation

This litigation is but one chapter in a long history of Elon Musk, the founder and CEO of xAI, harassing OpenAI. For instance, before this case, Musk and xAI had sued OpenAI and/or Sam Altman three times, including a case xAI lost at trial before Judge Gonzalez Rogers in this District.[1] Musk used his X platform to repeatedly deride OpenAI as "a lie," "evil," and "a total scam."[2] All the while, Musk tried and failed to develop xAI into a serious competitor to ChatGPT, despite Musk's admission that "xAI was not built right first time around."[3]

Against that backdrop, in the summer of 2025, xAI faced an exodus of employees.[4] California law protects employees' right to change jobs, even to a competitor. Several former xAI

---

[1] *Musk v. Altman*, No. CGC-24-612746 (S.F. Cnty. Super. Ct. Feb. 29, 2024); *Musk v. Altman*, No. 4:24-cv-04722-YGR (N.D. Cal. Aug. 5, 2024); *X Corp. v. Apple Inc.*, No. 4:25-cv-00914-P (N.D. Tex. Aug. 25, 2025).

[2] *See, e.g.*, Elon Musk (@elonmusk), X, https://perma.cc/7XXY-GX8D (Mar. 12, 2024, at 4:06 p.m. PT) ("OpenAI is a lie"); https://perma.cc/9SXS-BNFX (Oct. 2, 2024, at 9:34 p.m. PT) ("OpenAI is evil"); https://perma.cc/Q7UM-JJJF (Dec. 1, 2024, at 7:04 a.m. PT) ("a total scam").

[3] Elon Musk (@elonmusk), X, https://perma.cc/P7JN-DKEY (Mar. 12, 2026, at 9:06 p.m. PT).

[4] *See* Alexander Saeedy & Berber Jin, *Executives at xAI Clashed With Musk Advisors Before Departing*, Wall St. J., (Sept. 17, 2025), https://www.wsj.com/tech/ai/elon-musk-xai-executives-advisers-clash-eac3913b (noting that "top executives have left xAI in recent months").

DEFENDANTS' MOTION FOR ATTORNEY'S FEES UNDER 18 U.S.C. § 1836 AND CAL. CIV. CODE § 3426.4

employees exercised that right by joining OpenAI.  xAI responded with threatening letters to several of them, vowing to "vigorously" pursue legal remedies.  *See* Luedtke Decl. ¶¶ 9-11.

xAI also directed threats to OpenAI.  Luedtke Decl. ¶¶ 16, 19, 26.  OpenAI promptly investigated, identified no evidence of wrongdoing, and responded repeatedly.  *See id.* ¶¶ 17, 21, 23, 27, 29.  For instance, on September 19, 2025, OpenAI addressed xAI's sweeping charges that its hiring practices were somehow unlawful.  *See id.* ¶ 29, Ex. 13.  OpenAI confirmed that it did not want, and had neither "sought" nor "received," any xAI confidential information.  *Id.*  OpenAI invited xAI to share "any additional information you can provide" so that OpenAI could investigate.  *Id.*  xAI did not respond.  *Id.* ¶ 30.

**B.      xAI Files a Complaint Despite Knowing Its Allegations Were Unsupported**

Rather than respond to OpenAI's outreach, xAI filed its Complaint, alleging violations of the DTSA and other state-law causes of action.  Dkt. No. 1 ("Compl.").  xAI's core allegations about OpenAI were conclusory and pleaded on "information and belief."  And on key issues, xAI was silent as to *OpenAI's* involvement.  xAI alleged that Xuechen Li (who never joined OpenAI) and Jimmy Fraiture had copied xAI information while they were employed by xAI, but the Complaint failed to allege that *OpenAI* had acquired, used, or disclosed any xAI trade secrets.  Nor did the Complaint allege that the other former xAI employees it identified—the "senior finance executive," Mike Dalton, Ethan Knight, Hieu Pham, Sreekanth Pothanis, and Uday Ruddarraju— used or disclosed any xAI information.

*Yet before even notifying or serving OpenAI's counsel*, Musk publicized the lawsuit on X, telling his millions of followers that OpenAI "continued to cheat."[5]  Luedtke Decl. ¶¶ 32-33.

> **Elon Musk** ✓ ✕ 🎖
> @elonmusk                                    Subscribe  ⌀  ···
>
> We sent them many warning letters, but they continued to cheat.
> Lawsuit was the only option after exhausting all others.
>
> 6:19 PM · Sep 25, 2025 · **2.4M** Views

---

[5] Elon Musk (@elonmusk), X, https://perma.cc/H99W-FQVG (Sept. 25, 2025, at 6:19 p.m. PT).

DEFENDANTS' MOTION FOR ATTORNEY'S FEES UNDER 18 U.S.C. § 1836 AND CAL. CIV. CODE § 3426.4

On October 3, 2025, OpenAI moved to dismiss, Dkt. No. 30 at 1-2, and filed and served a detailed Answer, Dkt. No. 31.  That same day, OpenAI's counsel wrote to xAI's counsel demanding that xAI's counsel "withdraw your Complaint immediately," explaining why "[a]ny reasonable pre-suit inquiry would have confirmed that these allegations are factually unfounded," and requesting evidence xAI had to substantiate its claims.  *See* Luedtke Decl. ¶ 34, Ex. 14.  xAI did not respond with the requested evidence; its response was that the letter was a "waste" of "time."  *Id.* ¶ 35, Ex. 15.

### C.    xAI Amends Its Complaint to Expand Allegations Rather Than Cure Defects

Rather than oppose OpenAI's motion, xAI filed its FAC.  Dkt. No. 44.  xAI did not withdraw the allegations that OpenAI had repeatedly identified as unsupported.  Instead, the FAC added new baseless allegations relating to Knight, Pham, and Ruddarraju.

The FAC twisted Knight and Pham's good-faith efforts to delete xAI information from personal devices and accounts, which they had been expected to use for xAI work, into a sinister plot to disclose xAI information.  Luedtke Decl. ¶ 53.  After xAI sent threatening letters to them in August, Knight and Pham responded that they did not want to be exposed to any xAI information now that they were employed by OpenAI, and they each requested guidance on deleting xAI information from their personal devices and accounts.  *Id.* ¶¶ 53, 55-56, Ex. 18-19.  xAI did not respond for weeks.  *Id.* ¶¶ 56-59.  Hearing nothing but desiring to not possess xAI information, Knight and Pham's counsel proposed to xAI to have a digital forensics vendor remove the xAI information from their devices and keep a preservation copy.  *Id.* ¶ 57.  xAI did not respond, leaving Knight and Pham with little choice but to go ahead with the proposal.  *Id.* ¶ 58.

xAI did not raise any issue with this proposal until a week before xAI's deadline to amend its complaint.  *Id.* ¶ 59.  In response, Knight and Pham's counsel offered to provide xAI the preservation copies, subject only to Knight's counsel's review of his personal communications prior to handover.  *Id.* ¶ 60, Ex. 22.  They also identified the reputable forensics firm that made the preservation copies and the secure conditions under which it held those copies.  *Id.* ¶¶ 60, 62.

The FAC omitted all that context.  Instead, it deceptively alleged that Knight and Pham "shared copies of their xAI information with a third-party," suggesting this disclosure was

-4-                                          Case No. 3:25-cv-08133-RFL
DEFENDANTS' MOTION FOR ATTORNEY'S FEES UNDER 18 U.S.C. § 1836 AND CAL. CIV. CODE § 3426.4

misappropriation and omitting that this was a reputable forensics vendor retained by counsel, which counsel disclosed to xAI. FAC ¶ 128. Also, xAI's claim that Knight and Pham "refused to turn over their devices to xAI (or its independent forensics vendor) to allow xAI to identify this information and confirm its deletion" ignores the facts. *Id.* ¶ 127.

The Court dismissed xAI's FAC with leave to amend on February 24. *See* Dkt. No. 73 ("First MTD Order"). The Court echoed what OpenAI had been telling xAI in correspondence for months: xAI "must allege facts … indicat[ing] that the defendant has committed the wrongful act in question," but "xAI does not allege any facts indicating that OpenAI induced xAI's former employees to steal xAI's trade secrets or that these former xAI employees used any stolen trade secrets once employed by OpenAI." *Id.* at 1; *see, e.g.*, Luedtke Exs. 13-14. The Court also held that CUTSA superseded xAI's UCL claim. First MTD Order at 14-15.

### D.    xAI Then Sought a Stay to Search for Facts It Lacked

Before it tried to cure its FAC, xAI moved for a six-month stay to uncover additional facts through third-party discovery and a criminal investigation. Dkt. No. 74 at 5, 7-8. xAI argued it would suffer "considerable inequity" without time to do so because it still needed "more detailed allegations establishing a link to OpenAI." *Id.* The Court denied a stay. Dkt. No. 79. As the Court observed, xAI's stay request was at odds with the fundamental principle that "a plaintiff must investigate the facts underlying their allegations *before* filing suit, not after." *Id.* at 1.

### E.    xAI's SAC Repeated a Baseless Misappropriation Theory This Court Rejected

xAI's SAC, asserting only a DTSA claim, reiterated the same baseless allegations that OpenAI had warned—and the Court recognized—did not suffice. OpenAI again moved to dismiss. Dkt. No. 91. xAI's response relied solely on Li's alleged presentation. Dkt. No. 100.

On June 15, the Court dismissed without leave to amend. Second MTD Order. The Court held that xAI "failed to cure the deficiencies identified in the Prior Order" and reiterated that xAI "should not have sued" OpenAI "if it lacked the requisite information" before filing suit. *Id.* at 7.

DEFENDANTS' MOTION FOR ATTORNEY'S FEES UNDER 18 U.S.C. § 1836 AND CAL. CIV. CODE § 3426.4

## III.    ARGUMENT

### A.    The Court Should Award Attorney's Fees to OpenAI

#### 1.    DTSA

Under the DTSA, a court may "award reasonable attorney's fees to the prevailing party" "if a claim … is made in bad faith."  18 U.S.C. § 1836(b)(3)(D).

##### (a)    OpenAI Is the Prevailing Party

OpenAI is the prevailing party because the Court dismissed xAI's SAC and entered judgment for OpenAI.  *See CRST Van Expedited, Inc. v. EEOC*, 578 U.S. 419, 422 (2016) (recognizing that a plaintiff who "secures an 'enforceable judgment on the merits'" is a prevailing party (citation omitted)); *Greenmount LLC v. Cleanline Mgmt. LLC*, 2025 WL 2631605, at *5 (C.D. Cal. Aug. 22, 2025) (defendant prevailed on DTSA claim dismissed with prejudice).

##### (b)    xAI's Misappropriation Claim Was Brought in Bad Faith

This Court applies a "two-prong standard" to assess whether a trade secret claim was made in bad faith:  "(1) objective speciousness of the claim, and (2) subjective bad faith in bringing or maintaining the action, *i.e.*, for an improper purpose."  *Teetex LLC v. Zeetex, LLC*, 2022 WL 2439176, at *4 (N.D. Cal. July 5, 2022) (citation omitted).  Both prongs are met.

##### (i)    Objective Speciousness

A DTSA claim is objectively specious "where the action superficially appears to have merit but there is a complete lack of evidence to support the claim."  *Cherokee Chem. Co., Inc. v. Frazier*, 2022 WL 2036305, at *3 (C.D. Cal. Apr. 27, 2022) (citation omitted).  A claim may be specious even if it is "not frivolous."  *Direct Techs., LLC v. Elec. Arts, Inc.*, 836 F.3d 1059, 1079 (9th Cir. 2016).  To establish speciousness, a defendant need not "conclusively prove a negative (i.e., that they did not steal [the plaintiff's] trade secrets)."  *RBC Bearings Inc. v. Caliber Aero, LLC*, 2016 WL 6562068, at *3 (C.D. Cal. Aug. 1, 2016) (alteration in original) (citation omitted).  "[I]t is enough for defendants to point to the absence of evidence of misappropriation in the record."  *Id.*  A court can find speciousness based on an "examination of the plaintiff's own pleadings."  *Id.* at *4 (citation omitted).  A plaintiff cannot defeat a fee motion based simply on an

DEFENDANTS' MOTION FOR ATTORNEY'S FEES UNDER 18 U.S.C. § 1836 AND CAL. CIV. CODE § 3426.4

expectation that supporting evidence "would be obtained during discovery." *Teetex*, 2022 WL 2439176, at *4.

xAI's DTSA claim suffered from the same defect at each stage:  xAI never alleged—and clearly could not allege—"any misconduct by OpenAI."  First MTD Order at 1.  xAI failed to allege "facts indicating that OpenAI induced xAI's former employees to steal xAI's trade secrets or that these former xAI employees used any stolen trade secrets once employed by OpenAI."  *Id.*  xAI's claim was objectively specious because xAI had no evidence of misconduct by OpenAI.

**Direct Misappropriation.**  xAI made sweeping allegations that OpenAI induced xAI employees to take xAI confidential information.  *See, e.g.*, FAC ¶ 146.  But xAI made those allegations in conclusory fashion and otherwise relied on unreasonable inferences.  *See* First MTD Order at 8 ("xAI offers no nonconclusory allegations that permit a reasonable inference of inducement.").  xAI never alleged facts indicating that "OpenAI told or encouraged" Li and Fraiture to copy xAI source code.  *Id.*

xAI's reliance on conclusory allegations of inducement itself demonstrates objective speciousness.  In *Cypress Semiconductor Corp. v. Maxim Integrated Prods., Inc.*, 236 Cal. App. 4th 243 (2015), the court affirmed a trial court's finding of bad faith in part based on allegations—similar to xAI's inducement allegations here—that the defendant "was attempting to hire" the plaintiff's employees "for the purpose of gaining access to trade secrets they had learned in their work."  *Id.* at 262.  The court observed that "the manner in which" the plaintiff's theories "were pleaded strongly suggests that [the plaintiff] never had any evidence to support" them.  *Id.*  And "[n]othing in the complaint" "len[t] any color to the naked assertion that [the defendant] was pursuing [the plaintiff's] employees with the object of extracting trade secrets from them."  *Id.* at 264.  Similarly here, xAI's conclusory inducement allegations show that it had no evidence of inducement from the outset.  Indeed, in its October 3 letter demanding that xAI withdraw its claims because they were factually unsupported, OpenAI requested any factual basis underlying xAI's allegation of inducement.  Luedtke Decl. Ex. 14.  xAI provided none.  *Id.*

**Indirect Misappropriation.**  Similarly, xAI's theory of indirect misappropriation—which relates to Li—suffered from a complete lack of evidence from the outset.  xAI alleged that Li gave

a presentation regarding his work at xAI as part of his interview with OpenAI. *E.g.*, FAC ¶ 55. In fact, no such presentation took place, as OpenAI's counsel has repeatedly pointed out to xAI's counsel. Luedtke Decl. Exs. 7, 14. xAI has cited no evidence to the contrary.

xAI's fatally flawed allegations demonstrate that it had no evidence that the alleged presentation occurred. *See Cypress*, 236 Cal.App.4th at 262. The Court concluded that it was "not clear" from xAI's SAC "at what level of detail Li discussed xAI's reinforcement learning techniques"—and therefore the allegations were "not sufficient to plausibly infer" OpenAI's knowledge. Second MTD Order at 4. Similarly, xAI alleged "nothing" to support its "speculation" that OpenAI had requested a presentation that would "cover xAI's 'proprietary methods.'" *Id.* at 3. Absent any allegations about what OpenAI did—which xAI could not make because no such presentation occurred—xAI's allegations about the purported presentation at most amounted to "passive receipt of trade secrets," which is "not enough." *Id.* at 6.

xAI's only other allegation of indirect misappropriation was its insinuation that Li transferred source code to OpenAI's systems. These allegations likewise demonstrate that xAI had no evidence that such a transfer occurred. xAI alleged that an OpenAI recruiter "sent Li a message on Signal indicating that a link to, on information and belief, a cloud storage location was sent to Li." FAC ¶ 58. xAI had also alleged that Li had a cloud account that had been linked to ChatGPT. *Id.* ¶ 83. But neither of these allegations indicated that a transfer actually occurred. And any such inference would be speculative. *See Mintz v. Mark Bartelstein and Assocs.*, 2013 WL 12182602, at *4 (C.D. Cal. June 14, 2013) (plaintiff's reliance on speculative inferences supported finding of objective speciousness).

**Vicarious Liability.** xAI also alleged that OpenAI was vicariously liable for alleged misappropriation by former xAI employees who joined OpenAI—Fraiture, the senior finance executive, Knight, Pham, Ruddarraju, Dalton, and Pothanis. *See, e.g.*, FAC ¶¶ 105, 117, 121, 145. It was clear from the outset that those allegations were baseless.

*First*, xAI relied on inferences of misappropriation that courts have rejected. Courts have rejected any presumption that the "new employment" of a plaintiff's former employee "will inevitably lead him or her to rely on plaintiff's trade secrets." *RBC Bearings*, 2016 WL 6562068,

DEFENDANTS' MOTION FOR ATTORNEY'S FEES UNDER 18 U.S.C. § 1836 AND CAL. CIV. CODE § 3426.4

at *5. Courts have also held that a trade secret claim relying on that inference is itself objectively specious. *See id.* (finding objective speciousness where the plaintiff's "only evidence of misappropriation consisted of the individual defendants' access to plaintiff's trade secrets during the course of their employment with plaintiff, and their conclusion that such information would be useful to a competitor"); *accord Cypress*, 236 Cal. App. 4th at 264. Courts have similarly rejected the inference that the "mere possession of trade secrets" is sufficient to constitute misappropriation. *See Acculmage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 951 n.5 (N.D. Cal. 2003). xAI's allegations that Fraiture and the senior finance executive must have misappropriated xAI trade secrets for OpenAI's benefit rested on little more than their possession of or access to xAI trade secrets while at xAI and their subsequent change of employment.

*Second*, xAI's allegations regarding the other named employees came nowhere close to establishing misappropriation for which OpenAI could be vicariously liable. xAI failed to connect its allegations regarding Knight, Pham, and Ruddarraju to their employment at OpenAI. First MTD Order at 12. And xAI made no allegation of misappropriation as to Pothanis or Dalton. *Id.*

**(ii)   Subjective Bad Faith**

A claim is brought in subjective bad faith when it was "commenced or continued for an improper purpose, such as harassment, delay, or to thwart competition." *RBC Bearings*, 2016 WL 6562068, at *6 (citation omitted). Subjective bad faith "may be inferred from circumstantial evidence." *Cherokee Chem.*, 2022 WL 2036305, at *5 (citation omitted); *see* 18 U.S.C. § 1836(b)(3)(D) (recognizing that "bad faith" "may be established by circumstantial evidence"); *Teetex*, 2022 WL 2439176, at *5 (finding sufficient facts "from the record in the case" from which "the Court can reasonably infer subjective bad faith"). There is ample evidence of xAI's subjective bad faith here.

**Shortcomings Identified and Not Fixed.** Courts reasonably infer subjective bad faith when a defendant explains the deficiencies with plaintiff's trade secrets claim, and plaintiff fails to respond and proceeds with the litigation anyway. *See, e.g.*, *RBC Bearings*, 2016 WL 6562068, at *7-8 (awarding attorneys' fees and finding bad faith where plaintiff failed to respond to letter demanding specific evidence of misappropriation or additional letter setting forth evidence

DEFENDANTS' MOTION FOR ATTORNEY'S FEES UNDER 18 U.S.C. § 1836 AND CAL. CIV. CODE § 3426.4

undermining claim, and instead proceeded with litigation); *Cherokee Chem.*, 2022 WL 2036305, at *5 (inferring bad faith from the fact that plaintiff "maintained its misappropriation claims" after defendant "identified [plaintiff's] shortcomings at various points throughout this litigation"); *Alamar Biosciences, Inc. v. Difco Laboratories, Inc.*, 1996 WL 784495, at *3 (E.D. Cal. Feb. 27, 1996) (inferring subjective bad faith after plaintiff failed to respond to letter highlighting timeliness problem). Here, xAI brought and maintained this suit after OpenAI and later the Court informed xAI of shortcomings to which xAI failed to respond.

*Pre-Complaint Letters.* Before xAI filed its initial Complaint and in response to a letter from xAI, OpenAI told xAI that OpenAI's investigation had found no evidence to support a misappropriation claim against OpenAI and no evidence that any of the individuals identified by OpenAI had disclosed xAI confidential information to OpenAI or used it in their work for OpenAI. xAI did not respond. *See generally* Luedtke Decl. ¶¶ 13-30.

*October 3 Letter.* After xAI filed its Complaint, OpenAI urged xAI to "withdraw [its] Complaint immediately." Luedtke Decl. Ex. 14. OpenAI asked that xAI provide any evidence supporting its allegations. *Id.* OpenAI explained why xAI's claims were legally and factually unsupported and also identified particular allegations that were false or misleading. *Id.* For example, OpenAI pointed out that the "cloud storage link" allegedly provided to Li by OpenAI was a "DocSend link for standard hiring paperwork," a fact that xAI "knew" from reviewing Li's correspondence. *Id.* xAI's only response was to dismiss OpenAI's letter as a "waste" of "time." Luedtke Decl. Ex. 15.

*Stay Request.* xAI asked the Court for a stay before amending to allow it to find evidence linking its allegations to OpenAI. *See* Dkt. No. 74 at 7. In making that motion, xAI argued it would be prejudiced if it had to go forward without the stay and associated discovery. *See id.* at 6-7. The Court denied the stay, noting that xAI should have had evidence *before* filing its claim. Dkt. No. 79 at 1-2; *see RBC Bearings*, 2016 WL 6562068, at *7 (inferring subjective bad faith where the plaintiff "acknowledged" its lack of evidence of trade secret misappropriation).

*SAC.* Undeterred, xAI plowed ahead and filed the SAC, changing little and failing to address the deficiencies. *See* Dkt. No. 81-1 (redline comparing SAC to FAC). This is further

-10-                                    Case No. 3:25-cv-08133-RFL
DEFENDANTS' MOTION FOR ATTORNEY'S FEES UNDER 18 U.S.C. § 1836 AND CAL. CIV. CODE § 3426.4

evidence of bad faith.  *See Teetex*, 2022 WL 2439176, at *5 (inferring subjective bad faith where the plaintiff relied on a theory "already rejected" by the court in a related case).

**Improper Motives.**  xAI's conduct provides abundant evidence from which this Court can reasonably infer that xAI "harbored an improper motive" in bringing this suit.  *See RBC Bearings*, 2016 WL 6562068, at *7 (citation omitted) (inferring that the "plaintiff's motive" was "to stifle competition with" the defendant based on litigation conduct inconsistent with a desire "to protect its trade secrets").  At least two motives are readily apparent.

First, in the months leading up to the litigation, xAI suffered a massive loss of employees.  Some of those employees joined OpenAI.  xAI's conduct reasonably supports an inference that its motive was to stifle fair competition for talent—to harass and intimidate its former employees to prevent them from leaving for OpenAI, to scare remaining employees from leaving generally, and to chill OpenAI's hiring of top talent from xAI.  The conduct from which the Court can infer that improper motive includes the following:

*Elon's X Post.*  xAI's CEO Elon Musk tweeted about the lawsuit before it had even been served or a copy provided to OpenAI's counsel—illustrating that the public message was more important than the actual litigation.  *Supra* at 3; Luedtke Decl. ¶¶ 32-33; *Cypress*, 236 Cal. App. 4th at 271 (inferring bad faith where plaintiff issued press release before informing defendant about litigation developments); *see also* Luedtke Decl. ¶ 32 (describing xAI's statement to Court in motion to relate this case to Li action that OpenAI counsel had not appeared although xAI had not notified OpenAI of the litigation).

*Focus on Former Employees.*  xAI had objected to OpenAI because it "continued to recruit and hire additional xAI employees."  Luedtke Decl. Ex. 6.  xAI then identified six former employees (five by name, one by description) in its publicly filed Complaint despite having no allegations that those employees acquired, used, or disclosed xAI confidential information.  *Supra* at 3; Compl. ¶¶ 111, 114; *RBC Bearings*, 2016 WL 6562068, at *7 (inferring bad faith where suit named plaintiff's former employees despite "virtually no evidence" of misappropriation as to most of them); *Cypress*, 236 Cal.App.4th at 270 (inferring subjective bad faith where plaintiff's pre-suit correspondence objected to defendant's "hiring practices").

DEFENDANTS' MOTION FOR ATTORNEY'S FEES UNDER 18 U.S.C. § 1836 AND CAL. CIV. CODE § 3426.4

*Insufficient Steps to Protect Alleged Trade Secrets.*  xAI did not seek preliminary injunctive relief against OpenAI to stop alleged misappropriation at OpenAI.  Nor did xAI respond to OpenAI's request for details about misappropriated information so that OpenAI could identify and stop any use of such (non-existent) information.  Luedtke Decl. ¶¶ 17-18, 21-25, 27-30.

*Knight and Pham.*  xAI's treatment of Knight and Pham is inconsistent with a motive to protect confidential information.  *Supra* at 4-5.  A trade secret plaintiff legitimately concerned about confidential information would respond to repeated inquiries from former employees about what to do with company information on a personal phone or personal accounts and would work with that employee's counsel to have it removed or deleted.  Further, if xAI were legitimately concerned about the forensics vendor's possession of any xAI information from their phones, xAI's counsel would have responded to the employees' counsel's request to confirm receipt of the preservation copy so that the vendor could delete their copy.  Luedtke Decl. ¶ 67.

Second, the Court could reasonably infer that xAI's suit was part of Musk's broader anticompetitive campaign to harass and weaken OpenAI.  Those efforts have included multiple baseless and thus far unsuccessful lawsuits.  *Supra* at 2 n.1; *see RBC Bearings*, 2016 WL 6562068, at *8 (plaintiff's multiple suits in other forums supported finding of bad faith).

Because xAI's DTSA claim was objectively specious and brought in subjective bad faith, the Court should award OpenAI its attorney's fees incurred in defending against that claim.

## 2.    State-Law Claims

Like the DTSA, CUTSA provides that "[i]f a claim of misappropriation is made in bad faith … the court may award reasonable attorney's fees … to the prevailing party."  Cal. Civ. Code § 3426.4.  CUTSA's fee-shifting provision applies to state-law claims alleging misappropriation of confidential information that are superseded by CUTSA.  *See Indigo Grp. USA, Inc. v. Polo Ralph Lauren Corp.*, 2014 WL 12573380, at *8 (C.D. Cal. Mar. 17, 2014).

### (a)    OpenAI Is the Prevailing Party on xAI's State-Law Claims

OpenAI prevailed on xAI's state-law claims.  xAI abandoned its intentional interference claim after OpenAI's first motion to dismiss.  Dkt. No. 30 at 12-13.  The Court dismissed xAI's UCL claim as superseded by CUTSA, and xAI dropped it from the SAC.  First MTD Order at 14-

DEFENDANTS' MOTION FOR ATTORNEY'S FEES UNDER 18 U.S.C. § 1836 AND CAL. CIV. CODE § 3426.4

15; Dkt. No. 59 at 14-15.  Because xAI withdrew the state-law claims after OpenAI obtained dismissal from the Court, OpenAI is the prevailing party.  *See Cherokee Chem.*, 2022 WL 2036305, at *3 (defendant was prevailing party after plaintiff voluntarily dismissed its claim).

### (b)    xAI's State-Law Claims Were Brought in Bad Faith

xAI's state-law claims were brought in bad faith under CUTSA, satisfying both prongs of the relevant test.  *See Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*, 2025 WL 2209999, at *2 (N.D. Cal. Aug. 4, 2025) ("[F]ederal district courts throughout California have regularly applied California's definition of bad faith for both federal and California trade secret claims.").  xAI's state-law claims were objectively specious:  they "relie[d] solely on misappropriation of xAI's confidential information" and were superseded under settled law.  First MTD Order at 15.  And they were brought in subjective bad faith:  xAI re-asserted its UCL claim after OpenAI's first Motion to Dismiss apprised xAI of that claim's obvious flaw.  Dkt. No. 30 at 13.

### B.    OpenAI's Requested Fees Are Reasonable

The "starting point" for calculating the award is the lodestar method, which considers a reasonable hourly rate and the number of hours reasonably expended on the case.  *Shirrod v. Dir., Off. of Workers' Comp. Programs*, 809 F.3d 1082, 1086 (9th Cir. 2015) (citing *Christensen v. Stevedoring Servs. of Am.*, 557 F.3d 1049, 1053 & n.4 (9th Cir. 2009)).  The lodestar method ensures that an attorney's fee award is in line with market rates in the relevant forum for "similar services" provided by lawyers of "comparable skill, experience[,] and reputation."  *Id.*

The lodestar analysis begins with billing rates and hours submitted by the prevailing party. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013).  The prevailing party's proposed hourly rates are "presumed reasonable" absent opposing evidence, *Villasenor v. Cmty. Child Care Council of Santa Clara Cnty., Inc.*, 2021 WL 242924, at *8 (N.D. Cal. Jan. 25, 2021), and that presumption is "particularly forceful" where, as here, the fees in question were billed to and paid by a client employing business judgment.  *See Stonebrae, L.P. v. Toll Bros.*, 2011 WL 1334444, at *6 (N.D. Cal. Apr. 7, 2011), *aff'd*, 521 F. App'x 592 (9th Cir. 2013).

As set forth in Carolyn Luedtke's Declaration supporting this Motion, billing records for OpenAI's defense counsel in this matter support a fee award of at least $1,041,859.90.  This

DEFENDANTS' MOTION FOR ATTORNEY'S FEES UNDER 18 U.S.C. § 1836 AND CAL. CIV. CODE § 3426.4

amount reflects only a portion of the total fees incurred by defense counsel in this litigation. Luedtke Decl. ¶¶ 92-93.  OpenAI's request is also consistent with the relevant market and the scope and complexity of this litigation, and reflects reasonable billing rates and time incurred.

### 1.      The Hourly Rates Are Reasonable

To determine whether a requested hourly billing rate is reasonable, "courts look to the prevailing market rates in the relevant community for similar work by attorneys of comparable skill, experience, and reputation." *Murphy v. Celestron Acquisition, LLC*, 2024 WL 1221963, at *2 (N.D. Cal. Mar. 20, 2024) (citing *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008)).  The Court may also consider the "novelty and complexity of the issues, the special skills or experience of counsel, the quality of representation, and the results obtained." *Li v. ArcSoft, Inc.*, 2024 WL 4800753, at *1 (N.D. Cal. Oct. 8, 2024).  In addition, the Court may "rely on its own familiarity with the legal market." *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

As set forth in the Luedtke Declaration, OpenAI's request is based on hourly rates of up to $1,573 for Partners and $1,178 for Associates.  *See* Luedtke Decl. ¶ 85.  These rates are reasonable in view of the complexity, the stakes of this litigation, and the California market.[6]  *See id*. ¶¶ 88-90 (outlining precedent for fees in this and nearby Districts and for opposing counsel).

### 2.      The Number of Hours Billed Is Reasonable

OpenAI's requested award is also premised on a reasonable number of hours worked.  *See generally* Luedtke Decl. ¶¶ 91-103.  Courts in this District have long recognized that a prevailing party may recover a "substantial" fee award when it is forced to respond to an adversary's "aggressive litigation strategy." *Cataphora Inc. v. Parker*, 848 F. Supp. 2d 1064, 1070 (N.D. Cal. 2012).  In other words, a party "cannot litigate tenaciously and then be heard to complain about the time necessarily spent" by the other side in response. *Sahdev v. Hyundai Motor Am.,* 2023 WL 8634796, at *3 (N.D. Cal. Dec. 13, 2023) (citation omitted); *see also Franchek v. Workrite*

---

[6] *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) ("Affidavits of the [prevailing] attorney[s] regarding prevailing fees in the community, and rate determinations in other cases … are satisfactory evidence of the prevailing market rate.").

DEFENDANTS' MOTION FOR ATTORNEY'S FEES UNDER 18 U.S.C. § 1836 AND CAL. CIV. CODE § 3426.4

*Ergonomics, LLC*, 2022 WL 3137928, at \*7 (N.D. Cal. May 9, 2022) (court may "defer to the winning lawyer's professional judgment" as to time required to litigate the case (citation omitted)).

The hours billed by OpenAI's defense counsel in this case reflect the burden imposed by xAI's aggressive litigation tactics. *See* Luedtke Decl. ¶ 94 (chart outlining hours by attorney). Despite repeated warnings that its claims were baseless, xAI filed three complaints, requiring OpenAI to brief three motions to dismiss and other unnecessary motion practice, including briefing why there should be a stay of discovery pending resolution of the motion to dismiss, why xAI should have to define their trade secrets, and opposing xAI's motion to stay the litigation to pursue the evidence it should have had before filing suit.

In an effort to be conservative and narrow the issues presented to the Court, OpenAI seeks only a portion of its overall legal expenses, and has excluded amounts pertaining to its pre-litigation investigation and correspondence with xAI explaining why there was no basis to file suit. Luedtke Decl. ¶ 92. Moreover, OpenAI excluded from its claimed fees the fees paid by several timekeepers and it excluded time spent on discovery requests and other activities associated with the separate litigation against Li. *Id.* Overall, OpenAI's fee request here is less than the fees incurred and either billed or paid by OpenAI. *Id.* ¶ 93. *Cf. Franchek*, 2022 WL 3137928, at \*7 (awarding $414,000 in fees and noting that prevailing party's attorneys attested that they had exercised "conservative 'billing judgment'" in preparing their billing submission).[7, 8]

## IV.   CONCLUSION

OpenAI respectfully requests that the Court award attorney's fees in the amount of $1,041,859.90.

---

[7] As Ninth Circuit precedent makes clear, district courts have discretion to make an "upward or downward" adjustment to the initial lodestar calculation in "rare cases." *See Camacho*, 523 F.3d at 982. That inquiry is guided by factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir.1975). *Id.*; *see Gonzalez*, 729 F.3d at 1209 n.11. Defendants submit that the *Kerr* factors support at least the requested relief of $1,041,859.90.

[8] OpenAI also reserves the right to seek fees incurred in preparing and arguing this motion. *See Rosenfeld v. U.S. Dep't of Just.*, 903 F. Supp. 2d 859, 878 (N.D. Cal. 2012) (prevailing party "may recover attorney's fees for time reasonably expended on a motion for attorney's fees and costs" (citation omitted)). OpenAI reserves its right to seek additional attorney's fees incurred on appeal.

DEFENDANTS' MOTION FOR ATTORNEY'S FEES UNDER 18 U.S.C. § 1836 AND CAL. CIV. CODE § 3426.4

DATED:  July 13, 2026               MUNGER, TOLLES & OLSON LLP


By:      _s/ Carolyn Hoecker Luedtke_
              CAROLYN HOECKER LUEDTKE
              DANE P. SHIKMAN
              GABRIEL M. BRONSHTEYN
              JOSEPH N. GLYNN

              Attorneys for Defendants OpenAI, Inc., OpenAI
              Global, LLC, and OpenAI OpCo, LLC

Case No. 3:25-cv-08133-RFL

DEFENDANTS' MOTION FOR ATTORNEY'S FEES UNDER 18 U.S.C. § 1836 AND CAL. CIV. CODE § 3426.4