# Exhibit 13

| | |
|---|---|
| **From:** | Luedtke, Carolyn |
| **To:** | Vidal, Kathi |
| **Cc:** | McCullough, Matt; Swope, Carson; Newman, Claudia; Kravis, Jonathan; Shikman, Dane; Lily-Rose Scargill; James Martin; Mike Anderson; Michael Morris; Bronshteyn, Gabriel |
| **Subject:** | xAI / OpenAI |
| **Date:** | Friday, September 19, 2025 5:48:05 PM |

Kathi,

As you know, we represent OpenAI.  Over the past two weeks, you and xAI's U.K. counsel have sent a series of letters and emails regarding several individuals who made the decision to leave xAI and join OpenAI.  I have responded separately to xAI's specific concerns regarding each of those individuals. As I have said several times now, OpenAI has no interest in receiving the confidential information of any other company, including xAI.  OpenAI takes allegations of misappropriated confidential information seriously, and we are prepared to address any additional information you can provide.  I write here to address xAI's unsupported, broad allegations of wrongdoing by OpenAI, as well as xAI's crescendo of oppressive and harassing behavior toward its former employees.

As you know, xAI's at-will employees are free to leave xAI and pursue other jobs.  xAI does not own them.  If xAI is an unpleasant workplace, its employees may leave.  They can take their experience and talents to the employer that best fits their chosen criteria for a workplace—challenge, compensation, lifestyle, corporate mission, leadership, work environment, etc.  This is how the free labor market works.  Absent an enforceable non-compete, which is not at issue here, former xAI employees may work for OpenAI even though it is a competitor.  In California, courts reject the doctrine of inevitable disclosure and the law does not allow a former employer to block an employee from working in their area of experience just because they have confidential information from a former employer in their head.  *See Whyte v. Schlage Lock Co.,* 101 Cal.App.4th 1443 (Ct. App. 2002) (explaining that the doctrine of inevitable disclosure runs counter to the strong public policy of California codified in California Business & Professions Code Section 16600); *FLIR Systems, Inc. v. Parris,* 174 Cal.App.th 1270, 277 (Ct. App. 2009) ("The doctrine of inevitable disclosure is not the law in California.")  And nationally, as you know, OpenAI cannot agree to refrain from recruiting xAI employees without running afoul of the antitrust laws.  *See In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2014 WL 1283086 (N.D. Cal. Mar. 28, 2014) (denying summary judgment in case alleging that technology companies agreed not to solicit each other's employees); *In re Animation Workers Antitrust Litig.*, 123 F. Supp. 3d 1175, 1212 (N.D. Cal. 2015) (found Plaintiffs alleged antitrust conspiracy where Defendants agreed to "refrain[] from poaching each other's employees").  The January 2025 Department of Justice Antitrust Guidelines For Business Activities Affecting Workers is in accord.  DOJ gives the following instruction: "Agreements between companies not to recruit, solicit, or hire workers… may violate the antitrust laws and may expose companies and executives to criminal liability. Where appropriate, DOJ exercises its authority to bring felony criminal charges against companies and individuals who participate in these conspiracies."  Those same DOJ Guidelines provide that the antitrust laws "protect the freedom of working people to choose the best job for them and their families."  OpenAI is acting, and plans to continue to act, consistent with these guidelines and to continue to seek and hire the best talent it can identify regardless of xAI's increasing threats against it.

Your latest emails wrongly accuse OpenAI of a "pattern" of inducing former xAI employees to breach

their confidentiality obligations, but you cite no evidence of any action by OpenAI other than hiring people who worked at xAI, which is not unlawful or an inducement of any breach.  Instead, that is the free labor market in action.

It appears to us that xAI is attempting to interfere with its employees' exercise of their rights in the free labor market by harassing those who choose to leave for OpenAI.  xAI's in-house counsel Lucy Lim, for instance, has subjected several departing employees to a series of questions that are confusing and appear to disregard the employees' efforts to cooperate and provide requested information.  When we intervened to clarify her questions for our clients Ethan Knight and Hieu Pham on September 12, she ceased communications and failed to answer *my* reasonable questions for her.  The ongoing apparent harassment of xAI employees who are choosing to exercise their right to change jobs and go to the employer of their choice can rise to the level of unlawful action, unfair competition, and tortious interference.  We ask that xAI cease its harassment of employees leaving for or who have joined OpenAI.

In closing, and so there is no question, OpenAI reiterates that it does not want confidential xAI information, it has not sought it from current or former xAI employees, and it has not received any such information.

OpenAI reserves all rights and remedies to take any and all action against xAI for efforts to thwart the competition for talent in the AI industry and to interfere with OpenAI's employment relationships with its employee.

If you think it would productive, I am happy to get on a call to discuss or Monday.  Thank you for your attention to this and have a nice weekend.

Best regards,
Carolyn

**Carolyn Hoecker Luedtke** | **Munger, Tolles & Olson LLP**
560 Mission Street | San Francisco, CA 94105
Tel:  415.512.4027 | Fax:  415.644.6927 | carolyn.luedtke@mto.com | www.mto.com