# Exhibit 20

| | |
|---|---|
| **From:** | Luedtke, Carolyn |
| **To:** | Vidal, Kathi |
| **Cc:** | Kravis, Jonathan; McCullough, Matt; Slifer, LeElle B.; Swope, Carson |
| **Subject:** | RE: Letter re: xAI Trade Secrets and Confidential Information |
| **Date:** | Monday, October 20, 2025 1:50:16 PM |

Kathi,

Thanks for your email. I'm surprised that you would now express concern over information that Hieu Pham shared with Ms. Lim at xAI openly and in detail on Tuesday, September 2 in prompt response to her Saturday, August 30 letter. Mr. Pham has been seeking guidance on whether he could delete this residual information from his work at xAI since that time, without success. And I heard nothing back from Ms. Lim to my September 12 outreach, more than a month ago. I disagree with your assertions in your email. I am happy to discuss by phone. I am free today 3:30-5:00 or anytime tomorrow after 9:30am. Just let me know what time works.

Best regards,
Carolyn

**Carolyn Hoecker Luedtke** | **Munger, Tolles & Olson LLP**
560 Mission Street | San Francisco, CA 94105
Tel: 415.512.4027 | Fax: 415.644.6927 | carolyn.luedtke@mto.com | www.mto.com

**From:** Vidal, Kathi <KVidal@winston.com>
**Sent:** Monday, October 20, 2025 7:16 AM
**To:** Luedtke, Carolyn <Carolyn.Luedtke@mto.com>
**Cc:** Kravis, Jonathan <Jonathan.Kravis@mto.com>; McCullough, Matt <MRMcCullough@winston.com>; Slifer, LeElle B. <LSlifer@winston.com>; Swope, Carson <CSwope@winston.com>
**Subject:** FW: Letter re: xAI Trade Secrets and Confidential Information

Carolyn,

I received your email below to xAI counsel Lily Lim. Please direct any future communications about Hieu Pham to me.

As for your email, we are deeply concerned by your admission that Mr. Pham has maintained copies of unspecified "xAI related material" and by your attempt to deflect responsibility to xAI for Mr. Pham's decision to improperly keep this information. Even assuming Mr. Pham was authorized to access such information on his personal devices/accounts while he was employed by xAI, he was required to, upon his departure from xAI, return "all copies" of xAI information and to provide a "computer-useable copy of all such Confidential Information [on any personal devices/accounts] and then permanently delete and expunge such Confidential Information from those systems." Employee Confidential Information and Invention Assignment Agreement ("ECIIAA"), ¶ 8.

Your email makes clear that he has violated this agreement.

Your proposal to employ some unspecified forensics vendor to review xAI confidential information is wholly inappropriate.  Mr. Pham must not compound the harm of his violation of the ECIIAA by further disclosing xAI confidential information to a third-party that has not been authorized by xAI to access such information.

Accordingly, we demand that, pursuant to the ECIIAA, Mr. Pham "provide Company access to my system as reasonably requested to verify that the necessary copying and/or deletion is completed."  ECIIAA, ¶ 8.  Specifically, Mr. Pham should surrender all device(s) and account(s), including any credentials necessary to access those devices/accounts, that contain any "xAI related material," as referenced in your email, to forensics vendor Nardello & Co. LLC for forensic imaging and analysis to identify and confirm deletion of all xAI information.  Please confirm that Mr. Pham will do so within 3 days.

If Mr. Pham fails to do so, we reserve all rights to seek any appropriate relief against Mr. Pham and/or OpenAI.

Best,

Kathi

On Wed, Oct 8, 2025 at 12:09 PM Luedtke, Carolyn <Carolyn.Luedtke@mto.com> wrote:

Ms. Lim,

I am writing to follow up on my message below from September 12, to which you never responded.  As you know, I am counsel for Hieu Pham.  I had asked for direction on what he should do with xAI related material that remains on his personal phone that xAI asked him to use for work, and you provided none.  It has now been over three weeks without a response.  Because you have provided no guidance or response, we will go ahead and work with a forensic vendor to make a preservation copy of this material to be kept securely outside of Mr. Pham's possession and have the vendor delete the material from his personal devices and accounts.  I would like to reiterate my request that xAI take whatever steps it can working with X or other accounts to remove Mr. Pham from x-Chats, Signal chats, etc. that he had been using with his personal accounts and that you stop any efforts to add him back into those groups or push those messages out to his personal accounts.

Regards,
Carolyn

**Carolyn Hoecker Luedtke** | **Munger, Tolles & Olson LLP**
560 Mission Street | San Francisco, CA 94105
Tel:  415.512.4027 | Fax:  415.644.6927 | carolyn.luedtke@mto.com | www.mto.com

**From:** Luedtke, Carolyn <Carolyn.Luedtke@mto.com>
**Sent:** Friday, September 12, 2025 7:54 AM

**To:** lily@x.ai
**Cc:** mary@x.ai; Kravis, Jonathan <Jonathan.Kravis@mto.com>
**Subject:** RE: Letter re: xAI Trade Secrets and Confidential Information

Ms. Lim,

I am counsel for Hieu Pham, your former employee and a current employee of OpenAI.  Mr. Pham shared with me your exchange below.

To be clear, Mr. Pham will continue to honor his confidentiality obligations to xAI.  As reflected in the email correspondence, Mr. Pham has endeavored to cooperate with xAI to assuage any concerns in that regard.  It is time to wrap this up.

Your initial letter to Mr. Pham, sent at 1:13am on Friday, August 29, did not mention any specific concerns or any allegation of improper conduct by Mr. Pham.  You nevertheless demanded that he answer a variety of questions on a very short deadline.  In an effort to be fully cooperative, Mr. Pham responded to your questions in detail on Tuesday, September 2.  In that message, Mr. Pham explained that xAI did not give him a work phone and that he was expected to use his personal phone for work communications.  He told you that xAI instructed him that any work communications with Elon Musk should be sent through the X-Chat app using his personal X account.  Mr. Pham also told you that he was expected to communicate with other xAI employees and third parties about xAI work through Signal, WeChat and text message.  Our understanding is this was a common practice and endorsed by his managers.  Mr. Pham also told you that he was expected to use his personal GitHub account for xAI work, and that he had occasionally taken screen shots on his personal phone over the course of his time at xAI as a notetaking device.  Mr. Pham told you that when he left xAI, he was never instructed to remove xAI-related information from his personal phone or accounts.  After receiving your August 29 letter, he did that review.  At that point, Mr. Pham realized that some residual xAI work communications and documents remained on his personal accounts, and so he asked you whether he should delete them.

You did not answer his question.  Instead, on September 8, you sent Mr. Pham an email asking new questions that were unrelated to his detailed answers to your previous questions.  He tried to respond to your new questions the next day.  On September 9 at 9:42pm, you sent him a thoroughly confusing response.

Your September 8 and 9 messages ask him to list any "communication means, including X chat, Signal, WeChat, or others" on which he had "xAI communications" from his time working at xAI.  He did that in his September 2 message.  So it is not clear what more you want there.  For all those personal accounts that he identified in his September 2 message, you ask him to please "list out the subject of the communications therein."  He already told you in his September 2 message that the subject was his work at xAI and the communications were done over the course of his time at xAI.  He further confirmed that none of those communications occurred after he left xAI and that he has not used or disclosed those communications since leaving.

If your September 9 late evening email is asking him to make a log describing the substantive

content of every work-related communication on his personal accounts during his tenure at xAI, then I have a real concern. It is surprising that you would ask Mr. Pham to review the substance of those communications now that he is working at OpenAI. As a legal matter, it is highly doubtful that the contents of communications sent and received on Mr. Pham's personal device constitute trade secret or confidential information, particularly in light of the fact that no one at xAI told him to delete these communications when he left the company. But in any event, Mr. Pham has no interest in accessing or using these communications and he is ready for them to be deleted. On September 2, Mr. Pham asked you for instructions on the handling of these communications, but you have not provided a clear response.

Going forward, please direct all communications to Mr. Pham to me. We would like to get this sorted our efficiently and clearly and in a way that (a) does not require Mr. Pham to access any xAI information, (b) does not create undue burden on Mr. Pham, and (c) allows Mr. Pham to delete old communications and pictures reflecting his work at xAI. May he go ahead and delete those messages and pictures? And for the X-Chat messages from Mr. Musk and others, can those be deleted most securely by X and if so, can X please do that promptly? Mr. Pham does not want to be in possession of any of this xAI information, whether it is confidential or not.

I look forward to your response. If you would like to discuss directly, please let me know.

Best regards,
Carolyn Luedtke
Munger, Tolles & Olson
**Carolyn Hoecker Luedtke** | **Munger, Tolles & Olson LLP**
560 Mission Street | San Francisco, CA 94105
Tel: 415.512.4027 | Fax: 415.644.6927 | carolyn.luedtke@mto.com | www.mto.com
---------- Forwarded message ---------
From: **Lily Lim** <lily@x.ai>
Date: Tue, Sep 9, 2025 at 9:42 PM
Subject: Re: Letter re: xAI Trade Secrets and Confidential Information
To: <███████████████>
Cc: Mary Wang <mary@x.ai>


Dear Hieu,
Thanks for your response.
To clarify, if after your last day at xAI, you kept any xAI Confidential Information in any form including on any personal device or account that existed in your possession, custody, or control, then both 3 and 4 apply.
Thank you.

Best regards,
Lily Lim

Head of Legal Affairs
[x.AI](x.AI)

On Tue, Sep 9, 2025 at 9:30 PM Hieu Pham <██████████████> wrote:

> Hi Lily,
>
> First, I want to reiterate that I understand that I have an obligation to keep confidential xAI information confidential and I have been doing that. I also understand that the obligations extend after I have left xAI. I have not and do not intend to use or disclose any xAI information from my time working there that is still in the personal accounts (X, WeChat, and Signal) that I used for work.
>
> I had asked you whether I should delete the xAI-related information in my personal accounts that I used for xAI work and pictures on my phone. It is not clear from your latest email whether you want me to go into those accounts and delete that data. Can you confirm that is what you want me to do and if I do so, you will not argue that I have improperly failed to preserve information? With your confirmation, I will proceed to delete any remaining work-related xAI information from my personal accounts and my phone.
>
> On (3) and (4), I do not have any communications involving xAI confidential information on any of my personal accounts after my last date at xAI so I do not have anything to describe or delete in that category.
>
> Please let me know of your instructions regarding deletion.
>
> Thanks,
> *--Hieu*

The contents of this message may be privileged and confidential. If this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author. Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under applicable tax laws and regulations.