# Exhibit 22

MUNGER, TOLLES & OLSON LLP

RONALD L. OLSON
CARY B. LERMAN
GREGORY P. STONE
BRAD D. BRIAN
GEORGE M. GARVEY
WILLIAM D. TEMKO
JOHN W. SPIEGEL
DONALD B. VERRILLI, JR. P.C.
JOSEPH D. LEE
MICHAEL R. DOYEN
MICHAEL E. SOLOFF
GLENN D. POMERANTZ
HENRY WEISSMANN
KEVIN S. ALLRED
JEFFREY A. HEINTZ
STUART N. SENATOR
KELLY M. KLAUS
LISA J. DEMSKY
MALCOLM A. HEINICKE
JAMES C. RUTTEN
RICHARD ST. JOHN
ROHIT K. SINGLA
CAROLYN HOECKER LUEDTKE
KATHERINE M. FORSTER
BLANCA FROMM YOUNG
SETH GOLDMAN
GRANT A. DAVIS-DENNY
JONATHAN H. BLAVIN
DANIEL B. LEVIN
MIRIAM KIM
HAILYN J. CHEN
BETHANY W. KRISTOVICH
JACOB S. KREILKAMP
JEFFREY Y. WU
HEATHER E. TAKAHASHI
ERIN J. COX
BENJAMIN J. HORWICH
E. MARTIN ESTRADA
BRYAN H. HECKENLIVELY
ELAINE J. GOLDENBERG P.C.
GINGER D. ANDERS P.C.
MARGARET G. MARASCHINO
JOHN M. GILDERSLEEVE
ADAM B. WEISS
ACHYUT J. PHADKE
ZACHARY M. BRIERS
KURUVILLA J. OLASA
JUSTIN P. RAPHAEL
ROSE LEDA EHLER
JOHN W. BERRY
ROBYN K. BACON

JORDAN D. SEGALL
JONATHAN KRAVIS P.C.
JOHN L. SCHWAB
L. ASHLEY AULL
WESLEY T.L. BURRELL
CRAIG JENNINGS LAVOIE
JENNIFER L. BRYANT
NICHOLAS D. FRAM
VINCENT Y. LING
VICTORIA A. DEGTYAREVA
JOHN B. MAJOR
RACHEL G. MILLER-ZIEGLER P.C.
FAYE PAUL TELLER
STEPHANIE G. HERRERA
JULIANA M. YEE
COLIN A. DEVINE
GIOVANNI S. SAARMAN GONZÁLEZ
ANNE K. CONLEY
DAVID W. MORESHEAD
ANDREW D. GARELICK
BRIDGET M. FITZPATRICK
SKYLAR B. GROVE
LAURA M. LOPEZ
DANE P. SHIKMAN
SAMUEL H. ALLEN
J. MAX ROSEN
ROWLEY J. RICE
LAUREN E. ROSS
BENJAMIN G. BAROKH
ABE DYK
MEGAN MCCREADIE
RAQUEL E. DOMINGUEZ
ARIEL TESHUVA
SHANNON GALVIN AMINIRAD
XIAONAN APRIL HU
CARRIE C. LITTEN
JAMES R. SALZMANN
SEAN P. BARRY
MICHAEL I. SELVIN
HUNTER V. ARMOUR
NATHANIEL F. SUSSMAN
OLIVER BROWN
PAUL E. MARTIN
MATTHEW MIYAMOTO
REBECCA L. SCIARRINO
CORY M. BATZA
BRIAN R. BOESSENECKER
ROBERT E. BOWEN
RICHARD T. JOHNSON
GRACE DAVIS FISHER
LAUREN N. BECK

CALEB W. PEIFFER
JAMIE LUMA
STEVEN B. R. LEVICK
JANELLE KRUMMEN
WILLIAM M. ORR
GABRIEL M. BRONSHTEYN
ROSIO FLORES ARRIAGA
JESSICA O. LAIRD
ERICA C. TOOCH
SARAH E. WEINER
EVAN MANN
ANDREW T. NGUYEN
SARA H. WORTH
MIRANDA E. REHAUT
STEPHANY REAVES
LAUREN E. KUHN
GARRETT SOLBERG
TED KANG
ADAM W. KWON
JOSEPH N. GLYNN
SIMON K. ZHEN
CARSON J. SCOTT
ROMAN LEAL
MATTHEW W. LINSLEY
ADEEL MOHAMMADI
TAYLOR L. BENNINGER
LORRAINE L. ABDULHAD
CLARE KANE
SIDNEY M. EISNER
HELEN ELIZABETH WHITE
ALISON A. DOYLE
JASON D. WEISS
HENRY D. SHREFFLER
MILES W. UNTERREINER
LYNDSEY FRANKLIN
ANDREW DELAPLANE
ARIELLA PARK
LAURA PERRY STONE
NATASHA GEILING
JOSEPH MANTEGANI
GRAHAM J. WYATT
WESLEY P. DEVOLL
LAUREN A. BILOW
KAYSIE GONZALEZ
ALEXIS D. CAMPBELL
KYRA E. SCHOONOVER
WENDY Q. XIAO
DANIEL KANE
ADITI NARESH GHATLIA
ALBERTO J. DE DIEGO-HABEL
KYLE A. SCHNEIDER

CARL H. JIANG
BOBBY H. KIM
CLAIRE I. ROGERSON
LIAM GENNARI
CHARLES LAM
MICHAEL X. WEI
MAGGIE BUSHELL
REBECCA J. HANSEN
CONNOR HOGE
SARAH M. PFANDER
ELIZABETH ANASTASI
KEVIN HAN YANG
CORDELL A. BROWN
QIANZHE DANNY ZHANG
ABIGAIL K. BESSLER
KYLE A. GROVES
ESTHENA BARLOW
CY EMEKA RAY
SUSANNAH M. L. GAGNON
DANIEL E. RUBIN
MOHAMED SAID
JIN NIU
SHUYU SUN
REBECCA M. HO
SASHA YUSUF
NICOLE R. ALLICOCK
SHANNON E. EAGEN
KAITLYN M. RUBCICH
JAKE TODD

———————

OF COUNSEL

KATHLEEN M. MCDOWELL
PATRICK J. CAFFERTY, JR.
DAVID H. FRY
BRADLEY R. SCHNEIDER
PETER E. GRATZINGER
ADAM R. LAWTON
SARAH J. COLE
ALLISON M. DAY
JEREMY S. KREISBERG
NICOLE M. HOWELL
TERESA A. REED DIPPO
DAVID T. RYAN

———————

SEE MTO.COM FOR
JURISDICTIONS OF ADMISSION

560 MISSION STREET

SAN FRANCISCO, CALIFORNIA 94105-3089

TELEPHONE (415) 512-4000

———————

350 SOUTH GRAND AVENUE

LOS ANGELES, CALIFORNIA 90071-3426

TELEPHONE (213) 683-9100

———————

601 MASSACHUSETTS AVENUE NW

SUITE 500E

WASHINGTON, D.C. 20001-5369

TELEPHONE (202) 220-1100

October 22, 2025

Writer's Direct Contact
(415) 512-4027
(415) 644-6927 FAX
carolyn.luedtke@mto.com

Kathi Vidal
Matthew R. McCullough
Carson Swope
Winston & Strawn
255 Shoreline Drive, Suite 520
Redwood City, CA 94065

LeElle B. Slifer
Winston & Strawn
2121 N. Pearl Street, Suite 900
Dallas, TX  75201

Re:     *Hieu Pham and Ethan Knight*

Counsel,

This follows up on my call with Matt McCullough yesterday regarding your outreach on October 20 about our clients Hieu Pham and Ethan Knight.

To begin, xAI is making unreasonable and intimidating demands to Mr. Pham and Mr. Knight, who had every right to leave xAI for OpenAI.  You have at no point identified any evidence that either Mr. Pham or Mr. Knight engaged in any wrongdoing of any kind upon their departure.  Nevertheless, on Saturday August 30 at 1:13 a.m. (during Labor Day weekend), xAI's Head of Legal Affairs Lily Lim sent a threatening letter to Mr. Pham, and then later one to Mr. Knight, in which she "demand[ed] that you come clean" by Tuesday or else xAI would "vigorously pursue all available legal remedies without hesitation" including "substantial monetary damages."  She copied her colleague Mary Kang.  Ms. Lim said that xAI was "concerned about your use of xAI's proprietary information, including at OpenAI," but she

MUNGER, TOLLES & OLSON LLP

Winston & Strawn
October 22, 2025
Page 2

identified no specific concern or information about any use by Mr. Pham or Mr. Knight. In the months since, xAI still has identified no specific concern about Mr. Pham or Mr. Knight using any xAI confidential information.

The tone of Ms. Lim's August 30 letter appeared intended for one purpose – to scare the recipients. Nevertheless, both responded promptly on Tuesday September 2 (her mandated deadline) and provided earnest, detailed answers to all of Ms. Lim's demands. They both explained that they were instructed to use their personal phones, personal Signal accounts, and personal X accounts, among other things, for xAI confidential communications, which appears to be common practice at xAI. Neither of them received any reminder when they left xAI to check their personal phone or accounts for residual xAI information from their time working there, and so they did not take that step until they received the August 30 letter. In fact, nobody reminded either of them in any way to make sure they were not inadvertently retaining any xAI information when they left. The September 2 responses for Mr. Pham and Mr. Knight each chronicled the locations of xAI information on their personal phones and accounts. Both repeatedly asked Ms. Lim and Ms. Kang if they could go ahead and delete the xAI information from their phones and accounts, but instead of agreeing to that, on September 8 and 9, Ms. Lim thanked them for their prompt response and then provided a confusing list of instructions, including asking them to "list out the subject of the communications" in these accounts and devices before deleting them. I responded as Mr. Pham and Mr. Knight's counsel on September 12 and expressed concern about xAI's seeming request for our clients to open and review these residual xAI communications to describe the subject of each communication, and I asked again if they could just delete them. Neither Ms. Lim nor Ms. Kang ever responded. I followed up on October 8, and this time I said that since we had not heard from them, we were going to go ahead and retain a third party forensics vendor to preserve and then delete the potential xAI information so that it was out of Mr. Pham and Mr. Knight's possession. Again, no response. Having heard nothing in response to my September 12 and October 8 communications, we proceeded to engage a forensics vendor (Lighthouse), who on October 15, preserved potential xAi information from each individual's phone and accounts, and then deleted it from those phones and accounts.

Now, after all this time, on October 20, your firm responded to my September 12 and October 8 messages with aggressive expressions of urgency, concern, and threats that Mr. Knight and Mr. Pham have breached their contract. This is not well received and is inconsistent with the tone of Ms. Lim's September 8 and 9 responses followed by her long silence. As I explained to Matt yesterday, Mr. Pham and Mr. Knight endeavored earnestly to work with Ms. Lim, to no avail, and then I tried to work with Ms. Lim and Ms. Kang going back to September 12 *with no response*. If xAI truly wanted this information to be out of Mr. Pham and Mr. Knight's possession, or to participate in the process of selecting a forensics vendor or designing a remediation, xAI had ample, extended opportunity to work with us. xAI, now facing an October 27 deadline to amend their facially deficient complaint against OpenAI, cannot belatedly profess shock and concern, and threaten innocent, well-intentioned individuals who did nothing wrong and have been conscientious in their efforts to respond to xAI's August 30 outreach.

MUNGER, TOLLES & OLSON LLP

Winston & Strawn
October 22, 2025
Page 3

And I will note, at no point did Ms. Lim or Ms. Kang express any shock or concern about Mr. Pham or Mr. Knight's disclosure on September 2 that each had residual xAI information in their possession.  Ms. Lim thanked them for responding with the information in their September 2 emails.  Indeed, it was not shocking – everyone at xAI used personal phones and personal applications for work; they were instructed to do so.  With no reminders about that information when individuals left, it is not surprising that some would not think to look for and delete this residual information.  Here, as soon as Mr. Pham and Mr. Knight received reminders on August 30, they realized what they had inadvertently retained, and they responded immediately openly disclosing the information and asking for permission to delete it.

This pattern of threats followed by silence followed by threats is troubling.  It is anticompetitive and appears designed to chill the mobility of Mr. Pham and Mr. Knight, and other xAI employees who would prefer to work elsewhere, in violation of California Business and Professions Code Section 16600.  It does not evidence a sincere desire to protect confidential information.  Your demands for their X and other social media passwords to inspect those accounts violates California Labor Code Section 980 as it does not appear tied to any legitimate investigation of workplace misconduct.  (This is demonstrated by the fact that the ECIIAA seems to require disclosure of such logins and passwords as a matter of course.)  And the entire scheme and course of conduct by xAI is unfair and unlawful in violation of California Business and Professions Code Section 17200.

We ask that you cease your threats towards Mr. Pham and Mr. Knight.

Now, I want to follow up on some specifics from my call with Matt.

As an initial matter, on our call, Matt was unable to answer some questions regarding xAI's interactions with Mr. Knight and Mr. Pham.  As noted above and as I described to Matt, our understanding is that, at the time of the resignations, xAI did not take any steps to remind Mr. Knight or Mr. Pham to search for and delete any xAI confidential information in the various personal devices and accounts that xAI required them to use for work.  Matt was unable to confirm this understanding.  Matt also was not able to confirm whether xAI complied with our two September 12 requests and our two October 8 requests to xAI counsel asking them to remove Mr. Pham and Mr. Knight from xAI-related X-chat groups and to delete those X-chats from the X side so they would not appear in their accounts.  Please provide us with a response on these topics.  If xAI did not comply with our repeated requests asking them to delete the X-chats, please explain why not.

In addition, if there are any other relevant agreements for Mr. Knight or Mr. Pham related to any obligations to xAI other than the ECIIAA, please provide us a copy of those.

Second, Matt also asked me a few questions to which I did not know the answer and I promised to follow up.  These questions relate to our retention of Lighthouse to preserve and then delete any potential xAI related communications or documents in Mr. Knight and Mr.

MUNGER, TOLLES & OLSON LLP

Winston & Strawn
October 22, 2025
Page 4


Pham's possession.  As I explained to Matt and above, we undertook this effort only after we received no response from Ms. Lim or Ms. Wang to my two September 12 emails or my two October 8 emails.  The responses to your questions about Lighthouse's work are as follows:

- Lighthouse conducted the preservation and remediation on October 15.

- Lighthouse conducted a targeted remediation, meaning they preserved information in locations that were identified by the former xAI employees as potentially containing xAI information and then Lighthouse deleted that information from the employee's personal device or account.  They did not create images of entire devices or accounts – rather, they imaged and preserved only the information that they then deleted from each employee's personal device or account.

- The information preserved and deleted is the information outlined by Mr. Pham in his September 2 email to Ms. Lim and Ms. Kang and the information outlined by Mr. Knight in his September 2 email to Ms. Lim and Ms. Kang.

- The preservation copies are being stored as encrypted files at Lighthouse.  Access has not been provided to anyone outside of Lighthouse, including my firm.

Third, you have asked whether either or both of our clients are willing to turn over to you Lighthouse's preservation copy of the documents that were imaged from their personal phones and accounts.  Our clients are willing to do so on three reasonable conditions.  One, if you will agree that my firm may review the information before it is provided to you, so that we can ensure that the imaging process did not inadvertently capture sensitive information unrelated to xAI.  I raised this with you on the call yesterday, and you were going to check with your client.  We can provide you a brief log of anything we remove.  If you would like us to agree to a confidentiality agreement akin to a protective order prior to our review, we can do so.  Two, you will preserve the material provided by Mr. Knight and Mr. Pham until all litigation with OpenAI is resolved so that it can be produced there, if appropriate and in response to discovery requests to xAI.  Three, if there is ever litigation between xAI and Mr. Pham and/or Mr. Knight in which there are allegations about these materials, you agree that the information turned over to you will be produced to us in that litigation within three days of the commencement of litigation pursuant to an agreed upon protective order.

Fourth, you have asked whether Mr. Knight and Mr. Pham are willing to turn over their personal phones and personal accounts for xAI to inspect them.  At this point, they are not.  Mr. Knight and Mr. Pham each have said repeatedly that they have no interest in possessing or using confidential xAI information, and they have requested xAI's cooperation since September 2 in authorizing them to delete any such information on the personal devices or accounts that they were instructed to use while working at xAI.  Having ignored those requests, xAI cannot now

MUNGER, TOLLES & OLSON LLP

Winston & Strawn
October 22, 2025
Page 5

demand that Mr. Knight and Mr. Pham take the invasive and unnecessary step of subjecting their personal phones and accounts to inspection. Both phones, for example, have their personal email account that contains communications with our firm that are protected by privilege. Both phones also have their personal communications with friends and family. Moreover, both individuals are agreeing to provide the remediated information to you subject to the conditions above. And, if you would like, Mr. Knight and Mr. Pham are willing to provide a further certification to you that they do not have confidential xAI information in their possession following the Lighthouse remediation.

Fifth, you made multiple accusations in your correspondence and in our call that Mr. Pham and Mr. Knight have violated their ECIIAA. There are multiple reasons that there is no breach. For example, Section 8 of Mr. Knight's ECIIAA says that "if I have used any personal computer, server, or email system" for xAI company information, then he must provide a copy of that information and then delete it, and then upon reasonable request, provide access to verify necessary copying and/or deletion is completed. The ECIIAA does not mention personal phones, personal messaging applications, or personal social media accounts, very likely because xAI required employees to use their phones and personal social media and messaging accounts for xAI work. To interpret that provision to cover phones and personal accounts would mean that every employee was offering to turn over their phone and the contents of their personal accounts upon separation. We do not understand that to be xAI's practice. Indeed, when Mr. Knight and Mr. Pham left xAI, the company did not ask them for copies of work-related communications from their personal phones, their personal X accounts, or their personal Signal accounts, nor did the company ask to inspect their phones or accounts. Moreover, given the involvement of a reputable forensics vendor in imaging and deleting any residual xAI material coupled by Mr. Knight and Mr. Pham's offer to provide a certification and the lack of any evidence of wrongdoing, it is not a reasonable request to demand access to the phones or accounts for verification.

MUNGER, TOLLES & OLSON LLP

Winston & Strawn
October 22, 2025
Page 6


        Thank you for your attention to this matter.  I look forward to hearing from you with the information requested above and to your guidance on whether you agree to our proposed conditions so that we can promptly review the material and then facilitate the transfer of the information from Lighthouse to your firm.


                                Sincerely,

                                */s/ Carolyn Hoecker Luedtke*

                                Carolyn Hoecker Luedtke


cc:     Jonathan Kravis
        Dane Shikman
        Gabriel Bronshteyn
        Joseph Glynn