CAROLYN HOECKER LUEDTKE (SBN 207976)
carolyn.luedtke@mto.com
DANE P. SHIKMAN (SBN 313656)
dane.shikman@mto.com
GABRIEL M. BRONSHTEYN (SBN 338011)
gabriel.bronshteyn@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

JOSEPH N. GLYNN (SBN 337652)
joseph.glynn@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

Attorneys for Defendants OpenAI, Inc., OpenAI Global, LLC, and OpenAI OpCo, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

X.AI CORP. and X.AI LLC,

Plaintiffs,

vs.

OPENAI, INC., OPENAI GLOBAL, LLC, and OPENAI OPCO, LLC,

Defendants.

Case No. 3:25-cv-08133-RFL

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ATTORNEY'S FEES UNDER 18 U.S.C. § 1836 AND CAL. CIV. CODE § 3426.4**

Date: September 8, 2026
Time: 10:00 a.m.

Judge: Honorable Rita F. Lin

# TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. The Court Should Award Attorney's Fees to OpenAI .......... 1

1. xAI Fails to Identify Any Evidence of Misappropriation by OpenAI .......... 1

2. xAI Fails to Refute Overwhelming Evidence of Subjective Bad Faith .......... 5

3. xAI Does Not Address the Fee Request as to xAI's State-Law Claims .......... 8

B. OpenAI's Requested Fees Are Reasonable .......... 8

C. The Court Should Resolve OpenAI's Motion Now .......... 10

III. CONCLUSION .......... 10

## TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Alamar Biosciences, Inc. v. Difco Laboratories, Inc.*, 1996 WL 784495 (E.D. Cal. Feb. 27, 1996) ....... 5, 6

*Betta Prods., Inc. v. Transglobal Commnc's*, 2007 WL 4570368 (N.D. Cal. Dec. 26, 2007) ....... 5

*Cherokee Chem. Co., Inc. v. Frazier*, 2022 WL 2036305 (C.D. Cal. Apr. 27, 2022) ....... 2, 5

*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978) ....... 5

*CleanFish, LLC v. Sims*, 2020 WL 7353462 (N.D. Cal. Dec. 15, 2020) ....... 6

*CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099 (9th Cir. 2007) ....... 2

*Dep't of Toxic Substances Control v. Rossi*, 2022 WL 1271007 (N.D. Cal. Apr. 28, 2022) ....... 9

*Direct Techs., LLC v. Elec. Arts, Inc.*, 836 F.3d 1059 (9th Cir. 2016) ....... 6

*Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115 (9th Cir. 2000) ....... 8

*Flexport, Inc. v. Freightmate AI, Inc.*, 2025 WL 2399666 (N.D. Cal. Jul. 10, 2025) ....... 2

*Gilead Scis., Inc. v. Merck & Co.*, 2017 WL 3007071 (N.D. Cal. July 14, 2017) ....... 9

*HCC Insurance Holdings, Inc. v. Flowers*, 2017 WL 5118224 (N.D. Ga. Nov. 6, 2017) ....... 4

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ....... 8

*Indigo Grp. USA, Inc. v. Polo Ralph Lauren Corp.*, 2014 WL 12573380 (C.D. Cal. Mar. 17, 2014) ....... 6

*Johnson Matthey Process Technologies, Inc. v. G.S. Aru LLC*, 603 F. Supp. 3d 1374 (S.D. Ga. 2022) ....... 4, 6

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) .......... 9

*Masalosalo by Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955 (9th Cir. 1983) .......... 10

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008) .......... 10

*P2i Ltd. v. Favored Tech USA Corp.*, 2025 WL 3539260 (N.D. Cal. Dec. 10, 2025) .......... 10

*RBC Bearings Inc. v. Caliber Aero, LLC*, 2016 WL 6562068 (C.D. Cal. Aug. 1, 2016) .......... 3, 5, 6, 7

*Rosenfeld v. U.S. Dep't of Just.*, 903 F. Supp. 2d 859 (N.D. Cal. 2012) .......... 10

*Stewart v. Accurate Background, LLC*, 2024 WL 1221968 (N.D. Cal. Mar. 20, 2024) .......... 8

*Teetex LLC v. Zeetex, LLC*, 2022 WL 2439176 (N.D. Cal. July 5, 2022) .......... 6

*White v. N.H. Dep't of Emp. Sec.*, 455 U.S. 445 (1982) .......... 10

*Zebra Strategies, Inc. v. Gonzalez-Nazario*, 800 F. Supp. 3d 592 (S.D.N.Y. 2025) .......... 4, 6

**STATE CASES**

*Cypress Semiconductor Corp. v. Maxim Integrated Prods.*, 236 Cal. App. 4th 243 (2015) .......... 2, 3, 4, 7

*SASCO v. Rosendin Elec., Inc.*, 207 Cal. App. 4th 837 (2012) .......... 4

*Yield Dynamics, Inc. v. TEA Sys. Corp.*, 154 Cal. App. 4th 547 (2007) .......... 5

**FEDERAL RULES**

Fed. R. Civ. P. 11 .......... 6

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200 .......... 8

**N.D. CAL. CIVIL LOCAL RULES**

Civil L.R. 7-1 ....................10
Civil L.R. 54-5(b)(2) ....................8

## I. INTRODUCTION

xAI's Opposition confirms what the course of this litigation has made abundantly clear: xAI brought this case without evidence—and it did so for improper purposes. Under the relevant trade secret statutes, xAI's conduct amounts to bad faith and warrants a fee award.

xAI's arguments that it acted in good faith all fail. To resist a finding of objective speciousness, xAI points to evidence that two former xAI employees—including one who never worked at OpenAI—allegedly copied xAI information while at xAI. xAI's Opposition ignores that it brought this case against OpenAI without any evidence that *OpenAI* knew about or induced that alleged copying. Nor does xAI even try to defend the broader allegations it asserted—that OpenAI undertook a coordinated campaign to hire eight former xAI employees to obtain xAI trade secrets. From the outset, xAI could not plead any facts supporting such a campaign or that *OpenAI* otherwise acquired, used, or disclosed xAI information. And after the Court identified and explained that defect, xAI acknowledged it had no evidence to cure it, asking this Court to stay the case so that it could attempt to find (non-existent) evidence of misconduct by OpenAI. But as the Court rightly held, without that evidence, xAI "should not have sued OpenAI in the first instance." Dkt. No. 110 ("Second MTD Order") at 7. Nor does xAI offer any evidence or meaningful argument that this case was brought in subjective good faith. xAI fails to explain why it maintained this case after its shortcomings were identified in OpenAI's correspondence and this Court's order. And xAI fails to rebut evidence of its true motives—to stifle fair competition for talent and to continue harassing OpenAI and its employees.

xAI's arguments for reducing or delaying a fee award likewise fail. OpenAI's attorney declaration and summary chart amply support its fee request. xAI's request to delay decision pending xAI's appeal is both procedurally improper and unsupported by authority.

## II. ARGUMENT

### A. <u>The Court Should Award Attorney's Fees to OpenAI</u>

#### 1. xAI Fails to Identify Any Evidence of Misappropriation by OpenAI

xAI does not dispute that in evaluating a DTSA fee motion, a claim is objectively specious when "there is a complete lack of evidence to support the claim," even when the case is

"dismissed prior to trial and prior to the completion of discovery." *Cherokee Chem. Co., Inc. v. Frazier*, 2022 WL 2036305, at *3 (C.D. Cal. Apr. 27, 2022) (citation omitted); *see* Opp. at 5. Despite accepting that standard, xAI puts forth no evidence supporting its trade secret claim. Instead, xAI chose to rest on its deficient pleadings, which only demonstrate that xAI lacked evidence to support its allegations against OpenAI. *See Cypress Semiconductor Corp. v. Maxim Integrated Prods.*, 236 Cal. App. 4th 243, 262 (2015) (recognizing that "the manner in which" a trade secret claim is pleaded can show that the plaintiff "never had any evidence to support" it); *see also CRST Van Expedited, Inc. v. Werner Enters., Inc.,* 479 F.3d 1099, 1112 (9th Cir. 2007) (affirming finding of objective speciousness because there was "no proof in the record" supporting trade secret claim dismissed at the pleading stage).

As the Court has recognized *twice*, xAI failed to allege any facts "about the conduct of OpenAI itself." Dkt. No. 73 ("First MTD Order") at 1; *see* Second MTD Order at 6-7. These were not, as xAI wrongly claims, "narrow, technical grounds," Opp. at 7; they went to the core issue raised by this motion—whether xAI "lacked the requisite information" to "sue[] OpenAI in the first instance." Second MTD Order at 7. Having provided no new evidence here, xAI's only argument against objective speciousness is that the actions of Li and Fraiture while they were xAI employees gave xAI a good-faith basis to file suit against OpenAI. Opp. at 3, 5. But xAI's focus on Li and Fraiture ignores the Court's clear holding, based on well-established case law, that xAI must allege some "misconduct by OpenAI" to plead a trade secret misappropriation claim against OpenAI. First MTD Order at 1. Despite multiple attempts, xAI failed to do so, and its conclusory allegations demonstrate that it lacked any evidence of misconduct by OpenAI that could support its claim. *See Cypress*, 236 Cal. App. 4th at 262. Indeed, xAI admitted it did not have evidence to support its claims against OpenAI when it told the Court it would be prejudiced if it could not take discovery in this matter to find evidence "establishing a link to OpenAI." Dkt. No. 74 at 8.

To establish a claim of misappropriation based on conduct by Li and Fraiture alone, xAI would need to show some basis for vicarious liability, which it failed to do. Li was never employed by OpenAI and Fraiture only joined OpenAI after the alleged downloading. *See Flexport, Inc. v. Freightmate AI, Inc.*, 2025 WL 2399666, at *4 (N.D. Cal. Jul. 10, 2025)

(explaining that "[t]he future employer of a person who steals a company's trade secrets for the benefit of the future employer is not liable under respondeat superior, absent an allegation" of use by the future employer or its current employees (citation omitted)). xAI failed to allege any facts indicating that Fraiture—or any other former xAI employee—used xAI information at OpenAI. First MTD Order at 13 (explaining that xAI's allegations do not permit "a plausible inference that its former employees used its trade secrets at OpenAI").

Further, xAI failed to plead any facts, much less offer evidence, that OpenAI "told or encouraged" Li or Fraiture (or any of the other former employees it identified) to copy or misappropriate xAI information. *Id.* at 7-9. Nor did xAI allege facts plausibly establishing that OpenAI asked Li to share xAI's trade secrets during his job interview. *See* Second MTD Order at 2-3. xAI's Opposition ignores the Court's holdings and its own pleadings.

xAI's allegation that OpenAI hired xAI employees with alleged "access" to xAI information provides no support for its claim against OpenAI. Opp. at 6. Courts have repeatedly recognized that trade secret claims are objectively specious when brought against a competitor for hiring employees who merely have access to the plaintiff's information, without evidence that the new employer acquired or used those trade secrets. *See Cypress*, 236 Cal. App. 4th at 261 (trade secret claim was objectively specious when it was based on the "naked assertion that [the defendant] was pursuing [the plaintiff's] employees with the object of extracting trade secrets from them"); *RBC Bearings Inc. v. Caliber Aero, LLC*, 2016 WL 6562068, at *5 (C.D. Cal. Aug. 1, 2016) (trade secret claim was objectively specious when it was based on defendant hiring employees with "access to plaintiff's trade secrets during the course of their employment with plaintiff, and their conclusion that such information would be useful to a competitor").

xAI's bare allegations that Li disclosed xAI information to OpenAI likewise reveal no evidentiary support for a claim against OpenAI. xAI mischaracterizes as "undisputed" its allegations that Li presented slides to OpenAI during his interviews. Opp. at 6. This spurious argument appears to rely on the fact that the Court presumed that the presentation occurred for purposes of deciding OpenAI's motion to dismiss—a presumption that xAI does not enjoy on this fees motion. The relevant question in assessing objective speciousness is not what was alleged,

but whether xAI had any "evidence of trade secret misappropriation," and factual allegations based on a plaintiff's "speculation"—such as xAI's speculation about the alleged presentation—cannot support a trade secret claim. *SASCO v. Rosendin Elec., Inc.*, 207 Cal. App. 4th 837, 848-49 (2012). xAI's own "evasive" and "equivocal" allegations about the purported presentation confirm that it had no evidence that the presentation occurred. *Cypress*, 236 Cal.App.4th at 261; *see* Dkt. No. 92-1 ("SAC") ¶ 68 (alleging there could be "almost no question" the presentation occurred "either visually or by verbally sharing the contents"). Without evidence that the presentation occurred (and having received OpenAI's correspondence confirming that it did not), xAI was unable to allege what Li purportedly presented and what OpenAI did to "acquire" xAI's trade secrets. Second MTD Order at 4, 6-7; *see* Luedtke Decl. ¶ 17 & Ex. 7. xAI likewise failed to allege facts supporting the incorrect insinuation that Li transferred source code to OpenAI through other means. First MTD Order at 9-10. Indeed, OpenAI refuted those allegations by showing that the cloud storage link referenced by xAI was in fact a read-only recruiting portal containing Li's standard hiring paperwork. *See* Luedtke Decl. ¶ 34 & Ex. 14; Answer at 4-5.

xAI identifies no cases holding that a departing *employee*'s alleged misappropriation alone provides a good-faith basis to assert a claim against that employee's *new employer*. Indeed, that is not the law. In *HCC Insurance Holdings, Inc. v. Flowers*, 2017 WL 5118224 (N.D. Ga. Nov. 6, 2017), there was ample other evidence of misappropriation by the new employer—it was formed by the plaintiff's departing employees and quickly took many of the plaintiff's former accounts. *Id.* at *2. Similarly, in *Zebra Strategies, Inc. v. Gonzalez-Nazario*, 800 F. Supp. 3d 592 (S.D.N.Y. 2025), there was evidence that the new employer used the allegedly misappropriated data. *Id.* at 596, 600. And although the court found a claim against a new employer not objectively specious in *Johnson Matthey Process Technologies, Inc. v. G.S. Aru LLC*, 603 F. Supp. 3d 1374 (S.D. Ga. 2022), that finding was based on evidence "that the stolen documents were in fact trade secrets," not evidence of misappropriation by the departing employee. *Id.* at 1381.[1]

[1] xAI claims that recent litigation brought by Apple somehow supports xAI's good faith, Opp. at 2 n.1, but xAI's suit was filed nine months earlier and Apple's lawsuit is irrelevant here.

**2. xAI Fails to Refute Overwhelming Evidence of Subjective Bad Faith**

xAI's conclusory assertions of good faith are supported by neither evidence nor argument. Remarkably, xAI submits no declaration, and thus no testimony or documents, to respond to the voluminous evidence of subjective bad faith offered by OpenAI.

xAI's Opposition betrays a fundamental misunderstanding of subjective bad faith. xAI argues that OpenAI's attorney declaration should not be considered because it was "never before the Court when it dismissed the SAC on the pleadings." Opp. at 10, 15. But subjective bad faith "involves a factual inquiry into the plaintiff's subjective state of mind." *Betta Prods., Inc. v. Transglobal Commnc's*, 2007 WL 4570368, at *2 (N.D. Cal. Dec. 26, 2007) (citation omitted). That inquiry is not before the Court on a motion to dismiss; however, it is a key question on a fees motion. OpenAI's declaration and exhibits bear directly on that question. *See Yield Dynamics, Inc. v. TEA Sys. Corp.*, 154 Cal. App. 4th 547, 579 (2007) (holding that the trial court erred in striking declarations on fee motion that were relevant to the plaintiff's subjective bad faith in filing a trade secret claim); *RBC Bearings*, 2016 WL 6562068, at *6-10 (finding subjective bad faith based on extensive record of correspondence between counsel and pleadings in related litigation). Considering evidence about the information available to xAI when it brought and maintained this suit will avoid the very "hindsight logic" and "post hoc reasoning" against which xAI warns. Opp. at 10. xAI cites *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978), as support for those warnings, but *Christiansburg* does not address reliance on such evidence on a fee motion, and it addressed a different Title VII fee-shifting standard that does *not* require a showing of "subjective bad faith." *Id.* at 421.

In arguing that OpenAI's prior correspondence lacks evidentiary weight, xAI ignores the many cases recognizing that failing to heed correspondence identifying shortcomings in a plaintiff's claims is strong evidence of subjective bad faith. *See, e.g.*, *RBC Bearings*, 2016 WL 6562068, at *7; *Cherokee Chem.*, 2022 WL 2036305, at *5; *Alamar Biosciences, Inc. v. Difco Laboratories, Inc.*, 1996 WL 784495, at *3 (E.D. Cal. Feb. 27, 1996). While xAI has long maintained that letter writing is a "waste" of "time," Luedtke Decl. Ex. 15; *see* Opp. at 10, 15, a party's engagement with opposing counsel can sometimes be necessary to ensure that its litigation

position is reasonable, and unwillingness to engage can implicate counsel's obligations under Rule 11. *See Alamar Biosciences*, 1996 WL 784495, at *1 (citing Fed. R. Civ. P. 11). None of xAI's authorities suggest otherwise.[2]

OpenAI's pre- and post-complaint correspondence amply establish that xAI filed and maintained its case after "the specific shortcomings of the case" were "identified by opposing counsel," and "despite the inability" of xAI "to respond to the arguments raised." *RBC Bearings*, 2016 WL 6562068, at *7. xAI "does not attempt to explain why it did not respond," so the correspondence creates a "clear" record that xAI knew then that it was litigating this case despite being on clear notice of its factual and legal deficiencies. *Id.* at *8.

xAI also does not meaningfully respond to OpenAI's showing that xAI continued to litigate after the shortcomings of its case were explained *by this Court*, and even acknowledged by xAI. Mot. at 10-11. xAI now claims that it sought a stay to take discovery after dismissal of its FAC because it believed the Court had suggested that "a stay might be prudent." Opp. at 9 n.3. That is pure fiction: xAI argued it would be "inequitable"—rising to the level of a "catch-22"—if it had to amend its complaint before it had the chance to pursue information that would "provid[e] more detailed allegations establishing a link to OpenAI." Dkt. No. 74 at 8. xAI thus acknowledged that it needed more evidence to satisfy that standard. But even when the Court denied the stay, xAI filed its SAC anyways, reasserting the allegations the Court had found insufficient. Dkt. No. 81-1 (redline comparing SAC to FAC); *see Teetex LLC v. Zeetex, LLC*, 2022 WL 2439176, at *5 (N.D. Cal. July 5, 2022) (advancing a theory "already rejected" by the court supports a finding of subjective bad faith).

[2] *See CleanFish, LLC v. Sims*, 2020 WL 7353462, at *1 (N.D. Cal. Dec. 15, 2020) ("shortcomings" identified were mere "weaknesses" that did not indicate that the claims "lacked a factual and legal basis"); *Indigo Grp. USA, Inc. v. Polo Ralph Lauren Corp.*, 2014 WL 12573380, at *9 (C.D. Cal. Mar. 17, 2014) (plaintiff was apprised of a fact that weighed against but did not refute the plaintiff's trade secret claim); *see also Zebra Strategies*, 800 F. Supp. 3d at 600-01 (court did not address pre-litigation correspondence); *Johnson Matthey*, 603 F. Supp. 3d at 1382 (finding no bad faith where plaintiff "raised concerns about the manner in which [the defendant and his counsel] intended to handle the trade secret information"); *Direct Techs., LLC v. Elec. Arts, Inc.*, 836 F.3d 1059, 1071 (9th Cir. 2016) (stating that finding of no subjective bad faith was not an abuse of discretion given lack of contrary evidence).

xAI hardly responds to the ample evidence of its improper motives. Mot. at 11-12. xAI misleadingly suggests that it was "necessary" to publicly identify its former employees because they are "the same individuals who admitted to stealing xAI's trade secrets." Opp. at 11. But those allegations only account for publicly naming two individuals. xAI does not explain why it also publicly named five other former employees (and one current recruiting employee of OpenAI), despite having no evidence implicating them in any trade secret misappropriation. xAI referred to one—the senior finance executive—by pseudonym, and does not explain why it could not have done the same for the others. *See RBC Bearings*, 2016 WL 6562068, at *7 (inferring subjective bad faith where plaintiff named employees in trade secrets lawsuit despite having "virtually no evidence" of their involvement in misappropriation).

xAI also does not—and cannot—explain how its mistreatment of Knight and Pham advanced its interests as an alleged owner of trade secrets. Opp. at 11. xAI offers nothing more than a conclusory assertion that its conduct was "consistent with … protecting its rights." *Id.* But xAI does not address any of the relevant conduct: that it required Knight and Pham to use xAI information on their personal devices and accounts, refused to respond to their requests for guidance on how to delete that information, and then alleged misappropriation when Knight and Pham engaged a reputable forensics vendor (misleadingly labeled an "unauthorized third-party" in xAI's pleadings, Dkt. No. 44 ("FAC") ¶ 132) to carry out that remediation. *See generally* Luedtke Decl. ¶¶ 52-68. That xAI harbors no genuine concerns about the vendor's retention of that information is confirmed by the fact that xAI has never allowed the vendor to delete the data after it transmitted a preservation copy to xAI's forensics vendor. *Id.* ¶ 67.

xAI's response to Musk's X post before OpenAI was even served is circular—that "a party's public statements about litigation it has a good-faith basis to bring do not establish bad faith." Opp. at 11. But xAI's good faith is precisely what is at issue. Press statements can reveal a plaintiff's motives for bringing a trade secret claim. *See Cypress*, 236 Cal. App. 4th at 271. But xAI offers no explanation for Musk posting on X before the complaint was served.

Nor does xAI address Musk's campaign of harassment against OpenAI online and in court. Mot. at 2, 12. xAI and Musk have filed multiple prior lawsuits against OpenAI and/or its

leadership—all against the backdrop of Musk's repeated X posts deriding OpenAI as "a lie," "evil," and a "scam." *Id.* at 2. xAI offers nothing to undermine the inference that this lawsuit was driven by the same motives as xAI's and Musk's ongoing harassment.

**3. xAI Does Not Address the Fee Request as to xAI's State-Law Claims**

xAI does not address OpenAI's request for attorney's fees under CUTSA. xAI effectively concedes that OpenAI prevailed on xAI's claims for intentional interference with prospective economic relations and under the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, that xAI brought those claims in bad faith, and that fees should be awarded. Mot. at 12-13.

**B. <u>OpenAI's Requested Fees Are Reasonable</u>**

xAI's claim that OpenAI failed to support its fee request runs contrary to precedent—including the same case law that xAI cites in its Opposition. Under the Supreme Court's decision in *Hensley v. Eckerhart*, a party seeking recovery of attorney's fees is simply required to "identify the general subject matter of [its] time expenditures" as part of the fee application. 461 U.S. 424, 437 n.12 (1983). Ninth Circuit authority applying *Hensley* makes clear that a summary chart sufficiently describes the "general subject matter" of work performed. *See Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000); *see also Stewart v. Accurate Background, LLC*, 2024 WL 1221968, at *10 (N.D. Cal. Mar. 20, 2024) (granting motion for attorneys' fees that was supported by "a summary of categorized costs incurred in litigating" the case). xAI also ignores the controlling local rule requiring only a "statement" of "services rendered by each person" and "time spent by each person," along with a description of "the manner in which time records were maintained." Civil L.R. 54-5(b)(2).

OpenAI provided detailed support that clearly satisfies *Hensley*. Drawing on contemporaneous time records, OpenAI submitted a sworn declaration containing a summary of each timekeeper's requested hours across three different phases of the litigation. *See* Luedtke Decl. ¶¶ 91-94 & Ex. 24. OpenAI provided detailed summaries of the work completed during each phase, as well as the services provided by each timekeeper. *Id.* ¶¶ 95-102. OpenAI's approach is consistent with the "growing trend" for fee awards to be "based on an overall global understanding and review of a case, rather than on a tedious review of voluminous time entries

and hourly rates." *See Dep't of Toxic Substances Control v. Rossi*, 2022 WL 1271007, at *2 n.1 (N.D. Cal. Apr. 28, 2022); *see also Gilead Scis., Inc. v. Merck & Co*., 2017 WL 3007071, at *3 (N.D. Cal. July 14, 2017) (noting that summary chart provides the court with a "bird's-eye view of the time expended" that is "impossible to glean from chronological timesheets").

xAI's contention that OpenAI's requested recovery is "excessive" lacks merit. Opp. at 14. While xAI argues in conclusory fashion that the "*Kerr* factors do not support" OpenAI's request, *id.* at 13, xAI is tellingly silent as to the many factors favoring OpenAI, including the skill required to defend the case, the results obtained, and prevailing rates for similar work in the district. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975). Notably, xAI does not challenge the requested rates. Nor does it submit any evidence to support its arguments.

Instead, xAI focuses almost entirely on the unfounded argument that OpenAI's fee request reflects "redundant" work. Opp. at 13-14. As a threshold matter, xAI's "redundancy" argument ignores many kinds of tasks that OpenAI's counsel needed to perform during the approximately seven-month period at issue, including factual investigation of xAI's allegations; drafting OpenAI's Answer and Affirmative Defenses; work relating to document preservation and collection; planning for discovery and potential expert witness engagements; preparing for the case management conference and the dispute over the trade secret disclosure; seeking a stay of discovery until the pleadings were resolved; and opposing xAI's Motion to Stay. *See* Luedtke Decl. ¶ 95. xAI's redundancy argument also mischaracterizes the complexity of OpenAI's Motions to Dismiss themselves, suggesting that the briefing involved "straightforward" issues that allowed OpenAI to "recycle[]" prior briefs. Opp. at 13-14. xAI's original complaint (Dkt. No. 1) targeted OpenAI's recruitment of eight different individuals and asserted three separate causes of action. xAI later amended that complaint to add additional (baseless) factual allegations. *See* FAC. Following the Court's order dismissing the FAC, xAI itself claims to have made significant changes in its SAC, *see* Opp. at 8, adding several pages of additional, but equally unsupported, allegations about Li's alleged interview presentation and adding other baseless allegations regarding the senior finance executive and data center strategy. *See* SAC ¶¶ 18-20, 67-78, 71, 101, 142; *see also* Second MTD Order at 2. Each of those shifts required additional time to

research, develop, and draft OpenAI's third Motion to Dismiss.[3] The amounts OpenAI incurred during that phase (like all others) are reasonable and should be included in the fee award.[4]

### C. <u>The Court Should Resolve OpenAI's Motion Now</u>

This Court should reject xAI's request to delay adjudication of OpenAI's fee motion.

As an initial matter, xAI's request is procedurally improper. xAI should have moved for a stay raising the "four factors" courts use "to determine whether to stay awarding attorneys' fees and costs pending appeal." *P2i Ltd. v. Favored Tech USA Corp.*, 2025 WL 3539260 at *2 (N.D. Cal. Dec. 10, 2025); *see* Civil L.R. 7-1.

Regardless, xAI's request should be denied. "[T]he weight of authority is that the usual course is for the Court to consider attorneys' fees promptly after the merits decision rather than stay a motion for attorneys' fees until resolution of the appeal." *P2i*, 2025 WL 3539260, at *2 (citation omitted). After all, "judicial economy is better served by determining attorneys' fees promptly while the details of the proceedings are still fresh." *Id.* (citation omitted). In the case xAI misquotes to say the opposite, the Supreme Court recognized that "promptly hearing and deciding" fee motions will avoid "piecemeal appeals" by "permit[ting] appeals from fee awards to be considered together with any appeal from a final judgment." *White v. N.H. Dep't of Emp. Sec.*, 455 U.S. 445, 454 (1982); *accord Masalosalo by Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 957 (9th Cir. 1983).

## III. CONCLUSION

OpenAI respectfully requests that the Court award attorney's fees in the amount of $1,217,072.30.

---

[3] xAI's vague arguments about "duplicative staffing" or "multiple senior lawyers" likewise fail because the Court must assess the "difficulty and skill level of the work performed, and the result achieved—not whether it would have been cheaper to delegate the work to other attorneys." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008). xAI's arguments are surprising in a brief that lists two law firms and eight attorneys defending xAI.

[4] In addition to the $1,041,859.90 in fees detailed in OpenAI's opening brief, OpenAI also requests $175,212.40 in additional fees relating to work undertaken to recover its attorney's fees. *See* Luedtke Reply Decl. ¶ 5; Mot. at 15 n.8 (citing *Rosenfeld v. U.S. Dep't of Just.*, 903 F. Supp. 2d 859, 878 (N.D. Cal. 2012)).

DATED: August 20, 2026

MUNGER, TOLLES & OLSON LLP

By: *s/ Carolyn Hoecker Luedtke*
CAROLYN HOECKER LUEDTKE
DANE P. SHIKMAN
GABRIEL M. BRONSHTEYN
JOSEPH N. GLYNN

Attorneys for Defendants OpenAI, Inc., OpenAI Global, LLC, and OpenAI OpCo, LLC